# EXHIBIT D

# MANAGEMENT SERVICES AGREEMENT
# CONTRACT MEDICAL PROPGRAM

THIS MANAGEMENT SERVICES AGREEMENT ("**Agreement**") is made as of September 8, 2017 ("**Effective Date**"), by and between BORREGO COMMUNITY HEALTH FOUNDATION, A CALIFORNIA NON-PROFIT CORPORATION ("**BCHF**") and SUMMIT HEALTHCARE MANAGEMENT, INC A CALIFORNIA CORPORATION ("**SHM**"). BCHF or SHM may sometimes also be individually referred to as the "Party" or collectively as the "Parties"

## RECITALS

**WHEREAS**, BCHF is a 501(c)(3) non-profit public benefit corporation, organized under the laws of the State of California and is licensed to operate Federally Qualified Health Centers ("**FQHC**"). BCHF currently operates FQHCs in San Diego County. The FQHCs provide comprehensive primary and specialty care according to the scope of services as approved by the Bureau of Primary Health Care ("**BPHC**") within the United States Department of Health and Human Services ("**DHHS**"),

**WHEREAS**, BCHF in order to increase access to primary health care for underserved populations and improve health outcomes, while preserving and enhancing its integrity and autonomy, has entered into Medical Service And Establishment of Intermittent Clinic Agreements with qualified doctors and clinics to provide medical services in underserved areas and BCHF desires to enter into other additional agreements with other doctors and clinics ("**Contract Medical Program**"); and

**WHEREAS**, BCHF desires to contract with SHM to obtain various management services relating to BCHF's Contract Medical Program; and

**WHEREAS**, SHM desires to contract with BCHF to provide those management services

## AGREEMENT

NOW, THEREFORE, in consideration of the recitals, covenants, conditions and promises herein contained, the parties agree as follows:

1     **RETENTION OF SHM**

    1 01     BCHF hereby appoints and retains SHM for management services relating to the Contract Medical Program and hereby grants to SHM the authority and responsibility, as specifically set forth herein, to manage certain aspects of the administrative, financial, billing and operational activities relating to the Contract Medical Program in all counties where BCHF operates a FQHC, currently or at any time during the term of this Agreement, or is otherwise authorized to provide medical services.

2     **DESIGNATED REPRESENTATIVE**

    2.01     SHM will designate one or more representatives who will act as the primary point of contact for BCHF for matters related to this Agreement and who shall make themselves available to consult with the directors, officers and department heads of BCHF, at reasonable times upon request of BCHF, concerning all matters relating to this Agreement. BCHF will designate one or more representatives who will act as the primary point of contact for SHM for matters related to this Agreement and who will have the authority to provide instructions, clarifications or make decisions when so requested by SHM Either Party may replace such representative with an individual of comparable qualification and experience by notifying the other Party in writing of such new appointment



EXHIBIT D
PAGE 172

3      DUTIES AND SERVICES

    3.01    <u>BCHF agrees and covenants</u>:

    3.01.1    To take actions as necessary to meet its obligations under any existing and/or future agreements with contract doctors and clinics or other professionals performing contract medical services for BCHF ("**Medical Services Agreements**" or singularly "**Medical Service Agreement**"). A form Medical Services Agreement is attached hereto as **Exhibit "C"** and by this reference made a part hereof.

    3.01.2    BCHF shall maintain a Care Coordinator Specialist and Medical Director and shall notify SHM of the name and contact information for each position.

    3.01.3    BCHF shall cooperate and timely provide SHM with all required information to allow SHM to timely fulfill all of its obligations under this Agreement. BCHF shall provide SHM full access to its Electronic Health Records ("EHR"). BCHF shall coordinate and cooperate with SHM in the interface of its EHR to SHM's systems including claims, scheduling, credentialing and education. BCHF shall cooperate with SHM in considering system upgrades and changes that more effective and economical result in the providing the services contemplated under this Agreement.

    3.01.4    BCHF shall under the terms of this Agreement provide access to SHM to its sites and operating systems to assist SHM in integrating its systems with BCHF and to better provide the service contemplated under this Agreement.

    3.01.5    To better assist in the communication with doctors and clinics or other professionals performing contract medical services under the Medical Services Agreements, BCHF shall coordinate the SHM on the method and means of as to the flow of information and questions between BCHF and the contract medical providers.

    3.01.6    BCHF shall timely and fully bill the appropriate payor for payment of all medical services performed by doctors under the Medical Services Agreements.

    3.01.7    BCHF shall be responsible for and shall timely pay all sums owing to doctors and clinics under any Medical Services Agreements providing SHM with a copy of all such payments.

    3.01.8    To comply with all guidelines, laws and regulations which govern transactions and security of electronic health records and other patient information.

    3.01.9    To provide feedback on SHM's proposed contract medical services management plan and work diligently with SHM to determine mutually agreeable terms for any such management plan.

    3.01.10    To provide copies of all Medical Services Agreements between BCHF and contract medical service providers to SHM.

    3.01.11    To be financially responsible for the following:

    a    Pay all fees due and payable to contract doctors and clinics and other contract medical service providers for services provided under any Medical Services Agreements.

    b.    Cost of all insurance policies in the name of BCHF, as required by this agreement.

    c.    All fees due SHM under the terms of this Agreement.

    3.02    <u>SHM agrees and covenants</u>

    3.02.1    To provide the managerial and other related services to BCHF as described in Exhibit "A", attached hereto and incorporated herein by reference, in furtherance of BCHF's Contract Medical Services Programs ("**Management Services**"). Said Management Services shall be provided in two phases as set forth in **Exhibit "A"**.

3 02 2  Comply with all guidelines, laws and regulations which govern transactions and security of electronic health records and other patient information.

## 4 COMPENSATION AND BILLING

4 01  Compensation  In consideration for services to be provided by SHM pursuant to this agreement as described in **Exhibit "A"** and as reasonably contemplated thereby, BCHF shall compensate SHM the sum of twenty-five dollars ($25.00) per visit processed in any given month, less returned claims for incompleteness, for participating patient visits to any contracted or sub-contracted doctors pursuant to any active Medical Services Agreement

For purposes of this section, a "patient visit" shall be a visit for which (i) SHM provides BCHF with a complete and clean claim, including all pertinent treatment and demographic information; and (ii) for which BCHF receives payment from the appropriate payor for the participating patient visit.

4.02  Billing  SHM shall bill BCHF monthly for its services and remit to BCHF a statement by the 10th of each month for visits processed for the preceding month less any returned visits as a credit against the total Payment of all monies due SHM for its fees shall be paid on or before the 20th calendar day of each month.

4 03  Review.  SHM, upon two (2) days written notice to BCHF, shall have the right to review, copy and audit if desired the billing and payment records relating to medical services under all Medical Services Agreements. This right to review, copy and audit if desired shall include access to all electronic and paper copies of (i) all bills generated related to medical services under any Medical Services Agreement; (ii) all payments or funds received relating to medical services under any Medical Services Agreement including but not limited to any payments or funds received from patients or doctors.

4 04  No Referral  It is specifically agreed and understood between the parties that nothing in this Agreement is intended to provide payment or benefit of any kind (directly or indirectly), for the referral of patients to BCHF but compensation hereunder is for the Management Services provided hereunder

## 5 TERM AND TERMINATION

5 01  The term of this Agreement shall be for a period of five (5) years, commencing on the Effective Date This Agreement shall automatically renew for succeeding terms of five (5) year terms unless either Party, at least one hundred eighty (180) days prior to the expiration of any term, gives written notice of its intention not to renew said Agreement.

5.02  This Agreement may be terminated by either Party upon thirty (30) days prior written notice for any of the following reasons:

a.  Institution by a Party of proceedings of any nature under any laws of the United States or of any state, whether now existing or subsequently enacted or amended, for the relief of debtors wherein such Party is seeking relief as a debtor,

b.  A general assignment by a Party for the benefit of creditors;

c  The institution by a Party, in the capacity of a debtor, of a proceeding in which such Party seeks relief from its indebtedness under any section or chapter of the Federal Bankruptcy Act as now existing or hereafter amended or becoming effective,

d  The institution against a Party, by one or more of its creditors, of a proceeding under any section or chapter of the Federal Bankruptcy Act as now existing or hereafter amended or becoming effective, which proceeding is not dismissed, stayed or discharged within a period of sixty (60) days after the filing thereof or if stayed, which stay is thereafter lifted without a contemporaneous discharge or dismissal of such proceeding;

e. A proposed plan of arrangement or other action by a Party's creditors taken as a result of a general meeting of the creditors of such Party;

f. The appointment of a receiver, trustee or like officer, to take possession of a Party's assets, which receivership remains undischarged for a period of thirty (30) days from the date of its imposition;

g. The material breach of this Agreement by either Party, provided that such breach continues uncured for a period of thirty (30) days after written notice thereof has been given by one of the Parties to the other;

h. The issuance of a final order of any governmental agency or court which has competent jurisdiction over Parties hereto which order requires the termination of this Agreement

5.03   Notwithstanding the foregoing, BCHF shall be entitled to terminate this Agreement immediately, with or without notice, upon determination by the Health Resources and Services Administration ("**HRSA**") or any other federal or state agency with regulatory or advisory authority over BCHF that this Agreement violates any rule or program requirement pertaining to a FQHC provided the Agreement cannot be modified to correct the violation.

6. **ASSIGNMENT**

6 01   Neither SHM nor BCHF may assign its rights or obligations under this agreement without the prior written consent of the other party

7   **INDEPENDENT CONTRACTOR**

7.01   The relationship between SHM and BCHF is that of independent contractors. Neither SHM nor BCHF is a member, partner, agent, representative, employee, employer, or joint venturer of the other. Each Party expressly denies any obligation to compensate the other's employees, contractors, or agents As independent contractors, each Party shall be liable for that Party's own debt, obligations, acts and omissions. SHM is responsible for the payment of all withholding, social security and other taxes and benefits for SHM and SHM's agents or employees. SHM is responsible for filing all necessary tax returns on SHM's own behalf SHM, its agents, employees and independent contractors shall not be eligible for any employee benefit plan offered by BCHF. BCHF is responsible for the payment of all withholding, social security and other taxes and benefits for BCHF and BCHF's agents or employees. BCHF is responsible for filing all necessary tax returns on BCHF's own behalf. BCHF, its agents, employees and independent contractors shall not be eligible for any employee benefit plan offered by SHM

8. **INDEMNITY**

8.01   SHM shall defend, indemnify and hold BCHF, its officers, employees and agents harmless from and against any and all liability, loss, expense (including reasonable attorney's fees) or claims for injury or damages arising out of the performance of this Agreement To the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent or intentional acts or omissions of BCHF, its officers, agents, or employees, said indemnification attributable to SHM may be reduced proportionally, provided the negligent or intentional acts or omissions of BCHF, its officers, agents or employees rises to the level of a clear and convincing standard.

9   **INSURANCE**

9 01   Each Party, at its sole cost and expense, will obtain and maintain in full force and effect during the term of this Agreement, and all renewals and extensions thereof, comprehensive general liability insurance covering the Party, its employees, agents, servants, and independent contractors, against loss in the nature of fire, theft, business interruption, general liability, and negligence, with a minimum liability limit of Two Million Dollars



EXHIBIT D
PAGE 175

($2,000,000) per occurrence and Two Million Dollars ($2,000,000) in the annual aggregate Each Party shall provide the other Party with written notice at least thirty (30) days prior to any cancellation or amendment of the Party's policy.

9.02  Each Party shall, at its sole cost and expense, obtain and maintain in full force and effect during the term of this Agreement, and all renewals and extensions thereof, workers' compensation insurance as required by the laws of the State of California

## 10  CONFIDENTIALITY AND INTELLECTUAL PROPERTY

10.01  The Parties acknowledge that during the term of this Agreement, the Parties will acquire or have access to information regarding the business operations of the other Party including, but not limited to, information regarding pricing, billing, claims, compensation, patient lists, provider lists, business operations, provider agreements, trade secrets and business and technical manuals (**"Confidential Information"**). The Parties acknowledge that the non-violating Party would suffer financial harm if such Confidential Information were to be disclosed to third Parties  As a condition of this Agreement, the Parties agree not to disclose to, or otherwise discuss such Confidential Information with any third party without the express written consent of the other Party or as expressly required by law  The provisions of this Section shall survive the termination of this Agreement.

10.02  The Parties acknowledges that each Party, in connection with its business, has developed certain operating manuals, symbols, trademarks, trade names, service marks, designs, patient lists, procedures, processes, and other copyrighted, patented, trademarked, or legally protectable information which is confidential and proprietary to the Party that constitute its trade secrets. The Parties shall not use any name, symbol, mark, or other proprietary information of the other Party except as expressly permitted.

10.03  SHM and its employees, agents and independent contractors shall safeguard the confidentiality of all medical information pertaining to patients of BCHF and shall comply with all federal and state laws and regulations and all BCHF rules or policies with respect to the use and disclosure of such information, including but not limited to the provisions of the Business Associate Agreement as set forth in **Exhibit "B"** of this Agreement, attached hereto and made a part hereof

10.04  During the course of this Agreement SHM as part of its business may collect, correlate, extract and compile data including but not limited to statistical data that does not constitute "Protected Health Information". SHM shall retain ownership of all such data and may use same as SHM determines in its sole business judgment.

10.05  SHM has and will develop software and other inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets (collectively "**Intellectual Property**") in its performance of its duties under this Agreement. Said Intellectual Property is and shall remain owned by SHM or one of its affiliated companies  No such Intellectual Property, whether or not patentable or registrable under copyright or similar laws shall be deemed "works made for hire," as that term is defined in the United States Copyright Act and BCHF shall not acquire nor claim any interest in any such Intellectual Property

## 11  MISCELLANEOUS

11.01  This Agreement shall be governed by and construed in accordance with the laws of the State of California  Any actions, arbitration or proceedings instituted by either Party with respect to any matters arising under or growing out of this Agreement shall be brought and tried only in the courts located in the San Diego County, and each of the Parties hereto expressly waives its rights under any applicable statute to cause any such action or proceeding to be brought or tried elsewhere

11 02  This Agreement supersedes any and all other agreements either oral or written or implied between the Parties  Each party acknowledges that no representation, inducements, policies or agreements have been made



by any party or anyone acting on behalf of any party which is not embodied herein and that no other agreements, statement or promise not contained in this contract shall be valid or binding on either party except as provided herein

    11.03    Time is expressly of essence with respect to this Agreement.

    11.04    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement shall not be effective until the execution and delivery between each of the parties of at least one set of counterparts  The parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original  Any one of such completely executed counterparts shall be sufficient proof of this Agreement.

    11.05    No amendment or modification of the terms or conditions of this Agreement shall be valid unless in writing and signed by the parties hereto.

    11.06    If any term or provision of this Agreement is determined to be illegal, unenforceable, or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Agreement and such provision shall not affect the legality, enforceability, or validity of the remainder of this Agreement.  If any provision or part thereof of this Agreement is stricken in accordance with the provisions of this section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

    11.07    The terms of this Agreement have been negotiated by the parties hereto and the language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent  This Agreement shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted, or in favor of the party receiving a particular benefit under the Agreement.  No rule of strict construction will be applied against any person

    11.08    The recitals set forth at the beginning of this Agreement of any matters or facts shall be conclusive proof of the truthfulness thereof and the terms and conditions set forth in the recitals, if any, shall be deemed a part of the Agreement

    11 09    Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement.

    11.10    Any titles, captions or paragraphs contained in this Agreement are for convenience only and shall not be deemed part of the contents of this Agreement, and shall in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

    11.11    The terms and conditions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, and legal representatives, except that no Party may assign or transfer its rights or obligations under this Agreement in any manner other than as provided in this Agreement.

    11.12    The rights and obligations of each Party to this Agreement shall inure solely to the benefit of the Parties hereto, and no persons or entity, including a doctor under a Medical Services Agreement, shall be a third party beneficiary of this Agreement.

    11.13    A waiver of any of the terms and conditions hereof shall not be construed as a waiver of any other terms and conditions hereof.

    11.14    Any notice required or permitted by this Agreement shall be given in writing sent by overnight delivery, personal delivery or United States registered or certified mail, return receipt requested, all of which shall be properly addressed, with postage or delivery charges prepaid as follows·



EXHIBIT D
PAGE 177

|  |  |
|---|---|
| If to BCHF: | Borrego Community Health Foundation<br>P O Box 2369<br>Borrego Springs, CA  920004<br>Attn: Bruce Hebets<br>Fax:  (760) 767-5051<br>Email: bhebets@borregomedical.org |
| Copy of notices to: | Borrego Community Health Foundation<br>P.O. Box 2369<br>Borrego Springs, CA  920004<br>Attn: Mikia Wallis, Chief Legal Officer<br>Fax  (760) 767-6722<br>Email. mwallis@borregomedical org |
| If to SHM | Summit Healthcare Management, Inc.<br>124 Main Street, Suite 240<br>El Cajon, Ca 92020<br>Fax: (619) 444-8597<br>Attn   Daryl R Priest<br>Email: darly@priesthomes.com |
| Copy of notices to | Fitch Law Firm, APC<br>Stephen J Fitch, Esq<br>3465 Camino Del Rio South, Ste. 250<br>San Diego, CA 92108<br>Telephone No. (619) 282-8100<br>Email steve@fitchlawfirm.com |

11.15. In the event of default by a party in payment of any items owing to the other party, the defaulting party shall pay interest at the rate of two (2) points over the published prime rate of Bank of America or the maximum rate permitted by law, whichever is less, on each such obligation from the day it is due until received by non-defaulting party

11 16   ALTERNATIVE DISPUTE RESOLUTION.

11.16.1  Claims Subject to Judicial Reference, Selection of Referee   All Claims (defined below), including any and all questions of law or fact relating thereto, shall, at the written request of any party, be determined by Reference ("**Reference**") pursuant to Section 638 et. seq. of the California Code of Civil Procedure, as the same may be amended from time to time, except as set forth herein.

11.16.2  Referee.  The parties, by mutual written agreement, shall select a single neutral referee, who shall be a retired state or federal court judge or justice with substantial experience in the relevant matters to be determined   In the event that the parties cannot agree upon a referee within ten (10) days of a written request to do so by any party, then either party may file a lawsuit in the county in which the Property is located for purposes of appointment of a referee under California Code of Civil Procedure sections 638 and 640, as the same may be amended by any successor statutes thereto   A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted.  The parties shall equally bear the fees and expenses of the referee unless the referee otherwise provides in the statement of decision

11 16.3   Time is of the Essence.  The parties agree that time is of the essence in conducting the Reference proceedings   Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (a) set the matter for a status and trial-setting conference within fifteen (15) days



after the date of selection of the referee, (b) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of said conference, and (c) report a statement of decision within twenty (20) days after the matter has been submitted for decision

    11 16 4  Conduct of Reference  Except as provided in this Agreement, the Reference shall be conducted pursuant to Applicable State Law (defined below)  The referee shall determine all issues relating to the applicability, interpretation, legality and enforceability of this Agreement.  Except as expressly set forth in this Agreement, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding.  All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript  The party making such a request shall have the obligation to arrange for and pay the court reporter  Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial  The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication.  The referee shall issue a decision pursuant to Section 644 of the California Code of Civil Procedure, as the same may be amended from time to time.  The referee's decision shall be entered by the court as a judgment or an order in the same manner as if the action had been tried by the court  The final judgment or order from any appealable decision or order entered by the referee shall be fully appealable as provided by law.  The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a Reference proceeding under this provision.

    11.16.5  Severability.  In the event that any provision of this Section 8 16 is found to be illegal or unenforceable, the remainder of this Agreement shall remain in full force and effect.  In the event that the enabling legislation which provides for the appointment of a referee is repealed and no successor statute is enacted, any dispute between the parties that otherwise would be determined by Reference shall be resolved and determined by binding arbitration in accordance with the California Arbitration Act, Sections 1280 through 1294 2 of the California Code of Civil Procedure, as the same may be amended from time to time  The provisions of this Agreement with respect to a Reference proceeding shall apply to any such arbitrator, who shall have the same qualifications as the referee and who shall be selected in the same manner as the referee stated herein.

    11 16 6  Miscellaneous.  In the event that multiple Claims are asserted, some of which are found not subject to this Agreement, the parties agree to stay the proceedings of the Claims not subject to this Agreement until all other Claims are resolved in accordance with this Agreement  In the event that Claims are asserted against multiple parties, some of whom are not subject to this Agreement, the parties agree to sever the Claims subject to this Agreement and resolve them in accordance with this Agreement

    11.16.7  Definitions.  As used in this Section 11.16 only.

"Applicable State Law" shall mean the laws of the State of California.

"Claim" shall mean any claim, cause of action, action, dispute or controversy between or among the parties, whether sounding in contract, tort or otherwise, which arises out of or relates to. (i) this Agreement or any document related to this Agreement, (ii) any negotiations or communications relating to any of this Agreement, whether or not incorporated into this Agreement or any indebtedness evidenced thereby; or (iii) any alleged agreements, promises, representations or transactions in connection therewith.  "Claim" shall exclude any claim, cause of action, dispute or controversy between or among the parties (a) any matter which is within the jurisdiction of a probate or small claims court, or (b) an action for bodily injury or wrongful death  The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction or other



provisional remedies, shall not constitute a waiver of the right to have all Claims determined by Reference under this provision

IN WITNESS WHEREOF, the undersigned have executed this Management Services Agreement effective as of the date first written above

**SHM:**

Summit Healthcare Management, Inc.
a California corporation

By: *[signature]*
Daryl R. Priest, President

**BCHF:**

Borrego Community Health Foundation
a California non-profit public benefit corporation

By: *[signature]*
Name: BRUCE HEBETS
Its: CEO

# EXHIBIT A
## SHM'S SCOPE OF SERVICES

The purpose of this list of services is to identify and delineate services to be provided by SHM in furtherance of its duties under this agreement with BCHF. SHM shall provide any and all necessary staff, office space, information systems, and support services set forth below and all services reasonably contemplated as necessary to perform any such services.

I. CONTRACT DOCTOR MANAGEMENT
   a. PROVIDER CONTRACTING
      i. Market and negotiate new Medical Services Agreements between BCHF and new contract doctors and clinics throughout the service area in which BCHF operates FQHCs. Currently, BCHF operates FQHCs in San Diego County
      ii. Amend current Medical Service Agreements at the direction of BCHF
      iii. Maintain files containing current and historical Medical Service Agreements.
      iv. Track renewal dates of Medical Service Agreements.

   b. PROVIDER RELATIONS
      i. Maintain database of contract doctors and service providers and contract doctor service provider demographics.
      ii. Monitor contract doctor service providers' ability to speak additional languages
      iii. Provide contract doctor service provider roster to contain Contract Provider and/or Sub-Contractor Provider Name, Office Name, Office Address, Tax Reporting Name, Tax Reporting Address, TIN, W-9 Effective Date, Contract Date and shall be provided within 48 hour request of BCHF staff as necessary
      iv. Assist with development and updates of contract doctor service provider manuals
      v. Produce and distribute contract doctor service provider manuals
      vi. Provide ongoing communication, education, and training to contract doctor service provider and their staffs regarding BCHF policies and procedures
      vii. Provide ongoing communication, education, and training to contract doctor service provider and their staff regarding any changes in scope of services and fee schedules.
      viii. Provide telephone line for contract doctor service provider inquiries
      ix. Answer contract doctor service provider eligibility inquiries
      x. Answer contract doctor service provider claims inquiries
      xi. Create and distribute administrative forms

II. CLAIM MANAGEMENT

   a. SHM shall obtain from contracted doctors such information relating to claims and submit the same to BCHF in a format that enables BCHF to bill for such claims As part of this service and based on a receipt of information from BCHF, SHM shall monitor claims, billing and payment to doctors.

   b. SHM will track visit, to receipt of superbill claim, to validation of eligibility and completeness of visit, to transfer to BCHF Billing Department for submission to Third Party Payor, to validation of invoice creation and payment with notation of check date and check number associated to each visit processed, with the ability to cross reference and provide documentation and reporting to provide proof of payment for each visit and that each visit is invoiced and paid only once, and potentially that each visit has been processed and paid by third party payor.

III. MANAGEMENT INFORMATION SYSTEM

   a. Provide a computerized management information system to process and store data pertaining to demographics of and services provided to Participating Patients;



    b. Provide appropriate data security and, among other necessary functions:
  i. Restrict access to data security in compliance with applicable federal and state laws and regulations
  ii. Restrict access to data of participating patients
  iii. Restrict access to data by user and security classification
  iv. Compliance with HIPAA and any other regulations concerning participating patient data
  v. Provide physical security at all buildings that house data

    c. Provide BCHF-maintained Web-based access to data for BCHF staff as determined appropriate, such as Billing and Finance staff, and contract medical providers and their staff for its hardware, Internet connectivity and web-browsing for the following, but not limited functions:
  i. Claims inquiries, including payment status
  ii. Claims submission
  iii. Eligibility inquiries
  iv. Authorization inquiries
  v. Authorization submission

    d. Help Desk and Support
  i. Provide, maintain and support issues related to data access
  ii. Maintain all servers and network connections for SHM systems
  iii. Provide and maintain all desktop systems/hardware at SHM operations center(s)
  iv. Provide and maintain all software (including licensing and troubleshooting) at SHM operations center(s)
  v. Provide training and support to BCHF staff and contract medical service users and their staff remotely
  vi. Provide and maintain phone system for calls directed to SHM operations center(s)

    e. Remote System Access
  i. Provide remote access to management information system
  ii. Support remote access connectivity

IV. PARTICIPATING PATIENT MANAGEMENT

    a. ELIGIBILITY VERIFICATION
  i. Reconcile eligibility data to load into management information system
  ii. Maintain participating patient eligibility database
  iii. Identify each participating patient by using established identification number
  iv. Assist with determination of participating patient eligibility for services prior to provision of services
  v. Maintain and track eligibility of services for each participating patient

    b. PARTICIPATING PATIENT SERVICES
  i. Provide telephone line for participating patient inquiries
  ii. Answer participating patient eligibility inquiries
  iii. Answer participating patient claims inquiries
  iv. Generate telephone tracking reports.

V. GENERAL ADMINISTRATION

    a. Monitor all components of BCHF's Contract Medical Program
    b. Coordinate printing of all forms and letterhead (as needed) on BCHF stationery
    c. Process participating patient and contract medical service provider-related mail, both incoming and outgoing
    d. Short and long-range financial and strategic planning in conjunction with BCHF staff and departments to include Finance department.



      e   Contract medical service provider and regulatory agency/agencies relationship management

VI.    CREDENTIALING

SHM shall assist BCHF in the collection, organization, and tracking of documents necessary for verifying credentials of health care practitioners and definition of their privileges as required for increased patient safety, reduction of medical errors and the provision of high quality health care services. Services shall be performed to the standards set forth in BPHC Policy Information Notice 2001-16.



# EXHIBIT B

## BUSINESS ASSOCIATE AGREEMENT

In order to comply with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") and the regulations promulgated there under by the U S Department of Health and Human Services ("HIPAA Regulations"), including, but not limited to 45 CFR Parts 160 and 164 relating to the privacy and security of Protected Health Information, and notwithstanding any contrary provisions of the underlying agreement, the Parties agree to the following:

A.  DEFINITIONS

"**Designated Record Set**" shall mean a group of records maintained by or for BCHF that is (i) the medical records and billing records about individuals maintained by or for BCHF, (ii) the enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or (iii) used, in whole or in part, by or for BCHF to make decisions about individuals. As used herein the term "Record" means any item, collection, or grouping of information that includes Protected Health Information and is maintained, collected, used, or disseminated by or for BCHF.

"**Electronic Transaction Rule**" shall mean the standards for processing standard transactions and code sets at 45 C.F.R. Parts 160 and 162.

"**Privacy Standards**" shall mean the Standard for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164.

"**Protected Health Information**" shall mean any information, whether oral or recorded in any form or medium: (i) that relates to the past, present, or future physical or mental condition of an individual, the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual, and (ii) that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual, and shall have the meaning given to such term under Health Insurance Portability and Accountability Act of 1996, ("HIPAA") and the regulations promulgated there under by the U S Department of Health and Human Services ("HIPAA Regulations"), including, but not limited to 45 CFR Parts 160 and 164

"**Secretary**" shall mean the Secretary of the Department of Health and Human Services.

"**Security Rule**" shall mean the security standards for the protection of electronic Protected Health Information at 45 C F R Parts 160 and 164.

B.  OBLIGATIONS OF SHM

1.  Use of Protected Health Information  SHM shall not use Protected Health Information received from BCHF in any manner that would constitute a violation of the Privacy Standards if used by BCHF, except that SHM may use Protected Health Information (i) as permitted or required pursuant to the Agreement between BCHF and SHM, (ii) for SHM's proper management and administrative services, (iii) to carry out the legal responsibilities of SHM, or (iv) as required by law. As between SHM and BCHF, BCHF is the owner of all Protected Health Information

2.  Disclosure of Protected Health Information. SHM shall not disclose Protected Health Information received from BCHF that would constitute a violation of the Privacy Standards if disclosed by BCHF, except that SHM may disclose Protected Health Information (i) in a manner permitted pursuant to this Agreement, (ii) for SHM's proper management and administrative services, or (iii) as required by law. To the extent SHM discloses Protected Health Information to a third party as permitted in accordance with this Agreement, SHM must obtain, prior to making any such disclosure, (a) reasonable assurances from such third party that such Protected Health Information will be held confidential as provided pursuant to this Agreement and only used or disclosed as required by law or for the lawful purposes for which it was disclosed to such third party, and (b) an agreement from such



third party to immediately notify SHM of any breaches of the confidentiality of the Protected Health Information, to the extent it has obtained knowledge of such breach Notwithstanding the foregoing, SHM shall refer all requests for Protected Health Information pursuant to subpoena or any other discovery request or judicial or administrative order mandating disclosure to BCHF within two (2) business days of receipt. It shall be BCHF's responsibility to make all determinations regarding compliance with any such mandated disclosure.

3. <u>Accounting of Disclosures</u>. SHM agrees to document disclosures of Protected Health Information and information related to such disclosures as would be required for BCHF to respond to a request by an individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164 528

4. <u>Safeguards Against Misuse of Information</u> SHM agrees that it will implement appropriate safeguards to prevent the use or disclosure of Protected Health Information other than pursuant to the terms and conditions of this Agreement. SHM further agrees to implement administrative, physical and technical safeguards consistent with the requirements of the Security Rule that reasonably and appropriately protect the confidentiality, integrity and availability of electronic Protected Health Information that it creates, receives, maintains or transmits on behalf of BCHF.

5 <u>Reporting of Disclosures of Protected Health Information</u>. SHM shall within five (5) days of becoming aware of a disclosure of Protected Health Information in violation of this Agreement by SHM, its officers, directors, employees, contractors, or agents or by a third party to which SHM disclosed Protected Health Information pursuant to Section 2 of this Exhibit, report any such disclosure to BCHF. SHM further agrees to report to BCHF any security incident of which it becomes aware as required by the Security Rule.

6 <u>Mitigation</u>. SHM agrees to mitigate, to the extent practicable, any harmful effect that is known to SHM of a use or disclosure of Protected Health Information by SHM in violation of the requirements of this Agreement

7 <u>Agreements by Third Parties</u>. SHM shall enter into an agreement with any agent or subcontractor that will have access to Protected Health Information that is received from, or created or received by SHM on behalf of BCHF pursuant to which such agent or subcontractor agrees to be bound by the same restrictions, terms and conditions that apply to SHM pursuant to this Agreement with respect to such Protected Health Information.

8. <u>Access to Information</u>. Within five (5) days of a request by BCHF for access to Protected Health Information about an individual contained in a Designated Record Set, SHM shall make available to BCHF such Protected Health Information for so long as such information is maintained in the Designated Record Set In the event any individual requests access to Protected Health Information directly from SHM, SHM shall within two (2) business days forward such request to BCHF. It shall be BCHF's responsibility to make all determinations regarding granting or denying any such access requested

9. <u>Availability of Protected Health Information for Amendment</u> Within ten (10) days of receipt of a request from BCHF for the amendment of an individual's Protected Health Information or a record regarding an individual contained in a Designated Record Set (for so long as the Protected Health Information is maintained in the Designated Record Set), SHM shall provide such information to BCHF for amendment and incorporate any such amendments in the Protected Health Information as required by 45 C.F.R. § 164.526. In the event the request for an amendment is delivered directly to SHM, SHM shall within two (2) business days forward such request to BCHF. It shall be BCHF's responsibility to make any determinations regarding granting or denying any such amendment requested.

10 <u>Requests for Accounting of Disclosures</u>. Within ten (10) days of notice by BCHF to SHM that it has received a request for an accounting of disclosures of Protected Health Information regarding an individual during the six (6) years prior to the date on which the accounting was requested, SHM shall make available to BCHF such information as is in SHM's possession and is required for BCHF to make the accounting required by 45 C.F.R. § 164 528 At a minimum, SHM shall provide BCHF with the following information: (i) the date of the disclosure, (ii) the name of the entity or person who received the Protected Health Information, and if known, the address of such entity or person, (iii) a brief description of the Protected Health Information disclosed, and (iv) a brief statement of the purpose of such disclosure which includes an explanation of the basis for such disclosure In the



event the request for an accounting is delivered directly to SHM, SHM shall within two (2) business days forward such request to BCHF  It shall be BCHF's responsibility to prepare and deliver any such accounting requested by an individual, subject to SHM's obligations set forth in this Section. SHM hereby agrees to implement an appropriate recordkeeping process to enable it to comply with the requirements of this Section.

11  Electronic Transactions. If SHM conducts any Standard Transaction for or on behalf of BCHF, SHM shall comply with the requirements under the Electronic Transaction Rule

12  Availability of Books and Records. SHM hereby agrees to make its internal practices, books and records, including policies and procedures, relating to the use and disclosure of Protected Health Information received from, or created or received by SHM on behalf of BCHF available to BCHF or to the Secretary for purposes of the Secretary determining the BCHF's and SHM's compliance with the Privacy Standards

C.  TERMINATION OF AGREEMENT WITH SHM

1.  Termination Upon Breach of Provision to Protected Health Information  Any other provision of this Agreement notwithstanding, this Agreement may be terminated by BCHF upon thirty (30) days written notice to SHM in the event that SHM breaches any provision contained in this Agreement and such breach is not cured within such thirty (30) day period; provided, however, that in the event that termination of this Agreement is not feasible in BCHF's sole discretion, SHM hereby acknowledges that BCHF shall have the right to report the breach to the Secretary  In addition, BCHF retains the right to seek injunction and other legal and equitable rights and remedies available under the law as necessary to prevent unauthorized use and disclosure of Protected Health Information.

2  Return or Destruction of Protected Health Information upon Termination. Upon termination of the Agreement, SHM shall either return or destroy all Protected Health Information received from BCHF or created or received by SHM on behalf of BCHF and which SHM or any subcontractor still maintains in any form  SHM shall notify BCHF of any such destruction. SHM shall not retain any copies of such Protected Health Information  In the event that BCHF and SHM mutually agree that it is not feasible to return or destroy such Protected Health Information, the terms and provisions of Article B shall survive termination of this Agreement and such Protected Health Information shall be used and disclosed solely for such purpose or purposes, which prevented the return or destruction of such Protected Health Information



# EXHIBIT C
## TEMPLATE OF MEDICAL SERVICES AGREEMENT