# EXHIBIT G

AGREEMENT BETWEEN
HAWATMEH DENTAL GROUP P.C.
AND
BORREGO COMMUNITY HEALTH FOUNDATION
FOR
DENTAL SERVICES

**THIS DENTAL SERVICES AGREEMENT** ("Agreement") is entered into as of October _____, 2017 between Borrego Community Health Foundation ("BCHF") and Hawatmeh Dental Group P.C. ("Dentist"), collectively the "Parties".

## RECITALS

**WHEREAS**, BCHF is a 501 (c) (3) non-profit public benefit corporation, organized under the laws of the State of California and is licensed to operate Federally Qualified Community Health Centers (FQHC). BCHF operates clinics throughout San Diego, San Bernardino, and Riverside Counties. The clinics provide comprehensive primary and specialty care according to the scope of services as approved by the Bureau of Primary Health Care ("BPHC") within the United States Department of Health and Human Services ("DHHS"). The approved scope includes performance of primary dental services; and

**WHEREAS, "BCHF"** desires to increase access to dental services for pediatric, adolescent and adult patients of the FQHC by entering into agreements with qualified Dentists to provide primary dental services for the FQHC.

**WHEREAS,** "Dentist" is duly licensed to provide dental services within the State of California and meets credentials required by "BCHF" to perform such services, and is not the subject of any Medicaid/Medicare related actions, suspensions, exclusions or debarments that would disqualify him or her from providing services under this Agreement. The "Dentist" provides the desired scope of services that meet the FQHC criteria; and

**WHEREAS**, "Dentist" operates and administers a private practice in the Corona, Ontario and Rancho Cucamonga area of California within "BCHF's" service area and agrees to provide primary dental services to patients on behalf of "BCHF" by entering into agreement to deliver such services in a professional manner to "BCHF" patients. (Refer to Addendum "C" for dental office address and contact information.)

## AGREEMENT

**NOW, THEREFORE**, in consideration of the covenants and agreements herein contained, and other good and valuable consideration, the "Parties" hereto mutually agree as follows:

I.   **DEFINITIONS**

   A.   **PARTICIPATING PATIENTS.** A "Participating Patient" who is eligible to receive dental services under this Agreement is defined as any individual residing in FQHC's federally-approved service area and who is a patient of the FQHC operated by "BCHF".

   B.   **SCOPE OF SERVICES.** Those services approved by the Health Resource and Service Administration (HRSA) as Required and Additional Services that are

authorized to be rendered by BCHF to residents of the specified service area.

II.   **ACKNOWLEDGEMENT**
The "Dentist" agrees to be bound by the terms and conditions of this Agreement insofar as said Agreement relates to rights, responsibilities and duties as "Dentist". This Agreement constitutes the entire understanding between the parties hereto and no changes, amendments or alterations shall be effective unless agreed to in writing by both parties and appended to this Agreement.

III.   **INDEPENDENT RELATIONSHIP**
None of the provisions of this Agreement are intended to create nor shall be deemed or construed to create any relationship between "BCHF" and "Dentist" other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement. Neither of the parties hereto nor any of their respective employees shall be construed to be the agent, employee or representative of the other. This Agreement is entered into at an arm's length negotiated rate reflective of the fair market value.

IV.   **PROFESSIONAL SERVICES**

A.   **COVERED SERVICES.** Dentist agrees to provide primary care dental services described in Addendum "A" and Addendum "D" as "Covered Services", as required, to Participating Patients, in accordance with the attached "Payment Schedule" and as further described in Section VIII. "BCHF" is responsible for contacting "Dentist" to make initial appointments for Participating Patients. Notwithstanding, "BCHF" is under no obligation to utilize "Dentist" to provide dental services to any or all Participating Patients who require such services.

B.   **SERVICE AVAILABILITY.** "Dentist" shall provide primary dental services during hours of operations that are mutually agreed upon and outlined in "Addendum "C". Any changes require prior notification to the "BCHF" Dental Director. "Dentist" will maintain adequate facilities within the Service Area to meet the responsibilities of this Agreement. Such facilities must meet standards of practice expected of a licensed facility. Adequate trained, certified or licensed personnel will be provided quality standard of care and not place the health and well being of the patients in jeopardy. "Dentist" will provide a plan of after hour access for phone consultation and triage for dental emergencies of established patients.

C.   **DOCUMENTATION AND DESCRIPTION OF SERVICES.** "Dentist" agrees to establish and maintain dental records that will contain descriptions of any dental services provided to Participating Patients, as well as proposed follow-up treatment plans for subsequent visits (if any). The descriptions of the services will be made using American Dental Association CDT Standard Claims Codes. In the event that such records are housed in a location other than the dental office, "BCHF" shall have reasonable and timely access to such records. "Dentist" agrees to retain such records for a period of at least seven years or to the extent required by applicable laws or regulations.

D.   **PRIOR AUTHORIZATION.** For dental services needing individual consideration or prior approval the "Dentist" must provide such documentation necessary prior

to rendering such service.  In addition to standard requirements of prior approval outlined by the Denti-Cal program or other third party payors, an additional list of services requiring prior approval may be provided by "BCHF".  As a satellite of an FQHC, Treatment Authorization Requests (TAR) must be fully documented in the dental record, but do not require submission to Denti-Cal for prior approval. This does not apply to treatment paid directly by Denti-Cal

E.   **AGREEMENT NOT TO CHARGE PATIENTS.** The "Parties" agree that all Participating Patients receiving services from "Dentist" pursuant to this Agreement shall be considered patients of "BCHF". Accordingly, "BCHF" shall be responsible for the billing of such patient services, as applicable, as well as the billing of Federal, State and private payors, and the collection and retention of any and all payments. "Dentist" agrees not to bill, charge or collect from Participating Patients or payors any amount for any dental services provided under this Agreement.  If "Dentist" should receive any payment from Participating Patients or payors for services provided hereunder, "Dentist" agrees to remit such payment to FQHC within ten (10) days of receipt.

F.   **SLIDING FEE**.  Notwithstanding the aforementioned, "Dentist" recognizes that certain Participating Patients may be charged at the time of service, in accordance with a fee schedule and, as applicable, schedule of sliding fee discounts established by "BCHF" pursuant to 42 C.F.R.§51c.303(f).   "Dentist" shall, on behalf of "BCHF" and consistent with "BCHF 's" guidelines, schedules and procedures, make every reasonable effort to collect fees from eligible Participating Patients at the time services are provided to such patients and to remit such payments to "BCHF" within ten (10) days of receipt. "BCHF" shall perform the follow-up activities necessary to collect patient fees not collected by "Dentist" at the time of service.

G.   **NON-DISCRIMINATION.**  "Dentist" agrees to provide dental services to Participating Patients in the same professional manner and pursuant to the same professional standards as generally provided by "Dentist" to his or her patients, regardless of an individual's or family's ability to pay for services rendered. This section shall not be read to prevent "Dentist" from limiting the number of hours and/or days during which "Dentist" agrees to see Participating Patients, provided that such limitation shall not be based on a Participating Patient's payor source or insurance status. Dentist also agrees not to differentiate or discriminate in the provision of services provided to Participating Patients on the basis of race, color, religious creed, age, marital status, national origin, alienage, sex, blindness, mental or physical disability or sexual orientation pursuant to Title 45 of the Code of Federal Regulations, §§ 80.3-80.4, and Civil Rights Act of 2007.

V.   **QUALITY OVERSIGHT AND EVALUATION OF SERVICES BY FQHC**

A.   **QUALITY OF CARE**.  "Dentist" shall provide care consistent with prevailing community standards for quality of care and in accordance with "BCHF" Section 330 grant and applicable grant-related expectations and requirements.   Services shall be within the scope of practice outlined in Addendum B for primary care dental services. The "Dentist" will be subject to standards of quality review as though the care was provided by an employed dentist or the organization.   Such review will include facility and record review in keeping with "BCHF" standards and applicable regulations. "BCHF" will communicate in writing any corrective action that must be resolved in a

timely manner.

B. **POLICIES AND PROCEDURES.**  The "Dentist" will be subject to clinical policies and procedures established by "BCHF" regarding the provision of services pursuant to this agreement including but not limited to qualifications and credentials, clinical guidelines, standards of conduct, quality assurance standards, productivity standards, patient and provider grievance and complaint procedures.  Such policies and procedures are consistent with "BCHF's" requirements established by the Bureau of Primary Health Care (BPHC). "BCHF" will provide "Dentist with such requirements, policies, procedures and standards.  Notwithstanding, nothing herein is intended to interfere with "Dentist's" professional judgment in connection with the provision of clinical services.

C. **PATIENT RELATIONSHIP.** "Dentist" shall maintain a dentist/patient relationship with Participating Patients and shall be solely responsible for dental treatment and advice. Notwithstanding, nothing herein is intended to interfere with "Dentist's" professional judgment in connection with the provision of such services.

D. **AUTHORITY.**  "BCHF", through its Executive Director and/or Dental Director or Medical Director, shall have and exercise ultimate authority and responsibility for the services provided to Participating Patients pursuant to this Agreement, consistent with the policies, procedures and standards set forth above.  In particular,  "BCHF" shall retain ultimate authority over the following:

1. Determination as to whether "Dentist" meets "BCHF's" qualifications and credentials, consistent with BCHF standards.

2. Interpretation of "BCHF's" policies and procedures, clinical guidelines, quality assurance standards, productivity standards, standards of conduct and provider and patient grievance and complaint resolution procedures, and their applicability to "Dentist".

3. Determination with respect to whether "Dentist" is performing satisfactorily and consistent with "BCHF's" policies, procedures and standards.

4. The Executive Director and/or Medical Director have the authority to terminate this agreement in accordance with Section XIV below.

E. **NOTIFICATION.**  "Dentist" shall, as soon as reasonably practicable, notify "BCHF" of any action, event, claim, proceeding, or investigation (including, but not limited to, any report made to the National Practitioner Data Bank) that could result in the revocation, termination, suspension, limitation or restriction of "Dentist's" licensure, certification, or qualification to provide such services.   "BCHF" may suspend this Agreement, until such time as a final determination has been made with respect to the applicable action, event, claim, proceeding, or investigation.

VI. **NO OBLIGATION TO REFER AND NON-SOLICITATION OF PATIENTS**

A. It is specifically agreed and understood between the parties that nothing in this Agreement is intended to require, nor requires, nor provides payment or benefit of any kind (directly or indirectly), for the referral of individuals or business to either party by the other party.

**B.** "Dentist" agrees that during the term of this Agreement, he or she shall not, directly or indirectly, solicit or attempt to solicit or treat, for his or her own account or for the account of any other person or entity, any patient of "BCHF." This non-solicitation clause shall survive termination of this Agreement for a period of two (2) years following termination, however such termination is affected.

**C.** "Dentist" shall not cause any entity or individual he or she is employed by or with whom he or she is professionally associated to, directly or indirectly, solicit or attempt to solicit for his or her own account or for the account of any other person or entity, any patient of "BCHF" for whom "Dentist" provided care during the term of the Agreement.  For purposes  of this paragraph, a "patient  of BCHF" shall mean any patient seen or treated by "BCHF" (whether  by its employees or independent contractors) during the one (1) year period immediately preceding the termination or expiration of this Agreement, including, but not limited to, those patients treated by Dentist hereunder.

## VII.   CONTRACTS WITH OTHERS

This contract is non-exclusive. "BCHF" retains the authority to contract with other dentists or dental practices, if, and to the extent that, "BCHF" reasonably determines that such contracts are necessary in order to implement "BCHF" policies and procedures, or as otherwise may be necessary to assure appropriate collaboration with other local providers (as required by Section 330 (k)(3) (B)), to enhance patient freedom of choice, and/or to enhance accessibility, availability, quality and comprehensiveness of care.

## VIII.   COMPENSATION

**A.   FEE SCHEDULE.** "Dentist" will be compensated for providing dental services under this Agreement in accordance with the attached Payment Schedule Addendum "B".

**B.   ENCOUNTER SUBMISSION.** Dentist will complete a superbill for every visit.  The superbills will be batched and submitted on a daily basis along with the patient demographic information and a copy of the visit documentation.  Adequate supporting documentation must be made available to ensure that "BCHF" will be able to collect for services rendered and not place the organization in jeopardy of false claims.

**C.   TIMING OF PAYMENT.**  Payment will be made on claims that are paid to "BCHF" by third party payors.  The payment will be processed and made on the 15th day of each month to the "Dentist" with a detailed explanation of reimbursement.  Both "Dentist" and "BCHF" will be responsible for maintaining records of transactions to avoid duplication of reimbursement and resolve outstanding balances.

## IX.   CASE MANAGEMENT

**A.   AGREEMENT TO PROVIDE DESIGNATED NUMBER OF SERVICES.** "Dentist" agrees to provide services for the "BCHF" patients for a minimum of **ten** (10) visits a week and to be available at minimum three days a week during standard business hours.  "Dentist" will communicate with BCHF management as to appointment availability so that adjustments can be made to accommodate the identified need.

EXHIBIT G
PAGE 253

The "Dentist" reserves the right to fill these appointments if there are an insufficient number of referrals from "BCHF". "Dentist" will provide occasional after hour sessions to provide expanded availability. These sessions may include weekend clinics or after 5:00 p.m. schedules. "Dentist" will accommodate dental emergencies as necessary. As an FQHC satellite, at no time will the contract exceed twenty (20) hours a week.

B. **VERIFICATION OF PATIENT STATUS.** "BCHF" will verify each Participating Patient's status as a "BCHF" patient on the day on which an appointment is made for such patient with Dentist. "Dentist" will verify information regarding the patient's status as a "BCHF" patient on the date of service or otherwise mutually agreed upon method verification presenting to the "Dentist". If it is determined that the Participating Patient is not a "BCHF" patient on the date of service, "BCHF", in consultation with Dentist, will decide whether or not to authorize "Dentist" to proceed with treatment. If "BCHF" authorizes "Dentist" to proceed with treatment, "BCHF" will be responsible for payment for the services provided by the "Dentist" according to the compensation provisions in this Agreement.

C. **REPORTING AND INVESTIGATION OF PATIENT COMPLAINTS/GRIEVANCES.** The "Dentist" will cooperate fully with "BCHF" in the investigation of Participating Patient complaints and grievances by providing information necessary for review and resolution of such. The information will be made available in a timely manner according to established policies and procedures. "Dentist" will collaborate in the resolution of identified opportunities for improvement without retaliation against the Participating Patient and in keeping with the wellbeing of such.

D. **REFUSAL TO PROVIDE SERVICES.** The "Dentist" has the right to request termination of services for Participating Patients who behave in a disruptive manner or are grossly discourteous towards "Dentist", "Dentist's" employees or other patients. "Dentist" must promptly report all such instances to "BCHF", who will notify the Participating Patient that, unless the Participating Patient corrects such behavior immediately, he or she will no longer be eligible to receive dental services from the "Dentist". In the event of non-resolution or if the circumstances are severe in nature, "Dentist" will have no obligation to provide further services for the Participating Patient.

E. **REFERRAL FOR SPECIALTY SERVICES.** "Dentist" will provide services within the approved scope for "BCHF" to Participating Patients and as outlined in Addendum "A" that are within the "Dentist's" knowledge, skill and training. "Dentist" will inform "BCHF" as soon as practical when Participating Patients require specialty referral and/or services beyond the "Dentist" and "BCHF" scope of services. Participating Patients will be provided information as to available specialists that are available in the community for such care. "BCHF" maintains Care Coordination Specialists that may assist with healthcare coverage information and application.

X.    **LEGAL**

A. **LICENSURE, CERTIFICATION AND OTHER QUALIFICATION.** Dentist will provide "BCHF" with evidence of current licensure within the State of California as well as any other certification or qualification necessary to provide the services specified prior to

entering into this Agreement, and annually upon request of "BCHF." Dentist will maintain unrestricted licensure and/or certification and qualification as a Medi-Cal and, as applicable, Medicare participating provider during the term of this Agreement. "Dentist" agrees to have such additional qualifications and credentials as "BCHF" may reasonably require for "Dentist" to provide services, including but not limited to Basic Life Support (BLS), DEA number and others pursuant to this Agreement and shall maintain such qualifications and credentials during the term of this Agreement. The same requirements apply to "Dentist" employees and staff. No patients are to be treated by "Dentist" or other support staff who have not provided proper licensing and certification. Only the qualified of provider authorized by "BCHF" guidelines are allowed to render such services.

B. **COMPLIANCE WITH THE LAW.** "Dentist" will practice in accordance with the all Federal, State and local laws, regulations, and generally accepted principles applicable to the practice of dentistry. Failure to comply with this provision is grounds for immediate termination under Section XIV of this Agreement.

C. **MISREPRESENTATION.** "Dentist" acknowledges and agrees that willful misrepresentation of the type, frequency, reasonableness and/or necessity of dental services provided to Participating Patients may constitute a fraudulent act and may be referred by "BCHF" to the applicable Federal or State regulatory agency, and will be cause for immediate termination under XIV of this Agreement.

D. **COMPLIANCE WITH OTHER LAWS.** In connection with the provision of services pursuant to this Agreement, "Dentist" agrees to the following requirements, to the extent that such requirements are applicable:

1. To comply with the Civil Rights Act of 1964 and all other Federal, State or local laws, rules and orders prohibiting discrimination, as well as Executive Order 11246, entitled "Equal Employment Opportunity," as amended by Executive Order 11375, and as supplemented by U.S. Department of Labor regulations at 41 C.F.R. Part 60;

2. To make positive efforts to utilize small businesses, minority-owned firms and women's business enterprises in connection with the work performed hereunder, whenever possible;

3. To comply with all applicable standards, orders, and regulations issued pursuant to the Clean Air Act of 1970 (42 U.S.C. §7401 et. seq.) and the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), as amended;

4. To comply with the certification and disclosure requirements of the Byrd Anti-Lobbying Amendment (31 U.S.C. § 1352), and any applicable implementing regulations, as may be applicable; and

5. To certify that neither it, nor any of its principal employees, has been debarred or suspended from participation in federally-funded contracts, in accordance with Executive Order 12549 and Executive Order 12689, entitled "Debarment and Suspension," and any applicable implementing regulations.

**XI.    RECORD KEEPING AND REPORTING**

A. **PROGRAMMATIC RECORDS**. "Dentist" agrees to prepare and maintain programmatic, administrative and other records and information that pertain to the services provided hereunder and that "BCHF" and/or DHHS may reasonably deem appropriate and necessary for the monitoring and auditing of this Agreement, and to provide them to "BCHF" as reasonably requested.  In addition, "Dentist" will maintain such records and provide such information to "BCHF" or to regulatory agencies as may be necessary for "BCHF" to comply with State or Federal laws, regulations or accreditation requirements, as well as "BCHF's" reporting obligations pursuant to its Section 330 grant.

B. **FINANCIAL RECORDS**. "Dentist" shall prepare and maintain financial records and reports, supporting documents, statistical records, and all other books, documents, papers or other records related and pertinent to this Agreement for a period of five (5) years from the date this Agreement expires or is terminated.  If an audit, litigation, or other action involving the records is started before the end of the five (5) year period, "Dentist" agrees to maintain the records until the end of the five (5) year period or until the audit, litigation,  or other action is completed, whichever is later.  "Dentist" shall make available to "BCHF", DHHS and the Comptroller General of the United States, or any of their duly authorized representatives, upon appropriate notice, such financial systems, records, reports, books, documents, and papers as may be necessary for audit, examination, excerpt, transcription,  and copy purposes, for as long as such systems, records, reports, books, documents, and papers are retained.  This right also includes timely and reasonable access to "Dentist" personnel for the purpose of interview and discussion related to such documents. "Dentist" shall, upon request, transfer identified records to the custody of "BCHF" or DHHS when either "BCHF" or DHHS determine that such records possess long term retention value.

C. **PARTICIPATING PATIENT RECORDS**.  "Dentist" agrees to establish and maintain dental records relating to the diagnosis and treatment of Participating Patients served pursuant to this Agreement.  All such records shall be prepared in a mutually agreed upon format that is consistent with the clinical guidelines and standards established by "BCHF".  "Dentist"  and "BCHF" agree to maintain the privacy and confidentiality of such records, in compliance with all applicable Federal, State and local law including, but not limited to, the Health Insurance Portability and Accountability Act and consistent with "BCHF's" policies and procedures regarding the privacy and confidentiality of patient records.

D. **RETENTION OF PATIENT RECORDS**.  Dentist will retain dental records for seven (7) years beyond the last date of delivery of the services or to the extent required by applicable law.  In the event that Dentist retires or discontinues his or her practice, Dentist must comply with the public and private notice provisions set forth in California State law and transfer all Participating Patient records to "BCHF".  Record retention obligations survive the termination of this Agreement.

E. **OWNERSHIP OF PATIENT RECORDS**.  "Dentist" and "BCHF" agree that "BCHF" shall retain ownership of all dental records of this Agreement, regardless of the physical location in which such records are housed.   "Dentist" and "BCHF" agree that "Dentist", upon reasonable notice to "BCHF" and consistent  with  applicable  Federal and State laws and regulations  and "BCHF's" policies and procedures regarding the privacy and

confidentiality of patient records, shall have timely and reasonable access to patient records to inspect and/or duplicate at "Dentist's" expense, any individual chart or record produced and/or maintained by "Dentist" to the extent necessary to: (i) meet responsibilities to patients for whom "Dentist" provides services pursuant to this Agreement; (ii) respond to any government or payor audits; (iii) assist in the defense of any malpractice or other claims to which such chart or record may be pertinent; and (iv) for any other legitimate business purpose, consistent with patient confidentiality and to the extent permitted by law. In the event that such records are housed in "Dentist's" practice location or any other location controlled by "Dentist", "BCHF" shall have reasonable and timely access to such records.

## XII.   INSURANCE

A.  **PROOF OF COVERAGE.**  The "Dentist" , at his/her sole cost and expense, shall procure and maintain such policies of professional liability, and other insurance as are necessary to insure the "Dentist" and his/her employees, agents and affiliates against any claim or claims for damages arising by reason of personal injuries or death occasioned directly or indirectly in connection with the performance of any service by the "Dentist" the use of any property and facilities provided by the "Dentist" or his/her agents, and the activities performed by the "Dentist" in connection with this Agreement, or any amendment entered into thereafter.

B.  "Dentist" will provide "BCHF" with sufficient  evidence of professional liability coverage in the amount of at least:

1.  General Liability (including broad form property damage and contractual liability) insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) three million dollars ($3,000,000) in the aggregate; Sexual Abuse Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) three million dollars ($3,000,000) in the aggregate; Employer's Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate; Professional Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate; and automobile liability insurance for owned, hired and non-owned vehicles on a per occurrence basis with a combined single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate.

2.  Workers' Compensation, as required under California State law.

3.  Such other insurance in such amounts which from time to time may be reasonably required by the mutual consent of "Dentist" and "BCHF" against other insurable risks relating to performance of this Agreement.

C.  It should be expressly understood, however, that the coverages and limits required under this Section shall not in any way limit the liability of either Party.

D.  Additional insured endorsements are required for general, property damage, sexual abuse and automobile liability policy coverage. Such a provision, however, shall only apply in proportion to and to the extent of the negligent acts or

omissions of the other "Party", its officers, agents, or employees. Each "Party", upon the execution of this Agreement, shall furnish the other "Party" with Certificates of Insurance evidencing compliance with all requirements. Certificates shall provide for thirty (30) days advance written notice to "BCHF" of any material modifications, change or cancellation of the above insurance coverages.

E. **INDEMNITY.** "Dentist" shall defend, indemnify and hold "BCHF", its officers, employees and agents harmless from and against any and all liability, loss, expense (including reasonable attorney's fees) or claims for injury or damages arising out of the performance of this Agreement but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent or intentional acts or omissions of Dentist, its officers, agents, or employees.

"BCHF" shall defend, indemnify and hold "Dentist", its officers, employees and agents harmless from and against any and all liability, loss, expense (including reasonable attorneys' fees) or claims for injury or damages arising out of the performance of this Agreement but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent, intentional acts, omissions or misconduct of "BCHF" its officers, agents, or students.

## XIII.   CONFIDENTIALITY

A.   Except as is necessary in the performance of this Agreement, or as authorized in writing by a party or by law, neither party (nor its directors, officers, employees, agents, and contractors) shall disclose to any person, institution, entity, company, or any other party, any information which is directly or indirectly related to the other party that it (or its directors, officers, employees, agents, and contractors) receives in any form (including, but not limited to, written, oral, or contained on video tapes, audio tapes or computer diskettes) as a result of performing obligations under this Agreement, or of which it is otherwise aware. The parties (and their directors, officers, employees, agents, and contractors) also agree not to disclose, except to each other, any proprietary information, professional secrets or other information obtained in any form (including, but not limited to, written, oral, or contained on video tapes, audio tapes or computer diskettes) during the course of carrying out the responsibilities under this Agreement, unless the disclosing party receives prior written authorization to do so from the other party or as authorized by law.

B.   The parties agree that their obligations and representations regarding confidential and proprietary information (including the continued confidentiality of information transmitted orally), shall be in effect during the term of this Agreement and shall survive the expiration or termination (regardless of the cause of termination) of this Agreement.

## XIV.   TERM AND TERMINATION

A.   **TERM.**  This Agreement begins on October ___18___, 2017 and shall be automatically and successively renewed and extended for one year periods from and after the expiration date unless either party provides written notice of termination to the other  sixty (60) days in advance of termination.  Renewal is subject to "BCHF's"

determination that "Dentist" performed satisfactorily and successful re-negotiation by the parties of key terms, as applicable.

**B.  TERMINATION WITHOUT CAUSE.**  Either "Dentist" or "BCHF" may terminate this agreement, for any reason, at any time upon sixty (60) days written notice.

**C.  TERMINATION FOR CONVENIENCE.**  This Agreement may be terminated at any time upon the mutual agreement of the parties.

**D.  TERMINATION FOR BREACH.**  This Agreement may be terminated by either party upon written notice to the other party of such other party's material breach of any term of this Agreement, subject to a sixty (60) day opportunity to cure and failure to cure by the end of the sixty (60) day period.

**E.  IMMEDIATE TERMINATION.**  In addition, "BCHF" may terminate this Agreement immediately upon written notice to "Dentist" of: (1) "Dentist's" violation of, or inability to comply with, his or her obligations set forth in this Agreement; or (2) the good faith determination of "BCHF" that the health, welfare and/or safety of Participating Patients receiving care from "Dentist" is or will be jeopardized by the continuation of this Agreement.

**F.  SURVIVAL.** Upon termination, the rights and obligations of the "Dentist" and "BCHF" under this Agreement will terminate, except as otherwise noted in this Agreement. Termination, however, will not release "Dentist" from his or her obligation to complete any multi-step dental treatment which "Dentist" began prior to the effective date of the termination, provided that such termination did not result from a determination by "BCHF" that the health, welfare and/or safety of Participating Patients would be jeopardized by continuing this Agreement.  "Dentist" is not obligated to provide any other services. Termination of this Agreement does not release "BCHF" from its obligation to reimburse "Dentist" for any dental services provided on or before the effective date of the termination.

## XV.  GENERAL PROVISIONS

**A.  AMENDMENT/MODIFICATION.**  This Agreement may be amended or modified from time to time upon the mutual written agreement of the parties. Any amendment or modification shall not affect the remaining provisions of the Agreement and, except for the specific provision amended or modified, this Agreement shall remain in full force and effect as originally executed.  Amendments will take effect upon the date of execution of both parties.

**B.  ASSIGNMENT.**  This Agreement may not be assigned, delegated, or transferred by either party without the express written consent and authorization of the other party, provided prior to such action.

**C.  EFFECT OF WAIVER.**  A party to this Agreement may waive the other party's breach of a provision of this Agreement, but such a waiver does not constitute a waiver of any future breaches.

**D.  EFFECT OF INVALIDITY.** The invalidity or unenforceability of any provision of this Agreement in no way affects the validly or enforceability of any other provision, unless

otherwise agreed.

E.   **NOTICE.**  Any notice required to be provided under this Agreement must be in writing and delivered in person or sent by registered or certified mail or by next business day delivery service to each party at the address set forth on the signature page.

F.   **DISPUTE RESOLUTION.**  Any dispute arising under this Agreement shall first be resolved by informal discussions between the parties, subject to good cause exceptions, including, but not limited to, disputes determined by either party to require immediate relief (i.e., circumstances under which an extended resolution  procedure may endanger the health and safety of the Participating Patients). Any dispute that has failed to be resolved by informal discussions between the parties within a reasonable period of time of the commencement of such discussions (not to exceed thirty (30) days), may be resolved through any and all means available.

G.   **CHOICE OF LAW.** This Agreement shall be governed in accordance with the laws of the State of California. Any disputes arising under this Agreement will be settled in accordance with the law of the State of California.

H.   **ENTIRE AGREEMENT.**  This Agreement represents the complete understanding  of the parties with regard to the subject matter herein and, as such, supersedes any and all other agreements or understandings between the parties, whether oral or written, relating to such subject matter. No such other agreements or understandings may be enforced by either party nor may they be employed for interpretation purposes in any dispute involving this Agreement.

**SIGNATURES:**

Bruce Hebets, CEO
Borrego Community Health Foundation

Date: _____10/20/2017_____

Address: PO Box 2369
Borrego Springs, CA 92004

Phone: (619) 444-5704

Contact: Travis Lyon

E-mail: tlyon@borregohealth.org

Hawatmeh Dental Group P.C.

Date:_____Oct 18/2017_____

Address:  1185 Magnolia Ave. #K, #L
Corona, Ca.   92879

Phone:   Dr. Hawatmeh / Teresa (Mgr.)

Contact: (951) 898-9223 / (951)790-9975

E-mail:  bravodentalcorona@hotmail.com

**Addendum "A"**

**Scope of Services**

"Dentist" will provide services for Participating Patients with the following insurance:

Medi-Cal Recipients
Sliding Fee approved patients

The "Dentist" must follow all Denti-Cal rules and regulations in regards to maximum allowances and procedure limitations for patients eligible for Medi-Cal.  These are outlined in Section 5 of the Provider Manual under "Maximum Allowances".  Limitations of commercial contracts will be provided by "BCHF"

Exams (New, recall and limited)
X-rays
Fluoride Application
Prophylaxis
Periodontal scaling and root planning
Sealants
Fillings
Preventive Resin Restoration (PRR) for moderate to high risk caries risk patient permanent tooth.
Extractions
Stainless Steel Crowns
Space Maintainers
Root Canals (prior review required by the "BCHF" Dental Director)
Crowns (prior review required by the "BCHF" Dental Director)

## Addendum "B"

### Compensation of Dental Services
### Medi-Cal

"Dentist" will be reimbursed according to patient's insurance type.  Services for Medi-Cal patients will be compensated on a per visit reimbursement rate as outlined below.  Crowns and root canals are subject to prior review and authorization by the Dental Director.  If the service is not within the scope of "BCHF" the "Dentist" may bill this service directly to the payor as a private patient.

| Description | Codes (Denti-Cal rules apply) | Number of Visits | Special Consideration | Rate |
|---|---|---|---|---|
| Routine Exam and X-rays | D0150, D0120 D0210, D0220, D0230, D0272, D0274 | 1 | Refer to Denti-Cal manual. | $100 per |
| Problem focused oral evaluation only with or without X-ray | D0140 D0220, D0230, D0270 | 1 | For relief of pain and medication | $90 |
| Problem focused exam including X-ray and treatment | D0140 D0220, D0230, D0270 D7140, D7210 D2140, D2150, D2160 | 1 | For treatment with extraction or filling | $120 |
| Prophylaxis and Fluoride application | D1110, D1120 D1203, D1204 | 1 | Must be in combination. | $100 per visit |
| Sealants or PRR | D1351, D1352 | 1 or 2 | No less than per quadrant. | $26 per tooth |
| Fillings, Amalgam Resins, Posteriors | D2140, D2150, D2160, D2161 D2330, D2331, D2332, D2335 D2391, D2392, D2393, D2394 | 1 or more | Per quadrant | $120 per visit |
| Stainless Steel Crown | D2930, D2931 | 1 or more | 2 per visit | $180 per visit |
| Space Maintainer | D1510, D1515 | 2 | Unilateral Bilateral | $140 global $250 global |
| Extractions - simple | D7111, D7140 | 1 | Per visit – multiple extractions under anesthesia are not | $100 |

| | | | in scope. | |
|---|---|---|---|---|
| Extractions | D7210, D7220, D7230, D7240 | 1 or more | Per visit – multiple extractions under anesthesia are not in scope. | $165 |
| Root Canal - Anterior | D3310 | 1 or more | Excludes final restoration | $230 global |
| Root Canal - Molar | D3330 | 2 or more | Excludes final restoration | $350 global |
| Pulpal Debridement and Filling | D3220, D3221 | 1 | Excludes final restoration | $120 per visit |
| Crown | D2751 | 2 or more | Prep and delivery in global fee. | $400 global |
| Recement Permanent Crown | D2920 | 1 | None | $50 |
| Unspecified restorative procedure by report | D2999 | 1 | None | $75 |
| Periodontal Scaling | D4341, D4342 | 1 | 2 quadrants per visit | $70 per quadrant |
| Incision and Drainage of Abcess | D7520 | 1 | None | $100 |

**Addendum "C"**
**Location of Service**

All dental services under this agreement will be rendered at the following 3 locations:

**Location #1 – Hawatmeh Dental Group P.C.**

|  | Bravo Dental Group of Corona |
| Address: | 1185 Magnolia Avenue, #K & #L |
|  | Corona, Ca.   92879 |
| Phone: | (951) 898-9223 |

During the hours of:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
| --- | --- | --- | --- | --- | --- | --- |
| 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-3:00pm | Closed | Closed |

NPI Number - Organization     1649704347

NPI Number- Individual     1043515653

---

**Location #2 – ~~Hawatmeh Dental Group P.C.~~**          *AYED Hawatmeh D.D.S Inc*

| Address: | White Smile Dental   *D.B.A* |
|  | 3495 East Concours Street, Suite A |
|  | Ontario, Ca.   91764 |
| Phone: | (909) 483-1379 |

During the hours of:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
| --- | --- | --- | --- | --- | --- | --- |
| 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-2:00pm | Closed | Closed |

NPI Number - Organization     1831613645

NPI Number- Individual     1043515653

---

**Location #3 – Hawatmeh ~~Dental Group P.C.~~**          *AYED Hawatmee D.D.S In.*

| Address: | *D.B.A* ~~Rancho Family Dentistry~~ |
|  | 8977 East Foothill Blvd. Suite E - F |
|  | Rancho Cucamonga, Ca.   92879 |
| Phone: | (909) 581-0244 |

During the hours of:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
| --- | --- | --- | --- | --- | --- | --- |
| 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-6:00pm | 9:00-3:30pm | Closed | Closed |

NPI Number - Organization     *1831613645*

NPI Number- Individual     1043515653

Copies attached

**CONFIDENTIALITY OF STUDENT INFORMATION /**
**PROTECTED HEALTH INFORMATION (PHI)**

**HIPAA BUSINESS ASSOCIATE ADDENDUM**

This Agreement is made effective the ___i K___ day of October, 2017 by and between Borrego Health, hereinafter referred to as "Covered Entity", and Hawatmeh Dental Group P.C. hereinafter referred to as "Business Associate", (individually, a "Party" and collectively, the "Parties").

**RECITALS:**

WHEREAS, Sections 261 through 264 of the federal Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, known as "the Administrative Simplification provisions," direct the Department of Health and Human Services to develop standards to protect the security, confidentiality and integrity of health information;

WHEREAS, pursuant to the Administrative Simplification provisions, the Secretary of Health and Human Services issued regulations modifying 45 CFR Parts 160 and 164 (the "HIPAA Security and Privacy Rule");

WHEREAS, the American Recovery and Reinvestment Act of 2009 (Pub. L. 111-5), pursuant to Title XIII of Division A and Title IV of Division B, called the "Health Information Technology for Economic and Clinical Health" ("HITECH") Act, provides modifications to the HIPAA Security and Privacy Rule (hereinafter, all references to the "HIPAA Security and Privacy Rule" are deemed to include all amendments to such rule contained in the HITECH Act and any accompanying regulations, and any other subsequently adopted amendments or regulations);

WHEREAS, the Parties wish to enter into or have entered into an arrangement whereby Business Associate will provide certain services to Covered Entity, and, pursuant to such arrangement, Business Associate may be considered a "business associate" of Covered Entity as defined in the HIPAA Security and Privacy Rule (the agreement evidencing such arrangement is entitled Dentist Contract, dated October __i O__, 2017 and is hereby referred to as the "Arrangement Agreement"); and

WHEREAS, Business Associate may have access to and/or use Protected Health Information (as defined below) in fulfilling its responsibilities under such arrangement;

NOW, THEREFORE, in consideration of the Parties' continuing obligations under the Arrangement Agreement, compliance with the HIPAA Security and Privacy Rule, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree to the provisions of this Agreement in order to address the requirements of the HIPAA Security and Privacy Rule and to protect the interests of both Parties.

I.   DEFINITIONS

A.   Catch-all definition:
     The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Individual, Minimum Necessary, Notice of Privacy

Practices, Protected Health Information, Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use. In the event of an inconsistency between the provisions of this Agreement and mandatory provisions of the HIPAA Security and Privacy Rule, as amended, the HIPAA Security and Privacy Rule shall control.  Where provisions of this Agreement are different than those mandated in the HIPAA Security and Privacy Rule, but are nonetheless permitted by the HIPAA Security and Privacy Rule, the provisions of this Agreement shall control.

B. <u>Specific definitions</u>:

    1.   <u>Business Associate</u>.  "Business Associate" shall generally have the same meaning as the term "business associate" at 45 CFR 160.103, and in reference to the party to this agreement, shall mean Hawatmeh Dental Group P.C.

    2.   <u>Covered Entity</u>.  "Covered Entity" shall generally have the same meaning as the term "covered entity" at 45 CFR 160.103, and in reference to the party to this agreement, shall mean Borrego Health.

    3.   <u>HIPAA Rules</u>.  "HIPAA Rules" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and Part 164.

    4.   <u>Protected Health Information</u>. "Protected Health Information (PHI)" shall mean individually identifiable health information including, without limitation, all information, data, documentation, and materials, including without limitation, demographic, medical and financial information, that relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual.  "Protected Health Information" includes without limitation "Electronic Protected Health Information" as defined below.

    5.   <u>Electronic Protected Health Information</u>. "Electronic Protected Health Information" shall mean Protected Health Information which is transmitted by Electronic Media (as defined in the HIPAA Security and Privacy Rule) or maintained in Electronic Media.

II.     <u>CONFIDENTIALITY AND SECURITY REQUIREMENTS</u>

A. Business Associate agrees:
    1.  Not to use or disclose protected health information other than as permitted or required by the Agreement or as required by law;

    2.  To use appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to electronic protected health information, to prevent use or disclosure of protected health information other than as provided for by the Agreement;

3.  To report to covered entity any use or disclosure of protected health information not provided for by the Agreement of which it becomes aware, including breaches of unsecured protected health information as required at 45 CFR 164.410, and any security incident of which it becomes aware. Such report shall be made by Business Associate to Covered Entity within twenty-four hours of the time when Business Associate becomes aware of the breach;

4.  In accordance with 45 CFR 164.502(e)(1)(ii) and 164.308(b)(2), if applicable, to ensure that any subcontractors that create, receive, maintain, or transmit protected health information on behalf of the business associate agree to the same restrictions, conditions, and requirements that apply to the business associate with respect to such information;

5.  To make available protected health information in a designated record set to the individual or the individual's designee" as necessary to satisfy covered entity's obligations under 45 CFR 164.524;

6.  To make any amendment(s) to protected health information in a designated record set as directed or agreed to by the covered entity pursuant to 45 CFR 164.526, or take other measures as necessary to satisfy covered entity's obligations under 45 CFR 164.526;

7.  To maintain and make available the information required to provide an accounting of disclosures to the individual as necessary to satisfy covered entity's obligations under 45 CFR 164.528;

8.  To the extent the business associate is to carry out one or more of covered entity's obligation(s) under Subpart E of 45 CFR Part 164, to comply with the requirements of Subpart E that apply to the covered entity in the performance of such obligation(s); and

9.  To make its internal practices, books, and records available to the Secretary for purposes of determining compliance with the HIPAA Rules.

10. Business Associate acknowledges and agrees that all Protected Health Information that is created or received by Covered Entity and disclosed or made available in any form, including paper record, oral communication, audio recording, and electronic display by Covered Entity or its operating units to Business Associate or is created or received by Business Associate on Covered Entity's behalf shall be subject to this Agreement.

B.  Notwithstanding the prohibitions set forth in this Agreement, Business Associate may use and disclose Protected Health Information as follows:

1.  As necessary to perform the services set forth in the underlying Service Agreement; and/or

2.  As required by law.

3.  Business Associate agrees to make uses and disclosures and requests for protected health information consistent with Covered Entity's minimum necessary

policies and procedures.

4.  Business Associate may not use or disclose PHI in a manner that would violate Subpart E of 45 CFR Part 164 if done by covered entity.

5.  Business associate may not use or disclose protected health information in a manner that would violate Subpart E of 45 CFR Part 164 if done by covered entity.

6.  Business associate may use protected health information for the proper management and administration of the business associate or to carry out the legal responsibilities of the business associate.

7.  Business associate may disclose protected health information for the proper management and administration of business associate or to carry out the legal responsibilities of the business associate, provided the disclosures are required by law, or business associate obtains reasonable assurances from the person to whom the information is disclosed that the information will remain confidential and used or further disclosed only as required by law or for the purposes for which it was disclosed to the person, and the person notifies business associate of any instances of which it is aware in which the confidentiality of the information has been breached.

8.  Business associate may provide data aggregation services relating to the health care operations of the covered entity.

C.  Business Associate will implement appropriate safeguards to prevent use or disclosure of Protected Health Information other than as permitted in this Agreement. Business Associate will implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of any Electronic Protected Health Information that it creates, receives, maintains, or transmits on behalf of Covered Entity as required by the HIPAA Security and Privacy Rule.

D.  The Secretary of Health and Human Services shall have the right to audit Business Associate's records and practices related to use and disclosure of Protected Health Information to ensure Covered Entity's compliance with the terms of the HIPAA Security and Privacy Rule.

E.  Business Associate shall report to Covered Entity any use or disclosure of Protected Health Information which is not in compliance with the terms of this Agreement of which it becomes aware. Business Associate shall report to Covered Entity any Security Incident of which it becomes aware. Such report shall be made within twenty-four hours of the date and time upon which Business Associate becomes aware of the unauthorized use or disclosure and/or Security Incident.

For purposes of this Agreement, "Security Incident" means the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system. In addition, Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.

III.     AVAILABILITY OF PHI

A.   Business Associate agrees to comply with any requests for restrictions on certain disclosures of Protected Health Information pursuant to Section 164.522 of the HIPAA Security and Privacy Rule to which Covered Entity has agreed and of which Business Associate is notified by Covered Entity.  Business Associate agrees to make available Protected Health Information to the extent and in the manner required by Section 164.524 of the HIPAA Security and Privacy Rule.  If Business Associate maintains Protected Health Information electronically, it agrees to make such Protected Health Information electronically available to the applicable individual.  Business Associate agrees to make Protected Health Information available for amendment and incorporate any amendments to Protected Health Information in accordance with the requirements of Section 164.526 of the HIPAA Security and Privacy Rule.  In addition, Business Associate agrees to make Protected Health Information available for purposes of accounting of disclosures, as required by Section 164.528 of the HIPAA Security and Privacy Rule and Section 13405(c)(3) of the HITECH Act.  Business Associate and Covered Entity shall cooperate in providing any accounting required on a timely basis.

IV.     TERM/TERMINATION

A.   Term. The Term of this Agreement shall be effective as of the date first listed above and shall continue in effect concurrently with the term of the Arrangement Agreement.

B.   Termination. Notwithstanding anything in this Agreement to the contrary, Covered Entity shall have the right to terminate this Agreement and the Arrangement Agreement immediately if Covered Entity determines that Business Associate has violated any material term of this Agreement.  If Covered Entity reasonably believes that Business Associate will violate a material term of this Agreement and, where practicable, Covered Entity gives written notice to Business Associate of such belief within a reasonable time after forming such belief, and Business Associate fails to provide adequate written assurances to Covered Entity that it will not breach the cited term of this Agreement within a reasonable period of time given the specific circumstances, but in any event, before the threatened breach is to occur, then Covered Entity shall have the right to terminate this Agreement and the Arrangement Agreement immediately. Covered Entity may seek injunctive relief and/or any other available remedy to prevent a breach of this Agreement.

C.   Obligations of Business Associate Upon Termination. Upon termination of this Agreement for any reason, business associate shall return to covered entity all protected health information received from covered entity, or created, maintained, or received by business associate on behalf of covered entity, that the business associate still maintains in any form.  Business associate shall retain no copies of the protected health information.

D.   Survival.  The obligations of business associate under this Section shall survive the termination of this Agreement.

V.      MISCELLANEOUS

A.   Third Parties; Survival. Except as expressly stated herein or the HIPAA Security and Privacy Rule, the Parties to this Agreement do not intend to create any rights in any third

parties. The obligations of Business Associate under this Section shall survive the expiration, termination, or cancellation of this Agreement, the Arrangement Agreement and/or the business relationship of the Parties, and shall continue to bind Business Associate, its agents, employees, contractors, successors, and assigns as set forth herein.

B. Amendment; Independent Parties. This Agreement may be amended or modified only in a writing signed by the Parties. No Party may assign its respective rights and obligations under this Agreement without the prior written consent of the other Party. None of the provisions of this Agreement are intended to create, nor will they be deemed to create any relationship between the Parties other than that of independent parties contracting with each other solely for the purposes of effecting the provisions of this Agreement and any other agreements between the Parties evidencing their business relationship. This Agreement will be governed by the laws of the State of California. No change, waiver or discharge of any liability or obligation hereunder on any one or more occasions shall be deemed a waiver of performance of any continuing or other obligation, or shall prohibit enforcement of any obligation, on any other occasion.

C. Minimum Requirements. The Parties agree that, in the event that any documentation of the arrangement pursuant to which Business Associate provides services to Covered Entity contains provisions relating to the use or disclosure of Protected Health Information which are more restrictive than the provisions of this Agreement, the provisions of the more restrictive documentation will control. The provisions of this Agreement are intended to establish the minimum requirements regarding Business Associate's use and disclosure of Protected Health Information.

D. Severability. In the event that any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the provisions of this Agreement will remain in full force and effect. In addition, in the event a Party believes in good faith that any provision of this Agreement fails to comply with the then-current requirements of the HIPAA Security and Privacy Rule, including any then-current requirements of the HITECH Act or its regulations, such Party shall notify the other Party in writing. For a period of up to thirty days, the Parties shall address in good faith such concern and amend the terms of this Agreement, if necessary to bring it into compliance. If, after such thirty-day period, the Agreement fails to comply with the HIPAA Security and Privacy Rule, including the HITECH Act, then either Party has the right to terminate upon written notice to the other Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year written above.

**COVERED ENTITY:**

_____
Bruce Hebets, CEO
Borrego Community Health Foundation

_____10/20/2017_____
Date

**BUSINESS ASSOCIATE:**

_____
Hawatmeh Dental Group P.C.

_____Oct 19/ 2017_____
Date

**Addendum "D"**
**ADDITION OF MEDI-CAL ADULT DENTAL**
**AND SLIDING FEE**

The Ninth Circuit Court of Appeals decision in California Association of Rural Health Clinics vs. Douglas (738 F. 3d 1007, (2013)) allows for reinstatement of certain dental benefits for Medi-Cal beneficiaries ages 21 and older. Consequently, the parties desire to expand the services outlined in the Dental Service Agreements in include Adult Dental Services in accordance with this Addendum.

## SCOPE OF BENEFITS

The current scope of benefits for Federally Qualified Health Centers (FQHCs) for purpose of this contract is interpreted in the 2009 Denti-Cal Provider Handbook, Section 5, "Manual of Criteria and Schedule of Maximum Allowances." A copy will be provided by BCHF.

The scope of approved services is subject to change, with or without notice, upon further clarification provided by the Department of Healthcare Services or other regulatory agencies. The scope and reimbursement rate is outlined in "Addendum E". Any procedures not listed in "Addendum E" require prior approval from BCHF.

## EMERGENCY COVERAGE

Dentist is required to ensure appropriate availability during and after hours to ensure access to emergency dental services. Dentist will provide BCHF with a written plan of during and after hours coverage, which may include an answering service, message center, cell phone or other method of patient communication that ensures patients have access to address any dental emergencies. This may include referral to the emergency room, medication and/or care instructions.

## SLIDING FEE

As a requirement of the FQHC program, BCHF is required by the Health Resources and Services Administration (HRSA) to provide a sliding fee scale for those living at or below 200% of the Federal Poverty Level (FPL) who do not have insurance or whose insurance does not cover dental benefits.

As a condition of this Addendum D, Dentist must also implement the sliding fee scale program for the low income uninsured as further outlined in "Addendum F".

_____
Bruce Hebets, CEO
Borrego Community Health Foundation

_____
Hawatmeh Dental Group P.C.

_____10/20/2017_____
Date

_____Oct 18/17_____
Date

## Addendum "E"

### COMPENSATION OF DENTAL SERVICES
### ADULT MEDI-CAL

Services for Adults with current full scope Medi-Cal eligibility will be compensated on a per visit reimbursement rate as outlined below. Crowns, root canals and bridges are subject to prior review and approval by the Dental Director. If the service is not within the scope of "BCHF" the "Dentist" may bill this service directly to the payer as a private patient.

| Description | Codes (Denti-Cal rules apply) | Number of Visits | Special Consideration | Rate |
|---|---|---|---|---|
| Routine Exam and X-rays no Prophy | D0150, D0120 D0210, D0220, D0230, D0272, D0274 | 1 | Refer to Denti-Cal manual. | $100 per |
| Routine Exam and X-rays with Prophy | D0150, D0120 D0210, D0220, D0230, D0272, D0274, D111 | 1 | Refer to Denti-Cal manual. | $130 per |
| Office visit for observation | D9430 | 1 | For relief of pain and medication | $90 |
| Problem focused X-ray and procedure | D0220, D0230, D0270 D7140, D7210 D2140, D2150, D2160 | 1 | For treatment with extraction or filling | $120 |
| Prophylaxis only | D1110, D1120 D1203, D1204 | 1 | Must be in combination. | $100 |
| Fillings, Amalgam Resins, Posteriors | D2140, D2150, D2160, D2161 D2330, D2331, D2332, D2335 D2391, D2392, D2393, D2394 | 1 or more | Per quadrant | $120 per visit |
| Extractions - simple | D7111, D7140 | 1 | Per visit - multiple extractions under anesthesia are not in scope. | $100 |
| Extractions | D7210, D7220, D7230, D7240 | 1 or more | Per visit - multiple extractions under general anesthesia are not in scope. | $165 |
| Root Canal - Anterior | D3310 | 1 or more | Excludes final restoration | $230 global |
| Root Canal - Bicuspid | D3320 | 2 or more | Excludes final restoration | $290 global |

| Root Canal - Molar | D3330 | 2 or more | Excludes final restoration | $350 global |
|---|---|---|---|---|
| Crown | D2740,D275, D2791 | 2 or more | Prep and delivery in global fee. | $400 global |
| Re-cement Permanent Crown | D2920 | 1 | None | $50 |
| Unspecified restorative procedure by report | D2999 | 1 | None | $75 |
| Periodontal Scaling | D4341, D4342 | 1 | 2 quadrants per visit | $70 per quadrant |
| Incision and Drainage of Abscess | D7520 | 1 | None | $100 |
| Dentures (Includes first two adjustments) | D5110,D5120 | 6 or more | Maxillary and Mandibular | $550 each denture |
| Removable Partial (Includes first two adjustments) | D5213, D5214 | 6 or more | Maxillary and Mandibular | $500 each partial |
| Partial denture | D5211, D5212 | 3 or more | Maxillary and Mandibular | $280 each partial |
| Repairs | D5510, D5520, D5610, D5640, D5650, D5660 | 1 or more | Maxillary and Mandibular | $100 each visit |
| Adjustments only (not following delivery) | D5410, D5411, D5421, D5422 | 1 | Maxillary and Mandibular | $60 |
| Reline | D5730, D5731, D5740, D5741, D5850, D5851 | 1 | Maxillary and Mandibular | $100 per visit |
| Reline (Laboratory) | D5750, D5751 D5760, D5761 | 2 or more | Maxillary and Mandibular | $180 global |
| | | | | |
| | | | | |

**Addendum "F"**

**DENTAL SLIDING FEE SCALE**
**SUMMARY OF BENEFITS**

As a Federally Qualified Health Center (FQHC), Borrego Community Health Foundation (BCHF) is required to provide a sliding fee scale program for patients living at or below 200% of the Federal Poverty Level (FPL). Services must be provided despite a patient's inability to pay. Ability to pay is determined through an eligibility process in which the applicant provides proof of income and family size.

As a contract dental partner of BCHF, you are required to extend the sliding fee scale program to your practice.

**Benefits:**

The sliding fee scale is a limited benefit program that provides discounted rates for services rendered within the dental practice of the organization and contracted sites only. It does not extend to services rendered by specialists to whom the clinic may refer the patient for additional care. The scope of benefits is limited to services as outlined in the current Denti-Cal Provider Handbook - Manual of Criteria (Section 5).

The program includes:

- Exam and X-rays
- Cleaning
- Fluoride Application
- Fillings
- Extractions (Limited to scope of General Dentistry)
- Root Canals (Limited to scope of General Dentistry)
- Crowns (Limited to non-precious metal)
- Dentures ($150 co-payment)
- Bridges (co-payment 50% of cost)

**Eligibility:**

The application process and eligibility determination is outlined in the BCHF Sliding Fee Policy and Procedure, which is amended from time to time to reflect current FPL (revised on an annual basis and published April 1.

Information regarding the Sliding Fee program will be made available in your office for cash patients that may desire to apply. Application assistance and eligibility determination will be conducted by BCHF staff upon referral from your office. Your office may be required to provide limited assistance (e.g. emailing an application or referring the applicant to one of our local clinics for assistance). Uninsured applicants will receive information about other program eligibility including Medi-Cal and/or Covered California and assisted with applying for these

programs if deemed eligible.

Patients with family income at or below 100% of Federal Poverty Level (FPL) will pay a nominal fee of $50 per visit. All others living at or below 200% of poverty are assessed for a discounted rate for services based on the BCHF fee schedule that is part of this addendum. Adults and children with commercial dental benefits may also apply for the Sliding Fee to assist with the cost of co-payments and deductible charges if all other qualifications are met.

Your office will collect from eligible patients the allowed fee according to the sliding scale and the BCHF fee schedule. The amount you collect from patients shall represent payment in full for services rendered under this sliding fee program. However, BCHF will pay an additional $5.00 upon receipt of a super bill for services rendered.

Program Exclusions:

- Referrals to all specialists including but not limited to:
  - ➢ Oral Surgery
  - ➢ Endodontist
  - ➢ Periodontist
  - ➢ Orthodontist
  - ➢ Pedodontist
- Teeth Whitening
- Orthotics not listed
- Orthodontics
- Nobel Metal crowns
- Cosmetic procedures
- Mouth Guards

### Dental Sliding Fee Discount

| Sliding Fee | A | | B | C | D | E |
|---|---|---|---|---|---|---|
| | | | | | | |
| Level of Poverty | 0-100% | Level of Poverty | 101-125% | 126-150% | 151-175% | 176-200% |
| Nominal Fee | $50 | Percent Discount | 25% | 20% | 15% | 10% |

Bruce Hebets, CEO
Borrego Community Health Foundation

10 / 20 / 2017
Date

Hawatmeh Dental Group P.C.

Oct 18 / 2017
Date

EXHIBIT G
PAGE 275