# EXHIBIT J

**AGREEMENT BETWEEN**
**MAGALY M. VELASQUEZ DDS,**
**PROFESSIONAL DENTAL CORP.**
**AND**
**BORREGO COMMUNITY HEALTH FOUNDATION**
**FOR**
**DENTAL SERVICES**

**THIS DENTAL SERVICES AGREEMENT** ("Agreement") is entered into as of November 5, 2014  between Borrego Community Health Foundation ("BCHF") and Magaly M. Velasquez DDS, Professional Dental Corp   ("Dentist"), collectively the "Parties"

## RECITALS

**WHEREAS**, BCHF is a 501 (c) (3) non-profit public benefit corporation, organized under the laws of the State of California and is licensed to operate Federally Qualified Community Health Centers (FQHC)  BCHF operates clinics throughout Riverside and San Diego Counties including Centro Medico Cathedral City located at  69175 Ramon Rd  Cathedral City CA 92234 The clinics provide comprehensive primary and specialty care according to the scope of services as approved by the Bureau of Primary Health Care ("BPHC") within the United States Department of Health and Human Services ("DHHS")   The approved scope includes performance of primary dental services; and

**WHEREAS, "BCHF"** desires to increase access to dental services for pediatric, adolescent and adult patients of the FQHC by entering into agreements with qualified Dentists to provide primary dental services for the FQHC

**WHEREAS,** "Dentist"  is duly licensed to provide dental services within the State of California and meets credentials required by "BCHF" to perform such services, and is not the subject of any Medicaid/Medicare related actions, suspensions, exclusions or debarments that would disqualify him or her from providing services under this Agreement   The "Dentist" provides the desired scope of services that meet the FQHC criteria, and

**WHEREAS,** "Dentist" operates and administers a private practice in the Rancho Cucamonga City area of California within "BCHF's" service area and agrees to provide primary dental services to patients on behalf of "BCHF" by entering into agreement to deliver such services in a professional manner to "BCHF" patients  (Refer to Addendum "C" for dental office address and contact information )

## AGREEMENT

**NOW, THEREFORE**, in consideration of the covenants and agreements herein contained, and other good and valuable consideration, the "Parties" hereto mutually agree as follows

I.   **DEFINITIONS**

A.   **PARTICIPATING PATIENTS.** A "Participating Patient" who is eligible to receive dental services under this Agreement is defined as any individual residing in FQHC's federally-approved service area and who is a patient of the FQHC operated by "BCHF".

B.   **SCOPE OF SERVICES.**  Those services approved by the Health Resource and

Service Administration (HRSA) as Required and Additional Services that are authorized to be rendered by BCHF to residents of the specified service area.

II. **ACKNOWLEDGEMENT**

The "Dentist" agrees to be bound by the terms and conditions of this Agreement insofar as said Agreement relates to rights, responsibilities and duties as "Dentist". This Agreement constitutes the entire understanding between the parties hereto and no changes, amendments or alterations shall be effective unless agreed to in writing by both parties and appended to this Agreement.

III. **INDEPENDENT RELATIONSHIP**

None of the provisions of this Agreement are intended to create nor shall be deemed or construed to create any relationship between "BCHF" and "Dentist" other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement.  Neither of the parties hereto nor any of their respective employees shall be construed to be the agent, employee or representative of the other.  This Agreement is entered into at an arm's length negotiated rate reflective of the fair market value.

IV. **PROFESSIONAL SERVICES**

A. **COVERED SERVICES.**  Dentist agrees to provide primary care dental services described in Addendum "A" as "Covered Services", as required, to Participating Patients, in accordance with the attached "Payment Schedule" and as further described in Section VIII. "BCHF" is responsible for contacting "Dentist" to make initial appointments for Participating Patients. Notwithstanding, "BCHF" is under no obligation to utilize "Dentist" to provide dental services to any or all Participating Patients who require such services

B. **SERVICE AVAILABILITY.**  "Dentist" shall provide primary dental services during hours of operations that are mutually agreed upon and outlined in "Addendum "C". Any changes require prior notification to the "BCHF" Dental Director.  "Dentist" will maintain adequate facilities within the Service Area to meet the responsibilities of this Agreement.  Such facilities must meet standards of practice expected of a licensed facility.  Adequate trained, certified or licensed personnel will be provided quality standard of care and not place the health and well being of the patients in jeopardy. "Dentist" will provide a plan of after hour access for phone consultation and triage for dental emergencies of established patients.

C. **DOCUMENTATION AND DESCRIPTION OF SERVICES.**  "Dentist" agrees to establish and maintain dental records that will contain descriptions of any dental services provided to Participating Patients, as well as proposed follow-up treatment plans for subsequent visits (if any). The descriptions of the services will be made using American Dental Association CDT Standard Claims Codes.  In the event that such records are housed in a location other than the dental office, "BCHF" shall have reasonable and timely access to such records.  "Dentist" agrees to retain such records for a period of at least seven years or to the extent required by applicable laws or regulations.

D. **PRIOR AUTHORIZATION.**  For dental services needing individual consideration

or prior approval the "Dentist" must provide such documentation necessary prior to rendering such service. In addition to standard requirements of prior approval outlined by the Denti-Cal program or other third party payors, an additional list of services requiring prior approval may be provided by "BCHF". As a satellite of an FQHC, Treatment Authorization Requests (TAR) must be fully documented in the dental record, but do not require submission to Denti-Cal for prior approval. This does not apply to treatment paid directly by Denti-Cal

E.  **AGREEMENT NOT TO CHARGE PATIENTS.** The "Parties" agree that all Participating Patients receiving services from "Dentist" pursuant to this Agreement shall be considered patients of "BCHF". Accordingly, "BCHF" shall be responsible for the billing of such patient services, as applicable, as well as the billing of Federal, State and private payors, and the collection and retention of any and all payments "Dentist" agrees not to bill, charge or collect from Participating Patients or payors any amount for any dental services provided under this Agreement  If "Dentist" should receive any payment from Participating Patients or payors for services provided hereunder, "Dentist" agrees to remit such payment to FQHC within ten (10) days of receipt

F.  **SLIDING FEE.** Notwithstanding the aforementioned, "Dentist" recognizes that certain Participating Patients may be charged at the time of service, in accordance with a fee schedule and, as applicable, schedule of sliding fee discounts established by "BCHF" pursuant to 42 C F R §51c 303(f).  "Dentist" shall, on behalf of "BCHF" and consistent with "BCHF 's" guidelines, schedules and procedures, make every reasonable effort to collect fees from eligible Participating Patients at the time services are provided to such patients and to remit such payments to "BCHF" within ten (10) days of receipt. "BCHF" shall perform the follow-up activities necessary to collect patient fees not collected by "Dentist" at the time of service.

G.  **NON-DISCRIMINATION.** "Dentist" agrees to provide dental services to Participating Patients in the same professional manner and pursuant to the same professional standards as generally provided by "Dentist" to his or her patients, regardless of an individual's or family's ability to pay for services rendered. This section shall not be read to prevent "Dentist" from limiting the number of hours and/or days during which "Dentist" agrees to see Participating Patients, provided that such limitation shall not be based on a Participating Patient's payor source or insurance status. Dentist also agrees not to differentiate or discriminate in the provision of services provided to Participating Patients on the basis of race, color, religious creed, age, marital status, national origin, alienage, sex, blindness, mental or physical disability or sexual orientation pursuant to Title 45 of the Code of Federal Regulations, §§ 80.3-80.4, and Civil Rights Act of 2007.

V.  **QUALITY OVERSIGHT AND EVALUATION OF SERVICES BY FQHC**

A.  **QUALITY OF CARE.** "Dentist" shall provide care consistent with prevailing community standards for quality of care and in accordance with "BCHF" Section 330 grant and applicable grant-related expectations and requirements.  Services shall be within the scope of practice outlined in Addendum B for primary care dental services. The "Dentist" will be subject to standards of quality review as though the care was provided by an employed dentist or the organization.  Such review will include facility and record review in keeping with "BCHF" standards and applicable regulations.

"BCHF" will communicate in writing any corrective action that must be resolved in a timely manner.

B. **POLICIES AND PROCEDURES.**  The "Dentist" will be subject to clinical policies and procedures established by "BCHF" regarding the provision of services pursuant to this agreement including but not limited to qualifications and credentials, clinical guidelines, standards of conduct, quality assurance standards, productivity standards, patient and provider grievance and complaint procedures.  Such policies and procedures are consistent with "BCHF's" requirements established by the Bureau of Primary Health Care (BPHC). "BCHF" will provide "Dentist with such requirements, policies, procedures and standards.  Notwithstanding, nothing herein is intended to interfere with "Dentist's" professional judgment in connection with the provision of clinical services.

C. **PATIENT RELATIONSHIP.** "Dentist" shall maintain a dentist/patient relationship with Participating Patients and shall be solely responsible for dental treatment and advice. Notwithstanding, nothing herein is intended to interfere with "Dentist's" professional judgment in connection with the provision of such services.

D. **AUTHORITY.**  "BCHF", through its Executive Director and/or Dental Director or Medical Director, shall have and exercise ultimate authority and responsibility for the services provided to Participating Patients pursuant to this Agreement, consistent with the policies, procedures and standards set forth above.  In particular,  "BCHF" shall retain ultimate authority over the following.

1. Determination as to whether "Dentist" meets "BCHF's" qualifications and credentials, consistent with BCHF standards.

2. Interpretation of "BCHF's" policies and procedures, clinical guidelines, quality assurance standards, productivity standards, standards of conduct and provider and patient grievance and complaint resolution procedures, and their applicability to "Dentist".

3. Determination with respect to whether "Dentist" is performing satisfactorily and consistent with "BCHF's" policies, procedures and standards.

4. The Executive Director and/or Medical Director have the authority to terminate this agreement in accordance with Section XIV below.

E. **NOTIFICATION.**  "Dentist" shall, as soon as reasonably practicable, notify "BCHF" of any action, event, claim, proceeding, or investigation (including, but not limited to, any report made to the National Practitioner Data Bank) that could result in the revocation, termination, suspension, limitation or restriction of "Dentist's" licensure, certification, or qualification to provide such services.  "BCHF" may suspend this Agreement, until such time as a final determination has been made with respect to the applicable action, event, claim, proceeding, or investigation.

VI. **NO OBLIGATION TO REFER AND NON-SOLICITATION OF PATIENTS**

A. It is specifically agreed and understood between the parties that nothing in this Agreement is intended to require, nor requires, nor provides payment or benefit of any kind (directly or indirectly), for the referral of individuals or business to either

party by the other party.

B.   "Dentist" agrees that during the term of this Agreement, he or she shall not, directly or indirectly, solicit or attempt to solicit or treat, for his or her own account or for the account of any other person or entity, any patient of "BCHF." This non-solicitation clause shall survive termination of this Agreement for a period of two (2) years following termination, however such termination is affected.

C.   "Dentist" shall not cause any entity or individual he or she is employed by or with whom he or she is professionally associated to, directly or indirectly, solicit or attempt to solicit for his or her own account or for the account of any other person or entity, any patient of "BCHF" for whom "Dentist" provided care during the term of the Agreement.  For purposes  of this paragraph, a "patient  of BCHF" shall mean any patient seen or treated by "BCHF" (whether  by its employees or independent contractors) during the one (1) year period immediately preceding the termination or expiration of this Agreement, including, but not limited to, those patients treated by Dentist hereunder.

## VII.   CONTRACTS WITH OTHERS

This contract is non-exclusive. "BCHF" retains the authority to contract with other dentists or dental practices, if, and to the extent that, "BCHF" reasonably determines that such contracts are necessary in order to implement "BCHF" policies and procedures, or as otherwise may be necessary to assure appropriate collaboration with other local providers (as required by Section 330 (k)(3) (B)), to enhance patient freedom of choice, and/or to enhance accessibility, availability, quality and comprehensiveness of care.

## VIII.   COMPENSATION

A.   **FEE SCHEDULE.  "**Dentist" will be compensated for providing dental services under this Agreement in accordance with the attached Payment Schedule Addendum "B".

B.   **ENCOUNTER SUBMISSION.**  Dentist will complete a superbill every visit.  The superbills will be batched and submitted on a daily basis along with the patient demographic information and a copy of the visit documentation.  Adequate supporting documentation must be made available to ensure that "BCHF" will be able to collect for services rendered and not place the organization in jeopardy of false claims.

C.   **TIMING OF PAYMENT.**   Payment will be made on claims that are paid to "BCHF" by third party payors   The payment will be processed and made three weeks from the date of receipt by BCHF the "Dentist" with a detailed explanation of reimbursement Both "Dentist" and "BCHF" will be responsible for maintaining records of transactions to avoid duplication of reimbursement and resolve outstanding balances.

## IX.   CASE MANAGEMENT

A.   **AGREEMENT TO PROVIDE DESIGNATED NUMBER OF SERVICES.**  "Dentist" agrees to provide services for the "BCHF" patients for a minimum of **ten** (10) visits a week and to be available at minimum three days a week during standard business hours.  "Dentist" will communicate with BCHF management as to appointment

availability so that adjustments can be made to accommodate the identified need. The "Dentist" reserves the right to fill these appointments if there are an insufficient number of referrals from "BCHF". "Dentist" will provide occasional after hour sessions to provide expanded availability. These sessions may include weekend clinics or after 5:00 p.m. schedules. "Dentist" will accommodate dental emergencies as necessary. As an FQHC satellite, at no time will the contract exceed twenty (20) hours a week.

B. **VERIFICATION OF PATIENT STATUS.** "BCHF" will verify each Participating Patient's status as a "BCHF" patient on the day on which an appointment is made for such patient with Dentist. "Dentist" will verify information regarding the patient's status as a "BCHF" patient on the date of service or otherwise mutually agreed upon method verification presenting to the "Dentist". If it is determined that the Participating Patient is not a "BCHF" patient on the date of service, "BCHF", in consultation with Dentist, will decide whether or not to authorize "Dentist" to proceed with treatment  If "BCHF" authorizes "Dentist" to proceed with treatment, "BCHF" will be responsible for payment for the services provided by the "Dentist" according to the compensation provisions in this Agreement.

C. **REPORTING AND INVESTIGATION OF PATIENT COMPLAINTS/GRIEVANCES**. The "Dentist" will cooperate fully with "BCHF" in the investigation of Participating Patient complaints and grievances by providing information necessary for review and resolution of such. The information will be made available in a timely manner according to established policies and procedures  "Dentist" will collaborate in the resolution of identified opportunities for improvement without retaliation against the Participating Patient and in keeping with the wellbeing of such.

D. **REFUSAL TO PROVIDE SERVICES.** The "Dentist" has the right to request termination of services for Participating Patients who behave in a disruptive manner or are grossly discourteous towards "Dentist", "Dentist's" employees or other patients. "Dentist" must promptly report all such instances to "BCHF", who will notify the Participating Patient that, unless the Participating Patient corrects such behavior immediately, he or she will no longer be eligible to receive dental services from the "Dentist"  In the event of non-resolution or if the circumstances are severe in nature, "Dentist" will have no obligation to provide further services for the Participating Patient

E. **REFERRAL FOR SPECIALTY SERVICES.** "Dentist" will provide services within the approved scope for "BCHF" to Participating Patients and as outlined in Addendum "A" that are within the "Dentist's" knowledge, skill and training. "Dentist" will inform "BCHF" as soon as practical when Participating Patients require specialty referral and/or services beyond the "Dentist" and "BCHF" scope of services. Participating Patients will be provided information as to available specialists that are available in the community for such care. "BCHF" maintains Care Coordination Specialists that may assist with healthcare coverage information and application.

X. **LEGAL**

A. **LICENSURE, CERTIFICATION AND OTHER QUALIFICATION.** Dentist will provide "BCHF" with evidence of current licensure within the State of California as well as any

other certification or qualification necessary to provide the services specified prior to entering into this Agreement, and annually upon request of "BCHF." Dentist will maintain unrestricted licensure and/or certification and qualification as a Medi-Cal and, as applicable, Medicare participating provider during the term of this Agreement "Dentist" agrees to have such additional qualifications and credentials as "BCHF" may reasonably require for "Dentist" to provide services, including but not limited to Basic Life Support (BLS), DEA number and others pursuant to this Agreement and shall maintain such qualifications and credentials during the term of this Agreement.  The same requirements apply to "Dentist" employees and staff.  No patients are to be treated by "Dentist" or other support staff who have not provided proper licensing and certification.  Only the qualified of provider authorized by "BCHF" guidelines are allowed to render such services.

B. **COMPLIANCE WITH THE LAW.  "**Dentist" will practice in accordance with the all Federal, State and local laws, regulations, and generally accepted principles applicable to the practice of dentistry. Failure to comply with this provision is grounds for immediate termination under Section XIV of this Agreement.

C. **MISREPRESENTATION**. "Dentist" acknowledges and agrees that willful misrepresentation of the type, frequency, reasonableness and/or necessity of dental services provided to Participating Patients may constitute a fraudulent act and may be referred by "BCHF" to the applicable Federal or State regulatory agency, and will be cause for immediate termination under XIV of this Agreement.

D. **COMPLIANCE WITH OTHER LAWS**.  In connection with the provision of services pursuant to this Agreement, "Dentist" agrees to the following requirements, to the extent that such requirements are applicable:

1   To comply  with the Civil Rights Act of 1964 and all other Federal, State or local laws, rules and orders prohibiting discrimination,  as well as Executive Order 11246, entitled "Equal Employment Opportunity," as amended by Executive Order 11375, and as supplemented by U S. Department of Labor regulations at 41 C.F. R. Part 60;

2.  To make positive efforts to utilize small businesses, minority-owned  firms and women's business enterprises in connection with the work performed hereunder, whenever possible;

3.  To comply  with all applicable standards, orders, and regulations issued pursuant to the Clean Air Act of 1970 (42 U.S.C. §7401 et. seq.) and the Federal Water Pollution  Control Act (33 U.S.C. § 1251 et seq.), as amended;

4.  To comply  with the certification  and disclosure requirements of the Byrd Anti-Lobbying  Amendment (31 U S.C. § 1352), and any applicable implementing regulations, as may be applicable; and

5.  To certify  that neither it, nor any of its principal employees, has been debarred or suspended from participation in federally-funded contracts, in accordance with Executive Order 12549 and Executive Order 12689, entitled "Debarment and Suspension," and any applicable implementing regulations.

## XI.   RECORD KEEPING AND REPORTING

**A. PROGRAMMATIC RECORDS**. "Dentist" agrees to prepare and maintain programmatic, administrative and other records and information that pertain to the services provided hereunder and that "BCHF" and/or DHHS may reasonably deem appropriate and necessary for the monitoring and auditing of this Agreement, and to provide them to "BCHF" as reasonably requested. In addition, "Dentist" will maintain such records and provide such information to "BCHF" or to regulatory agencies as may be necessary for "BCHF" to comply with State or Federal laws, regulations or accreditation requirements, as well as "BCHF's" reporting obligations pursuant to its Section 330 grant.

**B. FINANCIAL RECORDS**. "Dentist" shall prepare and maintain financial records and reports, supporting documents, statistical records, and all other books, documents, papers or other records related and pertinent to this Agreement for a period of five (5) years from the date this Agreement expires or is terminated. If an audit, litigation, or other action involving the records is started before the end of the five (5) year period, "Dentist" agrees to maintain the records until the end of the five (5) year period or until the audit, litigation, or other action is completed, whichever is later. "Dentist" shall make available to "BCHF", DHHS and the Comptroller General of the United States, or any of their duly authorized representatives, upon appropriate notice, such financial systems, records, reports, books, documents, and papers as may be necessary for audit, examination, excerpt, transcription, and copy purposes, for as long as such systems, records, reports, books, documents, and papers are retained. This right also includes timely and reasonable access to "Dentist" personnel for the purpose of interview and discussion related to such documents. "Dentist" shall, upon request, transfer identified records to the custody of "BCHF" or DHHS when either "BCHF" or DHHS determine that such records possess long term retention value.

**C. PARTICIPATING PATIENT RECORDS**. "Dentist" agrees to establish and maintain dental records relating to the diagnosis and treatment of Participating Patients served pursuant to this Agreement   All such records shall be prepared in a mutually agreed upon format that is consistent with the clinical guidelines and standards established by "BCHF". "Dentist" and "BCHF" agree to maintain the privacy and confidentiality of such records, in compliance with all applicable Federal, State and local law including, but not limited to, the Health Insurance Portability and Accountability Act and consistent with "BCHF's" policies and procedures regarding the privacy and confidentiality of patient records.

**D. RETENTION OF PATIENT RECORDS**. Dentist will retain dental records for seven (7) years beyond the last date of delivery of the services or to the extent required by applicable law. In the event that Dentist retires or discontinues his or her practice, Dentist must comply with the public and private notice provisions set forth in California State law and transfer all Participating Patient records to "BCHF". Record retention obligations survive the termination of this Agreement.

**E. OWNERSHIP OF PATIENT RECORDS**. "Dentist" and "BCHF" agree that "BCHF" shall retain ownership of all dental records of this Agreement, regardless of the physical location in which such records are housed. "Dentist" and "BCHF" agree that "Dentist", upon reasonable notice to "BCHF" and consistent with applicable Federal and State

laws and regulations  and "BCHF's" policies and procedures regarding the privacy and confidentiality of patient records, shall have timely and reasonable access to patient records to inspect and/or duplicate at "Dentist's" expense, any individual chart or record produced and/or maintained by "Dentist" to the extent necessary to: (i) meet responsibilities to patients for whom "Dentist" provides services pursuant to this Agreement; (ii) respond to any government or payor audits; (iii) assist in the defense of any malpractice or other claims to which such chart or record may be pertinent; and (iv) for any other legitimate business purpose, consistent with patient confidentiality and to the extent permitted by law. In the event that such records are housed in "Dentist's" practice location or any other location controlled by "Dentist", "BCHF" shall have reasonable and timely access to such records.

## XII.   INSURANCE

A.   **PROOF OF COVERAGE.**  The **"Dentist"** , at his/her sole cost and expense, shall procure and maintain such policies of professional liability, and other insurance as are necessary to insure the "Dentist" and his/her employees, agents and affiliates against any claim or claims for damages arising by reason of personal injuries or death occasioned directly or indirectly in connection with the performance of any service by the "Dentist" the use of any property and facilities provided by the "Dentist" or his/her agents, and the activities performed by the "Dentist" in connection with this Agreement, or any amendment entered into thereafter.

B.   "Dentist" will provide "BCHF" with sufficient  evidence of professional liability coverage in the amount of at least:

1.   General Liability (including broad form property damage and contractual liability) insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) three million dollars ($3,000,000) in the aggregate; Sexual Abuse Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) three million dollars ($3,000,000) in the aggregate; Employer's Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate; Professional Liability insurance on a per occurrence basis with a single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate,  and automobile liability insurance for owned, hired and non-owned vehicles on a per occurrence basis with a combined single limit of not less than one million dollars ($1,000,000) and three million dollars ($3,000,000) in the aggregate

2.   Workers' Compensation, as required under California State law

3.   Such other insurance in such amounts which from time to time may be reasonably required by the mutual consent of "Dentist" and "BCHF" against other insurable risks relating to performance of this Agreement

C.   It should be expressly understood, however, that the coverages and limits required under this Section shall not in any way limit the liability of either Party.

D.   Additional insured endorsements are required for general, property damage, sexual abuse and automobile liability policy coverage. Such a provision, however,

shall only apply in proportion to and to the extent of the negligent acts or omissions of the other "Party", its officers, agents, or employees  Each "Party", upon the execution of this Agreement, shall furnish the other "Party" with Certificates of Insurance evidencing compliance with all requirements  Certificates shall provide for thirty (30) days advance written notice to "BCHF" of any material modifications, change or cancellation of the above insurance coverages

**E. INDEMNITY.** "Dentist" shall defend, indemnify and hold "BCHF", its officers, employees and agents harmless from and against any and all liability, loss, expense (including reasonable attorney's fees) or claims for injury or damages arising out of the performance of this Agreement but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent or intentional acts or omissions of Dentist, its officers, agents, or employees

"BCHF" shall defend, indemnify and hold "Dentist", its officers, employees and agents harmless from and against any and all liability, loss, expense (including reasonable attorneys' fees) or claims for injury or damages arising out of the performance of this Agreement but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent, intentional acts, omissions or misconduct of "BCHF" its officers, agents, or students

## XIII. CONFIDENDIALITY

**A.** Except as is necessary in the performance  of this Agreement, or as authorized in writing by a party or by law, neither party (nor its directors, officers, employees, agents, and contractors) shall disclose to any person, institution, entity, company, or any other party, any information which is directly or indirectly related to the other party that it (or its directors, officers, employees, agents, and contractors) receives in any form (including, but not limited to, written, oral, or contained on video tapes, audio tapes or computer  diskettes)  as a result of performing obligations under this Agreement, or of which it is otherwise aware  The parties (and their directors, officers, employees, agents, and contractors)  also agree not to disclose, except to each other, any proprietary information, professional secrets or other information  obtained in any form (including, but not limited to, written, oral, or contained on video tapes, audio tapes or computer diskettes) during the course of carrying out the responsibilities under this Agreement, unless the disclosing party receives prior written authorization to do so from the other party or as authorized by law

**B.** The parties agree that their obligations and representations regarding confidential and proprietary information (including the continued confidentiality of information transmitted orally), shall be in effect during the term of this Agreement and shall survive the expiration or termination (regardless of the cause of termination) of this Agreement.

## XIV. TERM AND TERMINATION

**A. TERM.** This Agreement begins on November 5, 2014 and shall be automatically and successively renewed and extended for one year periods from and after the expiration date unless either party provides written notice of termination to the other

sixty (60) days in advance of termination.  Renewal is subject to "BCHF's" determination that "Dentist" performed satisfactorily and successful re-negotiation by the parties of key terms, as applicable.

**B.    TERMINATION WITHOUT CAUSE.**  Either "Dentist" or "BCHF" may terminate this agreement, for any reason, at any time upon sixty (60) days written notice.

**C.    TERMINATION FOR CONVENIENCE.**  This Agreement may be terminated at any time upon the mutual agreement of the parties.

**D.    TERMINATION FOR BREACH.**  This Agreement may be terminated by either party upon written notice to the other party of such other party's material breach of any term of this Agreement, subject to a sixty (60) day opportunity to cure and failure to cure by the end of the sixty (60) day period.

**E.    IMMEDIATE TERMINATION.**  In addition, "BCHF" may terminate this Agreement immediately upon written notice to "Dentist" of: (1) "Dentist's" violation of, or inability to comply with, his or her obligations set forth in this Agreement; or (2) the good faith determination of "BCHF" that the health, welfare and/or safety of Participating Patients receiving care from "Dentist" is or will be jeopardized by the continuation of this Agreement.

**F.    SURVIVAL.**  Upon termination, the rights and obligations of the "Dentist" and "BCHF" under this Agreement will terminate, except as otherwise noted in this Agreement. Termination, however, will not release "Dentist" from his or her obligation to complete any multi-step dental treatment which "Dentist" began prior to the effective date of the termination, provided that such termination did not result from a determination by "BCHF" that the health, welfare and/or safety of Participating Patients would be jeopardized by continuing this Agreement   "Dentist" is not obligated to provide any other services. Termination of this Agreement does not release "BCHF" from its obligation to reimburse "Dentist" for any dental services provided on or before the effective date of the termination.

## XV.    GENERAL PROVISIONS

**A.    AMENDMENT/MODIFICATION.**  This Agreement may be amended or modified from time to time upon the mutual written agreement of the parties. Any amendment or modification shall not affect the remaining provisions of the Agreement and, except for the specific provision amended or modified, this Agreement shall remain in full force and effect as originally executed.  Amendments will take effect upon the date of execution of both parties.

**B.    ASSIGNMENT.**  This Agreement may not be assigned, delegated, or transferred by either party without the express written consent and authorization of the other party, provided prior to such action.

**C.    EFFECT OF WAIVER.**  A party to this Agreement may waive the other party's breach of a provision of this Agreement, but such a waiver does not constitute a waiver of any future breaches.

**D.    EFFECT OF INVALIDITY.** The invalidity or unenforceability of any provision of this

Agreement in no way affects the validly or enforceability of any other provision, unless otherwise agreed

**E.  NOTICE.**  Any notice required to be provided under this Agreement must be in writing and delivered in person or sent by registered or certified mail or by next business day delivery service to each party at the address set forth on the signature page.

**F.  DISPUTE RESOLUTION.**  Any dispute arising under this Agreement shall first be resolved by informal discussions between the parties, subject to good cause exceptions, including, but not limited to, disputes determined by either party to require immediate relief (i.e., circumstances under which an extended resolution  procedure may endanger the health and safety of the Participating Patients). Any dispute that has failed to be resolved by informal discussions between the parties within a reasonable period of time of the commencement of such discussions (not to exceed thirty (30) days), may be resolved through any and all means available.

**G.  CHOICE OF LAW.**  This Agreement shall be governed in accordance with the laws of the State of California. Any disputes arising under this Agreement will be settled in accordance with the law of the State of California.

**H.  ENTIRE AGREEMENT.**  This Agreement represents the complete understanding  of the parties with regard to the subject matter herein and, as such, supersedes any and all other agreements or understandings between the parties, whether oral or written, relating to such subject matter  No such other agreements or understandings may be enforced by either party nor may they be employed for interpretation purposes in any dispute involving this Agreement.

**SIGNATURES:**

Bruce Hebets, CEO
Borrego Community Health Foundation

Date._____ 11-14-14

Address: 4343 Yaqui Pass Road

Borrego Springs, CA 92004

Phone: 760-767-5051

Contact. Cynthia Preciado

E-mail cpreciado@borregomedical.org

Magaly Velasquez, DDS

Date·_____ 11 - 5 - 14

Address:  9130 Foothill Blvd.

Rancho Cucamonga, CA 91730

Phone 909-466-4999

Contact: Martha_____

E-mail:_____

EXHIBIT J
PAGE 351

Addendum "A"

Scope of Services

"Dentist" will provide services for Participating Patients with the following insurance:

Medi-Cal Recipients
Sliding Fee approved patients

The "Dentist" must follow all Denti-Cal rules and regulations in regards to maximum allowances and procedure limitations for patients eligible for Medi-Cal.  These are outlined in Section 5 of the Provider Manual under "Maximum Allowances".  Limitations of  commercial contracts will be provided by "BCHF"

Exams (New, recall and limited)
X-rays
Fluoride Application
Prophylaxis
Periodontal scaling and root planning
Sealants
Fillings
Preventive Resin Restoration (PRR) for moderate to high risk caries risk patient permanent tooth.
Extractions
Stainless Steel Crowns
Space Maintainers
Root Canals (prior review required by the "BCHF" Dental Director)
Crowns (prior review required by the "BCHF" Dental Director)

Addendum "B"
Compensation of Dental Services
Medi-Cal

"Dentist" will be reimbursed according to patient's insurance type.  Services for Medi-Cal patients will be compensated on a per visit reimbursement rate as outlined below.  Crowns and root canals are subject to prior review and authorization by the Dental Director.  If the service is not within the scope of "BCHF" the "Dentist" may bill this service directly to the payor as a private patient

| Description | Codes (Denti-Cal rules apply) | Number of Visits | Special Consideration | Rate |
|---|---|---|---|---|
| Routine Exam and X-rays | D0150, D0120 D0210, D0220, D0230, D0272, D0274 | 1 | Refer to Denti-Cal manual. | $100 per |
| Problem focused oral evaluation only with or without X-ray | D0140 D0220, D0230, D0270 | 1 | For relief of pain and medication | $90 |
| Problem focused exam including X-ray and treatment | D0140 D0220, D0230, D0270 D7140, D7210 D2140, D2150, D2160 | 1 | For treatment with extraction or filling | $120 |
| Prophylaxis and Fluoride application | D1110, D1120 D1203, D1204 | 1 | Must be in combination. | $100 per visit |
| Sealants or PRR | D1351, D1352 | 1 or 2 | No less than per quadrant. | $26 per tooth |
| Fillings, Amalgam Resins, Posteriors | D2140, D2150, D2160, D2161 D2330, D2331, D2332, D2335 D2391, D2392, D2393, D2394 | 1 or more | Per quadrant | $120 per visit |
| Stainless Steel Crown | D2930, D2931 | 1 or more | 2 per visit | $180 per visit |
| Space Maintainer | D1510, D1515 | 2 | Unilateral Bilateral | $140 global $250 global |
| Extractions - simple | D7111, D7140 | 1 | Per visit – multiple extractions under anesthesia are not in scope. | $100 |

| Extractions | D7210, D7220, D7230, D7240 | 1 or more | Per visit – multiple extractions under anesthesia are not in scope. | $165 |
|---|---|---|---|---|
| Root Canal - Anterior | D3310 | 1 or more | Excludes final restoration | $230 global |
| Root Canal - Molar | D3330 | 2 or more | Excludes final restoration | $350 global |
| Pulpal Debridement and Filling | D3220, D3221 | 1 | Excludes final restoration | $120 per visit |
| Crown | D2751 | 2 or more | Prep and delivery in global fee. | $400 global |
| Recement Permanent Crown | D2920 | 1 | None | $50 |
| Unspecified restorative procedure by report | D2999 | 1 | None | $75 |
| Periodontal Scaling | D4341, D4342 | 1 | 2 quadrants per visit | $70 per quadrant |
| Incision and Drainage of Abcess | D7520 | 1 | None | $100 |

Addendum C

Location of Service

All dental services under this agreement will be rendered at:

9130 Foothill Blvd

Rancho Cucamonga, CA 91730

Phone.  909-466-4999

During the hours of:

**CONFIDENTIALITY OF STUDENT INFORMATION /
PROTECTED HEALTH INFORMATION (PHI)**

**HIPAA BUSINESS ASSOCIATE ADDENDUM**

This HIPAA Business Associate Addendum ("Addendum") supplements and is made a part of the agreement ("Agreement") be and between Borrego Community Health Foun dation, ("BCHF") and Magaly M Velasquez, DDS,Professional Dental Corp (" Dentist" and Business Associate") and is effective as of the date of the original agreement (the "Addendum Effective Date")

RECITALS

WHEREAS, "BCHF", pursuant to the terms of the Agreement, wishes to disclose to Business Associate certain information, some of which may constitute Protected Health Information ("PHI") for the purpose of providing Dental Services to Participating Patients, and

WHEREAS, PHI means any information, whether oral or recorded in any form or medium (i) that relates to the past, present, or future physical or mental condition of an individual, the provision of health care to an individual, or the past, present or future payment for the provision of health care to an individual, and (ii) that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual, and shall have the meaning given to such term under Health Insurance Portability and Accountability Act of 1996, ("HIPAA") and the regulations promulgated there under by the U S Department of Health and Human Services ("HIPAA Regulations"), including, but not limited to 45 CFR Parts 160 and 164, and

WHEREAS, Business Associate is an individual or entity which provides services, arranges, performs or assists in the performance or activities of "BCHF" and who uses or discloses PHI, pursuant to the HIPAA Regulations, 45 CFR Section 160 103, and

WHEREAS, BCHF and Business Associate desire to protect the privacy and provide for the security of PHI disclosed to Business Associate in compliance with HIPAA and the HIPAA Regulations and other applicable laws and regulations, and

WHEREAS, the purpose of this Addendum is to satisfy certain standards and requirements of HIPAA and the HIPAA Regulations, including, but not limited to, Title 45 CFR Section 164 504(e), as the same may be amended from time to time

NOW, THEREFORE, in consideration of the mutual promises made below and the exchange of information pursuant to the Agreement, this Addendum (herein collectively the "Agreement"), the Parties agree as follows

1.    Responsibilities of Business Associate

      a_  Permitted Uses and Disclosures  Business Associate may use and/or disclose PHI received by Business Associate pursuant to the Agreement and this Addendum solely for the purpose of performing its obligations under the Agreement and this Addendum

EXHIBIT J
PAGE 356

b. <u>Restrictions of PHI.</u> Business Associate shall notify "BCHF" in writing within twenty-four (24) hours of receipt of any request by residents, Students or their representatives to restrict the use and disclosure of the PHI Business Associate maintains for or on behalf of "BCHF" Upon written notice from "BCHF", Business Associate agrees to comply with any instructions to modify, delete or otherwise restrict the use and disclosure of PHI it maintains for or on behalf of "BCHF".

c. <u>Use and Disclosure of PHI.</u> Business Associate may, if necessary, use and disclose PHI (i) for the proper management and administration of Business Associate's business or (ii) to carry out Business Associate's legal responsibilities.

d. <u>Nondisclosure.</u> Business Associate is not authorized and shall not use or further disclose "BCHF's" PHI other than as permitted under the Agreement or this Addendum, or as required by law or regulation

e. <u>Data Aggregation.</u> Except as otherwise limited by this Addendum and upon "BCHF's" request, Business Associate may use PHI to provide data aggregation services relating to BCHF's healthcare operations as permitted by 45 CFR Section 164.504.

f. <u>Safeguards.</u> Business Associate shall use appropriate administrative, technical and physical safeguards to prevent any use or disclosure of "BCHF's" PHI other than as provided for by the Agreement and this Addendum.

g. <u>Notification of Breach.</u> Business Associate shall notify "BCHF" in writing within one (1) working day of any suspected or actual breach of security, intrusion, or unauthorized use or disclosure of PHI and/or any actual or suspected use or disclosure Of PHI in violation of the Agreement, this Addendum, HIPAA, the HIPAA regulations, or any applicable federal and state laws and regulations. Business Associate shall take (i) prompt corrective action to cure any such deficiencies and (ii) any other action pertaining to such unauthorized disclosure as may be required by all applicable federal and state laws and regulations.

h. <u>Compliance with Law.</u> Business Associate shall comply with all applicable federal and state laws and regulations, including, if applicable under the terms and requirements of the Agreement, the HIPAA Standards for Electronic Transactions, 45 CFR Parts 160 and 162

i. <u>Business Associate's Agents.</u> Business Associate shall ensure that its employees, agents, and subcontractors who receive "BCHF's" PHI from Business Associate will agree to the same restrictions and conditions that apply to Business Associate with respect to such PHI. Additionally, all employees, agents, and subcontractors shall promptly notify Business Associate of any instances of which it is aware in which the confidentiality of the PHI has been breached.

j. <u>Inspection of Information.</u> Business Associate shall, within twenty-four (24) hours, excluding weekends and holidays, of receipt of a written or oral request

allow "BCHF" and, if authorized in writing by "BCHF", allow the subject of the PHI to inspect records as may be required to fulfill "BCHF's" obligations to provide access to "BCHF's" PHI pursuant to HIPAA, the HIPAA Regulations, including, but not limited to 45 CFR Section 164.524, and other applicable federal and state laws and regulations.

k.   Copies of Information. Business Associate shall, within two (2) calendar days of receipt of a written or oral request, make available to "BCHF", and if authorized in writing by BCHF, to the subject of the PHI, such information as may be required to fulfill "BCHF's" obligations to provide a copy of "BCHF's" PHI pursuant to HIPAA, the HIPAA Regulations, including, but not limited to, 45 CFR Section 164.524, and other applicable federal and state laws and regulations.

l.   Accounting of Information. Business Associate shall, within twenty (20) calendar days of receipt of a written request, make available to "BCHF" and, if authorized in writing by "BCHF", to the subject of the PHI, such information as may be required to fulfill "BCHF's" obligations to provide an accounting of disclosures of "BCHF's" PHI pursuant to HIPAA, the HIPAA Regulations, including, but not limited to, 45 CFR Section 164.524. The accounting shall include a listing of PHI disclosures that occurred during the past six (6) years, commencing April 14, 2003. Each accounting entry shall include. (1) the date of the disclosure; (ii) the name and address of the entity or person who received the PHI; (iii) a brief description of the PHI disclosed; and (iv) a brief statement of the purpose and basis for the disclosure, a copy of a written authorization for the disclosure pursuant to 45 CFR Section 164.508, or a copy of a written request for the disclosure pursuant to 45 CFR Sections 164.502 and/or 164 512.

m   Business Associate shall inform "BCHF" within five (5) working days of receipt of any request by or on behalf of the subject of the PHI to amend the PHI Business Associate maintains for or on behalf of "BCHF". Business Associate shall, within twenty (20) calendar days of receipt of a written request, make the subject's PHI available to "BCHF" as may be required to fulfill "BCHF's" obligations to amend PHI pursuant to HIPAA, the HIPAA Regulations, including, but not limited to, 45 CFR Section 164.526, and other applicable federal and state laws and regulations Business Associate shall, as directed by "BCHF", incorporate any Addendums to "BCHF's" PHI into copies of such PHI maintained and disclosed by Business Associate.

n.   Chain of Trust. If applicable, Business Associate shall protect the integrity and confidentiality of any "BCHF" PHI electronically exchanged between Business Associate, "BCHF", and others pursuant to 45 SCR Part 142

o.   Regulatory Compliance  Business Associate shall make its internal practices, books and records relating to the use and disclosure of PHI received from "BCHF" (or
created or received by Business Associate on behalf of "BCHF") available to any state or federal agency, including the U S. Department of Health and Human Services, for purposes of determining "BCHF's" compliance with the HIPAA Regulations

p. Record Retention: Business Associate shall retain all HIPAA-related documentation pertaining to "BCHF's" PHI for a period of six (6) years, as required by HIPAA and the HIPAA regulations.

q. Audits, Inspection, and Enforcement. Upon reasonable notice "BCHF" may inspect the facilities, systems, books, and records of Business Associate to monitor compliance with the Agreement and this Addendum. Business Associate shall promptly remedy any violation of any terms of the Agreement of this Addendum and shall certify such remedy in writing to "BCHF".

2  Termination

a. Material Breach. A breach by Business Associate of any material provision of this Addendum, as determined by "BCHF", shall constitute a material breach of the Agreement, and shall provide grounds for immediate termination of the Agreement by "BCHF".

b. Effect of Termination  Upon termination of the Agreement for any reason, Business Associate shall return or, at the option of "BCHF", destroy all PHI received from "BCHF", or created and received by Business Associate on behalf of "BCHF", that Business Associate still maintains in any form, and shall retain no copies of such PHI  If return or destruction is not feasible, as determined by "BCHF", Business Associate shall continue to extend indefinitely the protections of this Addendum to such PHI, and immediately terminate any further use or disclosure of such PHI.

3.  Changes to the Addendum

a. Compliance with Law. The "Parties" acknowledge that state and federal laws relating to electronic data security and privacy are rapidly evolving and that changes to this Addendum may be required to ensure compliance with such developments. The "Parties" specifically agree to take such action as may be necessary to implement the standards and requirements of HIPAA, the HIPAA Regulations and other applicable federal and state laws and regulations relating to the security or confidentiality of PHI.

b. Negotiations. In the event that a federal or state law, statue, or regulation materially affects the Agreement or this Addendum, the "Parties" agree to negotiate immediately in good faith any necessary or appropriate revisions to the Agreement or this Addendum. If the "Parties" are unable to reach an agreement concerning such revisions within the earlier of sixty (60) calendar days after the date of notice seeking negotiations or the effective date of a change in law or regulation, or if the change is effective immediately, then "BCHF" may immediately terminate this Agreement upon written notice to Business Associate.

4.  Insurance and Indemnification

a. Insurance. Each Party, at its sole cost and expense, shall insure its activities in connection with this Addendum. Specifically, Business Associate and "BCHF" shall each obtain, keep in force and maintain insurance or equivalent programs of self-insurance with appropriate limits that shall cover losses that may arise

from breach of this Addendum, breach of security, or any unauthorized use of disclosure of PHI. It should be expressly understood, however, that the insurance required herein shall in no way limit the liability of Business Associate or "BCHF" with respect to its activities in connection with this Addendum

b. <u>Indemnification by Business Associate</u>  Business Associate agrees to defend at BCHF's election, indemnify, and hold harmless "BCHF", its officers, agents and employees from and against any and all claims, liabilities, demands, damages, losses, costs and expenses, (including costs and reasonable attorneys' fees) or claims for injury or damages that are caused by or result from the acts or omissions of Business Associate, its officers, agents or employees with respect to the use and disclosure of "BCHF's" PHI.

c. <u>Indemnification by "BCHF".</u>  "BCHF" agrees to defend at Business Associate's election, indemnify, and hold harmless Business Associate, its officers, agents and employees from and against any and all claims, liabilities, demands, damages, losses, costs and expenses, (including costs and reasonable attorneys' fees) or claims for injury or damages that are caused by or result from the acts or omissions of "BCHF", its officers, agents or employees with respect to the use and disclosure of "BCHF's" PHI.

5.    <u>Miscellaneous Provisions</u>

a. <u>Assistance in Litigation or Administrative Proceedings.</u> Business Associate shall make itself, and any subcontractors, employees or agents assisting Business Associate in the performance of its obligations under the Agreement and this Addendum, available to "BCHF" at no cost to "BCHF" to testify as witnesses, or otherwise, in the event of litigation or administrative proceedings against "BCHF", its directors, officers, agents or employees based upon claimed violation of HIPAA, the HIPAA Regulations or other federal and state laws and regulations relating to security and privacy and arising out of the Agreement or this Addendum.

b. <u>No Third Party Beneficiaries.</u> Nothing express or implied in this Addendum is intended to confer, nor shall anything herein confer upon any person other than "BCHF", Business Associate and their respective successors or assignees, any rights, remedies, obligations or liabilities whatsoever.

c. <u>Notice to Secretary.</u> If "BCHF" knows of a pattern of activity or practice of Business Associate that constitutes a material breach or violation of Business Associate's obligation under this Addendum, if the breach or violation continues, and if termination of this Addendum is not feasible, "BCHF" is required by HIPAA and the HIPAA Regulations to report the problem to the Secretary of Health and Human Services

d. <u>Survival.</u> The obligations of Business Associate under Sections 1(j), 1(k), 1(1), 1(m), 1(p), 2(b), 4(b), 4(c) and 5(a) of this Addendum shall survive the termination of this Agreement.

e. <u>Notices.</u> Any notices to be given to either party shall be made via U.S. Mail or express courier to the addresses given below:

BCHF:              Borrego Community Health Foundation

                   Attn. Bruce Hebets, Chief Executive Officer

                   Corporate Office

                   4343 Yaqui Pass Road

                   P.O. Box 2369

                   Borrego Springs, CA 92004-2369

                   Phone. (760) 767-6433



Dentist.           Magaly Velasquez, DDS

                   9130 Foothill Blvd

                   Rancho Cucamonga, CA 91730

                   Phone· 909-466-4999

f.  Interpretation. Any Each Party may change its address and that of its representative for notice by giving notice in the manner provided above.

g.  Interpretation. Any ambiguity in this Addendum shall be resolved in favor of a meaning that permits "BCHF" to comply with HIPAA, the HIPAA Regulations, and other applicable federal and state laws and regulations.

**SIGNATURES:**

Bruce Hebets, CEO

Borrego Community Health Foundation

Date:_____ 11.14·14

Magaly Velasquez, DDS

Dentist

Date:_____11 - 5 - 14._____

Addendum "D"

## ADDITION OF MEDI-CAL ADULT DENTAL
## AND SLIDING FEE

The Ninth Circuit Court of Appeals decision in *California Association of Rural Health Clinics vs. Douglas (738 F. 3d 1007, (2013))* allows for reinstatement of certain dental benefits for Medi-Cal beneficiaries ages 21 and older. Consequently, the parties desire to expand the services outlined in the Dental Service Agreements in include Adult Dental Services in accordance with this Addendum.

### SCOPE OF BENEFITS

The current scope of benefits for Federally Qualified Health Centers (FQHCs) for purpose of this contract is interpreted in the 2009 Denti-Cal Provider Handbook, Section 5, "Manual of Criteria and Schedule of Maximum Allowances." A copy will be provided by BCHF.

The scope of approved services is subject to change, with or without notice, upon further clarification provided by the Department of Healthcare Services or other regulatory agencies. The scope and reimbursement rate is outlined in "Addendum E". Any procedures not listed in "Addendum E" require prior approval from BCHF.

### EMERGENCY COVERAGE

Dentist is required to ensure appropriate availability during and after hours to ensure access to emergency dental services. Dentist will provide BCHF with a written plan of during and after hours coverage, which may include an answering service, message center, cell phone or other method of patient communication that ensures patients have access to address any dental emergencies. This may include referral to the emergency room, medication and/or care instructions.

### SLIDING FEE

As a requirement of the FQHC program, BCHF is required by the Health Resources and Services Administration (HRSA) to provide a sliding fee scale for those living at or below 200% of the Federal Poverty Level (FPL) who do not have insurance or whose insurance does not cover dental benefits.

As a condition of this Addendum D, Dentist must also implement the sliding fee scale program for the low income uninsured as further outlined in "Addendum F"

Bruce Hebets CEO                          Dentist: *Magaly Velasquez. DDS*

Date: _____11-14-14_____                  Date: _____11-5-14._____

Addendum "E"

## COMPENSATION OF DENTAL SERVICES
## ADULT MEDI-CAL

Services for Adults with current full scope Medi-Cal eligibility will be compensated on a per visit reimbursement rate as outlined below.  Crowns, root canals and bridges are subject to prior review and approval by the Dental Director.  If the service is not within the scope of "BCHF" the "Dentist" may bill this service directly to the payer as a private patient.

| Description | Codes (Denti-Cal rules apply) | Number of Visits | Special Consideration | Rate |
|---|---|---|---|---|
| Routine Exam and X-rays no Prophy | D0150, D0120 D0210, D0220, D0230, D0272, D0274 | 1 | Refer to Denti-Cal manual. | $100 per |
| Routine Exam and X-rays with Prophy | D0150, D0120 D0210, D0220, D0230, D0272, D0274, D111 | 1 | Refer to Denti-Cal manual. | $130 per |
| Office visit for observation | D9430 | 1 | For relief of pain and medication | $90 |
| Problem focused X-ray and procedure | D0220, D0230, D0270 D7140, D7210 D2140, D2150, D2160 | 1 | For treatment with extraction or filling | $120 |
| Prophylaxis only | D1110, D1120 D1203, D1204 | 1 | Must be in combination. | $100 |
| Fillings, Amalgam Resins, Posteriors | D2140, D2150, D2160, D2161 D2330, D2331, D2332, D2335 D2391, D2392, D2393, D2394 | 1 or more | Per quadrant | $120 per visit |
| Extractions - simple | D7111, D7140 | 1 | Per visit – multiple extractions under anesthesia are not in scope. | $100 |
| Extractions | D7210, D7220, D7230, D7240 | 1 or more | Per visit – multiple extractions under general anesthesia are not in scope. | $165 |
| Root Canal - Anterior | D3310 | 1 or more | Excludes final restoration | $230 global |
| Root Canal - Bicuspid | D3320 | 2 or more | Excludes final restoration | $290 global |

| Root Canal - Molar | D3330 | 2 or more | Excludes final restoration | $350 global |
|---|---|---|---|---|
| Crown | D2740,D275, D2791 | 2 or more | Prep and delivery in global fee. | $400 global |
| Re-cement Permanent Crown | D2920 | 1 | None | $50 |
| Unspecified restorative procedure by report | D2999 | 1 | None | $75 |
| Periodontal Scaling | D4341, D4342 | 1 | 2 quadrants per visit | $70 per quadrant |
| Incision and Drainage of Abscess | D7520 | 1 | None | $100 |
| Dentures (Includes first two adjustments) | D5110,D5120 | 6 or more | Maxillary and Mandibular | $550 each denture |
| Removable Partial (Includes first two adjustments) | D5213, D5214 | 6 or more | Maxillary and Mandibular | $500 each partial |
| Partial denture | D5211, D5212 ~stn plate~ | 3 or more | Maxillary and Mandibular | $280 each partial |
| Repairs | D5510, D5520, D5610, D5640, D5650, D5660 | 1 or more | Maxillary and Mandibular | $100 each visit |
| Adjustments only (not following delivery) | D5410, D5411, D5421, D5422 | 1 | Maxillary and Mandibular | $60 |
| Reline | D5730, D5731, D5740, D5741, D5850, D5851 | 1 | Maxillary and Mandibular | $100 per visit |
| Reline (Laboratory) | D5750, D5751 D5760, D5761 | 2 or more | Maxillary and Mandibular | $180 global |
| Bridge (3 Unit) | D6211, D6241, D6245, D6740 D6751 | 3 or more | | $500 global |
| Suture Removal | | 1 | Following a surgical procedure | $40 |

Addendum "F"
**DENTAL SLIDING FEE SCALE**
**SUMMARY OF BENEFITS**

As a Federally Qualified Health Center (FQHC), Borrego Community Health Foundation (BCHF) is required to provide a sliding fee scale program for patients living at or below 200% of the Federal Poverty Level (FPL). Services must be provided despite a patient's inability to pay. Ability to pay is determined through an eligibility process in which the applicant provides proof of income and family size.

As a contract dental partner of BCHF, you are required to extend the sliding fee scale program to your practice.

**Benefits:**
The sliding fee scale is a limited benefit program that provides discounted rates for services rendered within the dental practice of the organization and contracted sites only. It does not extend to services rendered by specialists to whom the clinic may refer the patient for additional care. The scope of benefits is limited to services as outlined in the current Denti-Cal Provider Handbook -- Manual of Criteria (Section 5).

The program includes:
- Exam and X-rays
- Cleaning
- Fluoride Application
- Fillings
- Extractions (Limited to scope of General Dentistry)
- Root Canals (Limited to scope of General Dentistry)
- Crowns (Limited to non-precious metal)
- Dentures ($150 co-payment)
- Bridges (co-payment 50% of cost)

**Eligibility:**
The application process and eligibility determination is outlined in the BCHF Sliding Fee Policy and Procedure, which is amended from time to time to reflect current FPL (revised on an annual basis and published April 1.

Information regarding the Sliding Fee program will be made available in your office for cash patients that may desire to apply. Application assistance and eligibility determination will be conducted by BCHF staff upon referral from your office. Your office may be required to provide limited assistance (e.g. emailing an application or referring the applicant to one of our local clinics for assistance). Uninsured applicants will receive information about other program eligibility including Medi-Cal and/or Covered California and assisted with applying for these programs if deemed eligible.

Patients with family income at or below 100% of Federal Poverty Level (FPL) will pay a nominal fee of $50 per visit. All others living at or below 200% of poverty are assessed for a discounted rate for services based on the BCHF fee schedule that is part of this addendum. Adults and children with commercial dental benefits may also apply for the Sliding Fee to assist with the cost of co-payments and deductible charges if all other qualifications are met.

Your office will collect from eligible patients the allowed fee according to the sliding scale and the BCHF fee schedule. The amount you collect from patients shall represent payment in full for services rendered under this sliding fee program. However, BCHF will pay an additional $5.00 upon receipt of a super bill for services rendered.

## Program Exclusions:

- Referrals to all specialists including but not limited to:
    - Oral Surgery
    - Endodontist
    - Periodontist
    - Orthodontist
    - Pedodontist
- Teeth Whitening
- Orthotics not listed
- Orthodontics
- Nobel Metal crowns
- Cosmetic procedures
- Mouth Guards

Bruce Hebets CEO

Date: _____ 11 7 14

Dentist: _Magaly Velasquez, DDS_

Date: _____ 11-5-14.

### Dental Sliding Fee Discount

| Sliding Fee | A | | B | C | D | E |
|---|---|---|---|---|---|---|
| Level of Poverty | 0-100% | Level of Poverty | 101-125% | 126-150% | 151-175% | 176 -200% |
| Nominal Fee | $50 | Percent Discount | 25% | 20% | 15% | 10% |

Revised 10/16/2012

EXHIBIT J
PAGE 367