State of California—Health and Human Services Agency

# Department of Health Care Services



**WILL LIGHTBOURNE**
*DIRECTOR*

**GAVIN NEWSOM**
*GOVERNOR*

August 3, 2021

Board of Trustees
c/o Dr. Edgar Bulloch, Interim Chief Executive Officer
Borrego Community Health Foundation
P.O. Box 2369
Borrego Springs, CA 92004-2369

**RE: Notice of Corrective Action Plan**

Dear Trustees:

As you are aware, the Department of Health Care Services (DHCS) implemented a payment suspension on Borrego Community Health Foundation (Borrego) on November 18, 2020, as a result of an investigation for fraud against the Medi-Cal program. The payment suspension prohibited Borrego from directly or indirectly receiving any reimbursement for the provision of health care service to Medi-Cal members, including payments made by DHCS and any Medi-Cal managed care plans that contract with Borrego. The payment suspension was imposed in accordance with Welfare and Institutions Code, section 14107.11, and the Code of Federal Regulations, Title 42, section 455.23.

On January 27, 2021 and February 26, 2021, DHCS and Borrego entered into a Term Sheet and a Stipulated Agreement (The Agreements), respectively, which provided that DHCS would partially lift Borrego's Medi-Cal payment suspension relating to medical services provided to Medi-Cal members. The payment suspension and Medi-Cal reimbursement prohibition imposed on Borrego continues in full force and effect as it relates to the provision of Medi-Cal dental services. We have attached the Agreements to this correspondence for your convenience.

Pursuant to the terms of the Agreements, Borrego agreed to certain actions such as compliance with all federal and state Medi-Cal laws and the retention and payment of an independent monitor selected solely by DHCS to observe and analyze Borrego's overall operations and make recommendations for improvement.

Dr. Edgar Bulloch
August 3, 2021
Page 2

The Stipulated Agreement dated February 26, 2021 states the following in Paragraph 9(b)(ix):

Borrego shall promptly and fully implement all corrective actions identified by the independent monitor or DHCS, upon notice from DHCS. Corrective action could include, but is not limited to, the removal of paid and non-paid personnel implicated in misconduct related to Medi-Cal billing and the return of any overbilling amounts. A failure by Borrego to promptly and fully implement the corrective action may, at DHCS' discretion, subject Borrego to immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension.

Pursuant to the Agreements, the Berkeley Research Group (BRG) was retained by Borrego on February 9, 2021, as the Independent Monitor, and immediately began their assessment of Borrego's overall operations. BRG has completed a preliminary assessment of Borrego's operations and has identified deficiencies that will be addressed in a three phase Corrective Action Plan (CAP). As such, DHCS has concluded that a CAP is warranted.

This letter serves as formal notice that DHCS is placing Borrego under a CAP. DHCS requires that Borrego, its Board of Trustees, and its Executive Management Team review the attached CAP and take the actions required within the specified timeframes. Please note that additional CAPs will be forthcoming upon the completion of the various action items contained in this CAP. Additionally, DHCS is requiring that Borrego's Chief Executive Officer report the status of CAP actions to BRG on a weekly basis and Borrego formally acknowledge the receipt of this correspondence, and CAP within 10 days from its receipt.

Should you have any questions concerning the CAP, please feel free to contact Stuart Busby, Senior Advisor at stuart.busby@dhcs.ca.gov or (916) 247-5801.

Sincerely,

Bruce Lim, CPA
Deputy Director

**Department of Health Care Services**
**Borrego Community Health Foundation**
**Corrective Action Plan**
**August 3, 2021**

Berkeley Research Group (BRG), the Independent Compliance Monitor for Borrego Community Health Foundation (Borrego), has provided an independent assessment of the operational, financial, and compliance issues pertaining to Borrego, to the Department of Health Care Services (DHCS). BRG's assessment and the corresponding recommendations have been taken into consideration by DHCS in the development of the Corrective Action Plan (CAP) and are presented below. As stated previously, DHCS requires that Borrego's Board of Trustees and Executive Management Team act on the CAP actions within the specified timeframes and the Chief Executive Officer (CEO) of Borrego must report the status of each action item to BRG on a weekly basis in order that BRG and DHCS can determine if the required actions have been successfully completed. Please note, that failure to act on the required actions within the requested timeframes may result in a partial payment suspension, or full reinstatement of the 100% payment suspension that was initially imposed in accordance with Welfare and Institutions Code, section 14107.11, and the Code of Federal Regulations, Title 42, section 455.23.

**OPERATIONS:**

**Realignment of Organizational Structure**

> **Finding:**
> The assessment of Borrego's historical and current organizational structure identified that in addition to operating in silos, the organization did not assign responsibility to individuals or departments with respect to the performance tracking of assignments and projects. Furthermore, Borrego failed to document, track progress, and communicate across the organization its initiatives and plans. This condition has resulted in material operational, financial, and compliance deficiencies.

> **Required Action:**
> Borrego must develop and implement a comprehensive plan to realign the current organizational structure. This comprehensive plan must consider the assignment of accountability and responsibility based upon the realigned hierarchy and the specific business processes, and effectuate a tracking and reporting of the progress of assignments.

> **Timeframe:**
> Borrego had started the realignment of the organization structure and is required to complete the required action within 30 days of receipt of this report.

**KEY POSITIONS:**
<u>**Vacancies**</u>

**Finding:**
Borrego has four key executive level openings that include:
1.     Chief Executive Officer
2.   Chief Compliance Officer (CCO);
3.   Chief Quality Officer (CQO); and
4.   Chief Medical/Clinical Director (CMCD).

The CCO and CQO both left Borrego in mid-2020 and the positions have not been filled.   Dr. Bulloch, who is also the Chief Medical Officer (CMO), was elevated by the Board of Trustees to Interim CEO, creating a conflict between his overall duties and responsibilities to steward Borrego through a period where it has lost 66 percent of its gross revenues and faces multiple compliance issues, and his duties to oversee the medical operations of 14 clinics, as well as contract providers.

Currently, Borrego's Chief Operating Officer (COO) oversees the compliance function, which is not a best practice.  Best practices would require a compliance officer independent of any operational duties.  Additionally, BRG has found that that the Quality Assurance (QA) Department is being managed by an individual with limited QA program experience.

**Required Actions:**
1.  Borrego at a minimum shall recruit and fill the positions of CEO, CCO, CQO, and CMCD, either on an interim or permanent basis.
2.  The CCO candidate must have industry standard of practice experience in developing and implementing a robust compliance program that complies with State, Federal, and HRSA requirements.
3.  The CQO candidate must have past QA leadership experience and extensive FQHC QA experience.
4.  The CMCD candidate must have experience in providing oversight and leadership of the medical and dental departments.
5.  The interim CEO must vacate the CMO position once aCMCD is hired either on an interim or permanent basis.
6.  The COO must vacate the compliance function position that he/she currently holds once an interim or permanent CCO is hired.

**Timeframe:**
Borrego is in the process of recruiting for the aforementioned vacancies.  If Borrego is unable to hire for any of these positions on a permanent basis within 30 days of receipt of this report, then Borrego  must fill any vacant positionwith an experienced interim executive within the same time frame. Additionally, all four positions (CEO, CCO, CQO, and CMCD) must be filled on a permanent basis within 90 days of receipt of this report.

**Anti-Nepotism Policy**

**Finding:**
Borrego has failed to adopt and implement an effective anti-nepotism policy that provides for full and fair disclosure of familial relationships to the Board of Trustees. The current operational, financial, and compliance issues that Borrego is experiencing are in part, the consequences of not implementing and adhering to an effective anti-nepotism policy.

**Required Actions:**
1. Borrego must develop, obtain Board of Trustees approval, and implement an anti-nepotism policy.  Borrego, its Board of Trustees, and its Executive Management Team must ensure compliance with the policy going forward.
2. Inform BRG and DHCS of any and all actions taken in respect to nepotism identified since the implementation of the Agreement with DHCS.

**Timeframe:**
Borrego is in the process of developing and implementing the aforementioned policy and must complete the required actions within 30 days of receipt of this report.

**FINANCIAL MANAGEMENT:**

**Financial Reporting**

**Finding:**
Borrego does not have the following financial management tools to guide the entity through the decision-making process during normal and critical times:
1. Monthly financial reporting by revenue and cost centers (individual clinics) to determine which clinics are operating at a profit or loss.
2. A corporate overhead expense allocation methodology.
3. Monthly cash flow projection that reports the sources and uses of funds by individual clinic, contract operations, as well as corporate administrative operations.
4. A short-term and long-term business plan and projection.

**Required Actions:**
1. Develop a monthly financial reporting process for all revenue and cost centers. Ensure that these reports are disseminated to the Executive Management Team and the Board of Trustees timely, and that the Chief Financial Officer (CFO) briefs both parties on the results.  Submit to BRG for review and approval prior to implementation.
2. In conjunction with the implementation of the monthly financial reporting process, develop a corporate administration overhead allocation methodology. Submit this allocation methodology to BRG for review and approval prior to implementation.

3. Develop a monthly cash flow projection by revenue and cost center, as well as the overall operations.  Ensure that these reports are disseminated to Executive Management Team and the Board of Trustees timely, and that the CFO briefs both parties on the results. Submit to BRG for review and approval prior to implementation.

4. Develop a short-term and long-term forecast and business plan for Borrego. The short-term and long-term forecasts, and plans must consider three scenarios: a worse-case scenario, a mid-point scenario, as well as a best-case scenario.  Submit the forecasts and plans to BRG for review and approval prior to implementation.

**Timeframe:**
Borrego is in the process of completing action items 1, 2, and 3 and they must be completed within 30 days of receipt of this report. Item 4 must be completed within 60 days of this report.

**COMPLIANCE:**

**Compliance Committee**

**Finding:**
The compliance function within Borrego has historically reported to the Chief Executive Officer (CEO) and has not updated the Board of Trustees on the ongoing compliance activities occurring at Borrego.

**Required Action:**
Create an Independent Compliance Committee (CC) comprised of the CCO and other senior executives of relevant departments, such as billing, clinical, human resources, finance, and operations. Ensure that CC has unfettered access to the Board of Trustees for reporting.

**Timeframe:**
Borrego is in the process of restructuring the CC and must complete this required action within 30 days of receipt of this report and inform BRG of its completion.

**Quality Assurance**

**Finding:**
Borrego's current Quality Management Plan (QMP) states that quality monitoring will occur and be complete. A review of Borrego's Quality Management (QM) minutes indicate a lack of quality monitoring reports, findings, interventions, and effective corrective actions. The QMP is based on HEDIS outcome measures and does not include the monitoring and evaluation of patient outcomes. Borrego's quality policies, such as Quality Performance Measurement, Quarterly Quality Assessment, and Quality Improvement, are limited to policy statements that do not describe any procedures on how quality monitoring will be

implemented, reported, acted on, or re-evaluated for effectiveness.  Additionally, the policies do not describe how thresholds for quality compliance are determined and how quality results are communicated with the staff, as well as how the denominators and numerators are determined for the percentage of encounters that are to be reviewed.

**Required Actions:**
1. Borrego must assess and revise the current QMP to reflect Health Resources and Services Administration (HRSA) standards requirements.
2. Document in the QMC minutes the actual quality monitor findings and attach, and reference the actual quality reports.
3. Reassess the effectiveness of the QMC and consider the addition of practitioners as QMC members.
4. Borrego must expand the QMP to include:
   a) The monitoring of appropriate utilization of services (i.e., over-and-under-utilization);
   b) Access and availability;
   c) Monitoring patient outcomes; and
   d) The effectiveness of care and organizational determinations (utilization management referral process).

**Timeframe:**
Borrego must complete the required actions within 90 days of receipt of this report.

## Lease Agreements

**Finding:**
BRG has identified apparent conflicts of interest pertaining to four lease agreements. The Barstow Clinic, D Street Clinic in San Bernardino, and El Cajon Clinic lease agreements were entered into between the former CEO and a close childhood friend, where the lease terms:

1. Are materially higher than fair market value (FMV) or no rent was specified,
2. Have a 20-year or 30-year duration; and
3. Contain no termination clause for the tenant Borrego.

Separately, the Julian Barn lease was entered into with a not for profit organization (NPO) where the individual signing the lease and the leader of the NPO was a Borrego board member until October of 2020.  The terms of this lease include:

1. No specified initial lease rate and current lease rates that are materially higher than fair market value (FMV);
2. A statement that Borrego did not use the property and therefore no value was obtained;

3. A 20-year duration; and
4. No termination clause for the tenant Borrego.

**Required Action:**
Borrego is in the process of examining and taking legal action concerning the aforementioned lease agreements and in order to complete this process, it must accomplish at least one of the following:

1. Renegotiate the lease terms to FMV rates including a termination clause with a reasonable notice period;
2. Terminate the lease by mutual agreement of the parties as Borrego must not pay higher than FMV lease rates to any landlord/ lessor;
3. Evaluate the legality of the leases and determine the legal options for restructuring the lease to FMV with a termination clause or outright termination;
4. Determine if cost reports were filed for the aforementioned locations that included lease costs that were above FMV. Additionally, determine if the apparent conflict of interest was disclosed to DHCS when filing occurred; or
5. Remediate any cost report filings that contain above FMV costs for the four leases in question by filing amended cost reports. Ensure that the appropriate related party disclosures are made in the amended filings.

**Timeframe:**
Borrego must complete the required actions within 90 days of receipt of this report.

## Third Party Provider Contracts

**Finding:**
BRG has identified several "Contract Medical Agreements" that potentially have compliance issues.

**Required Action:**
Borrego must obtain a legal review all "contract medical agreements" and address any compliance issues noted by the reviewing counsel.

**Timeframe:**
Borrego must complete the required action item within 90 days of receipt of this report.

## AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION TO MODIFY NOVEMBER 18, 2020 PAYMENT SUSPENSION PURSUANT TO WELFARE AND INSTITUTIONS CODE, SECTION 14107.11

1.      The California Department of Health Care Services ("DHCS" or "Department") and Borrego Community Health Foundation ("Borrego") (collectively, "the Parties") enter into the following stipulated agreement ("Agreement").

### RECITALS

2.      Borrego is enrolled in the California Medical Assistance Program ("Medi-Cal") and is a non-profit 501(c)(3) Federally Qualified Health Center (FQHC).  Edgar Bulloch, MD is the current Interim Chief Executive Officer of Borrego. Borrego is represented in this matter by Joseph LaMagna of Hooper, Lundy & Bookman, P.C.

3.      On November 18, 2020, DHCS sent a Notice of Payment Suspension (NPS) to Borrego and Medi-Cal managed care plans who contract with Borrego (Attachment A). The payment suspension prohibited Borrego from directly or indirectly receiving any reimbursement for the provision of health care service to Medi-Cal members, including payments made by DHCS and any Medi-Cal managed care plans that contract with Borrego. The payment suspension was imposed in accordance with Welfare and Institutions Code, section 14107.11, and the Code of Federal Regulations, Title 42, section 455.23.

4.      Borrego is currently under investigation by the California Attorney General's Division of Medi-Cal Fraud and Elder Abuse for fraud against the Medi-Cal program.

5.      On December 16, 2020, the Parties held a meet and confer conference pursuant to Welfare and Institutions Code, section 14123.05 to discuss the payment suspension.

6.      On January 27, 2021, DHCS and Borrego executed a Term Sheet outlining an agreement regarding the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11 (Attachment B). Pursuant to the Term Sheet, DHCS partially lifted the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11 as it related to medical services provided to Medi-Cal members.  The payment suspension and Medi-Cal reimbursement prohibition imposed on Borrego continued in full force and effect as it relates to the provision of Medi-Cal dental services. Borrego agreed to the appointment of an independent monitor selected by DHCS whose duties included instituting a robust corporate integrity and compliance program at Borrego. Borrego also waived its appeal rights relating to (a) the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11; (b) the Term Sheet, and (c) the contemplated formal agreement.

7.      On January 29, 2021, DHCS sent a letter notifying Borrego of the modified payment suspension.

8.      The provisions of this Agreement supersede the Term Sheet.

## **TERMS**

9.      In order to avoid the expense, inconvenience, and uncertainty of litigation, Borrego agrees as follows:

a.  **General Terms**

i.  Borrego must comply with all federal and state Medi-Cal law, including, but not limited to, proper billing for Medi-Cal services.

ii.  Borrego must cooperate and comply with all routine and non-routine DHCS audits and investigations activities.

iii.  Borrego must preserve all of its business, billing, and patient records until the conclusion of the Department of Justice's investigation; DHCS' payment suspension, as modified, is resolved; and in accordance with all applicable

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

state and federal record retention requirements, whichever is later. Borrego further agrees to take all necessary steps to suspend all regularly scheduled document destruction activities.

**b. Independent Monitor**

    i. On February 9, 2021, Berkeley Research Group, LLC and Borrego entered into an independent monitor agreement (Attachment C). The terms of this independent monitor agreement are incorporated herein. In the event of any conflict between this Agreement and this independent monitor contract, the terms of this Agreement shall control.

    ii. If the independent monitor becomes unable or unwilling to continue its duties, or DHCS determines that it is appropriate to appoint a new independent monitor, Borrego must finalize the retention of the new independent monitor within 7 calendar days of DHCS identifying the new independent monitor, subject to DHCS review and approval of the contract terms.

    iii. Subject to the limitations of the attorney-client privilege described below, Borrego agrees that the independent monitor has complete and full access to all books and records in Borrego's possession, custody, or control; locations; employees; independent contractors; officers; board members; and any other Borrego affiliates. Borrego agrees to make employees, independent contractors, officers, board members, and any other Borrego affiliates available for interviews and to cooperate with the independent monitor and DHCS. Borrego agrees that the independent monitor is authorized to attend all Borrego operational meetings and participate in all Borrego activities, including open and closed board meetings, except Borrego may exclude attorney-client oral and written communications and the monitor may be excluded from Borrego meetings with their legal

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

counsel regarding attorney-client privileged information. Borrego agrees to provide a privilege log to the monitor for all excluded oral and written communications and meetings. Borrego agrees that the independent monitor has unrestricted access to all electronic and paper records in Borrego's possession, custody, or control, except for attorney-client privileged materials. Borrego and the independent monitor may contact DHCS to discuss any questions about Borrego's assertion of the attorney-client privilege. Borrego agrees that the independent monitor is permitted to conduct periodic and/or unannounced reviews of Borrego at any time, with or without prior notification to Borrego.

iv.  Borrego is responsible for timely payment of all costs and fees associated with the independent monitor's services.

v.  Borrego agrees that the independent monitor shall take direction from and work exclusively for the benefit of DHCS. Borrego agrees that monitor shall report directly to DHCS.

vi.  Borrego agrees that the independent monitor shall provide periodic reports to DHCS as requested. Borrego agrees that the reports shall be in a manner and format determined by DHCS. The independent monitor's reporting duties are solely to DHCS. DHCS is not obligated to share the independent monitor's reports with Borrego.

vii.  Borrego agrees that the independent monitor shall schedule periodic meetings with Borrego and DHCS to discuss corporate integrity, corrective action, and compliance with federal and state Medi-Cal law.

viii.  Borrego shall institute a robust corporate integrity and compliance program to ensure compliance with all Medi-Cal law in accordance with the recommendations of the independent monitor.

ix.   Borrego shall promptly and fully implement all corrective action identified by the independent monitor or DHCS upon notice from DHCS. Corrective action could include, but is not limited to, removal of paid and non-paid personnel implicated in misconduct related to Medi-Cal billing and the return of any overbilling amounts. A failure by Borrego to promptly and fully implement the corrective action may, at DHCS' discretion, subject Borrego to immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension.

x.   Borrego agrees to conduct a retrospective review of claims billed to the Medi-Cal program, including but not limited to overpaid claims, including wrap around (Code 18) payments, beginning from January 1, 2016 to the present, which will be overseen by the independent monitor and DHCS, and/or by any other entity contracted by DHCS or the independent monitor. Given the volume of claims involved, statistically valid sampling and extrapolation may be used at the discretion of DHCS and the independent monitor consistent with statistical extrapolation and probability sampling guidelines in California Code of Regulations, Title 22, section 51458.2 and all other applicable authorities. Borrego acknowledges its obligation, pursuant to Section 1128J(d)(1) of the Social Security Act and all other applicable authorities, to report and return any overpayments to Medi-Cal. Borrego agrees to use its best efforts to cooperate and identify overpayments and repay them. DHCS reserves all rights to pursue any remedies against Borrego, including, but not limited to, repayment, payment suspensions, temporary suspensions, interest, and penalties.

xi.   Neither Borrego nor any of its officers, employees, independent contractors, or any other affiliate of Borrego shall do anything to hinder or obstruct the independent monitor's performance under the independent monitor contract

and pursuant to this Agreement. Borrego agrees to honestly, fully, and continuously cooperate with any of its contracted health care service plans, DHCS, and/or the independent monitor in the continuing investigation of Borrego. Upon request by DHCS, Borrego agrees to provide a notice approved by DHCS to each Borrego officer, employee, independent contractor, or affiliate with a directive to fully and openly cooperate with and provide information directly to the independent monitor and/or to DHCS. Borrego shall not represent the identity of the independent monitor in terms that may otherwise conceal the purpose or authority of the independent monitor.

xii. Borrego agrees that the independent monitor is explicitly permitted to communicate with DHCS in any manner and disclose any information to DHCS without limitation and without notification to Borrego. DHCS may communicate with the independent monitor and/or exchange information with the independent monitor at any time that DHCS deems necessary and for any purpose related to any matter regarding Borrego.

xiii. Borrego acknowledges and accepts that all communications and records between Borrego and the independent monitor may be disclosed to DHCS. This includes any documents the independent monitor believes that DHCS should review.

xiv. DHCS will evaluate the continuing need for monitor services semiannually, and will discuss its determination with Borrego. The monitor shall remain in place until DHCS determines that the independent monitor is no longer necessary.

c. **Payment Suspension**

i. The November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11, which

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

prohibited Borrego from directly or indirectly receiving any reimbursement for the provision of health care service to Medi-Cal members, including payments made by DHCS and any Medi-Cal managed care plans that contract with Borrego, is modified as follows.

ii.  As of January 29, 2021, DHCS has partially lifted Borrego's Medi-Cal payment suspension relating to medical services provided to Medi-Cal members. Medi-Cal managed care plans may resume reimbursing Borrego for the provision of medically necessary medical services provided to Medi-Cal members. Borrego may also submit medical claims to DHCS for fee-for-service medical services and wrap payments.

iii. The payment suspension and Medi-Cal reimbursement prohibition imposed on Borrego continues in full force and effect as it relates to the provision of Medi-Cal dental services. Reimbursement for Borrego's dental claims will be determined through the resolution of the payment suspension.

iv. Borrego is prohibited from receiving reimbursement from DHCS, Medi-Cal managed care plans, or the Medi-Cal program for dental services provided to Medi-Cal members until DHCS either further modifies the payment suspension or lifts the payment suspension in its entirety. Medi-Cal managed care plans will continue to be directed that they are prohibited from reimbursing Borrego's dental claims until further notice.

v. Borrego must use Code 3 (dental services) when submitting dental claims to DHCS, the Medi-Cal managed care plans, and the Medi-Cal program. If Borrego receives reimbursement for any dental claims, it must return those payments to DHCS, the Medi-Cal managed care plan, or the Medi-Cal program within 30 calendar days. The failure to return dental claim reimbursement may, at DHCS' discretion, subject Borrego to the reinstatement of the November 18, 2020 Medi-Cal payment suspension

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11.

    vi.  Borrego must include the actual rendering provider's name and NPI on all claims submitted to DHCS and Medi-Cal managed care plans.

**d. Waiver of Appeal Rights**

    i.  Borrego is represented by legal counsel and is fully aware of its legal rights to contest the payment suspension, including (without limitation) the right to appeal the payment suspension pursuant to Welfare and Institutions Code, section 14043.65 and Code of Civil Procedure, section 1085.

    ii.  Subject to Paragraph 8(d)(iii), Borrego voluntarily, knowingly, and intelligently waives and give up its rights to challenge or to seek any further review of:

        1.  The November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11;

        2.  The Term Sheet; and

        3.  This Agreement.

    iii.  In the event that DHCS determines that Borrego has failed to perform any of its obligations under this Agreement and further modifies the payment suspension, Borrego shall be permitted to challenge DHCS' action pursuant to Welfare and Institutions Code, sections 14043.65 and 14123.05.

**e. Scope of Agreement**

    i.  No provision in this Agreement is intended to limit or restrict the ongoing or new investigations of Borrego's Medi-Cal activities.

    ii.  No provision in this Agreement is intended to limit or restrict the filing of a criminal or civil action, or limit any claims that may be made in any such action, by any federal, state, or local prosecuting, administrative, or regulatory authorities.

iii. In the event that DHCS identifies new or different information demonstrating that Borrego is non-compliant with Medi-Cal laws or regulations, DHCS, at its discretion, may at any time:

1. impose a temporary suspension pursuant to Welfare and Institutions Code, section 14043.36 or

2. impose a new payment suspension, reinstate, or modify an existing payment suspension, pursuant to Welfare and Institutions Code, section 14107.11.

iv. No provision in this Agreement precludes DHCS from taking action to recover any overpayments Borrego may have received.

v. Nothing in this Agreement shall, nor shall this Agreement be construed to, limit or affect in any way any rights any individual enrollee may have under any law or laws, including without limitation remedies available to the enrollee under Medi-Cal law, including the Knox-Keene Health Care Service Act of 1975.

vi. The adoption of this Agreement shall not operate as a policy directive nor be considered precedential or binding upon DHCS regarding similar issues that may arise with other parties or in another action concerning Borrego, pending or future. It is expressly understood that the terms of this Agreement pertain to this specific action and are not intended to affect any other action that is not mentioned herein.

f. **Enforcement of Agreement**

i. Borrego agrees that DHCS may exercise any and all aspects of its enforcement authority to enforce Borrego's compliance with any and/or all of its obligations under this Agreement, and that any remedy available to the Director is not exclusive, and may be sought and employed in any

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

combination with civil, criminal, and other administrative remedies deemed warranted by the Director to enforce this Agreement.

ii.   This Agreement shall be governed by and construed in accordance with the laws of the State of California.

iii.  Each Party irrevocably submits to the jurisdiction of the California Office of Administrative Hearings and Appeals located in Sacramento, or the California superior court located in Sacramento County, over any suit, action or other proceeding arising out of or relating to this Agreement and irrevocably agrees that all claims with respect to any such suit, action or proceeding may be heard and determined in such venue.

iv.   A violation of any provision of this Agreement may subject Borrego, at DHCS' discretion, to an immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11. Violations of this Agreement include but are not limited to Borrego's officers and executives failing to fulfill any of its obligations under this Agreement; acting in a manner contrary to the terms of this Agreement; or repudiating any part of this Agreement either verbally, in writing, or by conduct. Borrego agrees to require its officers, executives, independent contractors, and employees to comply with the terms of this Agreement and further agrees to take immediate remedial action in the event that any of these individuals fails to fulfill the obligations of this Agreement, acts in a manner contrary to the terms of this Agreement, or repudiates any part of this Agreement verbally, in writing, or by conduct. Borrego's failure to take appropriate action to ensure compliance with this Agreement against such officer, employee, independent contractor, or affiliated individual shall provide the basis for a violation of this Agreement.

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

**g. Additional Provisions**

    i.  This Agreement shall be effective on the date that all parties have signed the Agreement.

    ii.  The Parties have carefully read and have fully discussed or had the opportunity to fully discuss with counsel and understand and acknowledge the effects of this Agreement, its significance, and its consequences. The Parties acknowledge and agree that each had full opportunity to consult with attorneys or legal or other advisors of their choice.

    iii.  The undersigned warrant that they have authority to agree to the terms of this Agreement and that this Agreement was entered into without threat or coercion. The Parties enter into this Agreement freely, knowingly, and voluntarily.

    iv.  The Parties further agree that this Agreement is the product of their mutual preparation and accordingly shall not be deemed to have been prepared or drafted by either party. The Parties further agree that any court seeking to interpret this Agreement should construe it as the product of mutual preparation.

    v.  This Agreement is intended by the Parties to be an integrated writing representing the complete, final, and exclusive embodiment of their Agreement. It supersedes any and all prior or contemporaneous agreements, understandings, discussions, negotiations, and commitments (written or oral), including the Term Sheet. This Agreement may not be altered, amended, modified, supplemented, or otherwise changed except by a writing executed by an authorized representative of each of the Parties.

    vi.  This Agreement shall be binding upon and inure to the benefit of the Parties and to their respective successors in interest, licensees, heirs, representatives, executors, administrators, agents, and assigns.

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

vii.  The Parties will each bear their own attorneys' fees and costs.

viii.  If any of the terms of this Agreement are found to be invalid, illegal, or unenforceable in any respect, the remaining provisions shall nevertheless be binding with the same effect as if the invalid, illegal, or unenforceable terms or terms were originally deleted.

ix.  The Parties acknowledge that this Agreement is a public record as required by Government Code section 11517, subdivision (d).

x.  Borrego is familiar with the provisions of California Civil Code section 1542, which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Borrego, being aware of California Civil Code section 1542, expressly waives any rights it may have under this section, as well as under any other statutes or common law principals of similar effect, with respect to claims for damages against the State of California and/or DHCS resulting from the dispute or facts that are the subject of this Agreement.

xi.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties further agreed that faxed, scanned, or electronically signed signature pages and multiple signature pages shall have the same force and effect as the originals.

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

1

2
Dated: 2·25·2021

3

4

5

6

7
Dated: 2/26/21

8

9

10

11

12

13

14
Dated: February 26, 2021

15

16

17

18

19
Dated: February 26, 2021

20

21

22

23

24

25

26

27

28

**APPROVED AND ACCEPTED:**

EDGAR BULLOCH, MD

Interim Chief Executive Officer for
BORREGO COMMUNITY HEALTH
FOUNDATION

BRUCE LIM, CPA

Deputy Director, Audits and Investigations, for
DEPARTMENT OF HEALTH CARE SERVICES

**APPROVED AS TO FORM:**

JOSEPH R. LAMAGNA

Attorney for BORREGO COMMUNITY HEALTH
FOUNDATION

JOHN PUENTE

Chief Counsel for DEPARTMENT OF HEALTH
CARE SERVICES

STIPULATION AND AGREEMENT BETWEEN THE CALIFORNIA DEPARTMENT OF HEALTH CARE
SERVICES AND BORREGO COMMUNITY HEALTH FOUNDATION

**DHCS AND BORREGO TERM SHEET**

This Term Sheet is intended to outline an agreement between the Department of Health Care Services (DHCS) and Borrego Community Health Foundation (Borrego) (the Parties) regarding a November 18, 2020 Medi-Cal[1] payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11. The payment suspension prohibits Borrego from directly or indirectly receiving any reimbursement for the provision of health care service to Medi-Cal members, including payments made by DHCS and any Medi-Cal managed care plans that contract with Borrego.

This Term Sheet is provisional and is executed in contemplation of a formal settlement agreement. If a formal settlement agreement is not fully executed within 30 calendar days of the full execution of this Term Sheet, all provisions of this Term Sheet are immediately null and void, and the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11 will be reinstated.

**Agreement Terms:**

1. Borrego agrees:

    A. To comply with all federal and state Medi-Cal law, including, but not limited to, proper billing for Medi-Cal services.

    B. To cooperate and comply with all DHCS audits and investigations activities as scheduled.

    C. To preserve all of its business, billing, and patient records until the conclusion of the Department of Justice's investigation and DHCS' payment suspension, as modified, is resolved; and further agrees to take all necessary steps to suspend all regularly scheduled document destruction activities.

    D. To retain and reimburse an independent monitor selected solely by DHCS who shall have complete and full access to all books and records in Borrego's possession, custody, or control; locations; employees; officers; and board members. The independent monitor shall be authorized to attend all Borrego operational meetings and participate in all Borrego activities, including open and closed board meetings, except Borrego may exclude attorney-client oral and written communications and the monitor may be excluded from Borrego meetings with their legal counsel regarding attorney-client privileged information. Borrego agrees to provide a privilege log to the monitor for all excluded oral and written communications and meetings. The independent monitor shall have unrestricted access to all electronic and paper records in Borrego's possession, custody, or control. The monitor shall report directly to DHCS.

    E. To finalize the retention of the independent monitor within 7 calendar days of DHCS identifying the independent monitor, subject to DHCS review and approval of the contract terms. DHCS will evaluate the continuing need for monitor services

---

[1] For the purposes of this Term Sheet, all references to the term "Medi-Cal" shall mean Medi-Cal and Medicaid.

semiannually, and will discuss its determination with Borrego. The monitor shall remain in place until DHCS determines that the independent monitor is no longer necessary.

F.   To be responsible for timely payment of all costs and fees associated with the independent monitor's services.

G.   To institute a robust corporate integrity and compliance program to ensure compliance with all Medi-Cal law in accordance with the recommendations of the independent monitor.

H.   That the independent monitor shall provide periodic reports to DHCS as requested. The reports shall be in a manner and format determined by DHCS. The independent monitor's reporting duties are solely to DHCS. DHCS is not obligated to share the independent monitor's reports with Borrego.

I.   That the independent monitor shall schedule periodic meetings with Borrego and DHCS to discuss corporate integrity, corrective action, and compliance with federal and state Medi-Cal law.

J.   To promptly implement all corrective action identified by the independent monitor or DHCS upon notice from DHCS.  Corrective action could include, but not be limited to, removal of paid and non-paid personnel implicated in misconduct related to Medi-Cal billing. A failure by Borrego to timely and properly implement the corrective action may, at DHCS' discretion, subject Borrego to immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11.

K.   To not receive reimbursement from DHCS, Medi-Cal managed care plans, or the Medi-Cal program for dental services provided to Medi-Cal members until DHCS either further modifies the payment suspension or lifts the payment suspension in its entirety.

L.   To use Code 3 (dental services) when submitting dental claims to DHCS, the Medi-Cal managed care plans, and the Medi-Cal program. If Borrego receives reimbursement for any dental claims, it must return those payments to DHCS, the Medi-Cal managed care plan, or the Medi-Cal program within 30 calendar days. The failure to return dental claim reimbursement may, at DHCS' discretion, subject Borrego to the reinstatement of the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11.

M.   To include the rendering provider's name and NPI on all claims submitted to DHCS and Medi-Cal managed care plans.

2.   Payment Suspension

A. The November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11, which prohibited Borrego from directly or indirectly receiving any reimbursement for the provision of health care service to Medi-Cal members, including payments made by DHCS and any Medi-Cal managed care plans that contract with Borrego, is modified as follows.

  1) Within 10 calendar days of the full execution of this Term Sheet, DHCS will partially lift Borrego's Medi-Cal payment suspension relating to medical services provided to Medi-Cal members. Once the suspension is partially lifted, Medi-Cal managed care plans may resume reimbursing Borrego for the provision of medically necessary services provided to Medi-Cal members. Borrego may also begin submitting claims to DHCS for fee-for-service medical services and wrap payments.

  2) The payment suspension and Medi-Cal reimbursement prohibition imposed on Borrego will continue in full force and effect as it relates to the provision of Medi-Cal dental services, until DHCS further modifies the payment suspension. Reimbursement for Borrego's dental claims will be determined through the resolution of the payment suspension.

3. Waiver of Appeal Rights

A. Borrego is represented by legal counsel and is fully aware of its legal rights to contest the payment suspension, including (without limitation) the right to appeal the payment suspension pursuant to Welfare and Institutions Code, section 14043.65 and Code of Civil Procedure, section 1085.

B. Subject to Paragraph C, Borrego voluntarily, knowingly, and intelligently waives and give up its rights to challenge or to seek any further review of:

  1) The November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11;

  2) This Term Sheet; and

  3) The subsequent formal settlement agreement memorializing this Term Sheet.

C. In the event that DHCS determines that Borrego has failed to perform any of its obligations under this Term Sheet or under the subsequent formal settlement agreement and further modifies the payment suspension, Borrego shall be permitted to challenge DHCS' action pursuant to Welfare and Institutions Code, sections 14043.65 and 14123.05.

4. Scope of Term Sheet

A.  No provision in this Term Sheet is intended to limit or restrict the ongoing or new investigations of Borrego's Medi-Cal activities.

B.  No provision in this Term Sheet is intended to limit or restrict the filing of a criminal or civil action, or limit any claims that may be made in any such action, by any federal, state, or local prosecuting, administrative, or regulatory authorities.

C.  In the event that DHCS identifies new or different information demonstrating that Borrego is non-compliant with Medi-Cal laws or regulations, DHCS, at its discretion, may at any time:

    1)  impose a temporary suspension pursuant to Welfare and Institutions Code, section 14043.36 or

    2)  reinstate or modify the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11.

D.  No provision in this Term Sheet precludes DHCS from taking action to recover any overpayments Borrego may have received.

5.  Additional Provisions

A.  A violation of any provision of this Term Sheet or subsequent formal settlement agreement may subject Borrego, at DHCS' discretion, to an immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension imposed on Borrego pursuant to Welfare and Institutions Code, section 14107.11.

B.  This Term Sheet shall be effective on the date that all parties have signed the Term Sheet.

C.  This Term Sheet may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties further agreed that faxed, scanned, or electronically signed signature pages and multiple signature pages shall have the same force and effect as the originals.

D.  A fully executed formal settlement agreement between the Parties will supersede the provisions of this Term Sheet.

**APPROVED AND ACCEPTED:**

Dated: 1.27.2021

EDGAR BULLOCH, MD

Interim Chief Executive Officer for
BORREGO COMMUNITY HEALTH FOUNDATION

Dated: _1/27/21_

_____

DEPARTMENT OF HEALTH CARE SERVICES

**APPROVED AS TO FORM:**

Dated: _January 27, 2021_

_____
JOSEPH R. LAMAGNA

Attorney for BORREGO COMMUNITY HEALTH
FOUNDATION

Dated: _1/27/21_

_____
JOHN PUENTE

Chief Counsel for DEPARTMENT OF HEALTH CARE
SERVICES

Page 5 of 5