**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation | CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,  by and through its Director, Michelle Baas |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| DENTONS US LLP<br>SAMUEL R. MAIZEL (Bar No. 189301) / TANIA M. MOYRON (Bar No. 235736)<br>601 South Figueroa Street, Suite 2500<br>Los Angeles, California 90017-5704<br>Telephone: (213) 623-9300 | Kenneth K. Wang<br>Office of the Attorney General, Deputy Attorney General<br>300 S. Spring Street No. 1702<br>Los Angeles, CA 90013 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor　　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　　☐ Other<br>☐ Trustee | ☐ Debtor　　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　　☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Enforce the Automatic Stay to Prevent the California Department of Health Care Services from Suspending all Medi-Cal Payments and Taking other related acts pursuant to 28 U.S.C. §§ 105(a) and 362 of title 11 of the United States Code; Rules 7065, 9013-9, 7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property –§542 turnover of property
☐ 12-Recovery of money/property –§547 preference
☐ 13-Recovery of money/property –§548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☒ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR  BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation | BANKRUPTCY CASE NO. 22-02384-11 | |
| DISTRICT IN WHICH CASE IS PENDING  Southern District of California | DIVISION OFFICE  San Diego | NAME OF JUDGE  Hon. Laura S. Taylor |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)  /s/ Tania M. Moyron | | |
| DATE  September 26, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)  Tania M. Moyron | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
**DENTONS US LLP**
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile:  (213) 623-9924

JOSEPH R. LAMAGNA (Bar No. 246850)
jlamagna@health-law.com
DEVIN M. SENELICK (Bar No. 221478)
dsenelick@health-law.com
JORDAN KEARNEY (Bar No. 305483)
jkearney@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987

*Proposed Attorneys for the Chapter 11
Debtor and Debtor In Possession*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>     Debtor and Debtor in Possession. | Case No. 22-02384-11<br><br>Chapter 11 Case |
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>     Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, by and through its Director, Michelle Baass<br><br>     Defendant. | Adv. Pro. No. 22-_____<br><br>**DEBTOR'S COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, FOR WRIT OF MANDATE UNDER CODE OF CIVIL PROCEDURE 1085** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Borrego Community Health Foundation, the plaintiff in the above-captioned

2    adversary proceeding and the debtor and debtor-in-possession ("Borrego Health" or

3    the "Plaintiff") in the above-captioned chapter 11 bankruptcy case (the "Case"),

4    alleges as follows:

5    **I.    THE PARTIES**

6    1.    Borrego Health is a California nonprofit 501(c)(3) public benefit

7    corporation operating a Federally Qualified Health Center (also known as an FQHC).

8    Borrego Health provides primary and related healthcare services to historically

9    underserved areas of San Diego, Riverside, and—until recently—San Bernadino

10   counties.  It provides high quality, comprehensive, compassionate primary health care

11   to the people in their communities, regardless of their ability to pay, by partnering

12   with licensed medical professionals across Southern California.   Borrego Health

13   operates eighteen (18) clinics, primarily in underserved desert and inland

14   communities throughout San Diego, Riverside, and—until recently—San Bernardino

15   counties.  Borrego Health provides essential services in Family Practice, Pediatrics,

16   OB/GYN, Internal Medicine, Podiatry, Dermatology, Cardiology, HIV/Hepatitis C

17   and Covid-19 related testing and vaccinations to over 94,000 patients, most of whom

18   cannot obtain affordable comprehensive primary care from other sources.   Borrego

19   Health specializes in culturally-competent care for a number of specialized

20   populations, including care for migrant farmworkers and the LGBTQ and transgender

21   populations.  During the recent pandemic, Borrego Health tested tens of thousands of

22   Californians for Covid-19 infections, and vaccinated tens of thousands of people

23   against Covid-19.

24   2.    Defendant Michelle Baass is the Director of the California Department

25   of Health Care Services ("DHCS" or the "Department") and as such, has the

26   responsibility to administer the Medi-Cal program consistent with the federal

27   Medicaid Act.   The Director is sued in her official capacity.   The Director has an

28   office in the City and County of San Diego.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
COMPLAINT

1    3.     The Department is the single state agency charged with the

2   administration of California's Medicaid program, known as Medi-Cal.  *See* Cal. Welf.

3   & Inst. Code §§ 14000 *et seq.*  The federal/state Medicaid program is the health

4   insurance program for the poor.  42 U.S.C. §§ 1396 *et seq.*  Collectively, the

5   Department and Michelle Baass are referred to herein as the "Defendants."

6                        ## II.     JURISDICTION AND VENUE

7    4.     This Court has jurisdiction over this adversary proceeding pursuant to 28

8   U.S.C. §§ 157(b)(2) and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b).

9    5.     This adversary proceeding is brought under Rules 7001(7) and (9) of the

10  Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and seeks

11  declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, et. seq. (the

12  "<u>Declaratory Judgment Act</u>"), §§ 105 and 362 of title 11 of the United States Code.

13  (the "<u>Bankruptcy Code</u>"), Bankruptcy Rule 7065, Rules 57 and 65 of the Federal

14  Rules of Civil Procedure, and the general legal and equitable powers of the Court.

15   6.     Venue is proper in this Court under 28 U.S.C. § 1409.

16                              ## III.     OVERVIEW

17   7.     The Defendants are threatening to (i) suspend Borrego Health from any

18  payment for services provided for Medi-Cal beneficiaries starting September 29, 2022

19  (the "<u>Suspension</u>"), (ii) to compel third parties with contracts with Borrego Health to

20  effectively terminate those contracts by (a) block transferring of patients or (b)

21  refusing to assign new patients, as well as continuing to withhold more than $6.7

22  million owed to Borrego Health for providing in-house dental services despite being

23  informed of the applicability of the automatic stay imposed by the Bankruptcy Code

24  and the extreme risk to patient well-being.  Borrego Health is dependent on Medi-Cal

25  revenue to provide service to patients.

26   8.     To preserve its ability to continue to provide essential and irreplaceable

27  medical services, Borrego Health commenced the Case, which invoked the

28  application of the automatic stay imposed by § 362 of the Bankruptcy Code. The

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122385391\V-8

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  purported basis for the payment suspension is an alleged "credible allegation of fraud

2  for which an investigation is pending" against Borrego Health.  However, there is no

3  credible allegation of ongoing fraud.  The pending investigation is related to

4  contracted dental services that Borrego Health discontinued long ago.  In fact, the

5  contract dental services have been under a temporary payment suspension since

6  November 18, 2020.  Thus, the suspension, interference with Borrego Health's

7  contractual relations and retention of suspended payments all violate the automatic

8  stay and other rights of the Debtor.

9        9.     The Defendants are imposing a 100% payment suspension, based on

10  issues which cannot, under applicable law, form the basis for a temporary payment

11  suspension.

12        10.    Unless this Court acts, a 100% payment suspension will go into effect in

13  violation of the automatic stay imposed by § 362 of the Bankruptcy Code and before

14  Borrego Health is given any opportunity to respond and be heard in any consequential

15  manner.

16        11.    Thus, Borrego Health brings this adversary proceeding to enforce the

17  automatic stay pursuant to § 362 of the Bankruptcy Code and a civil rights action

18  pursuant to title 42 of the United States Code in order to vindicate Borrego Health's

19  rights secured by the federal Medicaid statutes and the Fourteenth Amendment to the

20  United States Constitution, as well as to enforce the regulations of 42 C.F.R. § 455 *et*

21  *seq*.

22        12.    Borrego Health asks the Court to order Defendants to (i) cease any

23  further suspension efforts, based either on the automatic stay or the issuance of a

24  temporary restraining order and (ii) notify Borrego Health of the issues causing the

25  suspension and allow it a meaningful hearing opportunity to rebut the allegations that

26  have led to its proposed suspension.

27        13.    During the time of any suspension, Borrego Health will be unable to be

28  paid by the Medi-Cal program for services it renders or that are rendered on its behalf.

COMPLAINT

1  Borrego Health is heavily dependent on Medi-Cal revenue to provide services, so a

2  suspension will force Borrego Health to shutter its clinics, resulting in a lack of access

3  to care for thousands of Medi-Cal beneficiaries in remote and underserved areas of

4  California.

5    14. Such threatened action is unlawful because it violates the automatic stay,

6  is not authorized by the controlling federal Medicaid law and because it deprives

7  Borrego Health of procedural due process of the law.

8  **IV.** **FACTS**

9    15. On October 20, 2020, the California Department of Justice ("<u>DOJ</u>"),

10  Division of Medi-Cal Fraud and Elder Abuse ("<u>DMFEA</u>") executed search warrants

11  at two of Borrego Health's administrative offices.

12    16. DOJ was attending a previously scheduled meeting at Borrego Health's

13  offices that day where Borrego Health was going to voluntarily present concerns

14  Borrego Health had identified regarding dental providers contracted with Borrego

15  Health. The meeting had been set based on discussions between Borrego Health and

16  DOJ representatives.

17    17. By letter dated November 18, 2020, Borrego Health was advised that the

18  Department was temporarily suspending Borrego Health's Medi-Cal provider

19  numbers pursuant to Welfare and Institutions Code § 14107.11 and 42 C.F.R. §

20  455.23, effective that same day, due to an ongoing investigation by the DMFEA.

21    18. Borrego Health appealed the temporary suspension through a meet and

22  confer process. Borrego Health and its representatives met with the Department and

23  explained how a narrowly-tailored payment suspension would be more appropriate

24  and how there was good cause to permit Borrego Health to continue to operate, for

25  among other reasons, the fact it was delivering services to underserved areas

26  designated by the Health Resources and Services Administration ("<u>HRSA</u>"), an aency

27  of the U.S. Department of Health and Human Services.

28    19. By letter dated January 29, 2021, the Department notified Borrego

4
COMPLAINT

US_ACTIVE\122385391\V-8

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Health that it was modifying the payment suspension to apply to dental claims only.

2    20.    The Department was able to narrowly draw the suspension, because the

3    only area under investigation was Borrego Health's contract dental services – services

4    where Borrego Health contracted with area dentists to provide dental services on

5    behalf of Borrego Health and for its patients.

6    21.    The payment suspension maintained by the Department prohibited

7    payment for any dental services to Borrego Health, even though only contract dental

8    services were at issue.   Thus, the temporary suspension could have been more

9    appropriately and narrowly tailored under the law, but Borrego Health was in such

10   need of funding and without any meaningful appeal rights, that it agreed to accept the

11   modified temporary suspension.

12   22.    The Department conditioned the temporary suspension on a Term Sheet

13   and in contemplation of an ultimate settlement agreement consistent with the Term

14   Sheet.  Borrego Health had no meaningful option other than to accept the Term Sheet

15   or lose all funding.

16   23.    While the payment suspension was in place from November 18, 2020

17   until January 29, 2021, the Department retained approximately $15,000,000 in billed

18   services that would otherwise have been payable to Borrego Health.

19   24.    The modified payment suspension for dental claims has remained in

20   place at all times since the November 18, 2020, and it still in place today.

21   25.    However, Borrego Health has continued to provide dental services

22   despite the payment suspension, because patients desperately need the services.

23   26.    Borrego Health estimates that DHCS has withheld at least an additional

24   $6,000,000 dollars of in-house dental claims since the suspension went into effect.

25   27.    Borrego Health executed a formal settlement agreement with the

26   Department dated January 27, 2021 ("Settlement Agreement").

27   28.    Borrego Health had no option other than to sign the agreement and no

28   substantive terms were negotiable.  There was no meaningful opportunity to avoid a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  temporary suspension without acceding to the Department's demands.

2      29.    A requirement of the Settlement Agreement was for Borrego Health to

3  retain an independent monitor.  The Department selected Berkely Research Group

4  ("BRG") as the compliance consultant or monitor.

5      30.    Thus, Borrego Health retained BRG pursuant to the Settlement

6  Agreement because Borrego Health had no viable alternative or options to refuse.

7      31.    Borrego Health worked diligently with BRG and the Department to

8  improve Borrego Health's quality and operations, including billing and compliance.

9      32.    Despite Borrego Health's best efforts, BRG alleged dilatory performance

10  and underperformance of certain compliance and operational efforts resulting in the

11  Department demanding Borrego Health execute two separate Corrective Action Plans

12  ("CAPs") that were drafted by BRG, were not negotiable, and which Borrego Health

13  had to accept to maintain only a partial temporary suspension.  Any refusal would

14  have resulted in a full payment suspension, thereby putting Borrego Health out of

15  business.

16      33.    Borrego Health diligently endeavored to comply with the Settlement

17  Agreement and CAPs.  Its performance was appropriate under the time available and

18  circumstances.  It substantially and materially complied with the terms of the

19  agreements.

20      34.    However, the Department and BRG required a level of performance that

21  was inconsistent with applicable industry standards and above what is required by any

22  applicable contract, regulation or statute.  Moreover, those requirements were

23  frequently changed.

24      35.    For example, BRG and the Department took issue with Borrego Health's

25  reporting of grievances and complaints by its patients to the Medicaid Managed Care

26  Plans that covered the patients.

27      36.    Borrego Health disagreed with BRG's interpretation of reporting

28  obligations but recognized that it either had to do what BRG said or risk losing all

COMPLAINT

1  funding and having no meaningful appeal opportunity.  As a result, Borrego started

2  reporting all grievances and complaints of any nature on timeframes and intervals

3  more frequently than the plans required.  Thus, Borrego Health was over-performing

4  under its agreements and the law, and the complaint and grievance issue should have

5  been resolved.

6       37.    However, BRG then modified the grievance issue to allege that Borrego

7  Health was not meaningfully reviewing the grievances.  Once that was addressed,

8  BRG alleged that the process was not driving quality improvement.

9       38.    While Borrego Health agreed with the goal of improving quality, there

10  was and is no regulatory requirement for the process to function as BRG suggested,

11  much less could failure of the grievance process to improve quality result in a

12  temporary suspension (even though the Department is using this alleged

13  nonperformance as a basis for suspension in dispute in this litigation).

14       39.    The Department's asserted ability to reimpose the full payment

15  suspension at any time meant that Borrego Health had no meaningful opportunity to

16  refuse demands by the Department and BRG, even when their allegations were flawed

17  or based on misinterpretations.

18       40.    BRG and the Department tried to impose a standard of performance that

19  is not only unattainable, but not legally required to participate in Medi-Cal.

20       41.    Regardless, Borrego Health did improve.  It made great strides and

21  performed what was necessary to comply with the Settlement Agreement and CAPs.

22       42.    The performance was such that in the summer of 2022 Borrego Health

23  concluded BRG was no longer needed and that the Department should further tailor

24  the payment suspension to apply only to contract dental claims.  In other words, the

25  Department should have started paying for dental claims provided by Borrego Health

26  itself.  Uncompensated in-house dental claims were causing significant liquidity

27  issues for Borrego Health and risked making it impossible for Borrego Health to

28  continue to provide patient services so necessary to the communities it serves.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

7

COMPLAINT

43.    During the suspension, Borrego Health has provided services during 30,347 dental visits that were uncompensated.  These services were provided through an in-house program entirely disconnected from the contract dental program that was under investigation, and to date Borrego Health is aware of no allegation of any fraud with this program, much less credible allegations of fraud.

44.    Thus, in May 2022, Borrego Health requested that the Department meet with the Borrego Health leadership team to discuss further modifying the payment suspension to permit payment of in-house dental claims and to consider whether BRG, which was extremely expensive and paid for by Borrego Health (fees for BRG to date exceed $2.6 million), was still necessary.

45.    The Department agreed to a meeting, and the Department and Borrego Health representatives then met on July 7, 2022.

46.    The Department's questions at the meeting indicated that the Department was misinformed by BRG as to Borrego Health's performance under the Settlement Agreement and CAPs.

47.    At the meeting Borrego Health attempted to correct inaccuracies and misunderstandings, but the Department requested that Borrego Health submit any documentation to support its position within two weeks.

48.    On July 22, 2022, Borrego Health submitted voluminous documentation in response to the Department's areas of identified concerns under the Settlement Agreement, CAPs, and other areas that the Department and BRG identified at the July 7 meeting.

49.    Borrego Health followed up several times with the Department on the written submission, including asking for the Department to agree to proposed audit methodologies, and to address open areas under the Settlement Agreement and CAPs.

50.    For example, the Settlement Agreement called for Borrego Health to conduct an internal audit of contracted dental claims that were billed to the Department.  Borrego Health proposed a sampling and extrapolation methodology

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8

1  that was in conformity with state auditing standards, but the Department did not
2  respond.

3      51.    The purpose of the audit was to inform the Department of any potential
4  overpayment amount impacted by contract dental.    Such work calculating an
5  overpayment amount would be useless if the Department did not agree with the audit
6  methodology.  However, neither BRG nor the Department approved the audit plans,
7  and Borrego Health could not perform the audit. The Department has not responded
8  to multiple written requests for feedback.

9      52.    Thus, to the extent there is any alleged non-performance under the
10 Agreements, such non-performance is excused by the failure of the Department and
11 BRG to cooperate.

12     53.    The Department did not have any questions or provide any feedback to
13 the written submission until August 19, 2022, when it provided two separate letters to
14 Borrego Health's CEO.

15     54.    The first letter was from Bruce Lim, Deputy Director for the Department.
16 The letter from Mr. Lim explained that the Department did not find Borrego Health's
17 written submission persuasive, and stated, in relevant part:

18     As a result of ongoing issues, including quality of care concerns, member grievances,
19     and referrals, Borrego's failure to fully comply with the February 26, 2021, stipulated
       agreement between Borrego and DHCS, continued and unresolved inappropriate
20     billings, and the California Department of Justice's (DOJ) ongoing criminal investigation
       of Borrego for potential fraudulent Medi-Cal billings, DHCS is reimposing the full 100
21     percent Medi-Cal payment suspension on all Borrego Medi-Cal services, (medical and
22     dental), pursuant to Welfare and Institutions (W&I) Code Section 14107.11. The
       payment suspension will go into effect September 29, 2022, to allow time to finalize
23     transition planning for affected Borrego Medi-Cal beneficiaries.  See the attached
24     payment suspension letter.

25     55.    Thus, Mr. Lim and the Department provided notice to Borrego Health in
26 a publicly-available document that the Department was imposing a 100% payment
27 suspension for a litany of reasons, including potentially fraudulent billing.

28     56.    The allegations by the Department are disputed and denied by Borrego

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

9
COMPLAINT

1  Health, and tarnish Borrego Health's public image and reputation.

2       57.    In a separate letter that was stamped "CONFIDENTIAL" Bob Sands,

3  Assistant Deputy Director for the Department, provided additional notice of the

4  temporary suspension for the same reasons alleged in Mr. Lim's letter, and was clearly

5  intended to comply with federal law, including 42 C.F.R. § 455.23.

6       58.    The Department typically does not publicize a temporary suspension,

7  because the Ninth Circuit has recognized a liberty interest when the Department

8  publicizes charges.  *See e.g. Guzman v. Shewry*, 552 F.3d 941, 955 (9th Cir. 2009).

9       59.    As it pertains to Borrego Health, not only did the Department publicize

10  the temporary suspension in the letter from Mr. Lim, which was publicly available to

11  anyone who requested it, but it took the unprecedented step of providing a

12  spokesperson to the media to make sure the public was aware of the temporary

13  suspension.

14       60.    The Department did this knowing that Borrego Health had no

15  meaningful opportunity for a name clearing hearing to respond to the Department and

16  that such action violated, among other things, Borrego Health's liberty interests.

17       61.    For example, the San Diego Union Tribune reported on August 30, 2022,

18  "State health officials will halt all Medi-Cal reimbursements to the Borrego

19  Community Healthcare Foundation for the second time in two years, saying the

20  nonprofit provider has failed to meet its obligations under a settlement reached early

21  last year."  See https://www.sandiegouniontribune.com/news/watchdog/story/2022-

22  08-30/borrego-health-medi-cal-suspension

23       62.    The Department's entire statement to the media is quoted below:

24           DHCS can confirm that a full payment suspension had been
         reimposed on all Medi-Cal medical and dental services provided

25           by Borrego Community Health Foundation (Borrego). The
         suspension is pursuant to the February 26, 2021, stipulated

26           agreement between the Department of Health Care Services
         (DHCS) and Borrego, pursuant to Welfare and Institutions Code

27           Section 14107.11 and Federal Regulations, Title 42, section
         455.23, and is effective on September 29, 2022.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

COMPLAINT

US_ACTIVE\122385391\V-8

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

> After 17 months of working with Borrego Health to attempt to correct its ongoing deficiencies, DHCS has determined that it is in the best interest of Medi-Cal beneficiaries and the Medi-Cal program to reimpose a full payment suspension on all Borrego Medi-Cal services and to prepare for the transition of care for Medi-Cal members.
>
> DHCS' priority is to ensure the health and well-being of affected Medi-Cal beneficiaries. This includes *working to ensure that if Medi-Cal managed care plans (MCPs) terminate their contracts with Borrego, and Borrego ceases operations, there will be a safe transition for all beneficiaries receiving Medi-Cal services through Borrego*. DHCS will partner with the MCPs to assist Medi-Cal managed care members who transition to other providers. This will include providing access to quality and medically necessary care, and reaching out directly to the affected fee-for-service beneficiaries through a letter informing them of their medical care options and directing them to call DHCS' 1-800 beneficiary call-line if assistance is needed.

(Emphasis added.)  With this statement, the Department's spokesperson also provided Bruce Lim's August 19, 2022 letter.

63.     On information and belief, the Department provided the August 19, 2022 letter to health plans with whom Borrego Health has contracts and whose beneficiaries are assigned to Borrego Health, including Inland Empire Health Plan (collectively, the "Health Plans"). On information and belief, the Department also demanded the Health Plans establish a plan to move all of their beneficiaries to other providers through a "bulk transfer of lives." A bulk transfer of lives is irreversible. Once the bulk transfer is implemented, Borrego Health will have no patients assigned and would unable to operate.  Additionally, on information and belief, the Department also instructed the Health Plans to not assign any new patients to Borrego Health, although the new patients would be assigned to Borrego Health absent that instruction from the Department.  The cumulative impact of these actions is to force Borrego Health to cease operations, including patient care, and close its clinics.

64.     This is an additional action by the Department with a permanent impact, despite the alleged "temporary" nature of the payment suspension.

65.     When Borrego Health's payments were suspended in 2020, it continued to provide uninterrupted care to its patients without payment.  Thus, it is not necessary

11
COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    or appropriate to cause the block transfer of lives. Borrego Health is committed to
2    providing care to Medi-Cal beneficiaries for so long as funding permits.

3    66.    Notably, the allegations made by the Department and reported by the
4    Union Tribune were untrue. Even more problematic, the spokesperson for the
5    Department relied on invalid reasons for a temporary suspension. A lack of
6    performance under the Settlement Agreement was not a valid basis for a 100%
7    temporary suspension under the law cited by the Department in the suspension letter.
8    Moreover, any allegations should have remained private and at least been limited to
9    legally supportable justifications.

10    67.    While incorrect, the Department's statements are valuable to discern its
11    true motivations. The current proposal to reimpose a 100% payment suspension is
12    not about a credible allegation of fraud or an ongoing investigation and not intended
13    to be temporary. Instead, the Department decided it would take actions expressly
14    intended to force Borrego Health to cease operations for reasons it would not be able
15    to otherwise.

16    68.    As explained above, the Department was already aware that Borrego
17    Health had been under investigation since 2020. The Department, BRG, and civil and
18    criminal DOJ were all scrutinizing Borrego Health's practices. Borrego Health
19    stopped all contract dental programs, had not submitted any contract dental claims,
20    and was also cooperating with criminal and civil investigators.

21    69.    There is no plausible theory that Borrego Health was engaging in
22    ongoing fraud, and, to the contrary, the evidence is that Borrego Health was doing
23    everything it could to be compliant and avoid any further allegations.

24    70.    Borrego Health recently commenced a lawsuit against the former staff
25    and contractors who were responsible for the alleged fraud related to the contract
26    dental program.

27    71.    In short, there was no justification under the law to reimpose a 100%
28    payment withhold. The limited payment suspension already addressed the concern

1   the Department had with what the government was investigating criminally – contract

2   dental services.  There is no allegation of any other criminal investigation and no

3   explanation why a tailored suspension would not be sufficient, much less how there

4   was no longer good cause to permit Borrego Health to continue to provide services to

5   patients in underserved areas.

6       72.    Thus, there is not a "credible" allegation of fraud at issue for the new

7   suspension.

8       73.    Moreover, the Department's reaction ignores patients and their best

9   interests.

10      74.    Borrego Health is informed and believes that the Department has no

11   meaningful plan to ensure Borrego Health's 94,000 plus patients have access to care.

12      75.    Without Borrego Health and its clinics, patients will have to travel hours

13   and many miles to seek care.

14      76.    Even then, the alternate providers are not demonstrated to have capacity

15   to handle the influx of patients. It is well-established that the areas in which Borrego

16   Health operates are underserved areas. The care network, even with Borrego Health,

17   is inadequate. There are simply not other providers to absorb Borrego Health's 94,000

18   patients.

19      77.    Even if they could, the alternate providers do not have the expertise to

20   serve Borrego Health's unique patient population.

21      78.    Borrego Health is intimately familiar with the unique needs of its patient

22   population, and provides critically important and culturally-competent care to meet

23   those unique needs. For example, Borrego Health serves many transgender patients

24   and even has transgender patient advocates on staff, including at clinic sites, to assist

25   with their unique healthcare needs.

26      79.    Borrego Health has become a trusted care provider for the migrant

27   farmworker community thanks to Borrego Health's efforts to meet them where they

28   live, work, and play to provide care. During the pandemic, Borrego Health ran

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

13

COMPLAINT

1  COVID-19 testing sites that started at dawn and were located at the gas station on the
2  farmworkers' route to the fields to make it accessible to the farmworkers, even doing
3  drive-through testing for those riding on tractors and combines.

4      80.    Borrego Health provides this type of culturally competent care to
5  numerous hard-to-reach populations, including undocumented immigrants, people
6  living with HIV/AIDS, and many others.

7      81.    An attempt to transfer care to another provider will break these patient
8  connections. These patient relationships, when broken, are not easily re-established
9  and can lead to "transfer trauma."

10      82.    Borrego Health requested a meet and confer to discuss the proposal to
11  reimpose a 100% payment suspension.  The Department and Borrego Health met on
12  September 16, 2022 for that purpose.

13      83.    At the meeting the Department made clear that it was motivated by a
14  goal to compel Borrego Health to cease operations.

15      84.    The discussion also highlighted how Borrego Health could not
16  meaningfully respond to the Department's allegations.

17      85.    Many of the issues alleged by the Department are stated too vaguely to
18  be intelligible.

19      86.    For example, the Department states that Borrego Health does not have a
20  "robust" compliance department. This is vague and factually untrue.  Borrego Health
21  has onboarded six compliance professionals (a team of similar size to much larger
22  organizations), has implemented every recommended element of a compliance
23  program, and has had its compliance program plan reviewed extensively and
24  approved by BRG.

25      87.    Despite repeated questions to the Department to explain the allegation
26  regarding compliance, the Department has not provided more information.

27      88.    Borrego Health requested that the Department provide an explanation as
28  to why Borrego Health's prior written submission was insufficient, but the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122385391\V-8

Department repeatedly responded it was there to "listen and react," not provide information.

89.   As a result, Borrego Health is no more informed about the purported basis for the Department's allegations than when it started the meet and confer process.  If anything, it appears that the Department is not considering the materials submitted by Borrego Health.

90.   Borrego Health is awaiting a response on the meet and confer request to rescind the 100% payment suspension.  In the meantime, bankruptcy counsel for the Department has informed bankruptcy counsel for Borrego Health that the Department does not intend to change its position or respect the automatic stay in place by virtue of the bankruptcy filing.

91.   Because the Department will not delay the suspension or respect the automatic stay, Borrego Health commences this adversary proceeding.

92.   Borrego Health has not filed its written appeal yet, but it is not due and filing of the appeal will not stay the imposition of the temporary suspension in any event.

93.   The written appeal result would not be due until ninety (90) days after the papers are submitted, and is futile.  There will not be any ability to cross-examine witnesses or review any of the Department's evidence.

## V.   FEDERAL MEDICAID LAW

94.   As indicated above, the Medicaid program, Title XIX of the Social Security Act, is the federal/state health insurance program for the low income people.  Federal Medicaid statutes are supreme to state statutes and state regulations with respect to the administration of the Medicaid program in a particular state.  As a result, state Medicaid agencies must comply with the controlling federal Medicaid statutes and may not act inconsistently with or without the express authority of federal Medicaid law.

95.   Each state's Medicaid plan must "provide such methods and procedures

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

15

. . . relating to the utilization of, and the payment for, care and services available under the plan which may be necessary . . . *to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general public in the geographic area . . . .*" 42 U.S.C. § 1396a(a)(30)(A) (emphasis added); 42 C.F.R. § 447.204.

96.    The Code of Federal Regulations, 42 C.F.R. § 455.23(a)(1), states that:

> The State Medicaid agency must suspend Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend only in part.

97.    The Code of Federal Regulations, 42 C.F.R. § 455.2, defines a "credible allegation of fraud" as "an allegation, which has been verified by the State." With respect to provider audits, allegations are considered to be credible "when they have indicia of reliability and the State agency has reviewed all allegations, facts, and evidence carefully and acts judiciously on a case-by-case basis." 42 C.F.R. § 455.2(3).

98.    The Code of Federal Regulations, 42 C.F.R. § 455.23(a)(3), states that "a provider may request, and must be granted, administrative review when State law so requires."

99.    The Code of Federal Regulations, 42 C.F.R. § 455.23(b), provide for notice to the provider when suspension of payments is made. Section 455(b)(2)(ii) states that the notice "must set forth the general allegations of the as to the nature of the suspension action, but need not disclose any specific information concerning an ongoing investigation."

100.    The Code of Federal Regulations, 42 C.F.R. § 455.23(b)(v), states that the notice must "set forth the applicable State administrative appeals process and corresponding citations to State law."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122385391\V-8

101.   The Code of Federal Regulations, 42 C.F.R. § 455.23(c), provides that "suspension under this section will be temporary" and that it will not continue if the agency determines there is insufficient evidence of fraud by the provider or after legal proceedings have been completed.

102.   The Code of Federal Regulations, 42 C.F.R. § 455.23(e), states that a State may find that good cause exists not to suspend payments, or not to continue payment suspension previously imposed to an individual or entity against which there had been a credible allegation of fraud if, among other things, suspension is not in the interest of the Medicaid program.

103.   Another type of "good cause" that would warrant a state Medicaid agency not sanctioning a provider suspected of fraud is when effectively excluding that provider from Medicaid may jeopardized patient access to items or services because the provider serves a large number of "beneficiaries within a HRSA designated medically underserved area." 42 C.F.R. § 455.23(e)(4)(ii)

104.   The federal government has made clear to state Medicaid agencies that, "We do not interpret the new provision in the ACA as mandating that a State must always suspend all payments to a provider in cases of an investigation of a credible allegation of fraud." 76 Fed. Reg. 5861, 5934.

105.   Instead, the federal government explained how states are to tailor suspensions, and that they have flexibility to suspend payments in part, explaining:

> For example, as stated in the preamble to the current regulation, there may be times where an investigation is solely and definitively centered on *only a specific type of claim* in which case a State may determine it is appropriate to impose a payment suspension on only that type of claim. Likewise, a State might determine that an investigation of a credible allegation of fraud is limited to *a particular business unit or component of a provider* such that a suspension need not apply to certain business units or components of a provider.
>
> Balancing these approaches, we proposed to allow States to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

17

COMPLAINT

implement a partial payment suspension, or, where appropriate, to convert a previously imposed full payment suspension to a partial payment suspension, if justified via a good cause exception. The good cause exceptions for partial suspension at paragraphs (f)(1) and (2) mirror those at paragraphs (e)(4) and (3), respectively, and allow the State to *adopt a partial payment suspension where suspension in whole would so jeopardize a recipient's access to items or services as to endanger the recipient's life or health, or where the State deems it in the best interests of the Medicaid program*. At paragraph (f)(3), we proposed that a State may avail itself of the good cause exception to suspend payments only in part if the nature of the credible allegation is *focused solely and definitively on only a specific type of claim or arises from only a specific business unit of a provider, and the State determines and documents in writing that a payment suspension in part would effectively ensure that potentially fraudulent claims were not continuing to be paid*.

76 Fed. Reg. 5861, 5934 (emphasis added).

106.   In summary, a state is supposed to assess whether the alleged fraud can be addressed through a properly-tailored suspension, rather than suspending all claims, particularly when patient access is concerned and specific types of claims are at issue.

## VI.   THE MEDI-CAL ANTIFRAUD STATUTES

107.   In cases not involving a criminal conviction, proceedings for suspension must generally be conducted pursuant to California Health and Safety Code § 100171, which incorporates the trial-type hearing procedures of the California Administrative Procedure Act. *See* Welf. & Inst. Code § 14123(c).

108.   However, California Welfare & Institutions Code § 14107.11, which largely mirrors the federal law regarding the Department's obligation to suspend providers that are facing an ongoing investigation for a credible allegation of fraud, provides less robust due process protections.

COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109.   Section 14107.11 permits the Department to temporarily suspend payment to Medi-Cal provider upon receipt of a credible allegation of fraud and for which an investigation is pending under the Medi-Cal program, unless it is determined there is a good cause exception not to suspend the payments or to suspend them only in part.

110.   The state appeal process available to a provider suspended under § 14107.11 is the written-only appeal process of Welfare and Institutions Code Section 14043.65.  *See* Section 14107.11(b).

111.   This written appeal process will not be available until *after* the provider is suspended from the Medi-Cal program.  The written administrative appeal process also does not contain any of the safeguards of a trial-type hearing and is not even considered by the Department, itself, to be an adjudicative hearing or a name-clearing hearing.

112.   Additionally, any subsequent state judicial review must proceed under California Code of Civil Procedure Section 1085, which is limited to determining whether the Department's decision is reasonable based on the limited records made during the administrative appeal.  *See* Welf. & Inst. Code § 14043.65(a).

113.   Because of the obvious inadequacy of the written-only appeal process, the California Legislature adopted a statute, effective January 1, 2007, which requires the Department to "meet and confer" with a provider within thirty days of the issuance of a suspension letter for the purpose of presenting and discussing information and evidence that could impact the Department's decision to modify or terminate the sanction.  *See* Welf. & Inst. Code § 14123.05.

## VII.   CLAIMS FOR RELIEF

## CLAIM I:  DECLARATORY JUDGMENT

114.   Borrego Health realleges paragraphs 1-113 as if fully set forth herein.

115.   Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare

COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   the rights and other legal relations of any interested party seeking such declaration,

2   whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

3      116.   As a result of the acts described in the foregoing paragraphs, there exists

4   a definite and concrete, real and substantial, justiciable controversy between Borrego

5   Health and the Defendants regarding the Defendants' continued actions against the

6   Debtor to suspend Medi-Cal payments and taking other acts, all of which constitute

7   acts to take possession of property of the estate or from the estate, exercise control

8   over property of the estate, and to collect, assess, or recover a claim against the debtor

9   that arose prepetition.

10      117.   This controversy is of sufficient immediacy and reality to warrant the

11   issuance of a declaratory judgment.

12      118.   Plaintiff seeks a declaratory judgment (the "Declaratory Judgment")

13   from this Court that:

14      a.      DHCS's enforcement of its decision set forth in its prepetition

15      letter, dated August 19, 2022, to suspend all payments under Medi-Cal

16      to the Debtor effective September 29, 2022 is a violation of the automatic

17      stay under §§ 362(a)(1), (3), and (6) of the Bankruptcy Code;

18      b.      DHCS's ongoing withholding of payments for in-house dental

19      services is a violation of the automatic stay because it constitutes an act

20      to take possession of property of the estate or from the estate, exercise

21      control over property of the estate, and to collect, assess, or recover a

22      claim against the Debtor that arose prepetition under Sections 362(a)(3)

23      and (6) of the Bankruptcy Code; and

24      c.      DHCS's efforts to compel Health Plans, including health plans

25      such as Inland Empire Health Plan, to block transfer patients from the

26      Debtor and refuse to assign new patients to the Debtor, are violations of

27      the automatic stay because they constitute acts to take possession of

28      property of the estate or from the estate, exercise control over property

20

COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   of the estate, or to collect, assess, or recover a claim against the Debtor

2   that arose prepetition under §§ 362(a)(3), and (6) of the Bankruptcy

3   Code.

4   d.    DHCS's continued retention of more than $6.7 million in

5   suspended payments related to Borrego Health's providing contract

6   dental services to Medi-Cal patients violates the automatic stay because

7   it constitutes an act to take possession of property of the estate or from

8   the estate, exercise control over property of the estate, and to collect,

9   assess, or recover a claim against the Debtor that arose prepetition under

10  §§ 362(a)(3), and (6) of the Bankruptcy Code (collectively, each of the

11  acts alleged in the previously set forth subparagraphs shall be referred to

12  herein as the "Department Actions").

13  e.    Any other declarations that the Court deems proper to put the

14  Department and related parties on notice concerning the impropriety of

15  their actions.

16  **CLAIM II:  ENFORCEMENT OF AUTOMATIC STAY**

17  119.   Borrego Health realleges paragraphs 1-118 as if fully set forth herein.

18  120.   The automatic stay prohibits the "commencement or continuation,

19  including the issuance or employment of process, of a judicial, administrative, or other

20  action or proceeding against the debtor that was or could have been commenced

21  before the commencement of the case under this title, or to recover a claim against

22  the debtor that arose [prepetition], all entities" from taking any "act" to "exercise

23  control over property of the estate," and "any act to collect, assess, or recover a claim

24  against the debtor that arose [prepetition]." 11 U.S.C. § 362(a)(1), (3) and (6).

25  121.   The Department Actions do and would each constitute (a)

26  commencement or continuation, including the issuance or employment of process, of

27  a judicial, administrative, or other action or proceeding against the debtor that was or

28  could have been commenced before the commencement of the case under this title, or

21

COMPLAINT

to recover a claim against the debtor that arose prepetition; (B) an exercise of "control" over the Debtor's property; or an "act to collect, assess, or recover a claim against the debtor that arose [prepetition]." 11 U.S.C. §§ 362(a)(1), (3) and (6).

122.   None of the Department Actions are the exercise of police or regulatory powers within then meaning of § 362(b)(4) of the Bankruptcy Code.

123.   Issuing an order enforcing the automatic stay as to any Department Action is therefore necessary and appropriate.

## CLAIM III:  PRELIMINARY AND PERMANENT INJUNCTION

124.    Borrego Health realleges paragraphs 1-123 as if fully set forth herein.

125.   A Bankruptcy Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.  § 105(a).   Further, this Court may issue a temporary restraining order or injunction under Rules 7001(7) and Rules 7065 of the Federal Rules of Bankruptcy Procedure, including to restrain activities that threaten the reorganization process or impair the court's jurisdiction with respect to the case before it.

126.   Any Department Action would irreparably harm the estate of Borrego Health.

127.   The Debtor therefore requests an injunction against any Department Action, so that the Debtor may continue to operate during its Chapter 11 Case and to serve its patients.

## CLAIM IV:  VIOLATION OF DUE PROCESS

128.   Borrego Health realleges paragraphs 1-127 as if fully set forth herein.

129.   While federal and state law provide for the withholding of funds based on credible evidence of fraud, such withholding may only be temporary.

130.   Defendants have withheld money due Plaintiff since January 2020 without providing Borrego Health sufficient basis for the withholding.

131.   The suspension of Borrego Health's payments is no longer "temporary" and Borrego Health has a property interest in the recovery of those funds.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

22

COMPLAINT

132.   The justification for a temporary suspension with no pre-deprivation due process has been that the suspension is *temporary*. The Department's media statements make clear that the temporary suspension will cause *permanent* harm, namely the reassignment of beneficiaries (*i.e.,* patients) to other providers and that Borrego Health "cease operations."

133.   The Department has publicized the temporary suspension to the Health Plans and has instructed the Health Plans to plan to "bulk transfer" all of Borrego Health's patients to other providers.  This action will cause the immediate and permanent closure of Borrego Health.

134.   Federal and state law require the Defendants to provide Borrego Health a hearing with respect to the temporary suspension of payments.

135.   The publication of the temporary suspension also implicates Borrego Health's liberty interests and right to a hearing.  Because of the Department's publication, reputational damage to Borrego Health is permanent.

136.   Despite Borrego Health's request for a full hearing on the temporary suspension and withholding, the Defendants will not provide one.

137.   Nor have the Defendants offered Borrego Health an alternative method in which it can obtain an explanation for the basis behind the suspension. The summary allegations do not meaningfully inform Borrego Health as to the basis for the suspension and along with lengthy period of time thus violates Borrego Health's right to due process in that it takes its money that it legitimately earned without just reason.

138.   Moreover, Defendants have doubled down on the due process violation by continuing to withhold funds without a hearing or explanation as to the conduct that has led to the suspension, depriving Borrego Health of its right to participate in the Medi-Cal program by preventing it from taking steps that might terminate the suspension.

139.   Borrego Health is informed and believes that the Defendants have failed

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

23
COMPLAINT

to conduct the independent review or independent verification of the facts and evidence that have purportedly led the Defendants to suspend Borrego Health's payments.

140. Defendants' actions in withholding present and future payments threatens Borrego Health's financial well-being.

141. Defendants' actions in withholding present and future payments also threatens the well-being of Borrego Health's patient population.

142. All of Borrego Health's clinics operate in areas designated as medically underserved by HRSA.

143. The above actions by Defendants have thus violated Plaintiff's Due Process rights by, among other things:

a. Suspending past and future payments that Borrego Health earned and earns without verifying whether there was a credible allegation of fraud;

b. Failing to make available to Borrego Health a hearing in which the propriety for withholding funds could be legitimately determined;

c. Withholding and suspending payments for nearly a year and thus for a period that is no longer "temporary" without affording Borrego Health a meaningful process to contest that suspension;

d. Making statements to the media and to Health Plans having the effect of harming Borrego Health's reputation, in which it has a liberty interest, and that will cause the permanent closure of Borrego Health with no access to due process;

e. Publicizing the planned suspension to health plans and instructing them to bulk transfer Borrego Health's patients, which will leave Borrego Health permanently out of business;

f. On information and belief failing to conduct any independent review or verification of allegations of misrepresentation or fraud prior

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

24

COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

to suspending Medi-Cal payments, such that the suspension was not issued in response to a credible allegation of fraud as required by the law.

## CLAIM V: INJUNCTIVE AND DECLARATORY RELIEF PURSUANT TO 18 U.S.C. § 1983 AND 42 C.F.R. § 455.23

144. Borrego Health realleges paragraphs 1-143 as if fully set forth herein.

145. The suspension in the instant case violates 18 U.S.C. § 1983 and 42 C.F.R. § 455.23 because federal law requires a state to offer a provider a hearing when its payments are withheld pending purported reliable evidence of possible misrepresentation in billing or fraud. A hearing is likewise required when a provider's liberty interests are implicated through publication of the temporary suspension.

146. The Defendants have failed to provide evidence of plausible and credible allegations of fraud or misrepresentation in order to suspend and withhold payments due it without providing a meaningful hearing.

147. The suspension in the instant case violates 18 U.S.C. § 1983 and 42 C.F.R. § 455.23 because the Defendants have failed to provide Borrego Health with a meaningful opportunity to rebut the allegations of possible fraud.

148. The suspension in the instant case violates 18 U.S.C. § 1983 and 42 C.F.R. § 455.23 because the notice of suspension does not inform Borrego Health of the nature of the allegations or satisfy the notice requirements contained in the regulations.

149. By failing to provide Borrego Health with a hearing, which is required, the Defendants have prevented Borrego Health from presenting any grounds not to suspend payments under 42 C.F.R. § 455.23(e), including issues with respect to medical access for the patient population Borrego Health services.

150. By failing to notify Borrego Health as to any appeal process and applicable citations thereto, the Defendants have failed to comply with the requirements of law.

25

COMPLAINT

# IRREPARABLE HARM

151. As discussed above, Borrego Health's suspension from the Medi-Cal program will cause it to be unable to treat its Medi-Cal patients resulting in irreparable harm not only to Borrego Health but also to his existing patients. If the suspension goes into effect, Borrego Health will have to lay off all employees and may not be able to continue to pursue reorganization. The Medi-Cal suspension will also trigger a series of collateral consequences, including interference by Medicaid Managed Care plans, which are already refusing to assign patients to Borrego Health and threatening to move those that remain. Additionally, as discussed above, the proposed suspension will deprive Borrego Health of its federal and constitutional rights.

# THE LACK OF AN EFFECTIVE STATE REMEDY

152. The administrative appeal process and judicial review process allowed under state law woefully inadequate and not meaningful with respect to the circumstances here because the suspension goes into effect prior to the completion of the appeal process and the written-only appeal process does not allow for a trial-type hearing or a name-clearing hearing. Moreover, the only subject to be discussed at the state appeal will be whether Borrego Health is under investigation. The same is true with respect to subsequent judicial review of the administrative appeal decision because such judicial review is limited to the procedures available under California Code of Civil Procedure § 1085.

## VIII.   WRIT OF MANDATE (CAL. CODE OF CIVIL PROCEDURE SECTION 1085)

153. Borrego Health hereby incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

154. A writ of mandate under California Code of Civil Procedure section 1085 may issue to compel a state agency to perform a mandatory duty or to correct a prejudicial abuse of discretion.

155. The Department's decision to suspend all Medi-Cal payments to Borrego

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

26

Health and indefinitely deactivate all of Borrego Health's Medi-Cal billing numbers, which effectively bars Borrego Health from participation in the Medi-Cal program, constitutes a prejudicial abuse of discretion and otherwise was arbitrary and capricious conduct for the following reasons:

a.      The Department has deprived Borrego Health of a liberty interest without affording Borrego Health appropriate due process. California law recognizes that health care providers have a liberty interest in being eligible to contract with the State to participate in Medi-Cal. That liberty interest can be infringed when providers are effectively excluded from Medi-Cal without being afforded adequate due process. In this instance, the Department has excluded Borrego Health from Medi-Cal by suspending Medi-Cal payments to the entire organization, indefinitely deactivating Borrego Health's billing numbers, as applicable to all Borrego Health clinics, and directing Medi-Cal managed care plans to steer their members away from Borrego Health. This exclusion occurred without Borrego Health being afforded an evidentiary hearing or any kind of meaningful opportunity to contest the alleged basis for the sanctions;

b.      The Department also has infringed on Borrego Health's due process rights through the imposition of the Medi-Cal sanctions because the Department's communication of information about the sanctions against Borrego Health to third parties has caused damage to Borrego Health's reputation in the health care community.  It is well established that when injury to reputation is combined with damage to the property interest of a party, that party's due process rights are implicated. Here, Borrego Health is informed and believes and thereon alleges that the Department advised other parties that Borrego Health was suspended from the Medi-Cal program before Borrego Health had an opportunity

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

27

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    to exercise any appeal rights, which in turn resulted in some of those

2    third-parties passing along false information about Borrego Health,

3    including but not limited to the suggestion that Borrego Health was

4    "closing" imminently. Borrego Health's reputation has been harmed by

5    the public dissemination of information about the Medi-Cal sanctions,

6    much of which was inaccurate, and the Department is responsible. Since

7    this reputational harm occurred before Borrego Health had a meaningful

8    opportunity to contest the sanctions, the Department denied Borrego

9    Health of adequate due process and abused its discretion

10    c.      The Department also has denied Borrego Health adequate due

11    process and otherwise acted arbitrarily by excluding Borrego Health

12    from the Medi-Cal Program in 2020, based on information that has been

13    in the agency's possession for many months prior to that time. California

14    case law recognizes that a health care provider's liberty interest in not

15    being excluded from Medi-Cal may improperly be infringed where a

16    temporary suspension is imposed based on a multi-year investigation.

17    Here, the Medi-Cal sanctions are purportedly based on a DOJ

18    investigation that focused narrowly on particular services, which

19    occurred or commenced years ago. The DOJ investigation has not

20    resulted in formal findings against Borrego Health in the years that they

21    have been pending. It is therefore arbitrary, capricious and an abuse of

22    discretion for DHCS to now completely exclude Borrego Health — a

23    critically important safety net provider — from Medi-Cal, based on

24    information that the Department has been content to sit on for years until

25    now;

26    d.      The Department also has acted in an arbitrary and capricious

27    manner in this situation in that, prior to sanctioning Borrego Health, the

28    agency clearly did not consider all factors made relevant to such a

28
COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  determination by state and federal law. As explained above, both federal

2  FQHC law, as well as state laws governing the Medi-Cal program

3  generally and Medi-Cal managed care plans, specifically establish that

4  ensuring that patients have adequate access to health care services is of

5  paramount importance. As one example, as mentioned, federal Medicaid

6  regulations establish specifically that one type of "good cause" that

7  would warrant a state Medicaid agency not sanctioning a provider

8  suspected of fraud is when effectively excluding that provider from

9  Medicaid may jeopardized patient access to items or services because the

10  provider serves a large number of "beneficiaries within a HRSA

11  designated medically underserved area." 42 C.F.R. § 455.23(e)(4)(ii).

12  Here, the Department plainly did not give adequate consideration to the

13  potential impact on beneficiary access to services before moving forward

14  with effectively excluding the entirety of the Borrego Health network

15  from Medi-Cal. The decision therefore was arbitrary, capricious and

16  inconsistent with certain purposes of the federal health center and

17  Medicaid programs, as laid out in statutes and regulations;

18  e.    Finally, the Department has abused its discretion in this situation

19  because the penalties imposed on Borrego Health are overly draconian

20  and excessive relative to the supposedly improper conduct alleged

21  against Borrego Health. The Department has effectively excluded

22  Borrego Health's entire of network of clinics from the Medi-Cal program

23  apparently based on investigations that were limited only to particular

24  services and none of which actually have heretofore resulted in any

25  formal fraud findings against Borrego Health. There are various other

26  penalties or measures that DHCS could have implemented to address any

27  concerns about Borrego Health's billing practices that would be less

28  severe than completely excluding the organization from Medi-Cal,

29

COMPLAINT

including, among other things, putting Borrego Health on prepayment claims review or limiting the suspension only to the services that were focus of the DHCS visits and/or DOJ investigation. Along those lines, completely excluding from Medi-Cal a provider that the federal government recognizes as critical to delivering care in medically underserved areas, based on investigations into supposed fraud that have been lingering for years, is an excessive penalty and an abuse of discretion.

## **PRAYER**

WHEREFORE, Borrego Health prays as follows:

1.      For the Declaratory Judgment;

2.      For an order temporarily and permanently enjoining the Department from suspending Borrego Health from the Medi-Cal program until and unless the Department affords Borrego Health the rights to which it is entitled under federal law and under the Constitution;

3.      For costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

4.      For a Writ of Mandate under Code of Civil Procedure 1085: (1) setting aside the Department's suspension of Borrego Health's Medi-Cal payments; (2) ordering the Department to rescind any notices issued to third-parties, including but not limited to Medi-Cal health plans, directing or otherwise compelling them to (x) block transfer patients already assigned to Borrego Health, and (y) assign patients that would otherwise be assigned to Borrego Health to other providers; and (3) compel the payment of approximately $6.7 million that is currently being withheld related to prior provision of in-house dental services to Medi-Cal beneficiaries.

5.      For costs of suit, including attorneys' fees; and

6.      For such other and further relief that the Court may deem just and proper.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

COMPLAINT

US_ACTIVE\122385391\V-8

DATED: September 26, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON


By: */s/ Tania M. Moyron*
Tania M. Moyron

Proposed Attorneys for the Chapter 11 Debtor
and Debtor in Possession

DATED: September 26, 2022

HOOPER, LUNDY & BOOKMAN, P.C.
JOSEPH R. LAMAGNA
DEVIN M. SENELICK
JORDAN KEARNEY


By: */s/ Joseph R. LaMagna*
Joseph R. LaMagna

Proposed Attorneys for the Chapter 11 Debtor
and Debtor in Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

31

COMPLAINT

US_ACTIVE\122385391\V-8