LOCKE LORD LLP
Mitchell J. Popham (SBN: 126194)
mpopham@lockelord.com
Rory Miller (SBN 238780)
Rory.miller@lockelord.com
William Mullen (SBN: 297272)
william.mullen@lockelord.com
David Rutan (SBN 311345)
David.rutan@lockelord.com
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
(213) 485-1500

Attorneys for Defendants
JAMES HEBETS and THE HEBETS COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation, | CASE NO. 3:22-CV-01056-AJB-AGS |
| | Honorable Anthony J. Battaglia |
| Plaintiff, | Courtroom 4A |
| vs. | **DEFENDANTS JAMES HEBETS** |
| | **AND THE HEBETS COMPANY'S** |
| KAREN HEBETS, an individual; MIKIA | **NOTICE OF MOTION AND** |
| WALLIS, an individual; DIANA | **MOTION TO DISMISS** |
| THOMPSON, f/k/a DIANA TRONCOSO, | **PLAINTIFF'S COMPLAINT;** |
| an individual; HARRY ILSLEY, an | **MEMORANDUM OF POINTS** |
| individual; DENNIS NOURSE, an | **AND AUTHORITIES IN** |
| individual; MIKE HICKOK, an individual; | **SUPPORT THEREOF** |
| CHUCK KIMBALL an individual; | |
| PREMIER HEALTHCARE | DATE:      January 5, 2023 |
| MANAGEMENT, INC., a California | TIME:      2:00 p.m. |
| corporation; SUMMIT HEALTHCARE | PLACE:    4A |
| MANAGEMENT, INC., a California | |
| corporation; DARYL PRIEST, an | |
| individual; NICHOLAS PRIEST, an | Complaint Filed:  July 19, 2022 |

*Locke Lord LLP*
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

individual; TRAVIS LYON, an individual; )
HUSAM E. ALDAIRI, D.D.S., an )
individual; ALDAIRI DDS, IC., a California )
corporation; AYED HAWATMEH, D.D.S., )
an individual; HAWATMEH DENTAL )
GROUP, P.C., a California corporation; )
ALBORZ MEHDIZADEH, D.D.S., an )
individual; ALBORZ MEHDIZADEH, )
INC., a Califonria corporation; JILBERT )
BAKRAMIAN, D.D.S., an individual; )
MOHAMMED ALTEKREETI, D.D.S., an )
individual; MAGALY VELASQUEZ, )
D.D.S., an individual; MAGALY M. )
VELASQUEZ DDS PROFESSIONAL )
DENTAL CORP., a California corporation; )
ARAM ARAKELYAN, D.D.S., an )
individual; NEW MILLENIUM DENTAL )
GROUP OF ARAM ARAKELYAN, INC., )
a California corporation; MICHAEL )
HOANG, D.M.D., an individual; WALEED )
STEPHAN, D.D.S., an individual; W.A. )
STEPHAN, A DENTAL CORPORATION )
a California corporation; SANTIAGO )
ROJO, D.D.S., an individual; SANTIAGO )
A. ROJO, D.D.S., INC., a California )
corporation; MARCELO TOLEDO, D.D.S., )
an individual; MARCELO TOLEDO, )
D.D.S., INC., a California corporation; )
MARLENE THOMPSON, D.D.S., an )
individual; MARLENE THOMPSON, )
D.D.S., INC., a California corporation; )
DOUBLAS NESS, D.D.S., an individual; )
NESS DENTAL CORPORATION, a )
California corporation; GEORGE JARED, )
D.D.S., an individual; GEORGE JARED, )
D.D.S., INC., a California corporation; )
JAMES HEBETS, an individual; THE )
HEBETS COMPANY, a Missouri )
Corporation and DOES 1-250, inclusive, )
)
                    Defendants. )

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on January 5, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 4A before the Honorable Anthony J. Battaglia, located at 221 West Broadway, San Diego, California 92101, defendants James Hebets and The Hebets Company (collectively, the "Hebets Parties") will move to dismiss plaintiff Borrego Community Health Foundation's Complaint (the "Motion") on the following grounds:

1.     The First Cause of Action for "Violations under the Racketeer Influenced and Corrupt Organizations ('RICO') Act" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b).

2.     The Forty-Third Cause of Action for "False Promise" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

3.     The Forty-Fourth Cause of Action for "Conversion" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

4.     The Forty-Fifth Cause of Action for "Inducing Breach of Contract" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

5.     The Forty-Sixth Cause of Action for "Intentional Interference with Contractual Relations" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

6.     The Forty-Seventh Cause of Action for "Intentional Interference with Prospective Economic Relations" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

7.     The Forty-Eighth Cause of Action for "Negligent Interference with

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

Prospective Economic Relations" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

8.      The Forty-Ninth Cause of Action for "Violations of Business & Professions Code § 17200, *et seq.*" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

9.      The Fiftieth Cause of Action for "Conspiracy" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

10.     The Fifty-Third Cause of Action for "Unjust Enrichment/Restitution" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

This Motion is based on this notice, the attached Memorandum of Points and Authorities, and upon such other matters, whether written or oral, as may be presented to the Court at or prior to the hearing on this Motion.

Dated:  October 21, 2022                Respectfully submitted,

                                        LOCKE LORD LLP

                                        By: _____

                                        Mitchell J. Popham
                                        Rory Miller
                                        William Mullen
                                        David Rutan
                                        *Attorneys for Defendants*
                                        *JAMES HEBETS and THE HEBETS*
                                        *COMPANY*

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION …………………………………………………    1

II.   SUMMARY OF ALLEGATIONS IN THE COMPLAINT ………………    3

      A.    The Purported Compensation/Benefits And Payout Schemes ………    3

      B.    The Alleged Jim Hebets Scheme ……………………………………    4

      C.    Plaintiff's Relevant Claims …………………………………………    5

III.  ARGUMENT …………………………………………………………    5

      A.    Legal Standard ………………………………………………………    5

      B.    Plaintiff's Claims Against The Hebets Parties Based On Conduct
            From July 9, 2018 And Earlier Are Time Barred ……………………    6

      C.    Plaintiff Does Not – And Cannot – Allege The Necessary
            Elements For Its RICO Claim ………………………………………    8

            1.    The Hebets Parties Did Not Engage In The Required
                  Conduct For A RICO Claim …………………………………    9

            2.    The Complaint Does Not Allege An Enterprise Because
                  There Is No Common Purpose Among The Defendants ……..    11

            3.    Plaintiff Cannot Demonstrate That The Hebets Parties
                  Engaged In Racketeering Activity ……………………………    12

                  a.    The Mail And Wire Fraud Claims Do Not Have
                        Merit …………………………………………………    13

                  b.    The Federal Health Care Offenses Claims Are
                        Deficient ………………………………………………..    15

            4.    The RICO Claim Based On Conspiracy Is Also Faulty ………    16

      D.    Plaintiff's False Promise Claim Is Not Adequately Pled ………....    17

      E.    The Conversion Cause Of Action In The Complaint Fails …………..    18

      F.    Plaintiff's Inducing Breach Of Contact And Intentional
            Interference With Contractual Relations Claims Are Untenable ……    19

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

G.   The Intentional And Negligent Interference With Prospective

Economic Relations Causes Of Action Are Not Viable ……………   21

H.   Plaintiff's Violation Of UCL Claim Is Invalid ………………………   22

I.   Plaintiff's Conspiracy Claim Lacks Merit ……………………………   23

J.   Plaintiff's Unjust Enrichment Claim Is Futile ………………………..   24

IV.   CONCLUSION ………………………………………………………………...   25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

# **TABLE OF AUTHORITIES**

**Page(s)**

**State Cases**

*De Havilland v. FX Networks, LLC,*
 21 Cal. App. 5th 845 (2018) ..................................................................25

*Kiang v. Strycula*,
 231 Cal. App. 2d 809 (1965) ...................................................................7

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
 2 Cal. App. 4th 153 (1991) ....................................................................17

**Federal Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................22

*Ajzenman v. Off. of Comm'r of Baseball*,
 487 F. Supp. 3d 861 (C.D. Cal. 2020) ...................................................24

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................6

*BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*,
 364 F. Supp. 3d 1115 (E.D. Cal. 2019) ...................................................7

*Baumer v. Pachl*,
 8 F.3d 1341 (9th Cir. 1993) ...................................................................10

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
 166 F. Supp. 3d 988 (N.D. Cal. 2015) ...................................................20

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ..........................................................................3, 6, 24

*Brice v. Haynes Invs., LLC.*,
 548 F. Supp. 3d 882 (N.D. Cal. 2021) .....................................................9

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
 16 F. Supp. 3d 1141 (S.D. Cal. 2014) ...................................................22

*City of Escondido v. Gen. Reinsurance Corp.*,
 2019 WL 6917983 (S.D. Cal. Dec. 18, 2019) .......................................17

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017) ........................................................ 13, 14

*Cork v. CC-Palo Alto, Inc.*,
   534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................. 23

*DC Comics v. Pac. Pictures Corp.*,
   938 F. Supp. 2d 941 (C.D. Cal. 2013) .................................................................. 7

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................................... 19, 20

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................. 14

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) ........................................................................... 15

*Fimbres v. Pac. Mar. Ass'n*,
   2012 WL 6193253, at *1 (C.D. Cal. Dec. 10, 2012) ........................................... 7

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
   569 F. Supp. 2d 929 (N.D. Cal. 2008) ............................................................... 17

*Garrison v. Oracle Corp.*,
   159 F. Supp. 3d 1044 (N.D. Cal. 2016) ............................................................ 7, 8

*Goehring v. Wright*,
   858 F. Supp. 989 (N.D. Cal. 1994) ...................................................................... 7

*Graf v. Peoples*,
   2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) .................................................... 13

*Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity
   Partners*,
   33 F. App'x 893 (9th Cir. 2002) ........................................................................ 22

*Hsu v. OZ Optics Ltd.*,
   211 F.R.D. 615 (N.D. Cal. 2002) ....................................................................... 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   27 F. Supp. 3d 1015 (N.D. Cal. 2014) .................................................................. 8

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................................... 11, 12

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

iv         Case No. 3:22-CV-01056-AJB-AGS
THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*In re Outlaw Lab'y, LLP*,
  463 F. Supp. 3d 1068 (S.D. Cal. 2020) .............................................................23

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011)............................................................10

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012)..............................................................10

*Izenberg v. ETS Servs., LLC*,
  589 F. Supp. 2d 1193 (C.D. Cal. 2008)..................................................11, 13, 14

*Ketayi v. Health Enrollment Grp.*,
  516 F. Supp. 3d 1092 (S.D. Cal. 2021) .............................................................23

*Mandel v. Hafermann*,
  503 F. Supp. 3d 946 (N.D. Cal. 2020)...............................................................24

*Metaxas v. Lee*,
  503 F. Supp. 3d 923 (N.D. Cal. 2020)..................................................................9

*Mohebbi v. Khazen*,
  50 F. Supp. 3d 1234 (N.D. Cal. 2014)..........................................................12, 15

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................14

*Mossimo Holdings, LLC v. Haralambus*,
  2017 WL 1240739, at *1 (C.D. Cal. Apr. 4, 2017)......................................19, 20

*Murphy v. Am. Gen. Life Ins. Co.*,
  74 F. Supp. 3d 1267 (C.D. Cal. 2015)..................................................................7

*Netbula, LLC v. BindView Dev. Corp.*,
  516 F. Supp. 2d 1137 (N.D. Cal. 2007).............................................................17

*Nguyen v. Stephens Inst.*,
  529 F. Supp. 3d 1047 (N.D. Cal. 2021).............................................................19

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .............................................................................11

*Pac. Recovery Sols. v. United Behav. Health*,
  481 F. Supp. 3d 1011 (N.D. Cal. 2020)..............................................9, 10, 14, 16

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

*Pincay v. Andrews*,
 238 F.3d 1106 (9th Cir. 2001) ................................................................. 7

*Pro Water Sol., Inc. v. Angie's List, Inc.*,
 457 F. Supp. 3d 845 (C.D. Cal. 2020) ................................................... 21

*R Power Biofuels, LLC v. Chemex LLC*,
 2016 WL 6663002, at *1 (N.D. Cal. Nov. 11, 2016) ............................... 7

*Rockridge Tr. v. Wells Fargo, N.A.*,
 985 F. Supp. 2d 1110 (N.D. Cal. 2013) ........................................... 23, 24

*Rupert v. Bond*,
 68 F. Supp. 3d 1142 (N.D. Cal. 2014) ................................................... 13

*Saroya v. Univ. of the Pac.*,
 503 F. Supp. 3d 986 (N.D. Cal. 2020) ............................................. 18, 25

*Schertzer v. Bank of Am., N.A.*,
 445 F. Supp. 3d 1058 (S.D. Cal. 2020) ................................................. 18

*Susilo v. Wells Fargo Bank, N.A.*,
 796 F. Supp. 2d 1177 (C.D. Cal. 2011) ................................................... 6

*Tan v. GrubHub, Inc.*,
 171 F. Supp. 3d 998 (N.D. Cal. 2016) ................................................... 23

*Turner v. Cook*,
 362 F.3d 1219 (9th Cir. 2004) ............................................................... 13

*U.S. v. Johnson*,
 450 F.3d 366 (8th Cir. 2006) ................................................................. 16

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................... 20, 22

*Vallarta v. United Airlines, Inc.*,
 497 F. Supp. 3d 790 (N.D. Cal. 2020) ............................................. 18, 25

*Walter v. Drayson*,
 538 F.3d 1244 (9th Cir. 2008) ............................................................... 11

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
 280 F. Supp. 2d 1044 (E.D. Cal. 2003) ........................................... 21, 22

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Federal Rules**

Fed. R. Civ. P. 9(b) ....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................................5, 6

**Federal Statutes**

18 U.S.C. § 24(a) ...........................................................................................16

18 U.S.C. § 287 .................................................................................................9

18 U.S.C. § 371 .................................................................................................9

18 U.S.C. § 669 .................................................................................................9

18 U.S.C. § 1001 ...............................................................................................9

18 U.S.C. § 1035 ...............................................................................................9

18 U.S.C. § 1341 .......................................................................................9, 14

18 U.S.C. § 1342 .............................................................................................14

18 U.S.C. § 1343 ...............................................................................................9

18 U.S.C. § 1347 ...............................................................................................9

18 U.S.C. § 1349 ...............................................................................................9

18 U.S.C. § 1956(7)(F) ..................................................................................15

18 U.S.C. § 1957 .......................................................................................9, 15

18 U.S.C. § 1961(1) ........................................................................................16

18 U.S.C. § 1961(1)(B) ....................................................................................9

18 U.S.C. § 1961(4) ........................................................................................11

18 U.S.C. § 1962(c) ............................................................................*passim*

18 U.S.C. § 1962(d) ................................................................................16, 17

18 U.S.C. § 1964 .............................................................................................16

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**State Statutes**

Cal. Business & Professions Code § 17200, *et seq.* ..........................................*passim*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.      INTRODUCTION**

Plaintiff Borrego Community Health Foundation ("Plaintiff" or "Borrego")—a nonprofit 501(c)(3) Federally Qualified Health Center—alleges more than fifty causes of action against thirty-nine defendants in its haphazard Complaint which discusses several disconnected "schemes" supposedly perpetrated against Borrego resulting in monetary damages.  These purported schemes mainly revolve around the "Borrego Insiders" who were former members of Borrego's Board of Trustees, including Bruce Hebets—the CEO of Borrego from 2004 to September 2018.  These individuals allegedly participated in the schemes to abscond with millions of dollars from Borrego that it received from Medi-Cal and federal healthcare agencies.  The Borrego Insiders allegedly coordinated with the "Premier Defendants" to enter into sham management services agreements where they were significantly overpaid by Borrego.  Also, Borrego was supposedly fraudulently charged by the "Dentist Defendants" for dental services that were supposed to be provided to Borrego's patients.

After describing the various schemes with respect to the previously mentioned parties, Borrego asserts claims against defendants James ("Jim") Hebets and The Hebets Company ("HC") (collectively, "the Hebets Parties") contending that Jim Hebets "schemed" with his brother, Bruce Hebets, to siphon money to the Borrego Insiders as well as to HC, while the Hebets Parties advised Borrego on its executive compensation and insurance policies.  However, the three alleged schemes which involve the Hebets Parties do not establish that they engaged in any misconduct.  Instead, Plaintiff relies on legal conclusions and group pleadings as opposed to any detailed facts to create a façade of illegality where none truly exists.

Several of Plaintiff's claims rely on the assumption that the Hebets Parties were colluding with the other defendants to perpetrate the alleged schemes even though Plaintiff's own assertions undercut this theory.  There are ***no facts*** which show that the Hebets Parties have any connection to the Premier Defendants or the Dentist

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

Defendants.  In addition, the Hebets Parties were ***always*** independent of Borrego and the Borrego Insiders, and the allegations do not show that they made any misrepresentations or omissions regarding any bonus plans presented to Borrego.[1]

Besides the incurable defects in the substantive allegations pertaining to the Hebets Parties, Plaintiff's claims are also fatally flawed because they are time barred by the applicable statutes of limitations, and Plaintiff does not plead any facts to establish fraudulent concealment by the Hebets Parties in order to toll the limitations periods.  Further, the RICO claim is deficient because Plaintiff does not allege that the Hebets Parties directed any part of the alleged enterprise, there was no common purpose between the Hebets Parties and the other defendants to form an enterprise, and the purported predicate acts are not alleged with the necessary detail.  Similarly, the Complaint does not allege facts with particularity under Federal Rule of Civil Procedure ("FRCP") 9(b) for Plaintiff's claims that rely on the purported fraudulent schemes by the Hebets Parties.  The intentional interference claims also fail as a matter of law because there are no facts pled which show that the Hebets Parties were aware of the contracts and business relationships with Medi-Cal or the dental providers that Plaintiff contends were disrupted.  Nor are there any facts alleged establishing that the Hebets Parties were aware of the other schemes executed by the Borrego Insiders, Premier Defendants and Dentist Defendants which dooms Plaintiff's conspiracy claim.

The Complaint's vague and conclusory allegations against the Hebets Parties do not show that they engaged in any misconduct that harmed Borrego.  Plaintiff merely drags the Hebets Parties into this lawsuit because of Jim Hebets' familial relationship with Bruce Hebets, even though the alleged facts demonstrate that the Hebets Parties' business dealings with Borrego were always proper.  Accordingly, all of the claims alleged against the Hebets Parties should be dismissed without leave to amend.

---

[1] Notably, neither Jim Hebets nor HC are included in the definitions of the Borrego Insiders, Premier Defendants or the Dentist Defendants in the Complaint.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

## II.      SUMMARY OF ALLEGATIONS IN THE COMPLAINT[2]

### A.      The Purported Compensation/Benefits And Payout Schemes

The focus of the Complaint is that several schemes involving the Borrego Insiders, Premier Defendants, and Dentist Defendants "siphoned off money" from Borrego that was earmarked to provide healthcare to the underserved.  Compl., ¶ 2.

Beyond these primary schemes which do not implicate the Hebets Parties, the Complaint also discusses the "Compensation/Benefits Scheme" which involved the Borrego Insiders using the Hebets Parties to "create a bogus evaluation of the [Borrego executive] compensation packages" which Jim Hebets supposedly approved. *Id.* at ¶ 280.  This evaluation reviewed the "high" and "above-market salary and benefits" of Bruce Hebets and the Borrego Insiders.  *Id.* at ¶¶ 276-80.  For example, in 2016, Bruce Hebets received more than $383,000 in salary, plus over $126,000 in bonus, and Karen Hebets, Bruce Hebets' wife, received more than $227,000 in salary, plus over $40,000 in bonus.  *Id.* at ¶¶ 276-79.  In 2017, Diana Thompson was paid nearly $338,000 in salary and Mikia Wallis was paid over $440,000 in salary.  *Id.*

After these compensation packages were set up, Plaintiff contends that another company called Compensation Resources, Inc. ("CRI") reviewed the compensation of fifteen unnamed Borrego executives on or about July 19, 2019 and determined that the "Total Compensation Package" for eleven of these officers was "currently above the high end of their respective Market Ranges of Reasonableness."  *Id.* at ¶ 286.  The Complaint also alleges as part of this scheme that Bruce Hebets and Jim Hebets created a 162B Executive Bonus Plan that would pay "Bruce Hebets and others [at Borrego] additional compensation (a tax-free payment of $5,000 per month) while also siphoning millions to Jim Hebets' insurance company."  *Id.* at ¶ 289.

Next, Plaintiff recounts the Payout Scheme which included the Borrego Board

---

[2] While accepted as true for purposes of the motion to dismiss (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the Hebets Parties do not concede or admit the truth of any of the allegations in the Complaint.

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

of Trustees asking Mikia Wallis, the previous Chief Legal Officer for Borrego, to evaluate the 162B plan as well as alternative plans in 2019. *Id.* at ¶ 309. Mikia Wallis supposedly asked Jim Hebets to address the board of directors for Borrego about the 162B plan. *Id.* At a subsequent board meeting for Borrego, Jim Hebets "praise[d]" the 162B plan. *Id.* The Complaint states that Jim Hebets' review of this policy was an attempt to conceal the impropriety of the "generous 162B plan." *Id.* Plaintiff also alleges that the Borrego Insiders "were compensated for this access and control through kickbacks or other payments or remuneration." *Id.* at ¶ 310.

## B. The Alleged Jim Hebets Scheme

With respect to the Jim Hebets Scheme, the Complaint states that the Borrego Insiders entered into arrangements with the Hebets Parties to "funnel[] additional Borrego funds to Borrego Insider cronies and family members." Compl., ¶ 311. The Borrego Insiders "collaborated to have" the Hebets Parties "review and approve sham, inflated salaries for Borrego executives, including the Borrego Insiders." *Id.* at ¶ 312. Jim Hebets supposedly had his name removed from the documents that included the "sham fair market value analyses" when they "were presented to the Borrego Board" to "conceal his involvement and obvious conflict of interest, even neglecting to mention his last name when introducing himself." *Id.* at ¶ 313.

Plaintiff also asserts that HC "boasts of specializing in FQHCs and creating ways to increase executive compensation/benefits beyond what is specified in IRS code for qualified 403(b) or 457(b) plans," and their website makes clear that "their agenda is to maximize executive compensation." *Id.* at ¶¶ 314-15. The Complaint alleges that Bruce Hebets, Diana Thompson and Mikia Wallis "schemed" with HC to "increase executive compensation through contributions" by "automatic 'bonuses' that were paid to 162B plans." *Id.* at ¶ 317. These 162B plans were a "strategy to pay above market to insiders without added scrutiny or tax liability" and were never intended to be life insurance plans. *Id.* at ¶ 318. Bruce and Karen Hebets allegedly worked with HC to "'borrow' from their 162B accounts and transfer the funds from

their respective 162B plans into their checking account." *Id.*

The Complaint asserts that in 2015 Bruce Hebets received "$3,500 per month for his 162B plan" and by 2017 "he was receiving $5,000 per month." *Id.* at ¶ 319. These payments were supposedly "free of taxes" and Borrego was paying a "tax true up" as well, which resulted in the Borrego Insiders receiving tax free bonuses every month. *Id.* Bruce Hebets' 162B plan life insurance value was $1,236,000 on July 9, 2018, which was paid to his estate when he died in January 2019. *Id.* at ¶ 320.

This amounted to the Borrego Insiders and the Hebets Parties "working together to siphon funds from" Borrego. *Id.* at ¶ 323. Plaintiff alleges that the 162B plan payments "created a windfall" for the Hebets Parties—which sold and managed the plan—since Borrego paid them $240,000 per month for the 162B plans by July 2020. *Id.* at ¶ 321. Plaintiff adds that although the "compensation analyses were presented to the Board of Trustees for vetting and approval," Borrego was not "on notice of Jim Hebets' and his company's involvement or of any potential financial or other injury associated with…the flawed compensation analyses." *Id.* at ¶ 323.

## C.   <u>Plaintiff's Relevant Claims</u>

The Complaint asserts ten causes of action against the Hebets Parties: (1) Violations under the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) False Promise; (3) Conversion; (4) Inducing Breach of Contract; (5) Intentional Interference with Contractual Relations; (6) Intentional Interference with Prospective Economic Relations; (7) Negligent Interference with Prospective Economic Relations; (8) Violations of Business & Professions Code § 17200, *et seq.* ("UCL"); (9) Conspiracy; and (10) Unjust Enrichment/Restitution. Plaintiff seeks monetary damages, the imposition of a constructive trust, punitive damages, interest, as well as reasonable attorney's fees and costs. Compl., Prayer for Relief.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>

"A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

complaint." *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1184 (C.D. Cal. 2011). A complaint must be dismissed for failure to state a claim if it fails to state a cognizable legal theory, or has not alleged sufficient facts for a claim. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555, 562-63. "[M]ere conclusory statements" couched as factual allegations "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.** **Plaintiff's Claims Against The Hebets Parties Based On Conduct From July 9, 2018 And Earlier Are Time Barred**

The Complaint alleges that in the Jim Hebets Scheme, the payments made to Bruce Hebets' 162B plan in 2015 were in the amount of $3,500 per month. Compl., ¶ 319. By 2017, payments to Bruce Hebets' 162B plan were allegedly $5,000 per month. *Id.* Plaintiff also alleges that the value of these plans "was substantial," noting that on July 9, 2018, Bruce Hebets' 162B plan was worth $1.236 million. *Id.* at ¶ 320. Also, in the Compensation/Benefits Scheme, Plaintiff alleges that Bruce Hebets and the Borrego Insiders received the "high" salaries, bonuses and other benefits beginning at least in 2016 and continuing into 2017. *Id.* at ¶¶ 276-79.

Notably, Plaintiff does not assert that these payments to Bruce Hebets' 162B plan were hidden from Borrego or that Borrego was not aware of the amount of Bruce Hebets' 162B plan by July 9, 2018. *See* Complaint, *generally*. Nor does Plaintiff allege that it was unaware of the salaries and benefits that Bruce Hebets and the Borrego Insiders received in 2016 and 2017. *Id.* Rather, in an attempt to reap the benefits of equitable tolling for its claims, Plaintiff alleges that Borrego was not put on notice of the Hebets Parties' "involvement or of any potential financial or other injury associated with, or caused in whole or in part by the flawed compensation analyses." *Id.* at ¶ 323. In addition, "the Board" would not have "any access to facts that might put them on inquiry notice" that the Borrego Insiders and the Hebets Parties were "working together to siphon funds" from Borrego. *Id.* These conclusory allegations are insufficient to avoid dismissal of Plaintiff's untimely claims.

Plaintiff's causes of action under RICO and the UCL have a four-year statute of

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  limitations.  *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir. 2001); *Garrison v.*

2  *Oracle Corp.*, 159 F. Supp. 3d 1044, 1062 (N.D. Cal. 2016).  Plaintiff's claims for

3  false promise, conversion and unjust enrichment have a three-year statute of

4  limitations.  *Fimbres v. Pac. Mar. Ass'n*, 2012 WL 6193253, at *5 (C.D. Cal. Dec. 10,

5  2012); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1279 (C.D. Cal. 2015);

6  *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1122

7  (E.D. Cal. 2019).  In addition, the torts of inducing breach of contract, intentional

8  interference with contract, as well as intentional and negligent interference with

9  prospective economic relations have a two-year statute of limitations.  *Kiang v.*

10  *Strycula*, 231 Cal. App. 2d 809, 811 (1965); *DC Comics v. Pac. Pictures Corp.*, 938

11  F. Supp. 2d 941, 948 (C.D. Cal. 2013); *R Power Biofuels, LLC v. Chemex LLC*, 2016

12  WL 6663002, at *15 (N.D. Cal. Nov. 11, 2016).  Further, a conspiracy claim adopts

13  the limitation period of its companion tort and accrues at the time of the latter's

14  commission.  *Goehring v. Wright*, 858 F. Supp. 989, 1007 (N.D. Cal. 1994).

15          Plaintiff's lawsuit was filed on July 19, 2022.  It is clear that Plaintiff was on

16  actual or constructive notice about the "substantial" value of Bruce Hebets' account

17  by July 9, 2018 as well as the salaries and benefits that he and the Borrego Insiders

18  received in 2016 and 2017—when Borrego's instant claims began to accrue.  *Pincay*,

19  238 F.3d at 1108–09 ("the civil RICO limitations period begins to run when a plaintiff

20  knows or should know of the injury that underlies his cause of action.").  A plaintiff

21  has constructive notice "if it had enough information to warrant an investigation

22  which, if reasonably diligent, would have led to discovery of the fraud."  *Id.* at 1110.

23  The Complaint alleges that Bruce Hebets' 162B plan life insurance value was $1.236

24  million on July 9, 2018, and $5,000 of payments per month were being sent to this

25  account by 2017.  Compl., ¶¶ 319-20.  Also, Bruce Hebets received more than

26  $383,000 in salary, plus over $126,000 in bonus, in 2016 as well as more than

27  $529,000 in salary, plus over $87,000 in bonus, in 2017.  *Id.* at ¶ 276.  Based on the

28  allegations in the Complaint, Plaintiff certainly could have been alerted to purported

1  misconduct in connection with the 162B plans and the purported "high"

2  compensation/benefits more than four years before suit was filed.

3      Although Plaintiff alleges that the "[s]chemes were concealed by Defendants

4  and most did not come to light until, at the earliest, October 2020 during a government

5  investigation" (Compl., ¶ 421), Plaintiff does not assert any facts with particularity

6  under FRCP 9(b) to establish fraudulent concealment by the Hebets Parties so that

7  equitable tolling would apply. *Garrison*, 159 F. Supp. 3d at 1075 ("to plead

8  fraudulent concealment in accordance with Rule 9(b), [p]laintiffs must allege an

9  account of the time, place, and specific content of the false representations as well as

10  the identities of the parties to the misrepresentations.") (internal citations omitted).

11  Also, Plaintiff's conclusory allegation that it "had no constructive or inquiry notice of

12  the fact of injury throughout the life of the Schemes" is not pled with any particularity

13  under FRCP 9(b), including an explanation about why Plaintiff did not have such

14  notice of the relevant facts during this time period.  Compl., ¶ 422.  To invoke the

15  fraudulent concealment doctrine, Plaintiff "must allege facts demonstrating [that it]

16  could not have discovered the alleged violations by exercising reasonable diligence."

17  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020 (N.D. Cal.

18  2014).  Plaintiff's cursory allegations about its purported delayed discovery do not

19  meet this standard which warrants dismissal of each claim without leave to amend.

20      **C.**    <u>**Plaintiff Does Not—And Cannot—Allege The Necessary Elements**</u>

21          <u>**For Its RICO Claim**</u>

22      In support of the RICO cause of action, Borrego is described as both the RICO

23  enterprise and its victim because it is engaged in interstate commerce as a FQHC and

24  "has lost tens of millions of dollars as a result of the Defendants' fraudulent conduct

25  …." Compl., ¶¶ 390 and 394.  The Complaint also states that the racketeering activity

26  is separate and distinct from the enterprise and that defendants "worked together to

27  perpetrate a number of schemes to steal money from the Enterprise" which was "paid

28  to the Enterprise by state and federal payers utilizing primarily state and federal funds

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

paid by Medi-Cal." *Id.* at ¶ 398.  These alleged schemes were "contrary to the ordinary and regular operations and management of" Borrego.  *Id.* at ¶ 399.  Plaintiff contends that the alleged schemes involving the Hebets Parties are unlawful under 18 U.S.C. § 1962(c) ("Section 1962(c)").  Plaintiff alleges that the defendants participated in racketeering activity including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), engaging in "monetary transactions in property derived from specified unlawful activity" (18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1957), theft or embezzlement in connection with health care (18 U.S.C. § 669), health care fraud (18 U.S.C. § 1347), false statements or entries generally (18 U.S.C. § 1001), as well as other "federal healthcare offenses" (18 U.S.C. § 371, 18 U.S.C. § 1035, 18 U.S.C. § 287, and 18 U.S.C. § 1349).  *Id.* at ¶¶ 402, 407, 414, 416 – 419.

To plead a civil RICO claim under Section 1962(c), Plaintiff must plausibly allege that the Hebets Parties engaged in "(1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 935 (N.D. Cal. 2020) (internal citations omitted).  As explained below, Plaintiff has not pled the necessary factual details to satisfy each of these elements of its RICO claim.

### 1. The Hebets Parties Did Not Engage In The Required Conduct For A RICO Claim

To satisfy the "conduct" element of a Section 1962(c) claim, a plaintiff must allege facts that the defendant had "some part in directing [the enterprise's] affairs." *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).  Simply being "a part" of the enterprise or "performing services" for the enterprise does not rise to the level of direction required.  *Id.* (allegations "showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise."); *Brice v. Haynes Invs., LLC.*, 548 F. Supp. 3d 882, 893 (N.D. Cal. 2021) (one is not liable under Section 1962(c) unless he or she "has participated in the operation or management of the enterprise itself.").  *Pac.*

1    *Recovery Sols.* held there were no allegations that raised an inference that defendants

2    "performed actions to further a scheme rather than their own individual affairs

3    pursuant to the contract" to plead the conduct element.  481 F. Supp. 3d at 1027.

4          Here, the Hebets Parties are portrayed as "simply being involved" and

5    "performing services for the enterprises [that] does not rise to the level of direction."

6    *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 910

7    (C.D. Cal. 2012).  The Complaint describes the Borrego Insiders as having a business

8    relationship with the Hebets Parties through the creation and approval of the 162B

9    plans which allegedly allowed excessive payments to the Borrego Insiders.  Compl.,

10   ¶¶ 289, 309, 311-313 and 317-321.  However, the Hebets Parties are in the business of

11   "executive compensation to healthcare providers" (*Id.* at ¶¶ 45 and 314-315) so

12   Plaintiff does not allege that they "conducted or participated in the conduct of the

13   *enterprise's* affairs, not just their *own affairs*."  *In re WellPoint, Inc.*, 903 F. Supp. 2d

14   at 910 ("the existence of a business relationship" between the defendants "does not

15   show that [defendant] WellPoint directed the enterprise"; emphasis in original).

16         Although Plaintiff alleges that Jim Hebets "directed the review and approval

17   process through" HC of the purported "sham, inflated salaries" for Borrego's

18   executives, this conclusory allegation has been held to be insufficient to show that the

19   Hebets Parties "have some part in directing" the enterprise's affairs.  *Id.* at 910 and

20   912; *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002,

21   1035 (C.D. Cal. 2011) (plaintiffs' "conclusory statement [that] 'Wellpoint and

22   UnitedHealth … [were] involved in decision making regarding the database'…is too

23   general to satisfy *Twombly's* pleading instructions.").  Because Plaintiff does not

24   adequately allege facts which establish the "conduct" element for RICO, this claim

25   should be dismissed.  *In re WellPoint*, 903 F. Supp. 2d at 912 (RICO causes of action

26   against WellPoint dismissed since plaintiffs' "failed to plead any non-conclusory facts

27   showing that WellPoint played 'some part in directing the enterprise's affairs,' as

28   opposed to 'simply being involved' in them."); *Baumer v. Pachl*, 8 F.3d 1341, 1344

1   (9th Cir. 1993) (plaintiff did not satisfy the "conduct or participate requirement" of §

2   1962(c) where he only "provided legal services" to the alleged enterprise and did not

3   hold "any formal position in the limited partnership."); *Walter*, 538 F.3d at 1249.

### 2.   The Complaint Does Not Allege An Enterprise Because There Is No Common Purpose Among The Defendants

6       Plaintiff describes the Hebets Parties and several of the other defendants as

7   "Outsiders" to Borrego.  Compl., ¶ 391.  The defendants were allegedly "associated

8   with the Enterprise" because they were "outside vendors."  *Id.* at ¶ 392.  Plaintiff

9   states that defendants are "entities and individuals separate from the Enterprise, and

10  none of the Defendants is alleged to be the Enterprise, or its members."  *Id.* at ¶ 393.

11      A RICO enterprise includes "any individual, partnership, corporation,

12  association, or other legal entity, and any union or group of individuals associated in

13  fact although not a legal entity."  18 U.S.C. § 1961(4).  In the Complaint, Plaintiff

14  does not identify "the enterprise alleged"—a requirement for a RICO claim—which

15  itself establishes that this element is not adequately pled.  *Izenberg v. ETS Servs.,*

16  *LLC*, 589 F. Supp. 2d 1193, 1203 (C.D. Cal. 2008) (it is "essential to plead precisely

17  in a RICO case the enterprise alleged and the RICO section allegedly violated.").

18  Plaintiff's description of defendants in connection with the RICO enterprise suggests

19  that Plaintiff attempts to plead an associated-in-fact enterprise.  An associated-in-fact

20  enterprise is "a group of persons associated together for a common purpose of

21  engaging in a course of conduct."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th

22  Cir. 2007) (internal citations omitted).  A plaintiff must allege both "evidence of an

23  ongoing organization, formal or informal," and "evidence that the various associates

24  function as a continuing unit."  *Id.*  The hallmark of an enterprise is "an association of

25  entities, groups or individuals that must share a common purpose to engage in a

26  particular fraudulent course of conduct and work together to achieve such purposes."

27  *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).  A

28  plaintiff cannot "meet their particularized pleading burden by artfully inserting

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose." *Id.* (plaintiffs' "conclusory allegations are woefully inadequate to state a [RICO] claim for relief" under the "particularized pleading requirements of Rule 9(b)" since pleading "by adjective" is not sufficient).

Here, Plaintiff alleges that the schemes constitute "predicate acts" which relate to each other as part of a common plan to steal money from Borrego Health.  Compl., ¶ 426.  The Complaint asserts that each "act is related to its purpose, results, participants, victims and method of commission."  *Id.*  Similar to *In re Jamster*, while Plaintiff alleges an "overarching common purpose to engage in fraudulent conduct" in a conclusory fashion, there are no "specific allegations in support of the common purpose."  *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5.  Specifically, there are no allegations connecting each of the defendants' actions showing a "common purpose to accomplish the alleged fraudulent scheme."  *Id.* at * 6.

Instead, the purported schemes involved many parties alleged to be acting separately to participate in uncoordinated misconduct.  By way of example only, Plaintiff does not allege that the Hebets Parties had any communications or contact with the Premier Defendants or the Dentist Defendants.  *See* Compl., *generally*. Plaintiff also does not claim that the Hebets Parties are involved in nine of the twelve schemes referenced in the Complaint.  *Id.*  Also, noticeably absent are any allegations "as to the form or structure" of the enterprise, the "ways in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the enterprise." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014) (RICO claim not adequately pled when plaintiff did not describe "*how* each individual [d]efendant" is engaged in the enterprise) (emphasis in original).  Plaintiff failed to allege a common purpose for the enterprise element of its RICO claim.

### 3.     Plaintiff Cannot Demonstrate That The Hebets Parties Engaged In Racketeering Activity

To plead a pattern of racketeering activity, "plaintiffs must allege that

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

defendants committed at least two of the statutorily enumerated predicate acts." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017) (citing 18 U.S.C. § 1961(5)); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (noting that, while at least two acts of racketeering activity are required under RICO to establish a pattern, the pleading of two such acts is not necessarily sufficient to do so). Where RICO claims under Section 1962(c) are asserted against multiple defendants, "a plaintiff must allege at least two predicate acts by each defendant." *Comm. to Protect*, 235 F. Supp. 3d at 1177. To plead a pattern of racketeering activity, a plaintiff must allege: (i) that the racketeering predicates are related, and (ii) that they amount to or pose a threat of continued criminal activity. *Id.*

RICO fraud claims must meet the heightened pleading standards of FRCP 9(b). *Id.* at 1176 (citing *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). In order to satisfy FRCP 9(b), a plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal citations omitted). Plaintiff must also allege facts setting "forth an explanation as to why the statement or omission complained of was false and misleading." *Id.*; *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1160 (N.D. Cal. 2014) (plaintiff's RICO claim was deficient because the allegations failed "to state the time, place, or specific content of the purported 'scheme,'" and did "not state with any particularity the content of the communications that comprised this alleged scheme.").

As a preliminary matter, Plaintiff's "RICO claim incorporates the preceding allegations in the complaint" which "does not suffice to plead a pattern of racketeering activity" since Plaintiff does not "adequately identify the predicate acts that form the basis of the alleged "scheme of racketeering.'" *Izenberg*, 589 F. Supp. 2d at 1203 (internal citations omitted). Such "'shotgun' pleading is insufficient to plead a RICO claim." *Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008).

### a.  The Mail And Wire Fraud Claims Do Not Have Merit

The first predicate acts alleged by Plaintiff are mail fraud and wire fraud.

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    Compl., ¶¶ 402-406; 407-413.  Mail and wire fraud under 18 U.S.C. §§ 1341 and 1342

2    include three elements (a) the formation of a scheme to defraud, (b) the use of the

3    United States mail or interstate telephone wires in furtherance of that scheme, and (c)

4    the specific intent to defraud."  *Eclectic Properties E., LLC v. Marcus & Millichap*

5    *Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

6          Plaintiff's allegations in support of its mail and wire fraud claims do not

7    recite—or provide any details about—any use of the United States mail or interstate

8    telephone wires to accomplish the Hebets Parties' alleged schemes or mention their

9    specific intent to defraud.  *Comm. to Protect*, 235 F. Supp. 3d at 1179 (in "order to

10   adequately allege claims of mail and wire fraud, Plaintiff must satisfy the

11   requirements of FRCP 9(b)."); *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028

12   ("allegations in the complaint do not identify the time, place, and specific content of

13   the fraudulent communications at issue," or "aver factual matter to raise the inference

14   that such communications were sent over the United States wires or the United States

15   mail across state lines."); *Izenberg*, 589 F. Supp. 2d at 1204 (predicate act of mail

16   fraud not properly pled because "plaintiffs do not identify the manner in which the

17   alleged scheme involved use of the U.S. mail.").  Nor do the descriptions of the

18   relevant schemes allege facts which address these elements either.  Compl., ¶¶ 280-

19   289 and 309-323; 235 F. Supp. 3d at 1180 (RICO claim failed since there were no

20   allegations "clearly describing the role of each defendant in the alleged fraudulent

21   scheme, or to explain who was a party to the allegedly fraudulent statements.");

22   *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (racketeering

23   activity not sufficiently pled under FRCP 9(b) because claim did not "specify either

24   the time or the place of the alleged wrongful conduct other than to say: 'Commencing

25   on or about October, 1982, and through and including March, 1983 ....'").

26         For instance, the Complaint alleges in a general manner for the mail fraud

27   predicate act that the "Schemes could not work without the use of the United States

28   Mail, which was used for the purpose of executing the Schemes."  Compl., ¶ 404.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    While Plaintiff alleges that the "mail was used to send correspondence and payments"

2    under some of the other schemes, it does not state that these practices were performed

3    with respect to the schemes that supposedly involved the Hebets Parties. *Id.* at ¶ 405.

4         Similarly, the wire fraud predicate act states in a non-specific fashion that

5    defendants used "interstate electronic transmission of documents for the purpose of

6    executing, or attempting to execute, the Schemes." *Id.* at ¶ 408. Plaintiff only

7    references one of the specific schemes for its wire fraud allegations stating that "false

8    or fraudulent bills were submitted electronically to Medi-Cal" and Borrego under the

9    "Fraudulent Dental Services Scheme." *Id.* at ¶ 412. Again, the Complaint does not

10   state that the purported schemes involving the Hebets Parties executed any electronic

11   wire transfers, specifically in furtherance of the alleged fraudulent conduct. *See Id.* at

12   ¶¶ 408-413. As such, Plaintiff does not plead "*with particularity* the acts constituting

13   wire fraud" and mail fraud as predicate acts and the "mere listing of such alleged

14   crimes, without supporting, particularized factual pleadings as required under Rule

15   9(b), is not enough to survive a motion to dismiss." *Mohebbi*, 50 F. Supp. 3d at 1255.

16   Moreover, Plaintiff does not allege any "independent duty" owed by the Hebets

17   Parties for its "failure to disclose" allegations in support of its RICO "fraudulent

18   scheme." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015).

19                **b. The Federal Health Care Offenses Claims Are Deficient**

20        The federal healthcare offenses alleged by Plaintiff pursuant to 18 U.S.C. §

21   1957 ("Engaging in monetary transactions in property derived from specified unlawful

22   activity that includes Federal healthcare offenses") are not adequately alleged.

23   Compl., ¶¶ 414-419. This statute applies to any person who knowingly engages or

24   attempts to engage in a monetary transaction in criminally derived property of a value

25   greater than $10,000 and is derived from specified unlawful activity. 18 U.S.C. §

26   1957. Plaintiff claims that the "specified unlawful activity" that applies is a federal

27   health care offense that includes violations of various health care statutes. 18 U.S.C. §

28   1956(7)(F). A claim under § 1957 must show (1) that the defendant knowingly

engaged in a monetary transaction, (2) that the defendant knew the property involved derived from specified unlawful activity, and (3) that the property was of a value greater than $10,000.  *U.S. v. Johnson*, 450 F.3d 366, 375 (8th Cir. 2006).

Critically, the alleged federal healthcare offenses "cannot serve as predicates for a RICO claim because they are not listed in 18 U.S.C. § 1961(1)."  *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027.  Also, Plaintiff does not plead specific facts showing that the Hebets Parties "engaged in a monetary transaction" or "knew the property involved derived from specific unlawful activity."  *Id.*  Nor does the Complaint set forth particular allegations showing that the Hebets Parties violated the health care statutes that constitute a "Federal health care offense."  Compl., ¶¶ 416-419; 18 U.S.C. § 24(a).  Instead, Plaintiff merely provides group pleading allegations that pertain to all 12 purported schemes, but does not describe how Jim Hebets or HC supposedly violated these referenced health care statutes.  Compl., ¶¶ 416-419.  Missing from the Complaint are allegations "that tie the 'Health Care Offenses' in question to an offense that can serve as a predicate for a RICO claim," which is necessary to avoid dismissal of this cause of action.  *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027 (RICO claim dismissed).  Accordingly, Plaintiff's racketeering activity allegations are not adequately pled, especially in light of the heightened FRCP 9(b) pleading standard.

**4.  The RICO Claim Based On Conspiracy Is Also Faulty**

Plaintiff states that the allegations in the Complaint "demonstrate the existence of a conspiracy between Defendants," and each of them is "a culpable person for purposes of 18 U.S.C. § 1964."  Compl., ¶¶ 427 and 428.  Pursuant to 18 U.S.C. § 1962(d) titled "Prohibited activities" under RICO, it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  A defendant "cannot be liable for a RICO conspiracy under Section 1962(d) if the defendant is not liable under the substantive RICO provisions, namely Sections 1962(a), (b), or (c)."  *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028 (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)).  Because

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   Plaintiff failed to plead a substantive RICO violation under Section 1962(c),

2   Borrego's conspiracy claim under 18 U.S.C. § 1962(d) should be dismissed.  *Id.*

3         **D.**    **Plaintiff's False Promise Claim Is Not Adequately Pled**

4           Under California law, a cause of action for fraud based on a false promise must

5   allege: (1) a material misrepresentation, (2) knowledge of its falsity, (3) intent to

6   defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage.  *First*

7   *Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 938–39

8   (N.D. Cal. 2008); *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1157

9   (N.D. Cal. 2007) (to maintain an action for false promise, "one must specifically

10  allege and prove…that the promisor did not intend to perform at the time he or she

11  made the promise and that it was intended to deceive or induce the promisee to do or

12  not do a particular thing.") (internal citations omitted).  The "specific intent

13  requirement also precludes pleading a false promise claim as a negligent

14  misrepresentation."  *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153,

15  159 (1991).  In addition, a claim for fraud based on a false promise must meet the

16  heightened pleading under FRCP 9(b).  *First Advantage*, 569 F. Supp. 2d at 939.

17          Here, Plaintiff alleges in support of its cause of action for false promise that,

18  "[a]s outlined herein," "each and every Defendant made promises" to Borrego, and

19  defendants "did not intend to perform on the promises made at the time they made

20  those promises to Borrego."  Compl., ¶¶ 690-91.  Plaintiff further alleges that

21  defendants intended for Borrego "to rely on those promises" and defendants did not

22  "perform the actions they promised to perform."  *Id.* at ¶¶ 692 and 694.  These

23  conclusory and general allegations, however, are not sufficient under the FRCP 9(b)

24  pleading standard because Plaintiff does not provide any detail about what promises

25  were allegedly made by the Hebets Parties and how they did not perform them.  Nor

26  does Plaintiff even reference which allegations earlier in the Complaint supposedly

27  include such information.  In addition, Plaintiff does not allege the entire "'who, what,

28  when, where, and how' of the misconduct charged."  *City of Escondido v. Gen.*

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

*Reinsurance Corp.*, 2019 WL 6917983, at *13 (S.D. Cal. Dec. 18, 2019) (motion to dismiss granted because plaintiff's "false promise allegations lack the specificity required under Rule 9(b)"; internal citations omitted).  As a result, Plaintiff's false promise claim is untenable and should be dismissed.

### E.    The Conversion Cause Of Action In The Complaint Fails

California law provides that "conversion is the wrongful exercise of dominion over the property of another." *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1093 (S.D. Cal. 2020) (internal citations omitted).  The "elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages." *Id.*  The law is "well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020) (conversion claim was not sufficiently pled because plaintiffs "gave their consent" to purchase the travel insurance for which they were charged and "there are no allegations that" plaintiffs "failed to receive the purchased insurance.").  Also, money "cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) (internal citations omitted).  A generalized claim for money is "not actionable as conversion," and actions "for the conversion of money have not been permitted where the amount of money involved is not a definite sum." *Id.* (claim for conversion dismissed without leave to amend because an "obligation to pay money" is "insufficiently tangible to qualify as property under these facts.").

Here, Plaintiff merely alleges "Defendants substantially interfered with" Borrego's "personal property by knowingly taking money" from Borrego for which defendants were not entitled to, and Borrego "did not consent to Defendants improper

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

withholding of funds that were rightfully owned" by Borrego. Compl., ¶¶ 698-99. While Plaintiff's general allegations for its conversion claim are conclusory at best, the substantive allegations are also unclear about what acts the Hebets Parties allegedly performed which dispossessed Plaintiff of its money. Further, Plaintiff does not contend that there is a specific sum of money involved which was misappropriated by the Hebets Parties. To the contrary, Plaintiff alleges that the Hebets Parties "funnel[ed] additional Borrego funds to Borrego Insider cronies," "schemed" with the Borrego Insiders to increase executive compensation that was paid to the 162B plans, and the 162B plan payments "created a windfall for" the Hebets Parties. *Id.* at ¶¶ 311, 317 and 321. These allegations establish that there is no "identifiable sum" of money involved because, among other things, Plaintiff does not claim that the Hebets Parties should not have received any money to "manage" the 162B plans. *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1059 (N.D. Cal. 2021) (plaintiff's allegation about an "obligation [for defendant] to pay an unspecified, nonidentifiable amount of a 'pro-rata share of tuition and fees'" is "insufficient to qualify for recovery under a conversion claim."). Thus, Plaintiff's conversion claim should be dismissed.

F. **Plaintiff's Inducing Breach Of Contract And Intentional Interference With Contractual Relations Claims Are Untenable**

To allege a claim for intentional interference with contractual relations, Plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption; and (5) resulting damage." *Mossimo Holdings, LLC v. Haralambus*, 2017 WL 1240739, at *5 (C.D. Cal. Apr. 4, 2017) (internal citations omitted). The third element requires that the intentional acts be a substantial factor in causing the breach. *Id.* The "elements of a claim for inducement of breach of contract" are "identical to the elements for intentional interference with contractual relationships." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1152 (N.D. Cal. 2010).

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   Here, Plaintiff alleges that it had a contract with Medi-Cal and contracts with its

2   "contract dental providers, including the corporate entities of the individually named

3   Dentist Defendants."  Compl., ¶¶ 703, 704, 711-12.  However, the claims do not

4   describe "the nature and extent of [Borrego's] relationship with" these parties that

5   they contracted to sufficiently plead these causes of action.  *UMG Recordings, Inc. v.*

6   *Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015); *Bay Area*

7   *Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 998 (N.D. Cal. 2015)

8   (plaintiffs' "conclusory allegations about its economic relationships" with the doctors

9   did not plead sufficient facts for their intentional interference with contract claim).

10  Plaintiff also alleges yet again in a conclusory manner that defendants "knew" of

11  Borrego's "contracts with Medi-Cal, the corporate Dentist Defendants, and Borrego's

12  contract dental providers."  Compl., ¶¶ 705 and 713.  Besides the conclusory

13  allegation that the Hebets Parties knew of these aforementioned contracts, there are no

14  allegations about the relevant schemes which demonstrates that the Hebets Parties

15  were aware of these contracts.  *Id.* at ¶¶ 289, 309 and 311-323.  Nor are there any facts

16  that show the Hebets Parties' actions were designed to "induce a breach or disruption

17  of the contractual relationship."  *Mossimo Holdings, LLC*, 2017 WL 1240739, at *5.

18  In fact, Plaintiff only alleges that "Defendants intended to cause the contracted

19  dental providers to breach the terms of their contract with Borrego" and that these

20  contracts were breached or performance thereunder was made "expensive and

21  difficult."  Compl., ¶¶ 706, 707, 714 and 715.  Despite these boilerplate allegations

22  under these causes of action, Borrego's supposed agreements with the dental providers

23  are not mentioned at all in connection with the "schemes" involving the Hebets

24  Parties.  *Id.* at ¶¶ 289, 309 and 311-323.  Plaintiff's pleading defects are fatal to its

25  inducing breach of contract and interference with contract claims.  *DocMagic, Inc.*,

26  745 F. Supp. 2d at 1153 (motion to dismiss granted with respect to inducement of

27  breach of contract claim because plaintiff merely identified a group of entities who

28  entered contracts with it that were breached as a result of defendant's conduct).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

### G.   The Intentional And Negligent Interference With Prospective Economic Relations Causes Of Action Are Not Viable

The elements of a cause of action for intentional interference with prospective economic relations are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pro Water Sol., Inc. v. Angie's List, Inc.*, 457 F. Supp. 3d 845, 852 (C.D. Cal. 2020) (internal citations omitted).  The elements of a negligent interference with prospective economic relations claim are the same, except that the third element does not require intentional acts, but instead "the defendant's failure to act with reasonable care." *Soil Retention Prod., Inc. v. Brentwood Indus.*, Inc., 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021).  To prevail, the plaintiff bears the burden of "pleading and proving that the defendant's conduct was independently wrongful." *Pro Water Sol., Inc.*, 457 F. Supp. 3d at 852; *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1089–90 (E.D. Cal. 2003) (plaintiff must plead that "defendant's interference was wrongful by some measure beyond the fact of the interference itself.") (internal citations omitted).  An act is independently wrongful if it is unlawful, as "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Pro Water Sol., Inc.*, 457 F. Supp. 3d at 852-53.

In support of these claims, Plaintiff alleges that it was in an "economic relationship with Medi-Cal, which provided an economic benefit" to Borrego, as well as similar relationships with "contract dental providers." Compl., ¶¶ 720, 721, 729 and 730.  Plaintiff also claims, without providing any specificity, that defendants "knew"—or "should have known"—of these economic relationships. *Id.* at ¶¶ 722, 723, 731 and 732.  The Complaint asserts that defendants "engaged in wrongful conduct that was intended to disrupt" Borrego's economic relationships, as "outlined

1   herein." *Id.* at ¶ 724.  Plaintiff's claims of misconduct against the Hebets Parties is

2   based on intentional misrepresentation.  *Id.* at ¶¶ 289, 309 and 311-323.  "Fraud

3   qualifies as an independently wrongful act, but only if it adequately pled" pursuant to

4   FRCP 9(b).  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1117.  As described above,

5   Plaintiff has not sufficiently alleged its claims of fraud against the Hebets Parties so

6   they cannot establish any independently wrongful conduct for their intentional

7   interference claim.  *Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity*

8   *Partners*, 33 F. App'x 893, 896 (9th Cir. 2002) (plaintiff could not establish that

9   defendants' "conduct amounted to fraudulent misrepresentation" so its claim for

10   intentional interference with prospective economic relations failed because there was

11   no independently actionable conduct); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 621

12   (N.D. Cal. 2002) (plaintiffs did not plead "independent wrongfulness").

13          For a plaintiff's negligent interference claim, a defendant's conduct is

14   blameworthy only if it was independently wrongful apart from the interference itself,

15   ***and*** this claim may be asserted only where the defendant owes the plaintiff a duty of

16   care.  *Weststeyn Dairy 2*, 280 F. Supp. 2d at 1090 (internal citations omitted).  Not

17   only has Plaintiff failed to sufficiently allege independently wrongful conduct by the

18   Hebets Parties, but the Complaint "is rife with allegations of intentional, not negligent,

19   conduct" which serves as another basis to dismiss Plaintiff's negligent interference

20   clam.  *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958

21   (N.D. Cal. 2003).  Further, Plaintiff does not allege that the Hebets Parties owe

22   Plaintiff a duty of care.  *See* Complaint, *generally*; *UMG Recordings, Inc.*, 117 F.

23   Supp. 3d at 1118 n.57 (counterdefendants do not allege that a duty of care existed, and

24   the claim is deficient for this reason); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.

25   Supp. 3d 1141, 1158 (S.D. Cal. 2014) (same).  Accordingly, Plaintiff's interference

26   with prospective economic relations claims are baseless and should be dismissed.

27          **H.    Plaintiff's Violation Of UCL Claim Is Invalid**

28          A business act or practice may violate the UCL if it is either "unlawful,"

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

"unfair," or "fraudulent." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1127 (S.D. Cal. 2021) (internal citations omitted). To state a claim under the fraudulent prong of the UCL, a plaintiff must comply with FRCP 9(b)'s heightened pleading standard and must allege that "members of the public are likely to be deceived" by the defendant's acts. *Id.* at 1128; *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1088–89 (S.D. Cal. 2020) (same). Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts. *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) (internal citations omitted).

In support of its UCL claim, Plaintiff alleges that "Defendants' actions were unfair" and "constitute[d] fraudulent business acts or practices …." Compl., ¶¶ 743 and 744. With respect to Plaintiff's allegation under the "fraudulent" prong of the UCL, Plaintiff does not plead fraud with the necessary particularity under FRCP 9(b) with respect to the Hebets Parties' purported conduct as exemplified by Plaintiff's other fraud-based claims. *Id.* at ¶¶ 289, 309 and 311-323. Also, because Plaintiff's UCL claim that pertains to the "unfair" prong relies on the same alleged conduct pled in support of the other causes of action that are subject to dismissal, Plaintiff's UCL claim must be dismissed for the same reasons. *Tan*, 171 F. Supp. 3d at 1010–11.

## I.   Plaintiff's Conspiracy Claim Lacks Merit

To plead civil conspiracy, the elements of the underlying tort must also be alleged. *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1189 (N.D. Cal. 2021). The elements of a civil conspiracy are "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1157 (N.D. Cal. 2013).

In alleging a civil conspiracy to commit a tort, courts have held that "conclusory [allegations that are] ... not supported by any factual allegations" or

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

"allegations [that] are merely recitations of the elements of the claim ... fail to state a claim under the *Twombly* standard." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 985 (N.D. Cal. 2020). To show the first element of conspiracy—the "formation and operation of the conspiracy"—a plaintiff must show "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (internal citations omitted). Conspiracy grounded in fraud must identify "the who, what, when, where, and how of the misconduct charged." *Id.*

Here, Plaintiff's conspiracy claim is based on the alleged "multiple schemes…between and among the Defendants, all of whom acted as co-conspirators of another." Compl., ¶ 746. The Complaint also states that Borrego was "harmed by Defendants' actions" and that defendants "were aware of each other's plans" as well as "agreed/intended such wrongful acts to be committed." *Id.* at ¶¶ 747 and 749. First, Plaintiff's inability to properly allege the underlying torts related the Hebets Parties' schemes is fatal to the conspiracy claim. Second, beyond the conclusory and group allegations made in support of the conspiracy cause of action, there are no facts in the Complaint which establish that the Hebets Parties knew about and agreed to join any of the other schemes involving the Borrego Insiders, Premier Defendants or Dentist Defendants. *See* Complaint, *generally*; *Rockridge Tr.*, 985 F. Supp. 2d at 1157 (plaintiffs' conspiracy claim dismissed because they provided "no specific factual allegation to support the conclusory allegation that Defendants entered into a conspiracy."). Further, Plaintiff's allegations related to the supposed fraudulent schemes do not provide the necessary detail to satisfy FRCP 9(b) either. *Rockridge Tr.*, 985 F. Supp. 2d at 1157 (plaintiffs must "plead a California civil conspiracy claim with particularity where the object of the agreement is fraudulent."). As such, Plaintiff's conspiracy claim should be dismissed.

### J.   Plaintiff's Unjust Enrichment Claim Is Futile

The Ninth Circuit "has construed the common law to allow an unjust

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

enrichment cause of action through quasi-contract" seeking restitution. *Vallarta*, 497 F. Supp. 3d at 810 (internal citations omitted). Unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Saroya*, 503 F. Supp. 3d at 998 (internal citations omitted). To allege unjust enrichment as an independent cause of action, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Vallarta*, 497 F. Supp. 3d at 810.

Plaintiff again alleges in the most cursory manner that "Defendants unjustly received a benefit at the expense" of Borrego as "outlined herein." Compl., ¶ 762. Plaintiff's unjust enrichment claim appears to rely on the same general allegations about the purported schemes related to the Hebets Parties that are pled in support of its other causes of action. Because Plaintiff's other claims based on the Hebets Parties' supposed misrepresentations fail, "her unjust enrichment fails as well." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("There being no actionable wrong, there is no basis for the relief."); *Vallarta*, 497 F. Supp. 3d at 810 (plaintiffs' unjust enrichment claim was faulty since it was based on the same fraudulent conduct that was not adequately alleged for the UCL claim).

## IV.      CONCLUSION

For the foregoing reasons, the Hebets Parties respectfully request that the Court dismiss Plaintiff's First, Forty-Third, Forty-Fourth, Forty-Fifth, Forty-Sixth, Forty-Seventh, Forty-Eighth, Forty-Ninth, Fiftieth and Fifty-Third Causes of Action against them, without leave to amend.

Dated:  October 21, 2022                    Respectfully submitted,

LOCKE LORD LLP

By: _____
Mitchell J. Popham
Rory Miller
William Mullen
David Rutan
*Attorneys for Defendants JAMES*
*HEBETS and THE HEBETS COMPANY*