LOCKE LORD LLP
Mitchell J. Popham (SBN: 126194)
mpopham@lockelord.com
William Mullen (SBN: 297272)
william.mullen@lockelord.com
David Rutan (SBN 311345)
David.rutan@lockelord.com
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
(213) 485-1500

Attorneys for Defendants
JAMES HEBETS and THE HEBETS COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>KAREN HEBETS, an individual; MIKIA WALLIS, an individual; DIANA THOMPSON, f/k/a DIANA TRONCOSO, an individual; HARRY ILSLEY, an individual; DENNIS NOURSE, an individual; MIKE HICKOK, an individual; CHUCK KIMBALL an individual; PREMIER HEALTHCARE MANAGEMENT, INC., a California corporation; SUMMIT HEALTHCARE MANAGEMENT, INC., a California corporation; DARYL PRIEST, an individual; NICHOLAS PRIEST, an individual; TRAVIS LYON, an individual; HUSAM E. ALDAIRI, D.D.S., an | CASE NO. 3:22-CV-01056-BEN-KSC<br><br>Honorable Roger T. Benitez<br>Courtroom 5A<br><br>**DEFENDANTS JAMES HEBETS AND THE HEBETS COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:      July 3, 2023<br>TIME:      10:30 a.m.<br>PLACE:    5A<br><br>Complaint Filed:  July 19, 2022 |

*Locke Lord LLP*
*300 S. Grand Avenue, Suite 2600*
*Los Angeles, CA  90071*

individual; ALDAIRI DDS, IC., a California
corporation; AYED HAWATMEH, D.D.S.,
an individual; HAWATMEH DENTAL
GROUP, P.C., a California corporation;
ALBORZ MEHDIZADEH, D.D.S., an
individual; ALBORZ MEHDIZADEH,
INC., a Califonria corporation; JILBERT
BAKRAMIAN, D.D.S., an individual;
MOHAMMED ALTEKREETI, D.D.S., an
individual; MAGALY VELASQUEZ,
D.D.S., an individual; MAGALY M.
VELASQUEZ DDS PROFESSIONAL
DENTAL CORP., a California corporation;
ARAM ARAKELYAN, D.D.S., an
individual; NEW MILLENIUM DENTAL
GROUP OF ARAM ARAKELYAN, INC.,
a California corporation; MICHAEL
HOANG, D.M.D., an individual; WALEED
STEPHAN, D.D.S., an individual; W.A.
STEPHAN, A DENTAL CORPORATION
a California corporation; SANTIAGO
ROJO, D.D.S., an individual; SANTIAGO
A. ROJO, D.D.S., INC., a California
corporation; MARCELO TOLEDO, D.D.S.,
an individual; MARCELO TOLEDO,
D.D.S., INC., a California corporation;
MARLENE THOMPSON, D.D.S., an
individual; MARLENE THOMPSON,
D.D.S., INC., a California corporation;
DOUBLAS NESS, D.D.S., an individual;
NESS DENTAL CORPORATION, a
California corporation; GEORGE JARED,
D.D.S., an individual; GEORGE JARED,
D.D.S., INC., a California corporation;
JAMES HEBETS, an individual; THE
HEBETS COMPANY, a Missouri
Corporation and DOES 1-250, inclusive,

Defendants.

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 3, 2023, at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 5A before the Honorable Roger T. Benitez, located at 221 West Broadway, San Diego, California 92101, defendants James Hebets and The Hebets Company (collectively, the "Hebets Parties") will move to dismiss plaintiff Borrego Community Health Foundation's First Amended Complaint (the "Motion") on the following grounds:

1.   The First Cause of Action for "Violations under the Racketeer Influenced and Corrupt Organizations ('RICO') Act" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b).

2.   The Forty-Second Cause of Action for "Fraudulent Concealment" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

3.   The Forty-Third Cause of Action for "False Promise" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6) and 9(b).

4.   The Forty-Fourth Cause of Action for "Conversion" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

5.   The Forty-Fifth Cause of Action for "Inducing Breach of Contract" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

6.   The Forty-Sixth Cause of Action for "Intentional Interference with Contractual Relations" against the Hebets Parties fails to state a claim for which relief can be granted pursuant to FRCP 12(b)(6).

7.   The Forty-Seventh Cause of Action for "Intentional Interference with Prospective Economic Relations" against the Hebets Parties fails to state

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    a claim for which relief can be granted pursuant to FRCP 12(b)(6) and

2    9(b).

3    8.    The Forty-Eighth Cause of Action for "Negligent Interference with

4    Prospective Economic Relations" against the Hebets Parties fails to state

5    a claim for which relief can be granted pursuant to FRCP 12(b)(6) and

6    9(b).

7    9.    The Forty-Ninth Cause of Action for "Violations of Business &

8    Professions Code § 17200, *et seq.*" against the Hebets Parties fails to state

9    a claim for which relief can be granted pursuant to FRCP 12(b)(6) and

10    9(b).

11    10.    The Fiftieth Cause of Action for "Conspiracy" against the Hebets Parties

12    fails to state a claim for which relief can be granted pursuant to FRCP

13    12(b)(6) and 9(b).

14    11.    The Fifty-Third Cause of Action for "Unjust Enrichment/Restitution"

15    against the Hebets Parties fails to state a claim for which relief can be

16    granted pursuant to FRCP 12(b)(6).

17    12.    The Fifty-Fourth Cause of Action for "Intentional Misrepresentation"

18    against the Hebets Parties fails to state a claim for which relief can be

19    granted pursuant to FRCP 12(b)(6) and 9(b).

20    13.    The Fifty-Fifth Cause of Action for "Negligent Misrepresentation"

21    against the Hebets Parties fails to state a claim for which relief can be

22    granted pursuant to FRCP 12(b)(6) and 9(b).

23    This Motion is based on this notice, the attached Memorandum of Points and

24 Authorities, and upon such other matters, whether written or oral, as may be presented

25 to the Court at or prior to the hearing on this Motion.

26 / / /

27 / / /

28 / / /

Dated:  May 9, 2023

Respectfully submitted,

LOCKE LORD LLP

By: _____

Mitchell J. Popham
William Mullen
David Rutan
*Attorneys for Defendants*
*JAMES HEBETS and THE HEBETS*
*COMPANY*

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ………………………………………………   1

II.   SUMMARY OF ALLEGATIONS IN THE FAC …………………   3

    A.   The Purported Compensation/Benefits And Payout Schemes ………   3

    B.   The Alleged Jim Hebets Scheme ………………………………   4

    C.   Plaintiff's Relevant Claims …………………………………   6

III.  ARGUMENT ………………………………………………   6

    A.   Legal Standard …………………………………………   6

    B.   Plaintiff's Claims Against The Hebets Parties Based On Conduct
        From July 9, 2018 And Earlier Are Time Barred …………………   6

    C.   Plaintiff Does Not – And Cannot – Allege The Necessary
        Elements For Its RICO Claim …………………………………   9

        1.   The Hebets Parties Did Not Engage In The Required
            Conduct For A RICO Claim …………………………   10

        2.   The FAC Does Not Allege An Enterprise Because
            There Is No Common Purpose Among The Defendants ……..   11

        3.   Plaintiff Cannot Demonstrate That The Hebets Parties
            Engaged In Racketeering Activity ……………………   13

            a.   The Mail And Wire Fraud Claims Do Not Have
                Merit …………………………………………   14

            b.   The Federal Health Care Offenses Claims Are
                Deficient …………………………………….   16

        4.   The RICO Claim Based On Conspiracy Is Also Faulty ……….   17

    D.   Plaintiff's Claims For False Promise, Fraudulent Concealment As Well
        As Intentional And Negligent Misrepresentation Are Not Adequately
        Pled……….....…………………………………………   17

    E.   The Conversion Cause Of Action In The FAC Fails ……………....   19

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

F.    <u>Plaintiff's Inducing Breach Of Contact And Intentional</u>

<u>Interference With Contractual Relations Claims Are Untenable</u> …… 20

G.    <u>The Intentional And Negligent Interference With Prospective</u>

<u>Economic Relations Causes Of Action Are Not Viable</u> …………… 21

H.    <u>Plaintiff's Violation Of UCL Claim Is Invalid</u> ……………………… 23

I.    <u>Plaintiff's Conspiracy Claim Lacks Merit</u> …………………………… 23

J.    <u>Plaintiff's Unjust Enrichment Claim Is Futile</u> ………………………….. 25

IV.    <u>CONCLUSION</u> …………………………………………………………... 25

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**State Cases**

*De Havilland v. FX Networks, LLC,*
  21 Cal. App. 5th 845 (2018) ............................................................................. 25

*Kiang v. Strycula,*
  231 Cal. App. 2d 809 (1965) ............................................................................... 7

**Federal Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.,*
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ............................................................. 22

*Agric. Water v. Occidental Oil & Gas Corp.,*
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) .............................................. 13, 14, 15

*Ajzenman v. Off. of Comm'r of Baseball,*
  487 F. Supp. 3d 861 (C.D. Cal. 2020) ............................................................. 24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 6, 7

*BASF Corp. v. Cesare's Collision Repair & Towing, Inc.,*
  364 F. Supp. 3d 1115, 1122 (E.D. Cal. 2019) .................................................... 7

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir. 1993) ............................................................................. 11

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.,*
  166 F. Supp. 3d 988 (N.D. Cal. 2015) ............................................................. 20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................ 3, 6, 24

*Brice v. Haynes Invs., LLC.,*
  548 F. Supp. 3d 882 (N.D. Cal. 2021) ............................................................. 10

*Celebrity Chefs Tour, LLC v. Macy's, Inc.,*
  16 F. Supp. 3d 1141 (S.D. Cal. 2014) ............................................................. 23

*City of Escondido v. Gen. Reinsurance Corp.,*
  2019 WL 6917983 (S.D. Cal. Dec. 18, 2019) ................................................. 19

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

*Cork v. CC-Palo Alto, Inc.*,
 534 F. Supp. 3d 1156 (N.D. Cal. 2021)................................................................24

*DC Comics v. Pac. Pictures Corp.*,
 938 F. Supp. 2d 941 (C.D. Cal. 2013).....................................................................7

*DocMagic, Inc. v. Ellie Mae, Inc.*,
 745 F. Supp. 2d 1119 (N.D. Cal. 2010)................................................................20

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ...............................................................................14

*Eller v. EquiTrust Life Ins. Co.*,
 778 F.3d 1089 (9th Cir. 2015) ...............................................................................16

*Fimbres v. Pac. Mar. Ass'n*,
 2012 WL 6193253, at *1 (C.D. Cal. Dec. 10, 2012)............................................7

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
 569 F. Supp. 2d 929 (N.D. Cal. 2008)..........................................................17, 18

*Garrison v. Oracle Corp.*,
 159 F. Supp. 3d 1044 (N.D. Cal. 2016)............................................................7, 8

*GemCap Lending, LLC v. Quarles & Brady, LLP*,
 269 F. Supp. 3d 1007 (C.D. Cal. 2017)................................................................17

*Gilmore v. Wells Fargo Bank N.A.*,
 75 F. Supp. 3d 1255 (N.D. Cal. 2014)..................................................................18

*Goehring v. Wright*,
 858 F. Supp. 989 (N.D. Cal. 1994)..........................................................................8

*Graf v. Peoples*,
 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008)......................................................14

*Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity Partners*,
 33 F. App'x 893 (9th Cir. 2002) ...........................................................................22

*Hsu v. OZ Optics Ltd.*,
 211 F.R.D. 615 (N.D. Cal. 2002) .........................................................................22

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
 424 F. Supp. 3d 882 (E.D. Cal. 2019) .................................................................18

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   27 F. Supp. 3d 1015 (N.D. Cal. 2014) .................................................................. 9

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................................ 12, 13

*In re Outlaw Lab'y, LLP*,
   463 F. Supp. 3d 1068 (S.D. Cal. 2020) .............................................................. 23

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .............................................................. 11

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) .......................................................... 10, 11

*Izenberg v. ETS Servs., LLC*,
   589 F. Supp. 2d 1193 (C.D. Cal. 2008) ................................................ 12, 14, 15

*Ketayi v. Health Enrollment Grp.*,
   516 F. Supp. 3d 1092 (S.D. Cal. 2021) .............................................................. 23

*Mandel v. Hafermann*,
   503 F. Supp. 3d 946 (N.D. Cal. 2020) ............................................................... 24

*Metaxas v. Lee*,
   503 F. Supp. 3d 923 (N.D. Cal. 2020) ............................................................... 10

*Mohebbi v. Khazen*,
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) ......................................................... 13, 16

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) .............................................................................. 15

*Mossimo Holdings, LLC v. Haralambus*,
   2017 WL 1240739 (C.D. Cal. Apr. 4, 2017) ............................................... 20, 21

*Murphy v. Am. Gen. Life Ins. Co.*,
   74 F. Supp. 3d 1267 (C.D. Cal. 2015) ................................................................. 7

*Nguyen v. Stephens Inst.*,
   529 F. Supp. 3d 1047 (N.D. Cal. 2021) .............................................................. 20

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) .............................................................................. 12

*Pac. Recovery Sols. v. United Behav. Health*,
    481 F. Supp. 3d 1011 (N.D. Cal. 2020)............................................10, 14, 16, 17

*Pincay v. Andrews*,
    238 F.3d 1106 (9th Cir. 2001) ........................................................................7, 8

*Pro Water Sol., Inc. v. Angie's List, Inc.*,
    457 F. Supp. 3d 845 (C.D. Cal. 2020)........................................................21, 22

*R Power Biofuels, LLC v. Chemex LLC*,
    2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ..................................................7

*Rockridge Tr. v. Wells Fargo, N.A.*,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013)......................................................24, 25

*Rupert v. Bond*,
    68 F. Supp. 3d 1142 (N.D. Cal. 2014)............................................................14

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ......................................................19, 25

*Schertzer v. Bank of Am., N.A.*,
    445 F. Supp. 3d 1058 (S.D. Cal. 2020) ..........................................................19

*Susilo v. Wells Fargo Bank, N.A.*,
    796 F. Supp. 2d 1177 (C.D. Cal. 2011) ............................................................6

*Tan v. GrubHub, Inc.*,
    171 F. Supp. 3d 998 (N.D. Cal. 2016)............................................................23

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ........................................................................13

*U.S. v. Johnson*,
    450 F.3d 366 (8th Cir. 2006) ..........................................................................16

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015).................................................20, 22, 23

*Vallarta v. United Airlines, Inc.*,
    497 F. Supp. 3d 790 (N.D. Cal. 2020)............................................................25

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ........................................................................11

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
   280 F. Supp. 2d 1044 (E.D. Cal. 2003) ............................................................22

**Federal Rules**

Fed. R. Civ. P. 9(b) ...................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................5, 6

**Federal Statutes**

18 U.S.C. § 24(a) ..............................................................................................16

18 U.S.C. § 287 ...................................................................................................9

18 U.S.C. § 371 ...................................................................................................9

18 U.S.C. § 669 ...................................................................................................9

18 U.S.C. § 1001 .................................................................................................9

18 U.S.C. § 1035 .................................................................................................9

18 U.S.C. § 1341 ...........................................................................................9, 14

18 U.S.C. § 1342 ...............................................................................................14

18 U.S.C. § 1343 .................................................................................................9

18 U.S.C. § 1347 .................................................................................................9

18 U.S.C. § 1349 .................................................................................................9

18 U.S.C. § 1956(7)(F) .....................................................................................16

18 U.S.C. § 1957 ..........................................................................................9, 16

18 U.S.C. § 1961(1) ..........................................................................................16

18 U.S.C. § 1961(1)(B) .......................................................................................9

18 U.S.C. § 1961(4) ..........................................................................................11

18 U.S.C. § 1962(c) ....................................................................................*passim*

18 U.S.C. § 1962(d) ..........................................................................................17

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

18 U.S.C. § 1964 ............................................................17

**State Statutes**

Cal. Business & Professions Code § 17200, *et seq.* ................................6

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Borrego Community Health Foundation ("Plaintiff" or "Borrego")—a nonprofit 501(c)(3) Federally Qualified Health Center (FQHC)—alleges fifty-nine causes of action and names forty-one defendants in its haphazard First Amended Complaint ("FAC") which discusses several disconnected "schemes" supposedly perpetrated against Borrego resulting in monetary damages.  These purported schemes mainly revolve around the "Borrego Insiders" who were former members of Borrego's Board of Trustees, including Bruce Hebets—the CEO of Borrego from 2004 to September 2018.  These individuals allegedly participated in the schemes to abscond with millions of dollars from Borrego that it received from Medi-Cal and federal healthcare agencies.  The Borrego Insiders allegedly coordinated with the "Premier Defendants" to enter into sham management services agreements where they were significantly overpaid by Borrego.  Also, Borrego was supposedly fraudulently charged by the "Dentist Defendants" for dental services that were supposed to be provided to Borrego's patients.

After describing the various schemes with respect to the previously mentioned parties, Borrego asserts claims against defendants James ("Jim") Hebets and The Hebets Company ("HC") (collectively, "the Hebets Parties") contending that Jim Hebets "schemed" with his brother, Bruce Hebets, to siphon money to the Borrego Insiders as well as to HC, while the Hebets Parties advised Borrego on its executive compensation and insurance policies.  However, the three alleged schemes which involve the Hebets Parties do not establish that they engaged in any misconduct.  Instead, Plaintiff relies on legal conclusions and group pleadings as opposed to any detailed facts to create a façade of illegality where none truly exists.

Several of Plaintiff's claims rely on the assumption that the Hebets Parties were colluding with the other defendants to perpetrate the alleged schemes even though Plaintiff's own assertions undercut this theory.  There are ***no facts*** which show that

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

the Hebets Parties engaged in any wrongdoing with the Premier Defendants or the Dentist Defendants.  In addition, the Hebets Parties were ***always*** independent of Borrego and the Borrego Insiders, and the allegations do not show that they made any misrepresentations or omissions regarding any bonus plans presented to Borrego.[1]

Besides the incurable defects in the substantive allegations pertaining to the Hebets Parties, Plaintiff's claims are also fatally flawed because they are time barred by the applicable statutes of limitations, and Plaintiff does not plead any facts to establish fraudulent concealment by the Hebets Parties in order to toll the limitations periods.  Further, the RICO claim is deficient because Plaintiff does not allege that the Hebets Parties directed any part of the alleged enterprise, there was no common purpose between the Hebets Parties and the other defendants to form an enterprise, and the purported predicate acts are not alleged with the necessary detail.  Similarly, the FAC does not allege facts with particularity under Federal Rule of Civil Procedure ("FRCP") 9(b) for Plaintiff's claims that rely on the purported fraudulent schemes by the Hebets Parties.  The intentional interference claims also fail as a matter of law because there are no facts pled which show that the Hebets Parties were aware of the contracts and business relationships with Medi-Cal or the dental providers that Plaintiff contends were disrupted.  Nor are there any facts establishing that the Hebets Parties were aware of the other schemes executed by the Borrego Insiders, Premier Defendants and Dentist Defendants which dooms Plaintiff's conspiracy claim.

The FAC's vague and conclusory allegations against the Hebets Parties do not show that they engaged in any misconduct.  Compared to the original Complaint, the FAC merely adds nine causes of action and two parties as defendants as well as some further allegations relating to the several alleged schemes, but does nothing to correct the myriad defects in the claims relating to the Hebets Parties that were littered throughout Plaintiff's previous—and current—pleading.  Plaintiff merely drags the

---

[1] Notably, neither Jim Hebets nor HC are included in the definitions of the Borrego Insiders, Premier Defendants or the Dentist Defendants in the FAC.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

Hebets Parties into this lawsuit because of Jim Hebets' familial relationship with Bruce Hebets, even though the alleged facts demonstrate that the Hebets Parties' business dealings with Borrego were always proper.  Accordingly, all of the claims alleged against the Hebets Parties should be dismissed without leave to amend.

## II.        SUMMARY OF ALLEGATIONS IN THE FAC[2]

### A.      The Purported Compensation/Benefits And Payout Schemes

The focus of the FAC is that several schemes involving the Borrego Insiders, Premier Defendants, and Dentist Defendants "siphoned off money" from Borrego that was earmarked to provide healthcare to the underserved.  FAC, ¶ 2.

Beyond these primary schemes which do not implicate the Hebets Parties, the FAC also discusses the "Compensation/Benefits Scheme" which involved the Borrego Insiders using the Hebets Parties to "create a bogus evaluation of the [Borrego executive] compensation packages" which Jim Hebets supposedly approved.  *Id.* at ¶ 364.  This evaluation reviewed the "high" and "above-market salary and benefits" of Bruce Hebets and the Borrego Insiders.  *Id.* at ¶¶ 360-64.  For example, in 2016, Bruce Hebets received more than $383,000 in salary, plus over $126,000 in bonus, and Karen Hebets, Bruce Hebets' wife, received more than $227,000 in salary, plus over $40,000 in bonus.  *Id.* at ¶¶ 360-62.  In 2017, Diana Thompson was paid nearly $338,000 in salary and Mikia Wallis was paid over $440,000 in salary.  *Id.*

After these compensation packages were set up, Plaintiff contends that another company called Compensation Resources, Inc. ("CRI") reviewed the compensation of fifteen unnamed Borrego executives on or about July 19, 2019 and determined that the "Total Compensation Package" for eleven of these officers was "currently above the high end of their respective Market Ranges of Reasonableness."  *Id.* at ¶ 370.  The FAC also alleges as part of this scheme that Bruce Hebets and Jim Hebets created a

---

[2] While accepted as true for purposes of the motion to dismiss (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the Hebets Parties do not concede or admit the truth of any of the allegations in the FAC.

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

162B Executive Bonus Plan that would pay "Bruce Hebets and others [at Borrego] additional compensation (a tax-free payment of $5,000 per month) while also siphoning millions to Jim Hebets' insurance company." *Id.* at ¶ 372.

Next, Plaintiff recounts the Payout Scheme which included the Borrego Board of Trustees asking Ms. Wallis, the previous Chief Legal Officer for Borrego, to evaluate the 162B plan as well as alternative plans in 2019. *Id.* at ¶ 404. Ms. Wallis supposedly asked Jim Hebets to address the board of directors for Borrego about the 162B plan. *Id.* At a subsequent board meeting for Borrego, Jim Hebets "praise[d]" the 162B plan. *Id.* The FAC states that Jim Hebets' review of this policy was an attempt to conceal the impropriety of the "generous 162B plan." *Id.* Plaintiff also alleges that the Borrego Insiders "were compensated for this access and control through kickbacks or other payments or remuneration." *Id.* at ¶ 406.

**B.   The Alleged Jim Hebets Scheme**

With respect to the Jim Hebets Scheme, the FAC states that the Borrego Insiders entered into arrangements with the Hebets Parties to "funnel[] additional Borrego funds to Borrego Insider cronies and family members." FAC, ¶ 407. The Borrego Insiders "collaborated to have" the Hebets Parties "review and approve sham, inflated salaries for Borrego executives, including the Borrego Insiders." *Id.* at ¶ 408. Jim Hebets supposedly had his name removed from the documents that included the "sham fair market value analyses" when they "were presented to the Borrego Board" to "conceal his involvement and obvious conflict of interest, even neglecting to mention his last name when introducing himself." *Id.* at ¶ 409.

Plaintiff also asserts that HC "boasts of specializing in FQHCs and creating ways to increase executive compensation/benefits beyond what is specified in IRS code for qualified 403(b) or 457(b) plans," and their website makes clear that "their agenda is to maximize executive compensation." *Id.* at ¶¶ 410-11. The FAC alleges that Bruce Hebets, Ms. Thompson and Ms. Wallis "schemed" with HC to "increase executive compensation through contributions" by "automatic 'bonuses' that were

paid to 162B plans." *Id.* at ¶ 413.  These 162B plans were a "strategy to pay above market to insiders without added scrutiny or tax liability" and were never intended to be life insurance plans. *Id.* at ¶ 414.  Bruce and Karen Hebets allegedly worked with HC to "'borrow' from their 162B accounts and transfer the funds from their respective 162B plans into their checking account." *Id.*

The FAC asserts that in 2015 Bruce Hebets received "$3,500 per month for his 162B plan" and by 2017 "he was receiving $5,000 per month." *Id.* at ¶ 415.  These payments were supposedly "free of taxes" and Borrego was paying a "tax true up" as well, which resulted in the Borrego Insiders receiving tax free bonuses every month. *Id.*  Bruce Hebets' 162B plan life insurance value was $1,236,000 on July 9, 2018, which was paid to his estate when he died in January 2019.  *Id.* at ¶ 416.  The FAC then strangely adds that in July 2019, Jim Hebets allegedly told Ms. Wallis that the 162B plans would not subject Plaintiff to tax penalties, which Plaintiff was purportedly later assessed because Bruce Hebets' compensation "exceed[ed] $1 million"—even though Plaintiff fails to state that Jim Hebets knew at any time beforehand that such penalties would be incurred.  *Id.* at ¶ 417.

This amounted to the Borrego Insiders and the Hebets Parties "working together to siphon funds from" Borrego.  *Id.* at ¶ 420.  Plaintiff alleges that the 162B plan payments "created a windfall" for the Hebets Parties—which sold and managed the plan—since Borrego paid them $240,000 per month for the 162B plans by July 2020. *Id.* at ¶ 418.  Plaintiff adds that although the "compensation analyses were presented to the Board of Trustees for vetting and approval," Borrego was not "on notice of Jim Hebets' and his company's involvement or of any potential financial or other injury associated with…the flawed compensation analyses." *Id.* at ¶ 420.  The FAC also references for the first time a "Compensation Split Arrangement" between HC and Bruce Hebets where he was supposedly listed as the "Insurance Agent" and paid "10% of the proceeds" for giving Jim Hebets access to Bruce's contacts at other FQHCs, but Plaintiff fails to explain how this purported conduct was wrongful or how

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

1    Plaintiff was harmed by it.  *Id.* at ¶ 422.

2        C.    **Plaintiff's Relevant Claims**

3        The FAC asserts thirteen causes of action against the Hebets Parties:  (1)

4    Violations under the Racketeer Influenced and Corrupt Organizations ("RICO") Act;

5    (2) Fraudulent Concealment; (3) False Promise; (4) Conversion; (5) Inducing Breach

6    of Contract; (6) Intentional Interference with Contractual Relations; (7) Intentional

7    Interference with Prospective Economic Relations; (8) Negligent Interference with

8    Prospective Economic Relations; (9) Violations of Business & Professions Code §

9    17200, *et seq.* ("UCL"); (10) Conspiracy; (11) Unjust Enrichment/Restitution; (12)

10   Intentional Misrepresentation; and, (13) Negligent Misrepresentation.  Plaintiff seeks

11   monetary damages, the imposition of a constructive trust, punitive damages, interest,

12   as well as reasonable attorney's fees and costs.  FAC, Prayer for Relief.

13   **III.    ARGUMENT**

14       A.    **Legal Standard**

15       "A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a

16   complaint."  *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1184 (C.D. Cal.

17   2011).  A complaint must be dismissed for failure to state a claim if it fails to state a

18   cognizable legal theory, or has not alleged sufficient facts for a claim.  Fed. R. Civ. P.

19   12(b)(6); *Twombly*, 550 U.S. at 555, 562-63.  "[M]ere conclusory statements" couched

20   as factual allegations "do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21       B.    **Plaintiff's Claims Against The Hebets Parties Based On Conduct**

22            **From July 9, 2018 And Earlier Are Time Barred**

23       The FAC alleges that in the Jim Hebets Scheme, the payments made to Bruce

24   Hebets' 162B plan in 2015 were in the amount of $3,500 per month.  FAC, ¶ 415.  By

25   2017, payments to Bruce Hebets' 162B plan were allegedly $5,000 per month.  *Id.*

26   Plaintiff also alleges that the value of these plans "was substantial," noting that on

27   July 9, 2018, Bruce Hebets' 162B plan was worth $1.236 million.  *Id.* at ¶ 416.  Also,

28   in the Compensation/Benefits Scheme, Plaintiff alleges that Bruce Hebets and the

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

Borrego Insiders received the "high" salaries, bonuses and other benefits beginning at least in 2016 and continuing into 2017.  *Id.* at ¶¶ 360-63.

Notably, Plaintiff does not assert that these payments to Bruce Hebets' 162B plan were hidden from Borrego or that Borrego was not aware of the amount of Bruce Hebets' 162B plan by July 9, 2018.  *See* FAC, *generally*.  Nor does Plaintiff allege that it was unaware of the salaries and benefits that Bruce Hebets and the Borrego Insiders received in 2016 and 2017.  *Id.*  Rather, in an attempt to reap the benefits of equitable tolling for its claims, Plaintiff alleges that Borrego was not put on notice of the Hebets Parties' "involvement or of any potential financial or other injury associated with, or caused in whole or in part by the flawed compensation analyses." *Id.* at ¶ 420.  In addition, "the Board" would not have "any access to facts that might put them on inquiry notice" that the Borrego Insiders and the Hebets Parties were "working together to siphon funds" from Borrego.  *Id.*  These conclusory allegations are insufficient to avoid dismissal of Plaintiff's untimely claims.

Plaintiff's causes of action under RICO and the UCL have a four-year statute of limitations.  *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir. 2001); *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1062 (N.D. Cal. 2016).  Plaintiff's claims for false promise, conversion, unjust enrichment as well as intentional and negligent misrepresentation have a three-year statute of limitations.  *Fimbres v. Pac. Mar. Ass'n*, 2012 WL 6193253, at *5 (C.D. Cal. Dec. 10, 2012); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1279 (C.D. Cal. 2015); *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1122 (E.D. Cal. 2019); *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *15 (N.D. Cal. Nov. 11, 2016).  Also, the torts of inducing breach of contract, intentional interference with contract, as well as intentional and negligent interference with prospective economic relations have a two-year statute of limitations.  *Kiang v. Strycula*, 231 Cal. App. 2d 809, 811 (1965); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013); *R Power Biofuels, LLC*, 2016 WL 6663002, at *15.  Further, a conspiracy

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

1   claim adopts the limitation period of its companion tort and accrues at the time of the

2   latter's commission. *Goehring v. Wright*, 858 F. Supp. 989, 1007 (N.D. Cal. 1994).

3        Plaintiff's lawsuit was filed on July 19, 2022.  It is clear that Plaintiff was on

4   actual or constructive notice about the "substantial" value of Bruce Hebets' account

5   by July 9, 2018 as well as the salaries and benefits that he and the Borrego Insiders

6   received in 2016 and 2017—when Borrego's instant claims began to accrue. *Pincay*,

7   238 F.3d at 1108–09 ("the civil RICO limitations period begins to run when a plaintiff

8   knows or should know of the injury that underlies his cause of action.").  A plaintiff

9   has constructive notice "if it had enough information to warrant an investigation

10  which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110.

11  The FAC alleges that Bruce Hebets' 162B plan life insurance value was $1.236

12  million on July 9, 2018, and $5,000 of payments per month were being sent to this

13  account by 2017.  FAC, ¶¶ 415-16.  Also, Bruce Hebets received more than $383,000

14  in salary, plus over $126,000 in bonus, in 2016 as well as more than $529,000 in

15  salary, plus over $87,000 in bonus, in 2017.  *Id.* at ¶ 360.  Based on the allegations in

16  the FAC, Plaintiff certainly could have been alerted to purported misconduct in

17  connection with the 162B plans and the purported "high" compensation/benefits more

18  than four years before suit was filed.

19       Although Plaintiff alleges that the "[s]chemes were concealed by Defendants

20  and most did not come to light until, at the earliest, October 2020 during a government

21  investigation" (FAC, ¶ 550), Plaintiff does not assert any facts with particularity under

22  FRCP 9(b) to establish fraudulent concealment by the Hebets Parties so that equitable

23  tolling would apply.  *Garrison*, 159 F. Supp. 3d at 1075 ("to plead fraudulent

24  concealment in accordance with Rule 9(b), [p]laintiffs must allege an account of the

25  time, place, and specific content of the false representations as well as the identities of

26  the parties to the misrepresentations.") (internal citations omitted).  Also, Plaintiff's

27  conclusory allegation that it "had no constructive or inquiry notice of the fact of injury

28  throughout the life of the Schemes" is not pled with any particularity under FRCP

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

9(b), including an explanation about why Plaintiff did not have such notice of the relevant facts during this time period. FAC, ¶ 551. To invoke the fraudulent concealment doctrine, Plaintiff "must allege facts demonstrating [that it] could not have discovered the alleged violations by exercising reasonable diligence." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020 (N.D. Cal. 2014). Plaintiff's cursory allegations about its purported delayed discovery do not meet this standard which warrants dismissal of each claim without leave to amend.

## C. Plaintiff Does Not—And Cannot—Allege The Necessary Elements For Its RICO Claim

In support of the RICO cause of action, Borrego is described as both the RICO enterprise and its victim because it is engaged in interstate commerce as a FQHC and "has lost tens of millions of dollars as a result of the Defendants' fraudulent conduct …." FAC, ¶¶ 519 and 523. The FAC also states that the racketeering activity is separate and distinct from the enterprise and that defendants "worked together to perpetrate a number of schemes to steal money from the Enterprise" which was "paid to the Enterprise by state and federal payers utilizing primarily state and federal funds paid by Medi-Cal." *Id.* at ¶ 527. These alleged schemes were "contrary to the ordinary and regular operations and management of" Borrego. *Id.* at ¶ 528. Plaintiff contends that the alleged schemes involving the Hebets Parties are unlawful under 18 U.S.C. § 1962(c) ("Section 1962(c)"). Plaintiff alleges that the defendants participated in racketeering activity including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), engaging in "monetary transactions in property derived from specified unlawful activity" (18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1957), theft or embezzlement in connection with health care (18 U.S.C. § 669), health care fraud (18 U.S.C. § 1347), false statements or entries generally (18 U.S.C. § 1001), as well as other "federal healthcare offenses" (18 U.S.C. § 371, 18 U.S.C. § 1035, 18 U.S.C. § 287, and 18 U.S.C. § 1349). *Id.* at ¶¶ 531, 536, 543, 545 – 548.

To plead a civil RICO claim under Section 1962(c), Plaintiff must plausibly

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

allege that the Hebets Parties engaged in "(1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  *Metaxas v. Lee*, 503 F. Supp. 3d 923, 935 (N.D. Cal. 2020) (internal citations omitted).  As explained below, Plaintiff has not pled the necessary factual details to satisfy each of these elements.

### 1.   The Hebets Parties Did Not Engage In The Required Conduct For A RICO Claim

To satisfy the "conduct" element of a Section 1962(c) claim, a plaintiff must allege facts that the defendant had "some part in directing [the enterprise's] affairs." *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).  Simply being "a part" of the enterprise or "performing services" for the enterprise does not rise to the level of direction required.  *Id.* (allegations "showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise."); *Brice v. Haynes Invs., LLC.*, 548 F. Supp. 3d 882, 893 (N.D. Cal. 2021) (one is not liable under Section 1962(c) unless he or she "has participated in the operation or management of the enterprise itself.").  *Pac. Recovery Sols.* held there were no allegations that raised an inference that defendants "performed actions to further a scheme rather than their own individual affairs pursuant to the contract" to plead the conduct element.  481 F. Supp. 3d at 1027.

Here, the Hebets Parties are portrayed as "simply being involved" and "performing services for the enterprises [that] does not rise to the level of direction." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 910 (C.D. Cal. 2012).  The FAC describes the Borrego Insiders as having a business relationship with the Hebets Parties through the creation and approval of the 162B plans which allegedly allowed excessive payments to the Borrego Insiders.  FAC, ¶¶ 372, 404, 407-409 and 413-418.  However, the Hebets Parties are in the business of "executive compensation to healthcare providers" (*Id.* at ¶¶ 46 and 410-11) so Plaintiff does not allege that they "conducted or participated in the conduct of the

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

*enterprise's* affairs, not just their *own affairs*."  *In re WellPoint, Inc.*, 903 F. Supp. 2d at 910 ("the existence of a business relationship" between the defendants "does not show that [defendant] WellPoint directed the enterprise"; emphasis in original).

Although Plaintiff alleges that Jim Hebets "directed the review and approval process through" HC of the purported "sham, inflated salaries" for Borrego's executives (FAC, ¶¶ 408-09), this conclusory allegation is insufficient to show that the Hebets Parties "have some part in directing" the enterprise's affairs.  903 F. Supp. 2d at 910 and 912; *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (plaintiffs' "conclusory statement [that] 'Wellpoint and UnitedHealth … [were] involved in decision making regarding the database'…is too general to satisfy *Twombly's* pleading instructions.").  Because Plaintiff does not adequately allege facts which establish the "conduct" element for RICO, this claim should be dismissed.  *In re WellPoint*, 903 F. Supp. 2d at 912 (RICO causes of action against WellPoint dismissed since plaintiffs' "failed to plead any non-conclusory facts showing that WellPoint played 'some part in directing the enterprise's affairs,' as opposed to 'simply being involved' in them."); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (plaintiff did not satisfy the "conduct or participate requirement" of § 1962(c) where he only "provided legal services" to the alleged enterprise and did not hold "any formal position in the limited partnership."); *Walter*, 538 F.3d at 1249.

## 2.   The FAC Does Not Allege An Enterprise Because There Is No Common Purpose Among The Defendants

Plaintiff describes the Hebets Parties and several of the other defendants as "Outsiders" to Borrego.  FAC, ¶ 520.  The defendants were allegedly "associated with the Enterprise" because they were "outside vendors."  *Id.* at ¶ 521.  Plaintiff states that defendants are "entities and individuals separate from the Enterprise, and none of the Defendants is alleged to be the Enterprise, or its members."  *Id.* at ¶ 522.

A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

fact although not a legal entity." 18 U.S.C. § 1961(4).  In the FAC, Plaintiff does not identify "the enterprise alleged"—a requirement for a RICO claim—which itself establishes that this element is not adequately pled.  *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1203 (C.D. Cal. 2008) (it is "essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated.").  Plaintiff's description of defendants in connection with the RICO enterprise suggests that Plaintiff attempts to plead an associated-in-fact enterprise.  An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (internal citations omitted).  A plaintiff must allege both "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Id.*  The hallmark of an enterprise is "an association of entities, groups or individuals that must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).  A plaintiff cannot "meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose." *Id.* (plaintiffs' "conclusory allegations are woefully inadequate to state a [RICO] claim for relief" under the "particularized pleading requirements of Rule 9(b)" since pleading "by adjective" is not sufficient).

Here, Plaintiff alleges that the schemes constitute "predicate acts" which relate to each other as part of a common plan to steal money from Borrego Health.  FAC, ¶ 555.  The FAC asserts that each "act is related to its purpose, results, participants, victims and method of commission." *Id.*  Similar to *In re Jamster*, while Plaintiff alleges an "overarching common purpose to engage in fraudulent conduct" in a conclusory fashion, there are no "specific allegations in support of the common purpose." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5.  Specifically, there are no allegations connecting each of the defendants' actions showing a "common

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

purpose to accomplish the alleged fraudulent scheme." *Id.* at * 6.

Instead, the purported schemes involved many parties alleged to be acting separately to participate in uncoordinated misconduct.  By way of example only, Plaintiff does not allege that the Hebets Parties had any contact with the Dentist Defendants or describe with any detail the purported conversations with Daryl Priest. Plaintiff also does not claim that the Hebets Parties are involved in eleven of the fourteen schemes stated in the FAC.  Also, noticeably absent are any allegations "as to the form or structure" of the enterprise, the "ways in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the enterprise." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014) (RICO claim not adequately pled when plaintiff did not describe "*how* each individual [d]efendant" is engaged in the enterprise) (emphasis in original).  Thus, Plaintiff failed to allege a common purpose.

### 3.      Plaintiff Cannot Demonstrate That The Hebets Parties Engaged In Racketeering Activity

To plead a pattern of racketeering activity, "plaintiffs must allege that defendants committed at least two of the statutorily enumerated predicate acts." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017) (citing 18 U.S.C. § 1961(5)); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (noting that, while at least two acts of racketeering activity are required under RICO to establish a pattern, the pleading of two such acts is not necessarily sufficient to do so).  Where RICO claims under Section 1962(c) are asserted against multiple defendants, "a plaintiff must allege at least two predicate acts by each defendant." *Comm. to Protect*, 235 F. Supp. 3d at 1177.  To plead a pattern of racketeering activity, a plaintiff must allege: (i) that the racketeering predicates are related, and (ii) that they amount to or pose a threat of continued criminal activity.  *Id.*

RICO fraud claims must meet the heightened pleading standards of FRCP 9(b). *Id.* at 1176 (citing *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)).  In order to satisfy FRCP 9(b), a plaintiff must allege "the time, place, and

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal citations omitted).  Plaintiff must also allege facts setting "forth an explanation as to why the statement or omission complained of was false and misleading." *Id.*; *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1160 (N.D. Cal. 2014) (plaintiff's RICO claim was deficient because the allegations failed "to state the time, place, or specific content of the purported 'scheme,'" and did "not state with any particularity the content of the communications that comprised this alleged scheme.").

As a preliminary matter, Plaintiff's "RICO claim incorporates the preceding allegations in the [FAC]" which "does not suffice to plead a pattern of racketeering activity" since Plaintiff does not "adequately identify the predicate acts that form the basis of the alleged "'scheme of racketeering.'" *Izenberg*, 589 F. Supp. 2d at 1203 (internal citations omitted).  Such "'shotgun' pleading is insufficient to plead a RICO claim." *Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008).

### a.  The Mail And Wire Fraud Claims Do Not Have Merit

The first predicate acts alleged by Plaintiff are mail fraud and wire fraud.  FAC, ¶¶ 531-535; 536-542.  Mail and wire fraud under 18 U.S.C. §§ 1341 and 1342 include three elements (a) the formation of a scheme to defraud, (b) the use of the United States mail or interstate telephone wires in furtherance of that scheme, and (c) the specific intent to defraud." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Plaintiff's allegations, however, do not provide the necessary details about any use of the United States mail or interstate telephone wires to accomplish the Hebets Parties' alleged schemes or mention their specific intent to defraud.  *Comm. to Protect*, 235 F. Supp. 3d at 1179 (in "order to adequately allege claims of mail and wire fraud, Plaintiff must satisfy the requirements of FRCP 9(b)."); *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028 ("allegations in the complaint do not identify the time, place, and specific content of the fraudulent communications at issue," or "aver factual matter to raise the inference that such communications were sent over the

United States wires or the United States mail across state lines."); *Izenberg*, 589 F. Supp. 2d at 1204 ("plaintiffs do not identify the manner in which the alleged scheme involved use of the U.S. mail.").  Nor do the descriptions of the relevant schemes allege facts which sufficiently address these elements either.  FAC, ¶¶ 364-372 and 404-420.  While Plaintiff alleges that "in July 2019, Jim Hebets e-mailed Mikia Wallis explaining the nature of the 162B program and the benefits of the plan" (*Id.* at ¶ 417), the FAC does not explain how the purported "fraudulent scheme" was furthered by this particular e-mail or state that Jim Hebets had any specific intent to defraud Ms. Wallis by sending this e-mail.  235 F. Supp. 3d at 1180; *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (racketeering activity not proper because it did not "specify either the time or the place of the alleged wrongful conduct").

Beyond this vague allegation, the FAC alleges in a general manner for the mail fraud predicate act that the "Schemes could not work without the use of the United States Mail, which was used for the purpose of executing the Schemes."  FAC, ¶ 533. While Plaintiff alleges that the mail "was used to send correspondence and payments" under some of the other schemes, it does not state that these practices were performed with respect to the schemes that supposedly involved the Hebets Parties.  *Id.* at ¶ 534.

Similarly, the wire fraud predicate act states in a non-specific fashion that defendants used "interstate electronic transmission of documents for the purpose of executing, or attempting to execute, the Schemes."  *Id.* at ¶ 537.  Plaintiff only references one of the specific schemes for its wire fraud allegations stating that "false or fraudulent bills were submitted electronically to Medi-Cal" and Borrego under the "Fraudulent Dental Services Scheme."  *Id.* at ¶ 541.  Again, the FAC does not allege with any detail that the purported schemes involving the Hebets Parties executed electronic wire transfers in furtherance of the alleged fraudulent conduct.  *See Id.* at ¶¶ 537-542.  As such, Plaintiff does not plead "*with particularity* the acts constituting wire fraud" and mail fraud as predicate acts and the "mere listing of such alleged crimes, without supporting, particularized factual pleadings as required under Rule

1   9(b), is not enough to survive a motion to dismiss." *Mohebbi*, 50 F. Supp. 3d at 1255.

2   Moreover, Plaintiff does not allege any "independent duty" owed by the Hebets

3   Parties for its "failure to disclose" allegations in support of its RICO "fraudulent

4   scheme." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015).

**b. The Federal Health Care Offenses Claims Are Deficient**

6   The federal healthcare offenses alleged by Plaintiff pursuant to 18 U.S.C. §

7   1957 ("Engaging in monetary transactions in property derived from specified unlawful

8   activity that includes Federal healthcare offenses") are not adequately alleged.  FAC,

9   ¶¶ 543-548.  This statute applies to any person who knowingly engages or attempts to

10  engage in a monetary transaction in criminally derived property of a value greater than

11  $10,000 and is derived from specified unlawful activity.  18 U.S.C. § 1957.  Plaintiff

12  claims that the "specified unlawful activity" that applies is a federal health care

13  offense that includes violations of various health care statutes.  18 U.S.C. §

14  1956(7)(F).  A claim under § 1957 must show (1) that the defendant knowingly

15  engaged in a monetary transaction, (2) that the defendant knew the property involved

16  derived from specified unlawful activity, and (3) that the property was of a value

17  greater than $10,000.  *U.S. v. Johnson*, 450 F.3d 366, 375 (8th Cir. 2006).

18  Critically, the alleged federal healthcare offenses "cannot serve as predicates for

19  a RICO claim because they are not listed in 18 U.S.C. § 1961(1)." *Pac. Recovery

20  Sols.*, 481 F. Supp. 3d at 1027.  Also, Plaintiff does not plead specific facts showing

21  that the Hebets Parties "engaged in a monetary transaction" or "knew the property

22  involved derived from specific unlawful activity." *Id.*  Nor does the FAC set forth

23  particular allegations showing that the Hebets Parties violated the health care statutes

24  that constitute a "Federal health care offense."  FAC, ¶¶ 545-548; 18 U.S.C. § 24(a).

25  Instead, Plaintiff merely provides group pleading allegations that pertain to all 14

26  purported schemes, but does not describe how Jim Hebets or HC supposedly violated

27  these referenced health care statutes.  FAC, ¶¶ 545-548.  Missing from the FAC are

28  allegations "that tie the 'Health Care Offenses' in question to an offense that can serve

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

16   Case No. 3:22-CV-01056-BEN-KSC

1   as a predicate for a RICO claim," which is necessary to avoid dismissal of this cause

2   of action. *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027 (RICO claim dismissed).

3   Accordingly, Plaintiff's racketeering activity allegations are not adequately pled.

4             **4.**     **The RICO Claim Based On Conspiracy Is Also Faulty**

5        Plaintiff states that the allegations in the FAC "demonstrate the existence of a

6   conspiracy between Defendants," and each of them is "a culpable person for purposes

7   of 18 U.S.C. § 1964." FAC, ¶¶ 556 and 557. Pursuant to 18 U.S.C. § 1962(d) titled

8   "Prohibited activities" under RICO, it is "unlawful for any person to conspire to

9   violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. §

10   1962(d). A defendant "cannot be liable for a RICO conspiracy under Section 1962(d)

11   if the defendant is not liable under the substantive RICO provisions, namely Sections

12   1962(a), (b), or (c)." *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028 (citing *Howard v.*

13   *Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Because Plaintiff failed to plead

14   a substantive RICO violation under Section 1962(c), Borrego's conspiracy claim

15   under 18 U.S.C. § 1962(d) should be dismissed. *Id.*

16      **D.**    **<u>Plaintiff's Claims For False Promise, Fraudulent Concealment As</u>**

17          **<u>Well As Intentional And Negligent Misrepresentation Are Not</u>**

18          **<u>Adequately Pled</u>**

19        Causes of action for intentional misrepresentation and fraud based on a false

20   promise must allege: (1) a material misrepresentation, (2) knowledge of its falsity, (3)

21   intent to defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage.

22   *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929,

23   938–39 (N.D. Cal. 2008); *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F.

24   Supp. 3d 1007, 1039 (C.D. Cal. 2017). A fraudulent concealment claim must allege

25   (1) the defendant concealed or suppressed a material fact; (2) the defendant was under

26   a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or

27   suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was

28   unaware of the fact and would not have acted as he did if he had known of the

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019). The elements of negligent misrepresentation "are similar to intentional fraud except" that the plaintiff need not allege the defendant "made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014) (internal citations omitted). Critically, all of these claims must meet the heightened pleading under FRCP 9(b). *Id.* at 1269-70; *First Advantage*, 569 F. Supp. 2d at 939; *Immobiliare*, LLC, 424 F. Supp. 3d at 888.

In support of its cause of action for false promise, Plaintiff alleges that, "[a]s outlined herein," "each and every Defendant made promises" to Borrego, and defendants "did not intend to perform on the promises made at the time they made those promises to Borrego." FAC, ¶¶ 819-20. Plaintiff further alleges that defendants intended for Borrego "to rely on those promises" and defendants did not "perform the actions they promised to perform." *Id.* at ¶¶ 821 and 823. However, in connection with this false promise cause of action, Plaintiff does not identify any specific, material misrepresentations made by the Hebets Parties or allege that they knew that any such misrepresentations were false when they were purportedly made to Plaintiff. *Id.* at ¶¶ 818-825. Nor does Plaintiff allege for its intentional misrepresentation claim that Jim Hebets and/or the HC knew that the purported representations were false or that they intended Plaintiff to rely on them. *Id.* at ¶¶ 892-897.

With respect to its negligent misrepresentation claim, Plaintiff alleges "[a]s outlined above," the Hebets Parties "made several representations to [Plaintiff] regarding the scope and nature of the services they would provide" which the Hebets Parties "had no reasonable grounds for believing…were true" and "intended for" Plaintiff to rely on. *Id.* at ¶¶ 899-901. These conclusory and general allegations, however, are not sufficient under the FRCP 9(b) pleading standard because Plaintiff

does not provide any detail about what representations were allegedly made by the Hebets Parties and why they were not true.  Plaintiff "reincorporates" several hundred earlier allegations in support of these claims without discussing any details about how they support these causes of action.  *See Id.* at ¶¶ 810, 818, 892 and 898.

Similarly, for its fraudulent concealment claim, Plaintiff does not assert any specifics which establish that the Hebets Parties had a duty to disclose any facts to Plaintiff or identify the particular instances where the Hebets Parties failed to disclose such facts.  *Id.* at ¶¶ 811-817.  Plaintiff does not allege with specificity for any of these claims the entire "'who, what, when, where, and how' of the misconduct charged." *City of Escondido v. Gen. Reinsurance Corp.*, 2019 WL 6917983, at *13 (S.D. Cal. Dec. 18, 2019).  Thus, these claims are untenable and should be dismissed.

## E.    The Conversion Cause Of Action In The FAC Fails

California law provides that "conversion is the wrongful exercise of dominion over the property of another." *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1093 (S.D. Cal. 2020) (internal citations omitted).  The "elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages." *Id.*  Also, money "cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) (internal citations omitted).  A generalized claim for money is "not actionable." *Id.*

Here, Plaintiff merely alleges "Defendants substantially interfered with" Borrego's "personal property by knowingly taking money" from Borrego for which defendants were not entitled to, and Borrego "did not consent to Defendants improper withholding of funds that were rightfully owned" by Borrego.  FAC, ¶¶ 827-28. While Plaintiff's general allegations for its conversion claim are conclusory at best, the substantive allegations are also unclear about what acts the Hebets Parties allegedly performed which dispossessed Plaintiff of its money.  Further, Plaintiff does

not contend that there is a specific sum of money involved which was misappropriated by the Hebets Parties.  To the contrary, Plaintiff alleges that the Hebets Parties "funnel[ed] additional Borrego funds to Borrego Insider cronies," "schemed" with the Borrego Insiders to increase executive compensation that was paid to the 162B plans, and the 162B plan payments "created a windfall for" the Hebets Parties.  *Id.* at ¶¶ 407, 413 and 418.  These allegations establish that there is no "identifiable sum" of money involved.  *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058-59 (N.D. Cal. 2021).

**F.    Plaintiff's Inducing Breach Of Contract And Intentional Interference With Contractual Relations Claims Are Untenable**

To allege a claim for intentional interference with contractual relations, Plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption; and (5) resulting damage."  *Mossimo Holdings, LLC v. Haralambus*, 2017 WL 1240739, at *5 (C.D. Cal. Apr. 4, 2017) (internal citations omitted).  The third element requires that the intentional acts be a substantial factor in causing the breach.  *Id.*  The "elements of a claim for inducement of breach of contract" are "identical to the elements for intentional interference with contractual relationships."  *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1152 (N.D. Cal. 2010).

Plaintiff alleges that it had a contract with Medi-Cal and contracts with its "contract dental providers, including the corporate entities of the individually named Dentist Defendants."  FAC, ¶¶ 832, 833, 840-41.  However, the claims do not describe "the nature and extent of [Borrego's] relationship with" these parties that they contracted to sufficiently plead these causes of action.  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 998 (N.D. Cal. 2015) ("conclusory allegations about [plaintiffs'] economic relationships" not sufficient).  Plaintiff also alleges yet again in a conclusory manner that defendants "knew of

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

Borrego's "contracts with Medi-Cal, the corporate Dentist Defendants, and Borrego's contract dental providers." FAC, ¶¶ 834 and 842. Besides the conclusory allegation that the Hebets Parties knew of these aforementioned contracts, there are no allegations about the relevant schemes which demonstrate that the Hebets Parties were aware of these contracts. *Id.* at ¶¶ 372, 404 and 407-420. Nor are there any facts that show the Hebets Parties' actions were designed to "induce a breach or disruption of the contractual relationship." *Mossimo Holdings, LLC*, 2017 WL 1240739, at *5.

In fact, Plaintiff only alleges that "Defendants intended to cause the contracted dental providers to breach the terms of their contract with Borrego" and that these contracts were breached or performance thereunder was made "expensive and difficult." FAC, ¶¶ 835, 836, 843 and 844. Despite these boilerplate allegations, Borrego's supposed agreements with the dental providers are not mentioned at all in connection with the "schemes" involving the Hebets Parties. *Id.* at ¶¶ 372, 404 and 407-420. Plaintiff's pleading defects are fatal to these claims.

## G.    The Intentional And Negligent Interference With Prospective Economic Relations Causes Of Action Are Not Viable

The elements of a cause of action for intentional interference with prospective economic relations are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pro Water Sol., Inc. v. Angie's List, Inc.*, 457 F. Supp. 3d 845, 852 (C.D. Cal. 2020) (internal citations omitted). The elements of a negligent interference with prospective economic relations claim are the same, except that the third element does not require intentional acts, but instead "the defendant's failure to act with reasonable care." *Soil Retention Prod., Inc. v. Brentwood Indus.*, Inc., 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021). To prevail, the plaintiff bears the burden of "pleading

and proving that the defendant's conduct was independently wrongful." *Pro Water Sol., Inc.*, 457 F. Supp. 3d at 852; *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1089–90 (E.D. Cal. 2003) (same).

In support of these claims, Plaintiff alleges that it was in an "economic relationship with Medi-Cal, which provided an economic benefit" to Borrego, as well as similar relationships with "contract dental providers." FAC, ¶¶ 849, 850, 858 and 859. Plaintiff also claims, without providing any specificity, that defendants "knew"—or "should have known"—of these economic relationships. *Id.* at ¶¶ 851, 852, 860 and 861. The FAC asserts that defendants "engaged in wrongful conduct that was intended to disrupt" Borrego's economic relationships, as "outlined herein." *Id.* at ¶ 853. Plaintiff's claims of misconduct against the Hebets Parties are based on intentional misrepresentation. *Id.* at ¶¶ 372, 404 and 407-420. "Fraud qualifies as an independently wrongful act, but only if it adequately pled" pursuant to FRCP 9(b). *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1117. As described above, Plaintiff has not sufficiently alleged its claims of fraud against the Hebets Parties so they cannot establish any independently wrongful conduct for their intentional interference claim. *Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity Partners*, 33 F. App'x 893, 896 (9th Cir. 2002) (plaintiff could not establish independently actionable conduct); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 621 (N.D. Cal. 2002) (same).

For a plaintiff's negligent interference claim, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself, ***and*** this claim may be asserted only where the defendant owes the plaintiff a duty of care. *Weststeyn Dairy 2*, 280 F. Supp. 2d at 1090. Not only has Plaintiff failed to sufficiently allege independently wrongful conduct by the Hebets Parties, but the FAC "is rife with allegations of intentional, not negligent, conduct" which serves as another basis to dismiss Plaintiff's negligent interference clam. *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003). Further, Plaintiff does not allege that the Hebets Parties owe Plaintiff a duty of care. *See* FAC, *generally*;

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

THE HEBETS PARTIES' MOTION TO DISMISS PLAINTIFF'S FAC

1  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1118 n.57 (claim is deficient because

2  counterdefendants do not allege that a duty of care existed); *Celebrity Chefs Tour,*

3  *LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1158 (S.D. Cal. 2014) (same).  Thus,

4  Plaintiff's interference with prospective economic relations claims are baseless.

5  **H.  Plaintiff's Violation Of UCL Claim Is Invalid**

6  A business act or practice may violate the UCL if it is either "unlawful,"

7  "unfair," or "fraudulent."  *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092,

8  1127 (S.D. Cal. 2021) (internal citations omitted).  To state a claim under the

9  fraudulent prong of the UCL, a plaintiff must comply with FRCP 9(b)'s heightened

10  pleading standard and must allege that "members of the public are likely to be

11  deceived" by the defendant's acts.  *Id.* at 1128; *In re Outlaw Lab'y, LLP*, 463 F. Supp.

12  3d 1068, 1088–89 (S.D. Cal. 2020) (same).  Where the UCL claim is premised on the

13  same acts alleged in the complaint's other causes of action, and those causes of action

14  fail, the UCL claim likewise must be dismissed because the plaintiff has not

15  adequately alleged any predicate unlawful acts.  *Tan v. GrubHub, Inc.*, 171 F. Supp.

16  3d 998, 1010–11 (N.D. Cal. 2016) (internal citations omitted).

17  In support of its UCL claim, Plaintiff alleges that "Defendants' actions were

18  unfair" and "constitute[d] fraudulent business acts or practices …."  FAC, ¶¶ 872 and

19  873.  With respect to Plaintiff's allegation under the "fraudulent" prong of the UCL,

20  Plaintiff does not plead fraud with the necessary particularity under FRCP 9(b) with

21  respect to the Hebets Parties' purported conduct as exemplified by Plaintiff's other

22  fraud-based claims.  *Id.* at ¶¶ 372, 404 and 407-420.  Also, because Plaintiff's UCL

23  claim that pertains to the "unfair" prong relies on the same alleged conduct pled in

24  support of the other causes of action that are subject to dismissal, Plaintiff's UCL

25  claim must be dismissed for the same reasons.  *Tan*, 171 F. Supp. 3d at 1010–11.

26  **I.  Plaintiff's Conspiracy Claim Lacks Merit**

27  To plead civil conspiracy, the elements of the underlying tort must also be

28  alleged.  *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1189 (N.D. Cal. 2021).

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   The elements of a civil conspiracy are "(1) the formation of a group of two or more

2   persons who agreed to a common plan or design to commit a tortious act; (2) a

3   wrongful act committed pursuant to the agreement; and (3) resulting damages."

4   *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1157 (N.D. Cal. 2013).

5       To allege a civil conspiracy to commit a tort, courts have held that "conclusory

6   [allegations that are] ... not supported by any factual allegations" or "allegations [that]

7   are merely recitations of the elements of the claim ... fail to state a claim under the

8   *Twombly* standard." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 985 (N.D. Cal.

9   2020). As to the first element of conspiracy—the "formation and operation of the

10  conspiracy"—a plaintiff must show "(i) knowledge of wrongful activity, (ii)

11  agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful

12  activity." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D.

13  Cal. 2020) (internal citations omitted). Conspiracy grounded in fraud must identify

14  "the who, what, when, where, and how of the misconduct charged." *Id.*

15      Here, Plaintiff's conspiracy claim is based on the alleged "multiple

16  schemes…between and among the Defendants, all of whom acted as co-conspirators

17  of another." FAC, ¶ 875. The FAC also states that Borrego was "harmed by

18  Defendants' actions" and that defendants "were aware of each other's plans" as well

19  as "agreed/intended such wrongful acts to be committed." *Id.* at ¶¶ 876 and 878.

20  First, Plaintiff's inability to properly allege the underlying torts related the Hebets

21  Parties' schemes is fatal to the conspiracy claim. Second, beyond the conclusory and

22  group allegations made in support of the conspiracy cause of action, there are no facts

23  in the FAC which establish that the Hebets Parties knew about and agreed to join any

24  of the other schemes involving the Borrego Insiders, Premier Defendants or Dentist

25  Defendants. *See* FAC, *generally*; *Rockridge Tr.*, 985 F. Supp. 2d at 1157 (plaintiffs'

26  conspiracy claim dismissed because they provided "no specific factual allegation" to

27  support "that Defendants entered into a conspiracy."). Further, Plaintiff's allegations

28  related to the supposed fraudulent schemes do not provide the necessary detail to

satisfy FRCP 9(b) either.  *See Rockridge Tr.*, 985 F. Supp. 2d at 1157.

### J.    Plaintiff's Unjust Enrichment Claim Is Futile

The Ninth Circuit has allowed "an unjust enrichment cause of action through quasi-contract" seeking restitution.  *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020) (internal citations omitted).  Unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request."  *Saroya*, 503 F. Supp. 3d at 998 (internal citations omitted).  To allege unjust enrichment as an independent claim, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense."  *Vallarta*, 497 F. Supp. 3d at 810.

Plaintiff again alleges in the most cursory manner that "Defendants unjustly received a benefit at the expense" of Borrego as "outlined herein."  FAC, ¶ 891.  Plaintiff's unjust enrichment claim appears to rely on the same general allegations about the purported schemes related to the Hebets Parties that are pled in support of its other causes of action.  Because Plaintiff's other claims based on the Hebets Parties' supposed misrepresentations fail, "her unjust enrichment fails as well."  *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("There being no actionable wrong, there is no basis for the relief."); *Vallarta*, 497 F. Supp. 3d at 810 (same).

## IV.    CONCLUSION

For the foregoing reasons, the Hebets Parties respectfully request that the Court dismiss Plaintiff's First, Forty-Second, Forty-Third, Forty-Fourth, Forty-Fifth, Forty-Sixth, Forty-Seventh, Forty-Eighth, Forty-Ninth, Fiftieth, Fifty-Third, Fifty-Fourth and Fifty-Fifth Causes of Action alleged against them, without leave to amend.

Dated:  May 9, 2023

Respectfully submitted,

LOCKE LORD LLP

By:_____

Mitchell J. Popham
William Mullen
David Rutan
*Attorneys for Defendants JAMES HEBETS and THE HEBETS COMPANY*

25      Case No. 3:22-CV-01056-BEN-KSC