JOSEPH R. LAMAGNA (State Bar No. 246850)
JORDAN KEARNEY (State Bar No. 305483)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@health-law.com
          jkearney@health-law.com

DEVIN M. SENELICK (State Bar No. 221478)
TARYN A. REID (State Bar No. 328772)
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-Mail: dsenelick@health-law.com
          treid@health-law.com

*Attorneys for Plaintiff Borrego Community
Health Foundation*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation, | Case No. 3:22-cv-01056-BEN-KSC |
|  | Hon. Roger T. Benitez |
| Plaintiff, | |
| vs. | **PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT** |
| KAREN HEBETS, et al. | |
| Defendants. | |
|  | Judge:  Hon. Roger T. Benitez |
|  | Date:   July 3, 2023 |
|  | Time:   10:30 a.m. |
|  | Ctrm.:  5A |
|  | Trial Date:       None Set |

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

7356140.1

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND STATEMENT OF FACTS ................................... 10

II.  STANDARD OF REVIEW ..................................................................... 13

III.  THE FAC IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING ........... 14

IV.  BORREGO HAS STANDING TO BRING ITS CLAIMS ........................... 15

V.  THE FAC SUFFICIENTLY PLEADS ITS CLAIMS ................................... 16

A.  Borrego's Claims Are Not Barred By the Statutes of Limitations ....... 16

B.  Borrego's RICO Claim is Sufficiently Pled ......................................... 19

   1.  The Conduct Element is Sufficiently Pled ................................. 20

   2.  The Enterprise Element is Met ................................................... 25

   3.  Both Elements of Pattern and Racketeering Activity Are Met ........................................................................................... 27

   4.  Borrego Was Damaged by Defendants' Conduct ..................... 31

   5.  The RICO Conspiracy Claim is Sufficiently Pled ..................... 31

C.  Borrego's State Law Claims are Sufficiently Pled .............................. 31

   1.  Borrego's Claims Are Not Barred By the Economic Loss Rule ........................................................................................... 31

   2.  Borrego's Fraudulent Concealment, False Promise, and Misrepresentation Claims Are Sufficiently Pled ..................... 32

   3.  Borrego's Conversion Claim is Sufficiently Pled ..................... 35

   4.  Borrego's Inducing Breach of Contract and Interference Claims Are Sufficiently Pled ..................................................... 36

   5.  Borrego's Breach of Contract Claims are Sufficiently Pled ...... 39

   6.  Borrego's Breach of Fiduciary Duty Claims are Sufficiently Pled ........................................................................ 40

   7.  Recovery Under a Civil Conspiracy Theory is Appropriate ...... 42

   8.  Borrego's UCL Claim is Sufficiently Pled ................................ 43

   9.  Borrego's Unjust Enrichment Claim is Sufficiently Pled .......... 44

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

7356140.1

1

## **TABLE OF CONTENTS**

2
**Page**

3   VI.    LEAVE TO AMEND IS LIBERALLY GRANTED ......................................... 44

4   VII.   CONCLUSION ............................................................................................... 44
5

6

7

8

9

10

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:22-cv-01056-BEN-KSC

7356140.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Bard Water Dist. v. James Davey & Assocs., Inc.*,
No. 13CV2727, 2018 WL 4702511 (S.D. Cal. Oct. 1, 2018) ............................ 18

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 13

*Beltz Travel Serv., Inc. v. Intl. Air Transport Assoc.*,
620 F.2d 1360 (1980) ...................................................................................... 20

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ......................................................................... 13

*Brady v. Dairy Fresh Products Co.*,
974 F.2d 1149 (9th Cir. 1992) ......................................................................... 27

*Bryant v. Mattel, Inc.*,
573 F.Supp.2d 1254 (C.D. Cal. 2007) ...................................................... 25, 26

*Bureerong v. Uvawas*,
922 F.Supp. 1450 (C.D. Cal. 1996) ................................................................ 14

*Cal. Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995) ........................................................................... 17

*Clement v. Am. Greetings Corp.*,
636 F.Supp. 1326 (S.D. Cal. 1986) ................................................................. 14

*Conley v. Gibson*,
355 U.S. 41 (1957) .......................................................................................... 14

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................................... 31

*Federal Reserve Bank of San Francisco v. HK Systems*,
No. C–95–1190, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ........................ 22

*Gant v. Ford Motor Company*,
517 F.Supp.3d 707 (E.D. Mich. 2021) ............................................................ 15

*Gelow v. Cent. Pac. Mortg. Corp.*,
656 F.Supp.2d 1217 (E.D. Cal. 2009) ............................................................. 27

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

4

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

7356140.1

# TABLE OF AUTHORITIES

Page(s)

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ...................................................................... 14

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) ........................................................................ 17

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................................ 20, 31

*Julinians Against Shakedown Tactics v. TEJJR*,
   No. 05CV2353, 2006 WL 5003361 (S.D. Cal. Aug. 1, 2006) ......................... 44

*Ketayi v. Health Enrollment Grp.*,
   No. 20-CV-1198, 2021 WL 2864481 (S.D. Cal. July 8, 2021) ....................... 21

*LD v. United Behav. Health*,
   508 F.Supp.3d 583 (N.D. Cal. 2020) ............................................................ 20

*Millar v. Bay Area Rapid Transit Dist.*,
   236 F.Supp.2d 1110 (N.D. Cal. 2002) .......................................................... 44

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ...................................................................... 27

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
   116 F.Supp.3d 1010 (N.D. Cal. 2015) .......................................................... 24

*State of Cal. ex rel. Mueller v. Walgreen Corp.*,
   175 F.R.D. 631 (N.D. Cal. 1997) ................................................................ 19

*Natomas Gardens Inv. Grp., LLC v. Sinadinos*,
   710 F.Supp.2d 1008 (E.D. Cal. 2010) .......................................................... 36

*NuCal Foods, Inc. v. Quality Egg, LLC*,
   918 F.Supp.2d 1023 (E.D. Cal. 2013) ..................................................... 31, 32

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ........................................................... 13, 20, 26

*Orr v. Bank of America*,
   285 F.3d 764 (9th Cir. 2002) ...................................................................... 28

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

7356140.1

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

*Outdoor Media Grp. v. City of Beaumont*,
   506 F.3d 895 (9th Cir. 2007) ............................................................................. 13

*In re Outlaw Lab'y, LP Litig.*,
   No. 18-CV-840, 2020 WL 5552558 (S.D. Cal. Sept. 16, 2020) ....................... 20

*Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*,
   No. 5:20-CV-02251, 2021 WL 1176677 (N.D. Cal. Mar. 29, 2021) ................ 28

*Pacific Wind, LLC v. U.S.*,
   150 Fed. Cl. 242 (2020) .............................................................................. 15, 16

*Schmuck v. U.S.*,
   489 U.S. 705 (1989) ................................................................................... 28, 29

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
   806 F.2d 1393 (9th Cir.1986) ............................................................................ 29

*Securities and Exch. Comm'n v. Bardman*,
   216 F.Supp.3d 1041 (N.D. Cal 2016) ................................................................ 15

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ........................................................................... 13

*Stitt v. Citibank, N.A.*,
   942 F.Supp.2d 944 (N.D. Cal. 2013) ........................................................... 20, 31

*Supermail Cargo, Inc. v. U.S.*,
   68 F.3d 1204 (9th Cir. 1995) ............................................................................. 16

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................. 20

*T&S Enterprises, LLC v. Sumitomo Corp. of Am.*,
   No. 1-CV-01318, 2011 WL 5085569 (S.D. Cal. Oct. 26, 2011) ...................... 19

*U.S. v. Turkette*,
   452 U.S. 576 (1981) ........................................................................................... 27

*U.S. v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ............................................................................. 44

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 3:22-cv-01056-BEN-KSC

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

7356140.1

# TABLE OF AUTHORITIES

Page(s)

*United Energy Owners Comm., Inc. v. U.S. Energy Management Sys., Inc.*,
  837 F.2d 356 (9th Cir.1988) ........................................................................ 26, 27

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F.Supp.2d 1002 (C.D. Cal. 2011) ......................................................... 28, 43

*In re Zantac (Ranitidine) Products Liab. Litig.*,
  546 F.Supp.3d 1152 (S.D. Fla. 2021) ................................................................ 15

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
  601 F.Supp.3d 625 (C.D. Cal. 2022) ................................................................. 27

## STATE CASES

*Ambriz v. Kelegian*,
  146 Cal.App.4th 1519 (2007) ............................................................................ 41

*Beckwith v. Dahl*,
  205 Cal.App.4th 1039 (2012) ............................................................................ 32

*Coley v. Eskaton*,
  51 Cal.App.5th 943 (2020) ................................................................................ 41

*Favila v. Katten Muchin Rosenman LLP*,
  188 Cal.App.4th 189 (2010) ......................................................................... 42, 43

*Freed v. Manchester Serv., Inc.*,
  165 Cal.App.2d 186 (1958) ............................................................................... 37

*Ghirardo v. Antonioli*,
  14 Cal.4th 39 (1996) ......................................................................................... 44

*Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*,
  115 Cal.App.4th 1145 (2004) ............................................................................ 33

*Irey v. Len*,
  191 Cal.App.2d 13 (1961) ............................................................................ 39, 40

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ..................................................................................... 37

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Lee v. Hanley,*
   61 Cal.4th 1225 (2015) ..................................................................... 35

*Manderville v. PCG&S Grp., Inc.,*
   146 Cal.App.4th 1486 (2007) ........................................................... 33

*McKell v. Washington Mutual, Inc.,*
   142 Cal.App.4th 1457 (2006) ........................................................... 43

*Mendoza v. Cont'l Sales Co.*
   140 Cal.App.4th 1395 (2006) ........................................................... 41

*Mintz v. Blue Cross of California,*
   172 Cal.App.4th 1594 (2009) ........................................................... 38

*Nolte v. Cedars-Sinai Medical Center*
   236 Cal.App.4th 1401 (2015) ........................................................... 43

*North Am. Chem. Co. v. Superior Court,*
   59 Cal.App.4th 764 (1997) ............................................................... 37

*Oasis W. Realty, LLC v. Goldman,*
   51 Cal.4th 811 (2011) ...................................................................... 39

*Prof'l Tax Appeal v. Kennedy-Wilson Holdings, Inc.,*
   29 Cal.App.5th 230 (2018) ............................................................... 44

*Quelimane Co. v. Stewart Title Guar. Co.,*
   19 Cal.4th 26 (1998) ........................................................................ 37

*Reeves v. Hanlon,*
   33 Cal.4th 1140 (2004) .................................................................... 37

*Robinson Helicopter Co. v. Dana Corp.,*
   34 Cal.4th 979 (2004) ...................................................................... 32

*SCC Acquisitions Inc. v. Cent. Pac. Bank,*
   207 Cal.App.4th 859 (2012) ............................................................. 33

*Welco Elecs., Inc. v. Mora,*
   223 Cal.App.4th 202 (2014) ............................................................. 35

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

7356140.1

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL STATUTES

18 U.S.C. § 24 ................................................................................................ 28

18 U.S.C. § 1035 ............................................................................................ 30

18 U.S.C. § 1341 ............................................................................................ 28

18 U.S.C. § 1343 ............................................................................................ 28

18 U.S.C. § 1347 ............................................................................................ 30

18 U.S.C. § 1961 ...................................................................................... 27, 28

18 U.S.C. § 1961(1) ....................................................................................... 28

18 U.S.C. § 1961(4) ....................................................................................... 25

18 U.S.C. § 1962(c) ............................................................................ 20, 21, 27

## STATE STATUTES

California Business and Professions Code § 17200 ................................... 10, 43

California Civil Code § 2339 .......................................................................... 22

California Civil Code § 2343 ............................................................... 22, 24, 25

## RULES

F.R.C.P. Rule 8 ..................................................................................... 14, 15, 43

F.R.C.P. Rule 8(d)(2) ..................................................................................... 14

F.R.C.P. Rule 8(d)(3) ..................................................................................... 14

F.R.C.P. Rule 9(b) .................................................................................... 13, 19

F.R.C.P. Rule 12(b)(6) ................................................................................... 13

F.R.C.P. Rule 12(f) ........................................................................................ 14

F.R.C.P. Rule 15 ............................................................................................ 44

Case No. 3:22-cv-01056-BEN-KSC

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

7356140.1

# I. <u>INTRODUCTION AND STATEMENT OF FACTS</u>

By their Motions, certain defendants aver that they can siphon tens of millions of dollars from a nonprofit entity, but cannot be held liable for their actions. Fortunately for Borrego and the public, this is inconsistent with the law. Borrego Community Health Foundation ("Borrego") is a California nonprofit public benefit corporation operating a Federally Qualified Health Center or FQHC. (First Amended Complaint ("FAC" ¶1, 8).) Borrego provides primary and related healthcare services to historically underserved areas of Southern California. (*Id.* ¶1.) Borrego filed its original Complaint in this action outlining several schemes in which the defendants inappropriately funneled money from Borrego. These schemes came to light in October 2020 as part of law enforcement investigations. (Dkt. 1.)

After filing its original Complaint, Borrego discovered the existence of an additional defendant, KBH Healthcare Consulting, Inc. ("KBH"), and requested leave to amend its complaint to add KBH. Prior to requesting leave to amend, several defendants moved to dismiss Borrego's Complaint. As Borrego was already amending its pleading, Borrego also added over 100 new paragraphs of information to address some of the arguments raised in those motions to dismiss. The FAC also alleges a multitude of schemes perpetuated in order to siphon funds from Borrego and into defendants' pockets, and includes claims for (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) breach of contract, (3) intentional and negligent interference, (4) legal malpractice, (5) fraudulent concealment, (6) false promise, (7) conversion, (8) inducing breach of contract, (9) intentional and negligent interference, (10) violations of Business and Professions Code § 17200, *et seq.* ("UCL"), (11) conspiracy, (12) breach of fiduciary duty, (13) constructive fraud, and (14) unjust enrichment. (FAC ¶¶563-928.)

The FAC defines several sub-sets of defendants based on that group's involvement in the action. The "Borrego Insiders" consists of Borrego's former CEO Bruce Hebets, former Vice President of Business Services Karen Hebets

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

(Bruce's widow), former CLO and CEO Mikia Wallis, former CFO Diana Thompson, and former Board members Harry Ilsley, Dennis Nourse, Mike Hickok, and Chuck Kimball. (*Id.* at ¶¶12-3, 15-21.) Former Board members Ilsley, Nourse, Hickok, and Kimball are also referred to as "Board Insiders." (*Id.* ¶21.)

Another subset of defendants are the "Premier Defendants," consisting of Premier Healthcare Management, Inc., Summit Healthcare Management, Inc., Daryl Priest, Nicholas Priest, and Travis Lyon. (*Id.* ¶¶23-8.) Premier and Summit promised to provide management services and claims review for Borrego's contract dental and medical programs. (*Id.* at ¶¶85, 92, 97-8, Exs. A, D.) Daryl Priest is the sole owner of Premier and Summit, as well as the owner and manager of Promenade Square, LLC, DRP Holdings, LLC, and Inland Valley Investments, LLC (the "Priest LLCs"), engaged in commercial real estate. (*Id.* at ¶¶338-40.) Nick Priest was Premier's CEO. (*Id.* ¶26.) Lyon was Premier's President and COO, and the President of Real Estate Operations at Priest Development Corporation. (*Id.* ¶27.)

Another subset of defendants are the "Dentist Defendants," which include Ayed Hawatmeh, D.D.S. and Hawatmeh Dental Group, P.C. ("Hawatmeh"), Marlene Thompson, D.D.S. and Marlene Thompson, D.D.S., Inc. ("Thompson"), Douglas Ness, D.D.S. and Ness Dental Corporation ("Ness"), Magaly Velasquez, D.D.S. and Magaly M. Velasquez DDS Professional Dental Corp. ("Velasquez"), Husam Aldairi, D.D.S. and Aldairi DDS, Inc. ("Aldairi"), Waleed Stephan, D.D.S. and W.A. Stephan, A Dental Corporation ("Stephan"), Marcelo Toledo, D.D.S. and Marcelo Toledo, D.D.S., Inc. ("Toledo"), Aram Arakelyan, D.D.S. and New Millennium Dental Group of Aram Arakelyan, Inc. ("Arakelyan"), Alborz Mehdizadeh, D.D.S. and Alborz Mehdizadeh, Inc. ("Mehdizadeh"), Jilbert Bakramian, D.D.S., and other non-moving defendants. (*Id.* ¶¶29-44.) The allegations about the Dentist Defendants involve the submission of duplicate and fraudulent claims, and—for Aldairi, Thompson and Ness—hiring and billing for claims submitted by Medi-Cal suspended dentist. (*Id.* ¶¶163, 262, 270.)

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

Case No. 3:22-cv-01056-BEN-KSC

7356140.1

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

The last subset of defendants moving to dismiss are The Hebets Company Defendants, James "Jim" Hebets and The Hebets Company (collectively the "Hebets Company Defendants"). (*Id.* ¶¶45-6.) Jim Hebets was Borrego's former CEO's brother, and The Hebets Company Defendants sold overpriced 162B plans and above-market compensation analysis to allow the Borrego Insiders to improperly funnel Borrego funds into their pockets. (*Id.* ¶¶407-22.)[1]

Despite the significant detail included in Borrego's 734-page FAC, 19 defendants have moved to dismiss, with several others joining.[2] The bulk of the arguments stem from assertions that the FAC: (1) is barred by the statute of limitations, and (2) fails to sufficiently plead its claims. The FAC alleges that these defendants were significant participants in schemes which siphoned funds out of Borrego, including the: (1) Borrego MSO/IPA Scheme (*Id.* ¶¶56-65), (2) Premier Scheme (*Id.* ¶¶66-131), (3) Fraudulent Dental Billing Scheme (*Id.* ¶¶132-300), (4) Coverup Scheme (*Id.* ¶¶301-34), (5) Priest Leases Scheme (*Id.* ¶¶335-359), (6) the Compensation/Benefits Scheme (*Id.* ¶¶360-73), (7) Nepotism and Cronyism Scheme (*Id.* ¶¶374-8), (8) DeAnza Country Club Scheme (*Id.* ¶¶379-406), (9) Jim Hebets

---

[1] The defendants that have moved to dismiss the FAC include: Karen Hebets; Hawatmeh; Wallis; Thompson; Ness; Board Insiders; The Hebets Company Defendants; and the Premier Defendants. The defendants that have joined in Hawatmeh's motion to dismiss include the Velasquez, Aldairi, Stephan, Toledo, Arakelyan, Mehdizadeh and Bakramian (collectively "Joinder Defendants"). Of importance, the parties entered into a joint stipulation setting the responsive pleading schedule on April 14, 2023. The Court ordered the stipulated briefing schedule on April 17, 2023. (Dkt. 170.) Pursuant to the stipulation, all responsive pleadings were due to be filed on or before May 9, 2023. Stephan, Toledo, Arakelyan, Mehdizadeh and Bakramian failed to timely file their joinder to Hawatmeh' motion. The Court should disregard these untimely submissions.

[2] The Joinder Defendants join in Hawatmeh's motion to dismiss. Of note, Hawatmeh's motion focuses on the factual allegations specific to him (*i.e.* the claims he submitted, his involvement with the Premier Defendants, and the damages attributable to him). As such, these joinder motions are inherently deficient.

Case No. 3:22-cv-01056-BEN-KSC

7356140.1

Scheme (*Id.* ¶¶407-22), (10) Julian Barn Scheme (*Id.* ¶¶423-42), (11) Property Development Scheme (*Id.* ¶¶443-468), and (12) KBH Consulting Scheme (*Id.* ¶¶469-85). As outlined herein and in the FAC, Borrego has sufficiently pled its claims against defendants and all motions to dismiss and joinders should be denied.[3]

## II.   **STANDARD OF REVIEW**

In considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp. v. City of Beaumont,* 506 F.3d 895, 899 (9th Cir. 2007). A cause of action is sufficiently pled so long as it gives the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff need only plead factual allegations, which when taken as true, "plausibly suggest an entitlement to relief." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

Regarding claims based in fraud, under F.R.C.P. Rule 9(b), the particularity standard merely requires that a plaintiff "identif[y] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.,* 486 F.3d 541, 555 (9th Cir. 2007). Rule 9(b) is designed to ensure that factual allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)).

---

[3] The Joint Stipulation limits Borrego's opposition to a combined 35 pages (as opposed to the 250 pages it would otherwise be entitled to for the 10 motions to dismiss). As such, Borrego's opposition highlights a sampling of paragraphs which sufficiently address the defendants' arguments while providing additional citations to relevant paragraphs in the FAC, and was—by necessity—very concise. Should the Court require any additional briefing on the issues raised in defendants' moving or reply papers, Borrego is able to provide further detail surrounding its arguments.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

F.R.C.P. Rule 8 allows plaintiffs to plead in the alternative. Specifically, Rule 8(d)(2) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Further, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." F.R.C.P. Rule 8(d)(3).

Motions to dismiss are "viewed with disfavor and [are] rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-6 (1957). The F.R.C.P. "are designed to ensure that suits are adjudged on their merits, and to prevent dismissal of actions because of a technical defect in the pleadings." *Clement v. Am. Greetings Corp.,* 636 F.Supp. 1326, 1329 (S.D. Cal. 1986).[4]

## III.   THE FAC IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING

The Premier Defendants, The Hebets Company Defendants and Karen Hebets assert that the FAC is a "shotgun" pleading that fails to comply with F.R.C.P. Rule 8. Defendants argue that the FAC violates Rule 8's requirement of a "short and plain statement" because the FAC asserts multiple claims against multiple defendants without separating out (and presumably repeating) the allegations by individual defendant, and because the FAC incorporates some (though not all) of the general allegations into the counts by reference. However, the Ninth Circuit has been clear that a "complaint does not employ impermissible shotgun pleading just because it re-alleges by reference all of the factual paragraphs preceding the claims for relief."

---

[4] Karen Hebets also requests that allegations more remote in time be stricken under Rule 12(f). Yet, even the older schemes are relevant to establish an ongoing pattern and intent to defraud Borrego. Further, motions to strike pursuant to Rule 12(f) are disfavored. *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).

1    *Securities and Exch. Comm'n v. Bardman*, 216 F.Supp.3d 1041, 1051 (N.D. Cal

2    2016); *see also In re Zantac (Ranitidine) Products Liab. Litig.*, 546 F.Supp.3d 1152,

3    1184 (S.D. Fla. 2021) ("Although the Defendants argue that many of the same

4    voluminous allegations are alleged against each Defendant, that does not, by

5    necessity, deprive the Defendants of notice of the claims against them.").

6           Here, Borrego does not lump all defendants together, but instead provides the

7    Court and defendants with defined terms which highlight the specific groups

8    involved in each scheme (*e.g.* "Borrego Insiders," "Board Insiders," "Premier

9    Defendants"). By its very nature, the FAC incorporates other allegations by

10   reference given that the defendants were all interconnected in conspiring to defraud

11   Borrego. The fact the defendants are alleged to be involved in various schemes does

12   not mean the FAC violates the "shotgun" pleading rule under Rule 8. *Gant v. Ford*

13   *Motor Company*, 517 F.Supp.3d 707, 714 (E.D. Mich. 2021).

14   **IV.    BORREGO HAS STANDING TO BRING ITS CLAIMS**

15          The Hawatmeh and Joinder Defendants assert that, because Medi-Cal paid

16   Borrego for the fraudulent dental claims, that Borrego suffered no cognizable harm

17   and thus lacks Article III standing to bring its claims. To reach this audacious

18   conclusion, Hawatmeh relies on four cases in which plaintiffs lacked standing

19   because the <u>defendant</u> had already reimbursed or refunded the plaintiff for the

20   alleged injury. However, none of Hawatmeh authorities suggest that a <u>third-party's</u>

21   partial reimbursement or payment to a plaintiff would defeat Article III standing.

22   Indeed, such a result would unjustly reward wrongdoers when an injured party

23   receives reimbursement through an insurance or indemnification agreement. Federal

24   courts recognize this and have rejected such a theory. *See Pacific Wind, LLC v. U.S.*,

25   150 Fed. Cl. 242, 246-8 (2020) (indemnity agreement did not negate Article III

26   standing to pursue a claim for underpayment of a government grant).

27          Hawatmeh's argument also disregards the FAC's allegations about Borrego's

28   damages. The FAC states that payments to Hawatmeh and Joinder Defendants were

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

usually initiated within 24 hours of receiving a claim from Premier. (FAC ¶106.) As such, Borrego paid the Dentist Defendants before it received any payment from Medi-Cal, if it received any payment from Medi-Cal at all. (*Id.*) Also, the FAC alleges that Premier failed to obtain recoupment from the Dentist Defendants when Medi-Cal did not pay Borrego for these claims, resulting in a net loss. (*Id.*)

In addition to the monetary injury, if not for the schemes alleged, including the Hawatmeh and the Joinder Defendants' excessive and fraudulent billing, Borrego's contract dental program would not have been suspended by Medi-Cal and Borrego would not have been required to hire monitors to oversee its programs (at a cost of over $2.7 million). (*Id.* ¶128.) Borrego was also forced to close several of its healthcare clinics, incur significant consulting and legal fees, and ultimately file for Chapter 11 bankruptcy. (*Id.* ¶¶128-30, 505.)

## V.    THE FAC SUFFICIENTLY PLEADS ITS CLAIMS

### A.    Borrego's Claims Are Not Barred By the Statutes of Limitations

Moving Defendants' assert that Borrego's claims are time-barred. However, a motion to dismiss based on the statute of limitations may only be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. [internal citations omitted]." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1205-7 (9th Cir. 1995). In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish timeliness. *Id.*, citing *Conley,* 355 U.S. 41. For matters involving tolling, a statute of limitations argument is generally not appropriately determined on a motion to dismiss given that the "equitable tolling doctrine often depends on matters outside the pleadings." *Id.*

Borrego's RICO, breach of contract, breach of fiduciary duty, and fraud-based claims have statute of limitations periods ranging from two to four years.[5]

---

[5] Borrego also brings a legal malpractice action against Wallis, with a one-year

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

1  Here, defendants assert that because their misconduct occurred for more than the

2  two to four years before the filing, that the statute of limitations has lapsed.

3  However, the Ninth Circuit follows a "injury discovery" rule in assessing limitations

4  periods, which tolls the statute until a plaintiff is on notice or inquiry notice of its

5  injury. *Cal. Sansome Co. v. U.S. Gypsum,* 55 F.3d 1402, 1406 (9th Cir. 1995).

6      The Ninth Circuit also follows the "separate accrual" rule. *See, i.e., Grimmett*

7  *v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996) (citing *State Farm Mut. Auto. Sin. Co. v.*

8  *Ammann*, 828 F.2d 4, 5 (9th Cir. 1987) (concurring) ("The rule is that a cause of

9  action accrues when new overt acts occur within the limitations period, even if a

10  conspiracy was formed and other acts were committed outside the limitations

11  period."). Equitable tolling principles are also available for RICO claims, which can

12  be invoked when the plaintiff demonstrates fraudulent concealment by the

13  defendants. *See Grimmett*, 75 F.3d at 514-5.

14      The FAC specifically alleges that pursuant to the Ninth Circuit's discovery

15  rule, the statute of limitations period began to accrue, at the earliest, in October 2020

16  once the government investigations revealed some of the misconduct. (FAC ¶¶358,

17  550.) The FAC also alleges pervasive efforts to conceal wrongdoing, including

18  without limitation: (1) Karen Hebets, Wallis, and the Board Insiders were aware that

19  the full Borrego Board previously rejected Bruce Hebets' MSO plan where Daryl

20  Priest's companies would offer management services, yet shortly thereafter signed

21  the Dental MSA with Premier without disclosure to the full Board (*Id.* ¶¶76-8, 82,

22  85, 118), (2) the Board Insiders presented aggregate financial reports and cost

23  spending reports to conceal the true amount of funds being funneled out of Borrego

24  from the full Board (*Id.* ¶¶115-6, 349, 539), (3) Premier, Lyon, and Karen Hebets

25

26  _____

27  statute. After the government investigation began, Wallis was terminated in
    December 2020. Further investigation between October 2020 and July 2022

28  revealed the scope of Wallis' conduct as alleged in the FAC. (FAC ¶15.)

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

1   trained Borrego's accounting department how to review claims, allowing for an

2   excess of $40 million in fraudulent claims to be processed (*Id.* ¶111), (4) Wallis

3   instructed Borrego employees not to investigate compliance hotline reports of

4   fraudulent billing (*Id.* ¶325), (5) Dentist Defendants failed to submit supporting

5   documentation with their bills to conceal that they were billing for services not

6   rendered (*Id.* ¶284), and (6) Aldairi, Ness and Thompson submitted bills in their

7   names for services rendered by a Medi-Cal suspended dentist (*Id.* ¶¶163, 262, 270).

8       Several defendants contend that Borrego was on constructive notice of the

9   Fraudulent Dental Billing Scheme once Borrego's Program Integrity process noted

10  billing discrepancies. However, this ignores the allegations which demonstrate the

11  efforts by Premier Defendants, Bruce Hebets, Karen Hebets, and Wallis to conceal

12  the misconduct and prevent any investigation from occurring. (*See, i.e., id.* ¶¶84, 90,

13  113, 135-6, 177, 302-4, 309-10, 316-8, 325.) For example, Lyon promised the

14  Program Integrity team that it would activate "prior authorization" requirements to

15  avoid improper billing or provisions of service, yet never implemented the program.

16  (*Id.* ¶328.) Also, Program Integrity reported issues to Wallis for further investigation

17  and action. (*Id.* ¶298.) As such, Program Integrity was led to believe the issues

18  raised with the Borrego Insiders and Premier Defendants were being addressed. *See,*

19  *i.e., Bard Water Dist. v. James Davey & Assocs., Inc.*, No. 13CV2727, 2018 WL

20  4702511, at *3 (S.D. Cal. Oct. 1, 2018) ("when a potential plaintiff is in a fiduciary

21  relationship with another individual, that plaintiff's burden of discovery is reduced

22  and he is entitled to rely on the statements and advice provided by the fiduciary")

23  citing *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal.App.3d 314, 325 (1990). Even if

24  defendants had not concealed their conduct, the limited Program Integrity reviews

25  did not provide notice of any other schemes.

26      Defendants' statute of limitations arguments stem from a disagreement on the

27  facts, which are to be appropriately resolved at trial, not by a motion to dismiss.

28  Indeed, "[w]hen opposing inferences may be made as to whether there was

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

18

Case No. 3:22-cv-01056-BEN-KSC

7356140.1

sufficient information to put the plaintiff on constructive notice, it is a question that is to be determined by a trier of fact." *T&S Enterprises, LLC v. Sumitomo Corp. of Am.*, No. 1-CV-01318, 2011 WL 5085569, at *2 (S.D. Cal. Oct. 26, 2011) citing *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 440 (1945). As Borrego alleges that the statute of limitations period began to accrue, at the earliest, in October 2020 (with several schemes being discovered between October 2020 and the filing of the original complaint in July 2022), Borrego's claims are timely.[6]

### B.    Borrego's RICO Claim is Sufficiently Pled

Defendants assert that Borrego fails to sufficiently plead its RICO claim pursuant to the heightened pleading standard of Rule 9(b) for fraud-based claims. However, the particularity requirement is relaxed when facts supporting the allegations are exclusively within the defendants' possession. *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D. Cal. 1997) (denying a motion to dismiss fraud claims). Here, Dentist Defendants maintain custody over the relevant patient records which would allow for a complete examination of the claims. (FAC, Exs. D-M, O-S.) Also, Premier Defendants have exclusive access to their billing software tracking the claim submissions. (*Id*. ¶241, Ex. A.) Borrego is aware they took place, but does not know the substance of defendants' "off the record" meetings. Borrego does not have access to communications and financial transactions among the defendants, which would provide further details surrounding the schemes (and perhaps reveal new ones) and would further support Borrego's alter ego allegations. Thus, the pleading standard for Borrego's claims is relaxed.

---

[6] Further, the statute of limitations issue has already been decided pursuant to the Priest Leases Scheme in the related action *Borrego Community Health Foundation v. Inland Valley Investments, LLC*, Case No. 3:21-cv-01417-BEN-KSC, in which Judge Battaglia noted that, "accepting the allegations [] as true and construing them in the light most favorable to Plaintiff, the Court finds Plaintiff has adequately pled that the statute of limitations did not begin to accrue on its RICO claim until October 2020." (Case No. 3:21-cv-01417-BEN-KSC, Dkt. 47.)

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

Further, in cases involving multiple parties in a fraudulent scheme (such as RICO), plaintiffs are not required to "identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Id.*; *Beltz Travel Serv., Inc. v. Intl. Air Transport Assoc.*, 620 F.2d 1360, 1367 (1980) (it is a "well-established principle that 'a conspiracy (is) not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'") With this framework in mind, Borrego has sufficiently pled its fraud-based claims, including RICO, against the defendants.

Borrego asserts claims for both violations of RICO under 18 U.S.C. Section 1962(c) and for conspiring to violate RICO under Section 1962(d). The elements of a RICO claim under Section 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *LD v. United Behav. Health*, 508 F.Supp.3d 583, 601 (N.D. Cal. 2020), citing to *Odom*, 486 F.3d at 547 (9th Cir. 2007). "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Stitt v. Citibank, N.A.*, 942 F.Supp.2d 944, 958-9 (N.D. Cal. 2013), citing to *Howard v. Am. Online Inc.,* 208 F.3d 741, 751 (9th Cir. 2000). Borrego has sufficiently pled both.

### 1.   The Conduct Element is Sufficiently Pled

To demonstrate conduct under RICO, a plaintiff's allegations must meet the "operation or management test" demonstrating that defendants participated, directly or indirectly, in the enterprises' affairs. *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840, 2020 WL 5552558, at *8-9 (S.D. Cal. Sept. 16, 2020) (denying summary judgment on a RICO claim when evidence indicated defendants may have knowingly engaged in fraudulent conduct when issuing demand letters with factually incorrect and misleading information). "[T]he operation or management

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

1  test does not limit RICO liability only to those actors who are in charge of the

2  enterprise or who have significant control over or within [the] enterprise. It is not

3  necessary to be upper management in the enterprise to be liable…" *Id.* Rather, to

4  assess whether a defendant meets the standard of Section 1962(c) [and *Reves*],

5  courts consider whether a defendant (1) gave or took directions; (2) occupied a

6  position in the 'chain of command' through which the affairs of the enterprise are

7  conducted; (3) knowingly implemented decisions of upper management; **or** (4) was

8  indispensable to achievement of the enterprise's goal in that the defendant's position

9  is 'vital' to the mission's success." *Ketayi v. Health Enrollment Grp.*, No. 20-CV-

10  1198, 2021 WL 2864481, at *12 (S.D. Cal. July 8, 2021) [emphasis added].

11         For Premier and Summit, their owner, manager and agents established a

12  "management services" program through the Dental MSA in which they worked

13  within Borrego's finance department. (*Id.* ¶114.) Lyon and Nick Priest then

14  integrated themselves into Borrego's Program Integrity team to dictate and control

15  Borrego's relationships with the dentists, restricting Borrego's ability to conduct

16  audits, controlling who would be credentialed or terminated, and requiring that

17  communications with dentists be limited to Premier employees. (*Id.* ¶¶166, 179,

18  181, 212, 309, 312, 314, 318, 323-4, 329.) Indeed, even before the Dental MSAs

19  were signed, Daryl Priest and Lyon had integrated themselves into management in

20  light of the original Borrego MSO plan. (*Id.* ¶89.) Lyon was also engaged in training

21  Borrego employees on reviewing dental claims, and instructed Borrego's finance

22  department to direct all questions regarding the Dental MSA through him and

23  Premier. (*Id.* ¶114, 135.) In terms of the Premier Defendants' conduct, Daryl Priest

24  is the sole owner and manager of Premier, Summit (who merged with Premier in

25  2019), and the Priest LLCs (included in the Priest Leases Scheme). (*Id.* ¶¶24, 51,

26  338-40.) Lyon is both the COO of Premier and the President of Real Estate

27  Operations at Priest Development Corporation (the corporation that negotiated the

28  Priest Leases). (*Id.* ¶27.) As Lyon, Daryl Priest and Nick Priest were all agents for

21

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

Premier, their wrongful conduct was either ratified by their principal or constitutes independent liability. (*See, i.e.,* Cal. Civil Code §§ 2339, 2343.)[7] As such, the FAC sufficiently alleges that the Premier Defendants gave directions within Borrego, occupied a position within the chain of command, knowingly implemented decisions of upper management, and were vital to the enterprise.

The same is true of Karen Hebets, Wallis and the Board Insiders. Karen Hebets was Borrego's Vice President of Business Services, was part of the Executive Committee which made decisions without full Board approval, trained the finance department how to review dental claims to ensure the fraudulent and duplicative claims went undetected, was responsible for conducting billing audits, and instructed Borrego (in concert with Premier) to pay contract dentists over the objection of Program Integrity. (*Id.* ¶¶13, 135-6, 161, 178, 195, 203, 218, 225, 237, 245, 258, 301-2, 308). Karen Hebets was in a position within the chain of command in which the schemes occurred, gave directions to others involved in the schemes, and implemented the decisions to effectuate the schemes.

The Board Insiders (Ilsley, Nourse, Hickok, and Kimball) were on the Board's Executive and Finance Committees. (*Id.* ¶¶17-20.) In these roles, they decided to enter into the Dental MSA without full Board approval less than six months after the full Board rejected a similar proposal. (*Id.* ¶¶76-82.) Likewise, the Board Insiders approved the Medical MSA the next year without full Board

---

[7] Relevant factors for alter-ego liability regarding unity of interest include: (1) the commingling of funds and assets, (2) identical equitable ownership of the two entities, (3) use of the same offices and employees, and (4) use of the subsidiary as a mere shell for the affairs of the parent. Facts which relate to two or three factors has been held sufficient to defeat a 12(b)(6) motion to dismiss. *Federal Reserve Bank of San Francisco v. HK Systems,* No. C–95–1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997). Premier, Summit, and the Priest LLCs all show the same ownership, use the same offices and employees (despite operating in two different industries), and all Premier Defendants acted with the intent to funnel money out of Borrego. It is unfair for them to hide behind one another to avoid liability.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

approval, even as Kimball expressed that the full Board would question and reject the proposal. (*Id.* ¶108.) The Board Insiders exerted their influence as members of the Executive Committee to negotiate several unfavorable transactions for Borrego because it would ultimately benefit themselves. (*Id.* ¶¶380-3, 424-39, 444-67.) Ilsley, Nourse, and Hickok also used their position to approve over an $87,000 bonus for Bruce Hebets in 2017, without conducting any compensation study to determine what a fair salary increase and bonus would be for a FQHC. (*Id.* ¶360.) When presenting information to the full Board, Ilsley and Nourse would only provide vague updates or aggregate financial reports to hide the details of the schemes. (*Id.* ¶466.) The Board Insiders were directly involved in management's decision making in their roles within the Executive and Finance Committees, and the Board Insiders' decisions to push forward deals, agreements and compensation increases in order to personally benefit themselves or other Borrego Insiders demonstrates that they were vital to the enterprise and knowingly implemented decisions made by Bruce Hebets and Daryl Priest.

Wallis was Borrego's CLO and CEO, and attended the Executive Committee and Finance Committee meetings. (*Id.* ¶15, 79.) In her capacity as CLO, Wallis signed an amendment to the Dental MSA which, for no additional consideration, agreed to quintuple Premier's payment per claim. (*Id.* ¶95.) Wallis further used her position to ensure that decisions promoting self-dealing by the Borrego Insiders were removed from the Executive and Finance Committee minutes. (*Id.* ¶¶108, 113.) Wallis would also override decisions made by Program Integrity to ensure dentists could continue to submit fraudulent bills. (*Id.* ¶311-3, 319, 325, 330, 349.) Wallis drafted an agreement for Bruce Hebets whereby Borrego would pay him $5 million as a "transition agreement." (*Id.* ¶¶392-3, 401.) Wallis coordinated with The Hebets Company Defendants to set executive compensation drastically above market. (*Id.* ¶413.) Wallis also drafted and facilitated the agreement on behalf of KBH, in which Bruce Hebets and Karen Hebets received kickbacks from Premier

1  under the guise of consulting services. (*Id.* ¶¶472-5.) Wallis both gave and took

2  directions related to the enterprise, occupied a position in the "chain of command"

3  through which the affairs of the enterprise are conducted in her roles as CLO and

4  CEO, and knowingly implemented decisions of upper management.[8]

5      For The Hebets Company Defendants, Jim Hebets is the President and

6  Founder of The Hebets Company, which represents itself as an accounting and

7  consulting services company with expertise in executive provider compensation to

8  healthcare providers. (*Id.* ¶46.) Jim Hebets provided Borrego with sham fair market

9  analysis to ensure his brother and sister-in-law received inflated salaries that

10  exceeded market value. (*Id.* ¶¶407-415.) The Hebets Company Defendants would

11  also coordinate with Bruce Hebets, Wallis and Borrego's former CFO to create

12  "bonuses" that were structured in a way to avoid tax liability. (*Id.* ¶¶414, 417.) The

13  Hebets Company Defendants were vital to achieving the enterprise's goal, as they

14  create a façade of legitimacy by allowing Wallis to represent to the Board that an

15  individual named "Jim" had conducted the evaluation into the compensation and

16  162B plans. (*Id.* ¶404.) Had the full Board known that the assessment of market

17  value was a sham, that the "bonuses" were subject to tax liability, and that "Jim"

18  was the CEO's brother justifying giving him a significant increase in pay, the "Jim

19  Hebets Scheme" and "Payout Scheme" would not have occurred. (*Id.* ¶¶372, 399-

20  404.) As President for The Hebets Company, Jim Hebets' wrongful conduct was

21  either ratified by The Hebets Company or constitutes independent liability. (*See, i.e.,*

22  Cal. Civil Code §§ 2339, 2343.) As such, the FAC sufficiently alleges that The

23  Hebets Company Defendants both gave and took directions within Borrego,

24

25  _____

[8] Wallis also asserts Borrego's RICO claim fails due to a lack of allegations

26  pertaining to "horizontal" and "vertical" relatedness of the conduct. "The Ninth

27  Circuit has never adopted the Second Circuit's horizontal and vertical relatedness

28  framework…". *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 116

F.Supp.3d 1010, 1045 (N.D. Cal. 2015), order vacated in part for other grounds.

Case No. 3:22-cv-01056-BEN-KSC

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

7356140.1

occupied a position within the chain of comment, knowingly implemented decisions of upper management, and were vital to the enterprise.

For Hawatmeh and the timely Joinder Defendants (Aldairi and Velasquez), all were providers under Borrego's contract dental program. (*Id.* ¶¶29-30, 34.) Each submitted fraudulent bills for services they did not perform in order to improperly receive payment from Borrego. (*Id.* ¶¶167-183 [Hawatmeh], 146-166 [Aldairi], 196-203 [Velasquez].) These defendants excessively billed at the instruction of the Premier Defendants in furtherance of a scheme whereby the Dentist Defendants were paid for services not rendered and Premier received $25 for each fraudulent claim. (*Id.* ¶¶95, 135, 181.) Aldairi, Thompson and Ness also submitted bills for a dentist suspended by Medi-Cal to receive more improper payments. (*Id.* ¶¶163, 261, 269). Dentist Defendants coordinated with Premier Defendants to maximize how much money each were able to obtain through improper billing submissions.[9] (*Id.* ¶135.) As it pertains to the Dentist Defendants, each received directions from Premier Defendants on how to defraud Borrego with their billing practices, and knowingly did so in order to create an additional profit for themselves. (*Id.*)

As such, the conduct element for all defendants is met.

### 2.    The Enterprise Element is Met

"Enterprise" under RICO is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *Bryant v. Mattel,*

---

[9] Several Defendants did not timely submit their joinders and the Court should disregard them. However, if the Court does consider them, the relevant paragraphs are: Toledo (FAC ¶¶39, 246-58), Stephan (*Id.* ¶¶37, 143-5, 220-5), Arakelyan (*Id.* ¶¶32, 35, 145, 204-13, 238-45, 305, 317, 326-7), Mehdizadeh (*Id.* ¶¶31, 184-95, 317), Bakramian (*Id.* ¶¶32, 238-45). Their conduct was also vital to the enterprise, as Premier Defendants and Borrego Insiders could not have profited without Dentist Defendants coordinating with Premier Defendants on how to maximize the number of claims submitted. All arguments regarding Hawatmeh apply to them.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

*Inc.*, 573 F.Supp.2d 1254, 1262 (C.D. Cal. 2007). To establish an associated-in-fact enterprise, a plaintiff must allege: (1) that a group of persons are associated together for common purpose of engaging in the course of conduct; (2) evidence of ongoing organization, formal or informal; and (3) evidence that various associates function as continuing unit. *Id.*; *see also Odom*, 486 F.3d at 552 (9th Cir. 2007). It is sufficient to allege a common purpose of attempting to defraud an organization by committing two or more predicate crimes. *See Bryant*, 573 F.Supp.2d at 1263.

Here, the common purpose element of enterprise is met as the FAC alleges that the defendants acted with the common purpose of defrauding Borrego and improperly siphoning funds out of Borrego. (*See* FAC ¶¶2, 6, 348, 372, 420-2, 441, 466.) As for the "evidence of ongoing organization," an ongoing organization is "a vehicle for the commission of two or more predicate crimes." *Odom*, 486 F.3d at 552. The FAC alleges more than two predicate acts. (*See* Section V.B.3.)

Some defendants also assert that the FAC does not meet this enterprise element, as their misconduct is not actively continuing during litigation. Such a position is nonsensical and inconsistent with the law. The "continuing unit" requirement does not require conduct to continue to this day, rather "the continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Bryant*, 573 F.Supp.2d at 1263-4, citing to *Odom,* 486 F.3d at 555 ("An almost two-year time span is far more than adequate to establish that Best Buy and Microsoft functioned as a continuing unit."). Here, the FAC alleges that for all defendants their respective conduct occurred consistently for over a two-year period, which is more than sufficient to meet the continuing unit element. (FAC ¶¶15, 85, 115, 167, 182, 146-60, 196-200, 118, 471-85).

Defendants also contend that Borrego cannot pursue a RICO enterprise theory in which Borrego is both the victim and the enterprise. Such a position is inconsistent with the law. *See United Energy Owners Comm., Inc. v. U.S. Energy Management Sys., Inc.,* 837 F.2d 356, 362 (9th Cir.1988) ("Plaintiffs are free to

7356140.1

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

allege that they or one of their members is a RICO enterprise or part of a RICO enterprise"), citing *Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 194-5, n. 6 (9th Cir. 1987). Indeed, defendants' position is contrary to the longstanding interpretation of RICO as applying to misconduct by persons who have "infiltrated" an innocent enterprise. *See U.S. v. Turkette,* 452 U.S. 576, 591 (1981); *United Energy*, 837 F.2d at 362–63; *see also Gelow v. Cent. Pac. Mortg. Corp.*, 656 F.Supp.2d 1217, 1234 (E.D. Cal. 2009).

Defendants also assert that Borrego cannot allege it is both the victim and the enterprise, as its employees conduct would be imputed onto the organization and thus make itself vicariously liable to its RICO claim. Again, such a position is inconsistent with law. In *Brady v. Dairy Fresh Products Co.,* 974 F.2d 1149, 1154 (9th Cir. 1992), the Ninth Circuit held "that an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency <u>when the employer is distinct from the enterprise</u>." [emphasis added]. Vicarious liability "is inappropriate when the [employer] is the RICO enterprise." *Id.*; *see also Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 619-20 (9th Cir. 2004).[10] Borrego sufficiently pleads enterprise.

### 3. Both Elements of Pattern and Racketeering Activity Are Met

To fulfill the pattern element under RICO, plaintiff must allege "the commission of at least two acts of racketeering activity" within a ten-year period. *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F.Supp.3d 625, 739 (C.D. Cal. 2022). A plaintiff must allege that the conduct complained of qualifies as racketeering activity as defined in RICO statute. *See* 18 U.S.C. § 1961. Included

---

[10] Hawatmeh asserts that generally RICO claims involving one victim and one scheme are deemed insufficient. While Borrego Health is the victim in this action, the FAC alleges 11 different schemes at issue. Moreover, the Fraudulent Dental Billing Scheme was not isolated to one action. For example, Hawatmeh submitted over 2,952 fraudulent claims for payment. (*Id.* ¶176.)

1   predicate acts are, among others, mail fraud under 18 U.S.C. § 1341 and wire fraud

2   under 18 U.S.C. § 1343. *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865

3   F.Supp.2d 1002, 1036 (C.D. Cal. 2011). Here, Borrego alleges predicate acts

4   stemming from mail and wire fraud, as well as predicate acts stemming from

5   "specified unlawful activity." 18 U.S.C. § 1961. The "specified unlawful activity"

6   includes several Federal health care offenses. Mail and wire fraud are expressly

7   mentioned in Section 1961(1). As for Federal health care offense, several defendants

8   assert that Borrego cannot pursue "Federal health care offenses" as a basis for

9   RICO, as it is not expressly stated in 1961.[11] However, Section 1961 includes

10  "specified unlawful activity," which is defined under Section 1956 as "any act or

11  activity constituting an offense involving a 'Federal health care offense.'" 18 USC §

12  24 defines "Federal health care offense" as including "a violation of, or a criminal

13  conspiracy to violate" specific healthcare related statutes, including theft or

14  embezzlement in connection with healthcare, healthcare fraud and false statements

15  relating to health care matters. Thus, Borrego may pursue its RICO claims under

16  both mail and wire fraud, as well as under the Federal health care offenses.

17      To state a claim for mail and wire fraud, a Plaintiff must plead "(1) a scheme

18  or artifice devised with (2) specific intent to defraud and (3) use of the United States

19  mail or interstate telephone wires in furtherance thereof." *Orr v. Bank of America*,

20  285 F.3d 764, 782 (9th Cir. 2002). The use of the mail need not be an essential

21  element of the scheme. *Schmuck v. U.S.*, 489 U.S. 705, 710 (1989). Rather, any

22

23  [11] In doing so, defendants rely on *Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*,
24  No. 5:20-CV-02251, 2021 WL 1176677 (N.D. Cal. Mar. 29, 2021). However, in
    *Pac. Recovery*, the Court did not hold that Federal health care offenses could not be
25  the subject of a RICO action, rather the Court stated: "The alleged commission of
26  'Federal Health offenses per 18 U.S.C. § 24 [] as defined by 18 U.S.C. § 24, are not
    among the statutory list of predicate acts that can constitute racketeering under 18
27  U.S.C. § 1961(1), and Plaintiffs do not contend otherwise." [emphasis added]. Thus,
    the Court merely held that the plaintiff failed to explain that Federal health care
28  offenses are covered under RICO, unlike Borrego here.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

"mailing that is incident to an essential part of the scheme" or "a step in [the] plot" satisfies the mailing element. *Id.* at 710-2. In fact, "[i]nnocent" mailings—those that "contain no false information"—or routine mailings may satisfy this element. *Id.* at 715. Specific intent is satisfied by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself." *Schreiber Distrib. Co. v. Serv– Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir.1986).

Here, Borrego alleges a range of schemes with an intent to defraud Borrego. These schemes include defendants selling useless assets to Borrego at inflated prices (FAC ¶¶379-406, 423-68), entering into one-sided agreements with Borrego to its detriment (*Id.* ¶¶56-131, 335-59), committing and/or covering up healthcare fraud through improper billing of dental services (*Id.* ¶¶132-334), paying themselves above-market salaries and benefits, hiring friends and family members to work for Borrego and paying them above-market salaries (*Id.* ¶¶360-78, 407-22).

Each of the alleged schemes involve some use of mail or wire. For instance, the Premier Defendants, Daryl Priest, Nicholas Priest and Lyon received rent payments for the Priest LLCs lease agreements and monthly wire transfers for the submitted claims pursuant to the Dental MSA. (*Id.* ¶¶114, 143, 349, 351, Ex. A pg. 193.) For the Dentist Defendants, pursuant to their contracts, payment for the fraudulently submitted bills were mailed out. (*See, i.e., Id.* ¶¶106, 181, Exs. E-O, Q-S.) For The Hebets Company Defendants, funds were transferred to Bruce Hebets via wire or mail monthly. (*Id.* ¶415.) Karen Hebets also received payments via wire transfer and/or by mail pursuant to the KBH Consulting Agreement and made several purchases using the KBH Healthcare Consulting debit card. (*Id.* ¶¶478-485.) Wallis arranged calls with outside counsel on December 16, 2015, pursuant to the Borrego MSO/IPA Scheme. (*Id.* ¶83.) Dr. Arakeylan called Lyon to intervene in Program Integrity performing an audit on his practice on January 27, 2020. (*Id.* ¶326.) On March 2, 2020, Premier telephoned members of Program Integrity to

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

1  falsely represent that audits required written five-days' notice. (*Id.* ¶327.)

2      In addition, Borrego's RICO claim is also sufficiently pled with defendants'

3  violations of Federal health care offenses. Defendants do not contest the merits of

4  the allegations pursuant to Federal health care offenses. Thus, Borrego's RICO

5  claim may proceed. However, for the Court's convenience Borrego provides further

6  clarity on this theory. Federal health care offenses is defined to include "Health care

7  fraud" and "False statements relating to health care matters." Under 18 U.S.C. §

8  1347, "Health care fraud" is committed when an individual:

9      …knowingly and willfully executes, or attempts to execute, a scheme
10     or artifice…to defraud any health care benefit program; or [] to obtain,
       by means of false or fraudulent pretenses, representations, or promises,
       any of the money or property owned by, or under the custody or control
11     of, any health care benefit program, in connection with the delivery of
       or payment for health care benefits, items, or services….

12 Under 18 U.S.C. § 1035, "False statements relating to health care matters" is when:

13     …whoever, in any matter involving a health care benefit program,
14     knowingly and willfully [] falsifies, conceals, or covers up by any trick,
       scheme, or device a material fact; or [] makes any materially false,
15     fictitious, or fraudulent statements or representations, or makes or uses
       any materially false writing or document knowing the same to contain
16     any materially false, fictitious, or fraudulent statement or entry, in
       connection with the delivery of or payment for health care benefits,
17     items, or services….

18     Borrego is an FQHC in partnership with Medi-Cal, and therefore constitutes a

19 healthcare benefit program. (FAC ¶545.) Below is a non-exhaustive sampling of the

20 false statements and fraudulent pretenses used by defendants:

21     • Wallis falsely represented to the Borrego Board that the Executive
22 Committee was not moving forward with the MSO. (*Id.* ¶84.)

       • Premier Defendants falsely represented they were reviewing and scrubbing
23 false, duplicative and deficient claims, resulting in over $40 million of fraudulent
   payments to be made. (*Id.* ¶102.) Premier Defendants also falsely represented to
24 Program Integrity that surprise audits were not permitted by law. (*Id.* ¶¶210, 327.)

25     • Hawatmeh, Aldairi, Velasquez, Thompson, Ness and Joinder Defendants all
   submitted bills which falsely represented the services provided. (*Id.* ¶¶167-83
26 [Hawatmeh], 146-66 [Aldairi], 196-203 [Velasquez], 39, 246-58 [Toledo], 37,
   143-5, 220-5 [Stephan], 32, 35, 145, 204-13, 238-45, 305, 317, 326-7
27 [Arakelyan], 31, 184-95, 317 [Mehdizadeh], 32, 238-45 [Bakramian], 259-64
   [Thompson], and 265-71 [Ness].)

28

- Karen Hebets, Wallis and the Board Insiders all represented to the full Board that Bruce Hebets' proposed $5 million "transition agreement" was fair because he was not receiving retirement benefits, despite arranging for Bruce Hebets' 162B retirement plan. (*Id.* ¶395.)

- Jim Hebets falsely represented on Compensation Split Arrangements that Bruce Hebets was an Insurance Agent, in which Jim Hebets and The Hebets Company paid Bruce Hebets for providing institutional knowledge for Jim Hebets to secure additional business with other FQHCs. (*Id.* ¶422.)

As such, Borrego sufficiently pleads a pattern of racketeering activity.

### 4.   Borrego Was Damaged by Defendants' Conduct

RICO also requires allegations that the racketeering activity was the proximate cause of the harm. *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). As noted above and in the FAC, as a result of the defendants' conduct, over $40 million was funneled out of Borrego, it was faced with suspension from Medi-Cal, and ultimately needed to close several clinics and file for bankruptcy. (*Id.* ¶¶4, 122, 128-9, 353, 504.)

### 5.   The RICO Conspiracy Claim is Sufficiently Pled

A violation of section 1962(d) requires allegations of either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. *Stitt*, 942 F.Supp.2d at 958-9 (N.D. Cal. 2013), citing to *Howard v. Am. Online Inc.,* 208 F.3d 741, 751 (9th Cir. 2000). As outlined above, Borrego has sufficiently alleged Moving Defendants' participation in at least two predicate acts (Section V.B.3) and therefore has sufficiently pled its RICO conspiracy claim.

### C.   Borrego's State Law Claims are Sufficiently Pled

#### 1.   Borrego's Claims Are Not Barred By the Economic Loss Rule

Several defendants assert that the tort claims alleged against them are barred by the economic loss rule. In general, the economic loss rule prevents recovery of purely economic losses in tort. *NuCal Foods, Inc. v. Quality Egg, LLC,* 918 F.Supp.2d 1023, 1028 (E.D. Cal. 2013). However, when a plaintiff sufficiently pleads damage to personal injury or other property, the economic loss rule does not

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

apply. *Id.* Indeed, the "economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk." *Id.* at 1033, citing to *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979 (2004). Here, the FAC alleges economic harm, but also that due to defendants' conduct, Borrego was ultimately suspended by Medi-Cal, damaging both its revenue, its ability to provide necessary healthcare services to patients and its reputation in the community. (*Id.* ¶¶4, 122, 128, 353.) Borrego ultimately was forced to close several of its clinics and file bankruptcy. (*Id.* ¶¶129, 504.) Thus, the misrepresentations and fraudulent conduct outlined herein also allow for recovery in tort. *NuCal Foods,* 918 F.Supp.2d at 1028 (analyzing the public policy rationale for permitting tort damages, stating "parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction").

### 2. Borrego's Fraudulent Concealment, False Promise, and Misrepresentation Claims Are Sufficiently Pled

Borrego alleges claims for false promise (against all Moving Defendants) and claims for fraudulent concealment and intentional/negligent misrepresentation (against the Premier Defendants, Dentist Defendants, and The Hebets Company Defendants). These claims stem from the promises and misrepresentations of services they would perform. The elements underlying these claims are similar, and the conduct satisfying the elements overlaps, so they are discussed together.

The elements of <u>false promise</u> are: (1) the defendant made a representation of intent to perform some future action, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060 (2012). The elements for <u>fraudulent concealment</u> are: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact. *SCC Acquisitions Inc. v. Cent. Pac. Bank*, 207 Cal.App.4th 859, 864 (2012). A duty to speak may arise when voluntarily assumed by contractual undertaking, as an incident of the relationship between the defendant and the plaintiff, or as a result of other conduct by the defendant that makes it wrongful to remain silent. *Id.* The elements for intentional misrepresentation are: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. *Manderville v. PCG&S Grp., Inc.*, 146 Cal.App.4th 1486 (2007). For negligent misrepresentation, the elements are the same, except for (2). Instead, plaintiff must allege defendants did not have a reasonable ground for believing their representation to be true. *Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal.App.4th 1145, 1154 (2004).

Premier Defendants promised and represented to Borrego that they had the skills, expertise, and qualified staff to provide management services for the contract dental program, including reviewing and scrubbing the claims. However, at the time of entering into the Dental MSA, Daryl and Nick Priest had no relevant experience and Premier lacked any employees with a clinical background to review the claims until 2019. (*Id.* ¶¶25-6, 98-102, 143-4 283-6, 707.) Lyon promised to set up a "prior authorization" requirement for claims review, but never did so. (*Id.* ¶326.) Since the Premier Defendants subsequently allowed $40 million worth of fraudulent claims to be submitted and paid, it is clear they lacked the experience to perform the services

they promised to perform and never had any intension of performing them. (*Id.*
¶111.) Premier Defendants concealed the fraudulent claim submissions by training
Borrego employees how to screen the claims and integrated themselves into
Borrego's Program Integrity team to dictate and control Borrego's relationships with
the dentists, restrict Borrego's ability to conduct audits, and required
communications with Dentist Defendants be limited to Premier employees. (*Id.*
¶¶166, 179, 181, 212, 309, 312, 314, 318, 323-4, 329.)

Karen Hebets, Wallis, and Board Insiders all promised the full Board that the
Dental MSO proposal would be abandoned, then proceeded to enter into the Dental
MSA with Premier. (*Id.* ¶84.) Karen Hebets, Wallis, and Board Insiders then
concealed this decision from the full Board, even submitting aggregate financial
reports so that no Premier/Priest entity was mentioned to the full Board and going
"off the record" during Executive and Finance Committee meetings. (*Id.* ¶¶108, 113,
115, 349.) The Dental MSA was concealed from the full Board as the Board Insiders
anticipated the Board would reject the proposal. (*Id.* ¶108.) Wallis even had her
assistant send her meeting minutes for Wallis to redact pertinent information. (*Id.*
¶113.) Wallis represented to a government agent that she had no knowledge of any
billing discrepancies when questioned in October 2020. (*Id.* ¶322.) Wallis also
concealed from the full Board her involvement in drafting the KBH Agreement, the
Nourse Parcel Lease, and the Dental MSA Amendments. (*Id.* ¶¶85, 94, 97, 302,
472.) Karen Hebets further trained the finance department how to review the
fraudulent claims in order to conceal the full scope of misconduct occurring in the
Fraudulent Dental Billing Scheme. (*Id.* ¶113.) The Board Insiders all also concealed
their decision to approve an over $87,000 bonus for Bruce Hebets. (*Id.* ¶360.)
Borrego relied on Karen Hebets, Wallis, and the Board Insiders' representations and
promises given their status on the Board and as officers of Borrego. Had the full
Board known of the concealed acts of self-dealing, it would not have acted as it did.

Regarding the Dentist Defendants, pursuant to the Dental Services

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

Agreements each contract dental provider agreed to abide by the law and submit claims for the services rendered in accordance with Medi-Cal's "per encounter" reimbursement method. (*See* Exs. E-M, O-S.) Instead, Dentist Defendants submitted fraudulent bills in concert with instructions from Lyon. (*Id.* ¶135.) For Aldairi, Ness and Thompson, they also submitted bills in their names for services rendered by another (suspended) dentist. (*Id.* ¶¶163, 262, 270.) Borrego relied on Dentist Defendants' representations that they would only bill for services rendered in order to provide care to traditionally underserved areas. (*See* Exs. E-M, O-S.)

For The Hebets Company Defendants, they represented that they were experts in the field of executive compensation for healthcare employees, then created a sham, inflated compensation evaluation and concealed that a member of the Hebets family was involved. (*Id.* ¶409.) Further, in negotiating the 162B plans, The Hebets Company Defendants falsely represented that the 162B plans would not be subject to tax penalties. (*Id.* ¶417.) Ultimately, when Borrego was presented with executive compensation benefits, it relied upon the false information provided by The Hebets Company Defendants, leading to inflated salaries for its executives.

As a result of the defendants' promises, misrepresentations and concealment of material facts, over $40 million were funneled out of Borrego, Borrego was faced with suspension from Medi-Cal, and ultimately needed to close several of its clinics and file bankruptcy. (*Id.* ¶¶4, 122, 128-129, 353, 504.) Borrego has sufficiently pled its false promise, concealment, and misrepresentation claims.

### 3. Borrego's Conversion Claim is Sufficiently Pled

Borrego's FAC alleges a conversion claim. Conversion requires: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015); *see Welco Elecs., Inc. v. Mora*, 223 Cal.App.4th 202 (2014). Pleading the exact amount of money converted by a defendant is not required, rather, alleging a sum that is capable of identification is

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

1  sufficient to survive a motion to dismiss. *Natomas Gardens Inv. Grp., LLC v.*

2  *Sinadinos*, 710 F.Supp.2d 1008, 1023 (E.D. Cal. 2010).

3      Among other damages suffered by Borrego, the Premier Defendants and

4  Dentist Defendants wrongfully possess property (money) that rightfully belongs to

5  Borrego. As alleged in the FAC, the Premier Defendants and Dentist Defendants

6  obtained this money through a number of wrongful acts. Borrego sufficiently pleads

7  its conversion claim against both the Premier Defendants and the Dentist

8  Defendants. (*Id.* ¶¶167-183 [Hawatmeh], 146-166 [Aldairi], 196-203 [Velasquez],

9  39, 246-258 [Toledo], 37, 143-145, 220-225 [Stephan], 32, 35, 145, 204-13, 238-45,

10 305, 317, 326-7 [Arakelyan], 31, 184-95, 317 [Mehdizadeh], 32, 238-45

11 [Bakramian], 259-64 [Thompson], and 265-71 [Ness], 282-5 [Premier Defendants].)

12     Karen Hebets entered into the KBH Healthcare Consulting Agreement with

13 Daryl Priest in which she received $2 million of the funds Premier siphoned from

14 Borrego. (*Id.* ¶478.) This is in addition to Karen Hebets receiving an above-market

15 salary of nearly $300,000, appraised by her brother-in-law through sham salary

16 evaluations. (*Id.* ¶¶408-9, 361.) Wallis also wrongfully obtained money through The

17 Hebets Company Defendants' sham compensation evaluations with a salary

18 exceeding $400,000. (*Id.* ¶¶363, 408-9.) For the Board Insiders, they all received

19 property in the form of free healthcare services and prescriptions. (*Id.* ¶367.)

20     The Hebets Company Defendants took Borrego's property for sham executive

21 compensation evaluations and sham retirement benefit evaluations. (*Id.* ¶372.)

22     As outlined herein, Borrego sufficiently pleads its conversion claim.

23          4.  <u>Borrego's Inducing Breach of Contract and Interference Claims</u>

24              <u>Are Sufficiently Pled</u>

25     Borrego also asserts a claim for <u>inducing breach of contract</u>. For the cause of

26 action of inducing breach of contract, a plaintiff must allege: (1) a valid, existing

27 contract; (2) that defendant had knowledge of contract and intended to induce its

28 breach; (3) that the contract was in fact breached by other contracting party; (4) that

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

Case No. 3:22-cv-01056-BEN-KSC

7356140.1

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

breach was caused by defendant's wrongful and unjustified conduct; and (5) that plaintiff suffered damage as result. *Freed v. Manchester Serv., Inc.*, 165 Cal.App.2d 186, 189 (1958). For its intentional interference with contractual relations claim, the elements overlap, but also require an allegation that the defendant's acts were designed to induce a breach or disruption of the contractual relationship. *Reeves v. Hanlon*, 33 Cal.4th 1140, 1148 (2004). A plaintiff need not show that a defendant acted with the primary purpose of disrupting the contract, but that defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 56 (1998). For intentional interference with prospective economic advantage, the elements are the same, except the first element which requires the existence of an economic relationship between the plaintiff and a third party that has the probability of future economic benefit to plaintiff (rather than a contract) and disruption of that relationship. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159 (2003). The elements of negligent interference with prospective economic advantage are the same as intentional interference except for the intent element, which instead requires allegations that the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and that the defendants' negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted. *North Am. Chem. Co. v. Superior Court*, 59 Cal.App.4th 764, 786 (1997).

The Premier Defendants knew of both Borrego's contract with Medi-Cal and its contracts with dental providers, as Premier was hired to manage the billing and claims submission under both agreements. (*See, i.e.,* FAC Ex. A.) As a result of the fraudulent claims Premier Defendants pushed through, Borrego was ultimately forced to shut down its contract dental program and terminate its contracts (and end its economic relationships) with dental providers. Borrego's contract with Medi-Cal was suspended and the economic relationship disrupted. (*Id.* ¶¶4, 122, 128-29, 353,

7356140.1

504.) The Premier Defendants surely knew that submitting millions of dollars in fraudulent claims would disrupt these contracts/relationships.[12]

Similarly, the Dentists Defendants were also aware of Borrego's contract with Medi-Cal, as they were paid by Borrego for treating its Medi-Cal patients. Despite this, the Dentist Defendants submitted fraudulent bills and were paid millions of unearned dollars. (*Id.* ¶¶167-83 [Hawatmeh], 146-66 [Aldairi], 196-203 [Velasquez], 39, 246-58 [Toledo], 37, 143-5, 220-5 [Stephan], 32, 35, 145, 204-13, 238-245, 305, 317, 326-7 [Arakelyan], 31, 184-95, 317 [Mehdizadeh], 32, 238-45 [Bakramian], 259-64 [Thompson], and 265-71 [Ness].) In submitting claims that defrauded a government health care program, it was substantially certain that the contracts and economic relationship Borrego had with Medi-Cal would be disrupted.

Karen Hebets was the VP of Business Affairs and aware billing audits of Borrego's Medi-Cal claims. (*Id.* ¶¶13,136.) Karen Hebets also worked alongside Lyon to train contract dental providers and Borrego's finance department, even ordering for payment for claims identified as potentially fraudulent. (*Id.* ¶¶135, 181.) In training the finance department to approve and submit fraudulent claims for payment, it was substantially certain that the contracts and economic relationships Borrego had with Medi-Cal and its dentists would be impacted. (*Id.* ¶¶135, 137.)

Wallis (as CLO and CEO) and the Board Insiders were aware of Borrego's contract with Medi-Cal and with the dental providers. (*Id.* ¶¶15, 298.) Wallis and the Board Insiders proposed and arranged for Borrego to pursue deals which would misappropriate government health care dollars. (*See, i.e., id.* ¶¶ 66-300, 360-73, 379-406, 423-85.) Wallis would override decisions made by Program Integrity to

---

[12] Premier Defendants assert that under *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594 (2009), as Borrego's agents they cannot be held responsive for inducing breach of contract. This position disregards that such agency immunity is only available for agents that "act in their official capacities <u>on behalf</u> of the corporation and not as individuals for their individual advantage." *Id.* at 1604.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

1  ensure Dentist Defendants could continue to submit fraudulent bills (*Id.* ¶311-3,

2  319, 325, 330, 349), and drafted several agreements by which millions of health care

3  program dollars were improperly funneled out of Borrego. (*Id.* ¶¶392-3, 401, 472-

4  75.) Accordingly, it was substantially certain that the contracts and economic

5  relationships Borrego had with Medi-Cal and its dentists would be impacted.

6      The Hebets Company Defendants advertised themselves as experts in

7  executive compensation for healthcare providers, including FQHCs. (*Id.* ¶46.)

8  Despite their protestations to the contrary, as "experts" in the field, The Hebets

9  Company would surely be aware that a FQHC has contracts with Medi-Cal. Further

10 Jim Hebets arranged the 162B plans based on an evaluation of the funds Borrego

11 received from the Medi-Cal contract. (*Id.* ¶46.) In providing sham executive

12 compensation salaries and false representing that its benefit plans were not subject

13 to tax liability, it was substantially certain that a government agency would examine

14 millions of dollars in tax evasion conducted by a non-profit, ultimately impacting

15 Borrego's contract and relationship with Medi-Cal. (*Id.* ¶¶408, 417.)

16     Borrego sufficiently pleads its inducing breach and interference claims.

17         5.    Borrego's Breach of Contract Claims are Sufficiently Pled

18     Borrego brings breach of contract claims against Premier, Hawatmeh, Ness,

19 Thompson, and the Joinder Defendants. To plead a breach of contract claim, a

20 plaintiff must allege: (1) the existence of a contract between the parties; (2) that

21 plaintiff performed or was excused for nonperformance under the contract; (3) that

22 defendant's acts or omissions breached the contract; and (4) the breach resulted in

23 damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821

24 (2011). Non-signatories may be liable under breach of contract when an individual

25 is the alter-ego of the contracting party. *Irey v. Len*, 191 Cal.App.2d 13 (1961).

26     Premier entered into the Dental MSA and Medical MSA. (FAC ¶¶85, 97.)

27 Pursuant to the terms of these agreements, Premier was required to provide

28 necessary administrative and management services, including providing ongoing

education to contracted providers to ensure compliance with Borrego policies and procedures, obtain information from contracted providers necessary for Borrego to properly bill for such claims, monitor claims, billing and payment for contracted providers to ensure Borrego's billing practices were compliance with applicable law, and validate the eligibility and completeness of the claims submitted. (*Id.* ¶101, Exs. A-D.) Borrego performed its duties under the agreements. (*Id.* ¶¶122, 143-45.) Premier, however, did not. Premier instead pushed through tens of thousands of duplicative and fraudulent claims, resulting in damages to Borrego. (*Id.*)

The Dentist Defendants and Borrego entered into contracts. (*See* Exs. E-M, O-S.) Some defendants, including Ness, assert that because they and/or their corporate shell are not the signatories of the agreement that the breach of contract claim must fail. As an initial matter, the Ness Dental Corporation is a party to the Dental Services Agreement. (*Id.* at Ex. S.) As for Dr. Ness, he is the sole officer and director of Ness Dental Corporation, operates as its Chief Executive Officer, Secretary and Chief Financial Officer, is the designated agent for service of process for the Ness Dental Corporation, and maintains complete ownership, management and control of Ness Dental Corporation. (*Id.* ¶265.) The same is true for the remaining Dentist Defendants. (FAC ¶¶146, 167, 184, 196, 220, 246, 259.)

Under the Dental Service Agreements, Borrego met its obligations by paying the Dentist Defendants for the claims billed. (*See, i.e., id.* ¶¶122, 165, 262, 270, 719, 727, 735, 743, 751, 767, 790, 797, 927.) Dentist Defendants breached their contracts by submitting bills for services not rendered (or rendered by a suspended provider). (*Id.* ¶¶132-300.) As a result, Borrego was damaged in overpayments exceeding $40 million, was ultimately suspended from the Medi-Cal program and was forced to close several of its clinics and file for bankruptcy. (*Id.* ¶¶4, 122, 128-29, 353, 504.)

As such, Borrego sufficiently pleads its claims for breach of contract.

> 6.   Borrego's Breach of Fiduciary Duty Claims are Sufficiently Pled

Borrego alleges a breach of fiduciary duty against the Board Insiders and

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

7356140.1

1  Wallis. "The elements of a claim for breach of fiduciary duty are (1) the existence of

2  a fiduciary relationship, (2) its breach, and (3) damages proximately caused by that

3  breach." *Mendoza v. Cont'l Sales Co.* 140 Cal.App.4th 1395, 1405 (2006).

4      Here, Wallis was a fiduciary of Borrego as both its CLO and CEO. (*Id.* ¶15.)

5  Ilsley, Hickok, Kimball and Nourse were all fiduciaries in their role as members of

6  Borrego's Board. *Coley v. Eskaton*, 51 Cal.App.5th 943, 958 (2020) (asserting

7  directors owe a fiduciary duty to the association they are a part of); (FAC ¶17-20).

8  Wallis and the Board Insiders breached both their duties of loyalty and duties of

9  care. Wallis prepared and signed several agreements to the detriment of Borrego,

10 including the Dental MSA Amendment 1 which removed Borrego's ability to

11 terminate the Dental MSA without cause and the Dental MSA Amendment 2 which

12 changed the payment to Premier from $5 to $25 per claim without any additional

13 consideration. (*Id.* ¶94-5.) Wallis disregarded outside legal counsel's assessment

14 that the Borrego MSO (and its later iteration the Dental MSA) created conflict of

15 interest issues with Borrego and its CEO, and disregarded Program Integrity

16 recommendations to terminate problematic contract dental providers, allowing the

17 Fraudulent Dental Billing Scheme to continue. (*Id.* ¶¶78, 83, 311-3, 319.) When

18 submitting information regarding compensation to the full Board, Wallis reported

19 executive salaries at rates that had been reduced by an "equitable" amount. (*Id.*

20 ¶372.) Wallis also drafted a $5 million payout agreement for Bruce Hebets and also

21 drafted the KBH Consulting agreement under which Bruce and Karen Hebets were

22 paid a kickback of money Premier siphoned from Borrego. (*Id.* ¶¶392, 472.)[13]

23

24 [13] Borrego Health also asserts a claim for legal malpractice against Wallis. A legal
   malpractice claim requires: (1) a duty by the attorney to use such skill, prudence and

25 diligence as members of his or her profession commonly possess and exercise; (2)
   breach of that duty; (3) a proximate causal connection between breach and resulting

26 injury; and (4) actual loss or damage resulting from the attorney's negligence.

27 *Ambriz v. Kelegian*, 146 Cal.App.4th 1519, 1531 (2007). For the reasons alleged for
   breach of fiduciary duty, Borrego's legal malpractice claim is also sufficiently pled.

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

The Board Insiders championed self-interested proposals that they believed would be rejected by full Board. (*Id.* ¶¶108, 382.) Each of them approved the Dental MSA less than six months after the full Board rejected a similar proposal (*id.* ¶¶76-82) and without any competitive bidding (*id.* ¶118). Indeed, Hickok acknowledged that Borrego's relationship with Premier was improper (and potentially illegal). (*Id.* ¶118.) Ilsley, Nourse, and Hickok approved Bruce Hebets to receive over $87,000 in a bonus in 2017 without conducting any compensation study to determine if such a decision was fair market or appropriate. (*Id.* ¶360.) Kimball further pushed to have Bruce Hebets retire from Borrego, but remain on payroll, but ultimately agreed to expedite a $2 million payout instead. (*Id.* ¶¶398, 403.) Board Insiders also attempted to have Borrego buy a country club in order to save the property value of their homes. (*Id.* ¶¶379-90.) In the Property Development Scheme, Nourse attempted to have Borrego enter into an unconscionable agreement in order to benefit Bruce Hebets, Daryl Priest, and himself. (*Id.* ¶¶443-68.) Hickok intentionally provided vague, aggregated financial reports which failed to apprise the full Board of the agreements the Borrego Insiders had approved. (*Id.* ¶115.) The above demonstrates the Board Insiders continuously pushed forward proposals which were detrimental to Borrego and instead profited themselves and others. Indeed, as Kimball admitted, the Board Insiders repeatedly made decisions which involved "dodging the law." (*Id.* ¶401.) As a result of the Board Insiders actions, Borrego was damaged by many improper payments and expenditures. (*Id.* ¶¶122, 403, 443-68.) Based on the above, Borrego's breach of fiduciary duty claim is sufficiently pled.

### 7. Recovery Under a Civil Conspiracy Theory is Appropriate

To prove civil conspiracy, the claimant must show: (1) the formation of a group of two or more persons, including the defendant, who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to that agreement; and (3) resulting damages to the plaintiff. *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 206 (2010). Civil conspiracy is not an

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

independent claim in California, but rather, it attaches to other torts. Indeed, civil conspiracy is recognized as a claim which allows for the imposition of vicarious liability. *Favila*, 188 Cal.App.4th at 206. Under civil conspiracy, "persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id.* As outlined above, defendants all acted in concert with one another and as such, Borrego seeks liability and damages reflective of the defendants' conduct pursuant to its tort-based claims.

### 8. Borrego's UCL Claim is Sufficiently Pled

Borrego further brings a claim for violations under Business & Professions Code, § 17200, *et seq.* ("UCL") against defendants. The UCL "defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Nolte v. Cedars-Sinai Medical Center* 236 Cal.App.4th 1401, 1407 (2015). An "unlawful" business act under the UCL is any business practice that is prohibited by law, whether "civil or criminal, statutory or judicially made..., federal, state or local." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1474 (2006). A business act is "unfair" under the UCL "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id.* at 1473. A "fraudulent" business practice under the UCL is "one which is likely to deceive the public," and "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Id.* at 1471; *see also In re WellPoint, Inc.*, 865 F.Supp.2d at 1047. Because of the complexity of the "fraud" and "unfairness" analyses, a determination on whether an alleged practice is fraudulent or unfair is not generally appropriate at the motion to dismiss stage. *Id.* at 1473. Further, while some defendants argue that Borrego cannot pursue UCL claims when it has an adequate remedy at law, Rule 8 allows pleading in the alternative.

As Borrego's UCL claim is premised in its RICO and state law claims, for the reasons outlined herein, Borrego has sufficiently pled its UCL claims.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

9. <u>Borrego's Unjust Enrichment Claim is Sufficiently Pled</u>

California recognizes a cause of action for unjust enrichment. "The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Prof'l Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal.App.5th 230, 238 (2018); *Ghirardo v. Antonioli*, 14 Cal.4th 39, 50 (1996) (plaintiff is "entitled to relief on a theory of unjust enrichment"). As outlined above, the FAC alleges that it would be inequitable for the defendants to retain the money obtained via the alleged schemes.

## VI. <u>LEAVE TO AMEND IS LIBERALLY GRANTED</u>

Should the Court grant any of the motions to dismiss, Borrego respectfully requests leave to amend. Rule 15 allows the Court to exercise its sound discretion when granting leave to amend. Indeed, *U.S. v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981) outlines that the intent of Rule 15 is to grant parties' requests for leave to amend with "extreme liberality." Absent a sufficient reason, such as undue delay or bad faith, it is considered an abuse of discretion to deny a party's request to amend. *See Millar v. Bay Area Rapid Transit Dist.*, 236 F.Supp.2d 1110 (N.D. Cal. 2002); *see also, i.e., Julinians Against Shakedown Tactics v. TEJJR,* No. 05CV2353, 2006 WL 5003361, at *4 (S.D. Cal. Aug. 1, 2006) ("…the Ninth Circuit has encouraged district courts to grant leave to amend liberally…"). If necessary, Borrego is able to amend its complaint to include further details for each defendant surrounding the schemes, including additional meetings, e-mails, and mailings, as well as additional allegations pertaining to alter-ego. In addition, discovery surely will reveal additional details regarding the schemes (and perhaps additional schemes).

## VII. <u>CONCLUSION</u>

Defendants' motions to dismiss are premised on the fact that they should be rewarded for actively concealing their misconduct. As outlined above, Borrego's claims are timely and sufficiently pled, and for the reasons herein, which are outlined in detail in the FAC, Borrego respectfully requests the motions be denied.

7356140.1

1   DATED:  June 6, 2023                    HOOPER, LUNDY & BOOKMAN, P.C.

2

3

4                                          By: _____

5                                               DEVIN M. SENELICK
                                           Attorneys for Plaintiff Borrego Community
6                                          Health Foundation

7

8

9

10

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 744-7300 • FAX (619) 230-0987

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7356140.1

PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S CONSOLIDATED OPPOSITION
TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT