Shireen Matthews, Bar No. 237930
shireenmatthews@jonesday.com
Nicholas Hodges, Bar No. 307573
nhodges@jonesday.com
JONES DAY
4655 Executive Drive
Suite 1500
San Diego, California 92121.3134
Telephone: +1.858.314.1200
Facsimile: +1.844.345.3178

Attorneys for Defendants
AYED HAWATMEH, D.D.S. and
HAWATMEH DENTAL GROUP, P.C.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>AYED HAWATMEH, D.D.S., an individual; HAWATMEH DENTAL GROUP, P.C., a California corporation; et al.,<br><br>Defendants. | Case No. 3:22-cv-01056-BEN-KSC<br><br>**DEFENDANTS AYED HAWATMEH, D.D.S. AND HAWATMEH DENTAL GROUP, P.C.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**<br><br>Date: July 3, 2023<br>Time: 10:30 a.m.<br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez |

# TABLE OF CONTENTS

Page

I. Introduction .................................................................................................. ii

II. Rule 12(b)(1): Borrego lacks standing to sue Dr. Hawatmeh. ....................... 2

III. All of Borrego's claims against Dr. Hawatmeh are time-barred. ................... 4

IV. 18 U.S.C. § 1962(c): Conducting the Affairs of a RICO Enterprise .............. 6

    A. Borrego has failed to plead a pattern of racketeering. ......................... 6

    B. Dr. Hawatmeh did not participate in the operation or management of the alleged enterprise. ................................................. 7

V. 18 U.S.C. § 1962(d): RICO Conspiracy ........................................................ 9

VI. The Court should decline to exercise supplemental jurisdiction. ................. 10

VII. Dr. Hawatmeh should be dismissed in his individual capacity..................... 10

VIII. Conclusion .................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Chang v. Farmers Ins. Co.*,
    22-cv-02458, 2022 WL 17995530 (C.D. Cal. Dec. 29, 2022)..............................5

*Decarlo v. Costco Wholesale Corp.*,
    14-cv-0202, 2014 WL 12508583 (S.D. Cal. Sept. 30, 2014)..............................3

*Evans v. Ariz. Cardinals Football Club, LLC*,
    231 F. Supp. 342 (N.D. Cal. 2017)...................................................................5

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012)...........................................................................5

*In re Outlaw Lab'y, LP Litig.*,
    18-cv-840, 2020 WL 5552558 (S.D. Cal. Sept. 16, 2020).................................8

*Jolly v. Eli Lilly & Co.*,
    751 P.2d 923 (1988) .........................................................................................4

*Kang-Shen Chen v. T.T. Group*,
    14-cv-0138, 2014 WL 12725598 (C.D. Cal. June 20, 2014).............................5

*Ketayi v. Health Enrollment Grp.*,
    20-cv-1198, 2021 WL 2864481 (S.D. Cal. July 8, 2021) ..................................9

*Ketayi v. Health Enrollment Grp.*,
    20-cv-1198 (S.D. Cal. filed June 26, 2020), ECF No. 95 ..................................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .........................................................................................3

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
    19-cv-1865, 2022 WL 6281793 (S.D. Cal. Oct. 7, 2022) ..................................7

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007).............................................................................5

*Pacific Wind, LLC v. U.S.*,
    150 Fed. Cl. 242 (2020) .................................................................................. 3

*Palantir Techs. Inc. v. Abramowitz*,
    19-cv-06879, 2021 WL 2400979 (N.D. Cal. June 11, 2021) ............................. 7

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................... 7, 8, 9

*State Farm Mut. Auto. Ins. Co. v. Ammann*,
    828 F.2d 4 (9th Cir. 1987) ............................................................................... 6

*Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*,
    2:07-cv-400, 2008 WL 4642975 (D. Utah Oct. 17, 2008) ................................. 7

**STATUTES**

18 U.S.C. § 1962 ................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ............................................................................................................ 6

Fed. R. Civ. P. 12 ..................................................................................................... 2, 5

## I. Introduction

In a 734-page First Amended Complaint ("FAC"), Borrego Community Health Foundation ("Borrego") lumps defendant Ayed Hawatmeh into a RICO conspiracy and twelve state law causes of action with 38 other defendants. But the specific allegations against Dr. Hawatmeh are quite simple. Borrego alleges that Dr. Hawatmeh overbilled for dental services in early 2018. Yet by Borrego's own admission, Medi-Cal fully reimbursed Borrego for all services performed by Dr. Hawatmeh. Thus, even if there was over-billing—*and there was not*—Borrego has been fully compensated for any alleged injury caused by Dr. Hawatmeh. In its Opposition, Borrego does not offer any serious explanation as to why it would have standing to sue Dr. Hawatmeh. Nor does Borrego offer a serious opposition to any of the other arguments in Dr. Hawatmeh's motion. Accordingly, the claims against Dr. Hawatmeh should be dismissed for the following reasons:

- **Borrego lacks standing to sue Dr. Hawatmeh:** Borrego concedes that Medi-Cal reimbursed it for all claims submitted by Dr. Hawatmeh.

- **All of Borrego's claims against Dr. Hawatmeh are time-barred:** By the plain language of the FAC, Borrego had actual knowledge of its claims more than three years before filing this case, and Borrego had constructive notice more than four years before filing. All of Borrego's claims against Dr. Hawatmeh have statutes of limitations of three or four years. Accordingly, all of Borrego's claims against Dr. Hawatmeh are time-barred.

- **This is not a RICO case:** To state a RICO claim under section 1962(c), Borrego must allege a continuous pattern of racketeering. Numerous courts have held that this continuity requirement is not met when an organization targets a single victim. Borrego does not even attempt to address the "single-victim" line of cases.[1]

---

[1] It is telling that Borrego does not attempt to address the single-victim cases because those cases destroy the only basis for subject matter jurisdiction over Borrego's claims. To be specific, Borrego cannot bring a RICO claim against any defendant without alleging a pattern of continuous racketeering activity. The RICO claims are

- Even if there were a continuous pattern of racketeering, Borrego could not state a section 1962(c) claim against Dr. Hawatmeh. To do so, Borrego must allege facts showing that Dr. Hawatmeh had some part in directing the affairs of the RICO enterprise. Borrego failed to do so.

- To state a RICO conspiracy claim under section 1962(d), Borrego must be able to plead a substantive violation of RICO. Borrego does not argue otherwise. And, as noted above, Borrego has failed to offer any analysis of the cases saying that a RICO case cannot be brought if the enterprise only targeted a single victim.

- Even if Borrego could plead a substantive violation of RICO, Borrego would still fail to state a RICO conspiracy claim against Dr. Hawatmeh. Borrego failed to allege facts showing that Dr. Hawatmeh agreed to facilitate a scheme that includes the operation or management of the RICO enterprise.

- **<u>Borrego improperly joined Dr. Hawatmeh in his individual capacity:</u>** Borrego sued both Dr. Hawatmeh and his professional corporation. Yet Borrego offers no argument for piercing the corporate veil. If any claim survives as to Dr. Hawatmeh, then the corporation should be the only defendant.

II.  **Rule 12(b)(1): Borrego lacks standing to sue Dr. Hawatmeh.**

Borrego admits that Medi-Cal paid Borrego for the claims submitted by Dr. Hawatmeh. (Opp. at 15.)[2] Yet Borrego asserts that it still has standing because any other result would "unjustly reward wrongdoers when an injured party receives reimbursement." (*Id.*) Borrego misunderstands the purpose of the standing inquiry. Standing is about identifying the correct plaintiff based on whether that plaintiff has

---

the only federal claims asserted in the FAC. Thus, without the RICO claims, the Court should decline to exercise supplemental jurisdiction and dismiss the entire case. Yet despite these stakes, Borrego offers no argument about the single-victim cases, aside from a one-sentence footnote that attempts to dodge the issue. This is simply not a RICO case, and it should not be in federal court.

[2] Citations to "Opp." refer to the page numbers at the bottom of Borrego's opposition brief. "Mem." refers to the page numbers at the bottom of Dr. Hawatmeh's memorandum of points and authorities.

an injury that is compensable by the courts. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing is not about ensuring that a defendant is punished. If a defendant should face liability, then the defendant must be sued by a plaintiff that has a compensable injury. Here, Borrego does not have such an injury.[3]

Borrego's remaining arguments are meritless. Borrego argues that it failed to obtain recoupment from dentists when Medi-Cal froze payments to Borrego in late 2020. (Opp. at 16.) But Dr. Hawatmeh stopped providing services for Borrego on September 17, 2019, which was more than a year before Medi-Cal froze reimbursements to Borrego. (Mem. at 6.) There is no allegation in the FAC that Medi-Cal failed to reimburse *any* of Dr. Hawatmeh's claims.

Borrego also argues that it has standing because its contract dental program was suspended by Medi-Cal and Borrego was forced to hire monitors, close locations, and file for bankruptcy. But Borrego cannot assert a harm for purposes of standing without alleging some causal connection between Dr. Hawatmeh's conduct and the harm alleged. *See Decarlo v. Costco Wholesale Corp.*, 14-cv-0202, 2014 WL 12508583, at *1, *3 (S.D. Cal. Sept. 30, 2014) (dismissing complaint for lack of standing where plaintiff "fail[ed] to show he suffered an injury in fact that is causally connected with" the defendant's own conduct); *see also Lujan*, 504 U.S. at 560 (noting that an alleged injury "has to be fairly . . . trace[able] to the challenged action of the *defendant*, and not . . . th[e] result [of] the independent action of some third party") (emphasis added) (citation omitted). Here, there are no allegations that Dr. Hawatmeh caused these supposed harms. This is no surprise. The FAC makes it

---

[3] Borrego cites to an order by the Court of Federal Claims called *Pacific Wind, LLC v. U.S.*, 150 Fed. Cl. 242 (2020). But *Pacific Wind* would not compel a different result than the Ninth Circuit cases cited by Dr. Hawatmeh. *Pacific Wind* involved an indemnification agreement. The plaintiff sought recovery because it had an agreement to "repay its indemnitor." *Id.* at 244. Thus, the plaintiff was not going to recover the same damages twice, once via indemnification and once via the lawsuit. Instead, if the plaintiff were to prevail, it would repay its indemnitor and thereby only recover damages once. Here, there is no indemnification agreement. Borrego has already been paid by Medi-Cal, and it now seeks to get paid again by Dr. Hawatmeh.

clear that it was the Premier Defendants who were responsible for compliance with Medi-Cal regulations. (FAC ¶¶ 100–102, 136.) Borrego cannot rely on a conclusory, *post hoc*, argument that blames Dr. Hawatmeh for the harms caused by the alleged conduct of another defendant.

### III.    All of Borrego's claims against Dr. Hawatmeh are time-barred.

Nine of Borrego's claims against Dr. Hawatmeh have statutes of limitations of three years or fewer. (*See* Mem. at 7–8 (listing claims and statutes of limitations).) Borrego had actual knowledge of its claims against Dr. Hawatmeh more than three years before filing this case. (FAC ¶ 174 ("In late 2018, Borrego Health became concerned that Hawatmeh was billing for excessive visits."); *id.* ¶ 175 (stating that, on November 26, 2018, Dr. Hawatmeh confirmed that were some claims that had been billed in error).) These nine claims must be dismissed because Borrego had actual and indisputable knowledge of this conduct more than three years before it filed suit. Borrego does not offer any argument to the contrary.[4]

Borrego's other three claims against Dr. Hawatmeh have four-year statutes of limitations. Borrego had constructive notice of its claims more than four years before filing this case because Borrego had the data necessary to identify its claims. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (1988) (In Bank) ("A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her."). Borrego possessed Dr. Hawatmeh's claims data, and Borrego had hired "program integrity" staff whose jobs were to analyze dental claims data to monitor for overbilling (Mem. at 9.)[5]

Borrego also argues that constructive notice should be a question of fact for the jury. Not so. Questions of constructive notice may be resolved on a motion to

---

[4] Dr. Hawatmeh maintains that he acted in good faith at all times when submitting claims for dental work under Borrego's contract dental program, including when he participated in Borrego's audits and reimbursed Borrego for claims filed in error.

[5] Borrego's last "claim" is for conspiracy, but that is not a cause of action in California. (Mem. at 10–11.) Thus, the conspiracy "claim" should be dismissed.

dismiss where a complaint shows that a plaintiff had the means to discover its claim through a reasonable exercise of diligence. *See, e.g.*, *Orkin v. Taylor*, 487 F.3d 734, 741–42 (9th Cir. 2007) (affirming dismissal where plaintiffs' complaint alleged facts demonstrating that plaintiffs could have discovered their claim years before it was brought). Thus, district courts regularly dismiss claims on Rule 12(b)(6) motions when plaintiffs have constructive notice of their claims. *See, e.g.*, *Evans v. Ariz. Cardinals Football Club, LLC*, 231 F. Supp. 342, 347–51 (N.D. Cal. 2017) (granting dismissal where plaintiffs had constructive knowledge of the alleged injury "based on plaintiffs' own allegations"); *Chang v. Farmers Ins. Co.*, 22-cv-02458, 2022 WL 17995530, at *3–4 (C.D. Cal. Dec. 29, 2022) (granting dismissal where plaintiffs' own allegations demonstrated that plaintiffs had constructive notice); *Kang-Shen Chen v. T.T. Group*, 14-cv-0138, 2014 WL 12725598, at *4 (C.D. Cal. June 20, 2014) (granting dismissal where plaintiff's injury "was readily appreciable" from circumstances alleged in complaint).

Borrego argues "fraudulent concealment," stating that some of the insiders worked to conceal the overbilling from Borrego. (Opp. at 17.) But fraudulent concealment requires that the alleged misconduct be successfully concealed. Thus, actual knowledge and constructive notice defeat fraudulent concealment. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("The plaintiff carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that the defendant affirmatively misled it, and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts.") (citation and alterations omitted). Here, Borrego admits it detected Dr. Hawatmeh's alleged overbilling in "late 2018," and Borrego terminated Dr. Hawatmeh's contract in September 2019. (FAC ¶¶ 174, 182.) Borrego has no excuse for waiting until July 2022 to file its claims.[6]

---

[6] Borrego cites the "discovery rule," but that argument misses the point. When a plaintiff has actual knowledge of a claim, that means the plaintiff has discovered its

Borrego also argues that the Ninth Circuit follows the "separate accrual" rule. (Opp. at 17.) But the separate accrual rule dooms the claims against Dr. Hawatmeh because it eliminates recovery for any conduct *outside* of the limitations period. *See State Farm Mut. Auto. Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987) (Kennedy, J., concurring). ("[D]amages may not be recovered for injuries sustained as a result of acts committed outside the limitations period."). There are no sufficiently pled allegations against Dr. Hawatmeh for conduct *inside* the limitations periods. To be specific, Borrego must plead with particularity because Borrego alleges that Dr. Hawatmeh acted in a fraudulent manner. Fed. R. Civ. P. 9(b). But the only particularized claims alleged against Dr. Hawatmeh occurred in February, May, and June of 2018, which was more than four years before the Complaint was filed. (FAC ¶¶ 172–73.)[7] Thus, there are no claims against Dr. Hawatmeh that satisfy Rule 9(b) and are compensable under the separate accrual rule.

### IV.   18 U.S.C. § 1962(c): Conducting the Affairs of a RICO Enterprise

**A. Borrego has failed to plead a pattern of racketeering.**

RICO requires a "pattern of racketeering" that can only be met by a continuous course of criminal conduct. (Mem. at 13–15.) Dr. Hawatmeh cited a number of cases within the Ninth Circuit for the rule that RICO continuity is not met where a plaintiff alleges a scheme against a single victim. Borrego ignores all of those cases and responds to the argument with a two-sentence footnote. (Opp. at 27 n. 10.) Borrego simply contends that it alleged eleven different schemes, even though all of those supposed schemes were targeted at just one victim.

Borrego cannot evade the RICO continuity requirement by making up artificial labels for different "schemes." After all, a defendant could always make up such

---

claim. And when a plaintiff has constructive notice of its claims, that means that the plaintiff should have discovered its claim by exercising reasonable diligence.

[7] Borrego argues that the statute of limitations issue was decided in the parallel case. But that case does not involve dentists, so the court did not decide whether Borrego had constructive notice based on its possession of the dental claims data.

labels. It is the number of victims that cannot be invented by tricks of pleading.

RICO was meant to target ongoing criminal organizations. An entity that engages in a crime against a single victim is not the type of ongoing criminal organization that RICO was meant to target. (Mem. at 13–15.) Indeed, case law makes clear that it is the number of victims that matter, not some artificially defined number of schemes. *See, e.g.*, *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 19-cv-1865, 2022 WL 6281793, at *29 (S.D. Cal. Oct. 7, 2022) ("Given the existence of one victim or, at most, several related corporate victims, the Court finds that Plaintiffs have failed to demonstrate a pattern of racketeering."); *Palantir Techs. Inc. v. Abramowitz*, 19-cv-06879, 2021 WL 2400979, at *9 (N.D. Cal. June 11, 2021) ("the number of victims[] is more determinative as the Ninth Circuit rarely upholds a finding of continuity where there is only a single victim."); *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, 2:07-cv-400, 2008 WL 4642975, at *6 (D. Utah Oct. 17, 2008) (Given that the alleged pattern is "directed at a finite group of individuals," indeed just one company, and there is "no potential to extend to other persons or entities," "this is simply not a RICO case.").

Given that the alleged scheme only targets one victim, Borrego has failed to plead that the alleged enterprise engaged in a continuous pattern of racketeering. *See MedImpact*, 2022 WL 6281793, at *28–29. This means that Borrego has failed to state a RICO claim as to the entire enterprise. Accordingly, Borrego has failed to state a RICO claim against any defendant. And without the RICO claims, the Court should decline to exercise supplemental jurisdiction and dismiss this entire case.

**B. Dr. Hawatmeh did not participate in the operation or management of the alleged enterprise.**

Even if Borrego had alleged a viable pattern of racketeering, the section 1962(c) claim should still be dismissed as to Dr. Hawatmeh. The FAC does not contain any factual allegations showing that Dr. Hawatmeh conducted the affairs of the RICO enterprise, which is a required element under 18 U.S.C. § 1962(c).

(Mem. at 11–12.) As the Supreme Court made clear in *Reves*, in order to be liable under section 1962(c), "one must have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). If person is an insider to a RICO enterprise, then it is plausible that the person has a part in directing the enterprise's affairs. But it is much harder for an outsider, like Dr. Hawatmeh, to direct a RICO enterprise. An outsider must "exert control" over the enterprise, "for example, by bribery." *Id.* at 184. Dr. Hawatmeh is not alleged to have exerted any control over the alleged enterprise. Instead, he was subject to regular audits by the enterprise, and he was ultimately terminated by the enterprise. (FAC ¶ 182.)

Borrego does not address the holding in *Reves*. Nor does Borrego explain how an *outsider* dentist could have exerted control over the enterprise, especially given that the *insiders* allegedly concealed the RICO scheme. (FAC ¶ 550, *see also* ¶¶ 107, 349, 395.) Instead of addressing these relevant issues, Borrego cites two district court cases to argue that it was enough for the dentists to "take directions" from the enterprise or be "vital" to the enterprise's success. (Opp. at 20–21.) Borrego is wrong.

Borrego first cites *In re Outlaw Lab'y, LP Litig.*, 18-cv-840, 2020 WL 5552558 (S.D. Cal. Sept. 16, 2020). In *Outlaw Labs*, the court explained that "a defendant does not 'direct' the enterprise's affairs by 'simply being involved' or 'performing services for the enterprise.'" *Id.* at *8. That is exactly the point. There are no allegations that Dr. Hawatmeh did anything other than perform dental services for the alleged enterprise.

*Outlaw Labs* was about a law firm and a client that worked together to repeatedly shake down store owners. *Id.* at *2–6. The firm would send demand letters to the store owners, asking for exorbitant settlements to resolve frivolous claims. *Id.* After scaring the store owners, the firm and client would lower their demands to induce settlements. *Id.* The court held that the law firm may have directed the enterprise by "originating the scheme," "architect[ing] . . . the demand letters," and "direct[ing] . . . the settlements." *Id.* at *9. Thus, *Outlaw Labs* is perfectly consistent

with the rule of *Reves* because the law firm in *Outlaw Labs* actually directed the affairs of the enterprise.

Borrego also cites *Ketayi v. Health Enrollment Grp.*, 20-cv-1198, 2021 WL 2864481, at *12 (S.D. Cal. July 8, 2021). In *Ketayi*, an alleged enterprise engaged in a scheme to trick customers into purchasing limited health insurance plans that had little to no value to the purchaser. *Ketayi v. Health Enrollment Grp.*, 20-cv-1198 (S.D. Cal. filed June 26, 2020), ECF No. 95 ¶ 2. One of the defendants, ACI, was a third-party administrator that performed consumer sales and administrative services for the insurance plans sold by the alleged enterprise. *Id.* ¶ 36. ACI argued that it had not directed the affairs of the enterprise. But in the operative complaint, the plaintiffs alleged that ACI "participated in developing and administering" the fraudulent health plans. *Ketayi*, 2021 WL 2864481, at *12. The court found the question "close" but determined "that these allegations are enough to push ACI over the edge from an actor that simply provided goods or services that benefitted the enterprise to a participant in the operation of the enterprise." *Id.*

The case against Dr. Hawatmeh is completely different. Dr. Hawatmeh is not alleged to have developed or administered anything for Borrego. He simply performed dental services pursuant to a contract that Borrego drafted. Borrego has failed to allege any fact that would distinguish Dr. Hawatmeh, who was an outside service provider, from the outside service provider in *Reves*. *See Reves*, 507 U.S. at 185 ("[Section] 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.").

V.    18 U.S.C. § 1962(d): RICO Conspiracy

Dr. Hawatmeh raised two arguments for dismissal under section 1962(d). First, the failure to adequately plead a substantive violation of RICO precludes a claim for RICO conspiracy. (Mem. at 16.) Borrego does not address this argument and therefore concedes it. As explained above, Borrego fails to plead the RICO

continuity requirement because the alleged enterprise only targeted one victim.

Second, Borrego failed to plead facts showing that Dr. Hawatmeh knowingly agreed to facilitate a scheme that includes the operation or management of a RICO enterprise. (Mem. at 16–17.) Borrego was required to plead facts showing that Dr. Hawatmeh was aware of the essential nature and scope of the enterprise, intended to participate in it, and agreed to do so. (*Id.*) None of that was pled in the FAC, and Borrego does not argue otherwise.

## VI.  The Court should decline to exercise supplemental jurisdiction.

Given that the RICO claim fails, Dr. Hawatmeh argued that the Court should decline to exercise supplemental jurisdiction over the state law claims if it decides not to dismiss the case on the basis of standing or the statutes of limitations. (Mem. at 17–18.) Borrego offers no argument in response and thus concedes the issue.

The RICO claims here are simply an excuse to lump a number of dentists into a single case with each other and with entities that are alleged to have taken over Borrego. In other words, Borrego is using the RICO claims to force this Court to manage a single case that should be a series of individual cases filed in state court. That is an abuse of the judicial process. It is also highly prejudicial. The dentists here are small business owners, and they should not be required to spend their resources to defend against allegations directed at a whole host of other defendants.

## VII.  Dr. Hawatmeh should be dismissed in his individual capacity.

Dr. Hawatmeh showed that Borrego failed to plead facts sufficient to pierce the corporate veil and that Dr. Hawatmeh should be dismissed from the case in his individual capacity. (Mem. at 18–21.) Borrego offers no argument in response.

## VIII.  Conclusion

Dr. Hawatmeh and Hawatmeh Dental Group P.C. respectfully request that all claims against them be dismissed with prejudice. It would be futile to grant Borrego leave to amend.

| | | |
|---|---|---|
| Dated: | June 22, 2023 | Respectfully submitted, |
| | | JONES DAY |
| | | By: */s/ Shireen Matthews*<br>     Shireen Matthews |
| | | Attorney for Defendants<br>AYED HAWATMEH, D.D.S. and<br>HAWATMEH DENTAL GROUP, P.C. |

NAI-1537147137v3