Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
10100 Santa Monica Blvd., Suite 300
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: Michael@thefreedmanfirm.com

Attorney for Defendants HARRY ILSLEY, DENNIS NOURSE,
MIKE HICKOK, and CHUCK KIMBALL

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation;<br><br>Plaintiff,<br><br>vs.<br><br>KAREN HEBETS, an individual; MIKIA WALLIS, an individual; DIANA THOMPSON, f/k/a DIANA TRONCOSO, an individual; HARRY ILSLEY, an individual; DENNIS NOURSE, an individual; MIKE HICKOK, an individual; CHUCK KIMBALL, an individual; PREMIER HEALTHCARE MANAGEMENT, INC., a California Corporation; SUMMIT HEALTHCARE MANAGEMENT, INC., a California Corporation; DARYL PRIEST, an individual; NICHOLAS PRIEST, an individual; TRAVIS LYON, an individual; HUSAM E. ALDAIRI, | Case No. 22-CV-1056-BEN-KSC<br><br>Assigned to Hon. Roger T. Benitez<br><br>**REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AGAINST DEFENDANTS HARRY ILSLEY, DENNIS NOURSE, MIKE HICKOK, AND CHUCK KIMBALL (ECF 185)**<br><br>Date:     July 3, 2023<br>Time:     10:30 a.m.<br>Courtroom:  5A |

1

D.D.S., an individual; ALDAIRI DDS, INC., a California corporation; AYED HAWATMEH, D.D.S., an individual; HAWATMEH DENTAL GROUP, P.C., a California Corporation; ALBORZ MEHDIZADEH, D.D.S., an individual; ALBORZ MEHDIZADEH, INC., a California Corporation; JILBERT BAKRAMIAN, D.D.S., an individual; MOHAMMED ALTEKREETI, D.D.S., an individual; MAGALY VELASQUEZ, D.D.S., an individual; MAGALY M. VELASQUEZ DDS PROFESSIONAL DENTAL CORP., a California Corporation; ARAM ARAKELYAN, D.D.S., an individual; NEW MILLENNIUM DENTAL GROUP OF ARAM ARAKELYAN, INC., a California Corporation; MICHAEL HOANG, D.M.D., an individual; WALEED STEPHAN, D.D.S., an individual; W.A. STEPHAN, A DENTAL CORPORATION, a California Corporation; SANTIAGO ROJO, D.D.S., an individual; SANTIAGO A. ROJO, D.D.S., INC., a California Corporation; MARCELO TOLEDO, D.D.S., an individual; MARCELO TOLEDO, D.D.S., INC., a California corporation; MARLENE THOMPSON, D.D.S., an individual; MARLENE THOMPSON, D.D.S., INC., a California Corporation; DOUGLAS NESS, D.D.S., an individual; NESS DENTAL CORPORATION, a California Corporation; GEORGE JARED, D.D.S., an individual; GEORGE

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

JARED, D.D.S., INC., a California
corporation; JAMES HEBETS, an
individual; THE HEBETS COMPANY, a
Missouri Corporation; KBH
HEALTHCARE CONSULTING, LLC
and DOES 1- 250, inclusive.

Defendants.

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................................4

TABLE OF AUTHORITIES ...........................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES.................................9

I.      INTRODUCTION ................................................................................9

II.     ARGUMENT.......................................................................................10

   A.   The First Cause of Action (RICO) Fails To State A Claim Against The
        Board Defendants. ...........................................................................10

      1.   The Complexity Of The Case Does Not Exempt Plaintiff From Meeting
           The Heightened Pleading Requirement Of Rule 9(b). ..........................10

      2.   Plaintiff's Opposition Does Not Point To Any Sufficient Allegation
           That Any Board Defendant Participated In Any RICO Predicate Act Of
           Racketeering. .......................................................................................11

      3.   Plaintiff Has Failed To Plead Facts Sufficient To Establish That Any
           Board Defendant Joined An Actionable RICO Conspiracy.................13

      4.   The FAC Fails To Plead That The Board Defendants Joined In A
           "Pattern" Of Racketeering Activity. ...................................................16

   B.   The Forty-Second (Fraudulent Concealment) And Forty-Third (False
        Promise) Causes Of Action Fail To State Any Claim Against Any Of The
        Board Defendants. ...........................................................................16

   C.   The Forty-Fourth Cause Of Action (Conversion) Fails To State Any Claim
        Against Any Of The Board Defendants. ............................................18

   D.   The Forty-Fifth (Inducing Breach of Contract), Forty-Sixth (Intentional
        Interference With Contractual Relations), Forty-Seventh (Intentional
        Interference With Prospective Economic Relations) and Forty-Eighth
        (Negligent Interference With Prospective Economic Relations) Causes Of
        Action Fail To State Any Claim Against Any Of The Board Defendants....20

   E.   The Fifty-First Cause Of Action (Breach of Fiduciary Duty) Fails To State
        Any Claim Against Any Of The Board Defendants.................................21

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

F.   The Fiftieth Cause Of Action (Conspiracy) Fails To State Any Claim Against Any Of The Board Defendants. ......................................................22

G.   The Forty-Ninth Cause Of Action (Cal. Bus. & Prof. C. § 17200) Fails To State Any Claim Against Any Of The Board Defendants...........................22

H.   The Fifty-Third Cause Of Action (Unjust Enrichment) Fails To State Any Claim Against Any Of The Board Defendants..............................................22

I.   The Court May Deny Leave To Further Amend The FAC. .........................23

III.   CONCLUSION................................................................................................23

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

# TABLE OF AUTHORITIES

## Cases

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir. 1993)..............................................................................14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)..........................................................................................23

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001)..........................................................................15

*Cisneros v. Petland, Inc.,*
  972 F.3d 1204 (11th Cir. 2020)................................................................ 10, 12

*Farrington v. A. Teichert & Son, Inc.,*
  59 Cal.App.2d 468 (1943)................................................................................19

*H.J. Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989)..........................................................................................16

*Hemi Grp., LLC v. City of New York, N.Y.,*
  559 U.S. 1 (2010)..............................................................................................17

*Howard v. Am. Online Inc.,*
  208 F.3d 741 (9th Cir. 2000)............................................................................13

*In re AWTR Liquidation Inc.,*
  548 B.R. 300 (Bankr. C.D. Cal. 2016).............................................................22

*Intel Corp. v. Hamidi,*
  30 Cal.4th 1342 (2003) ....................................................................................19

*Kaldenbach v. Mutual of Omaha Life Ins. Co.,*
  178 Cal.App.4th 830 (2009) ............................................................................17

*Kim v. Westmoore Partners, Inc.,*
  201 Cal.App.4th 267 (2011) ............................................................................20

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
  940 F.2d 397 (9th Cir. 1991)............................................................................10

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

*McGowan v. Weinstein*,

    562 F. Supp. 3d 744 (C.D. Cal. 2021) ...........................................................16

*Mueller v. Walgreen Corp.*,

    175 F.R.D. 631 (N.D. Cal. 1997) ............................................................ 11, 14

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms.*

    *Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019) ............................................... 14, 16

*Salameh v. Tarsadia Hotel*,

    726 F.3d 1124 (9th Cir. 2013)................................................................ 10, 23

*Salinas v. United States*,

    522 U.S. 52 (1997) ........................................................................................13

*Semegen v. Weidner*,

    780 F.2d 727 (9th Cir. 1985) ................................................................. 11, 14

*Swartz v. KPMG LLP*,

    476 F.3d 756 (9th Cir. 2007)..........................................................................12

*United States ex rel. STF, LLC v. Vibrant Am., LLC*,

    No. 16-CV-02487-JCS, 2020 WL 4818706 (N.D. Cal. Aug. 19, 2020) .............15

*United States v. Lew*,

    875 F.2d 219 (9th Cir. 1989)................................................................. 12, 13

*Voris v. Lampert*,

    7 Cal. 5th 1141 (2019) ........................................................................... 19, 20

*Welco Elecs., Inc. v. Mora*,

    223 Cal. App. 4th 202 (2014) ........................................................................19

*Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co.*,

    No. 2:19-cv-06791-CAS(GJSx), 2020 WL 709272 (C.D. Cal. Feb. 12, 2020) ..19

**Statutes**

18 U.S.C. § 1956 .................................................................................... 11, 12

18 U.S.C. § 1957 .................................................................................... 11, 12

18 U.S.C. § 1961 ...........................................................................................16

18 U.S.C. § 1964 .................................................................................... 14, 16

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

## **Treatises**

Hon. Virginia A. Phillips, FEDERAL CIVIL PROCEDURE BEFORE TRIAL
(The Rutter Group 2021)..........................................................................23

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Harry Ilsley, Dennis Nourse, Mike Hickock, and Chuck Kimball (the "Board Defendants") respectfully submit this Reply in Support of Rule 12(b)(6) Motion to Dismiss Plaintiff Borrego Community Health Foundation's ("Plaintiff" or "Borrego") First Amended Complaint ("FAC").

## I.   INTRODUCTION

Plaintiff's Consolidated Opposition (ECF 194) fails to address many of the arguments raised in the Board Defendants' motion to dismiss (ECF 185). Fundamentally, the FAC fails to plausibly allege that any of the Board Defendants personally participated in, benefited from, or reasonably should have known about the fraudulent claims that third-party medical/dental providers allegedly submitted to Borrego. The FAC alleges that the Board Defendants blessed former Borrego executives' decision to enter into a master services agreement (MSA) with claims administrator Premier. However, the FAC fails to complete the additional necessary step of alleging that any Board Defendant knew, or reasonably should have known, that providers were submitting false claims to Premier under the MSA. Accordingly, there are no allegations linking any Board Defendant to the systematic false billing that gives rise to Plaintiff's RICO and common-law causes of action.

The facts underlying the other alleged "schemes" relevant to the Board Defendants—the De Anza Country Club Scheme, the Julian Barn Scheme, and the Property Development Scheme—also do not give rise to any RICO or common law cause of action against any Board Defendant.

For reasons discussed here and in the Board Defendants' motion to dismiss, the Court should dismiss all of the causes of action pled against the Board Defendants for failure to state a claim. Moreover, because Plaintiff has already tried and failed to amend its complaint to cure defective allegations as to the Board Defendants, and because Plaintiff has not proffered specific facts that could state a claim against the Board Defendants, the Court may deny further leave to amend.

*See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

## II.   ARGUMENT

### A.   The First Cause of Action (RICO) Fails To State A Claim Against The Board Defendants.

In their motion to dismiss, the Board Defendants argued that Plaintiff failed to plead any valid RICO claim against any of the Board Defendants on grounds that (1) many of the legal violations alleged in the FAC are not "racketeering activities" listed in 18 U.S.C. § 1961(1); (2) Plaintiff failed to plead with particularity, under Fed. R. Civ. P. 9(b), that any Board Defendant participated or knew about any act of mail or wire fraud or transacted in property obtained through healthcare fraud; (3) Plaintiff failed to plead that any Board Defendant participated or knew about any "pattern" of racketeering activity; and (4) Plaintiff failed to plead that any racketeering activity involving any Board Defendant proximately caused Borrego to lose money or property.

The Opposition does not engage with many of the arguments raised in the Board Defendants' motion to dismiss. For the following reasons, Plaintiff's arguments fail to show that Plaintiff has stated a valid RICO claim against the Board Defendants.

### 1.   The Complexity Of The Case Does Not Exempt Plaintiff From Meeting The Heightened Pleading Requirement Of Rule 9(b).

A major flaw in Plaintiff's FAC—at least as to the Board Defendants—is the absence of specific allegations that any Board Defendant personally knew about or participated in any racketeering activity. It is well established that RICO claims based upon predicate acts sounding in fraud must meet the heightened pleading requirement of Fed. R. Civ. P. 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *see, e.g., Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020) (particularized allegations of the "who, what, when, where, and how" are "required for RICO liability").

As Plaintiff now concedes, the only predicate acts alleged in the FAC are (1)

mail and wire fraud (18 U.S.C. §§ 1341, 1343); and (2) laundering or transacting in money obtained by healthcare fraud (18 U.S.C. §§ 1956(c)(7)(F), 1957(a)). *See* Opp. at 27:22-28:16.

Plaintiff argues that the Rule 9(b) particularity requirement for these offenses "is relaxed when facts supporting the allegations are exclusively within the defendants' possession." Opp. at 19:11-13 (citing *Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D. Cal. 1997). However, *Mueller* granted the 12(b)(6) motion and held that "plaintiff in the instant case fails to provide any specific examples of the time, place, or content of the allegedly fraudulent scheme." *Id*. at 635 ("Plaintiff's generalized allegations prevent defendant from being able to defend against the alleged misconduct."); *see Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir. 1985) (noting that Rule 9(b) is intended to "ensure[ ] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong"). Here, likewise, Plaintiff has failed to plead particularized facts that show when or how any Board Defendant personally participated or conspired to commit any cognizable racketeering activity that proximately caused harm to Borrego.

> **2.  Plaintiff's Opposition Does Not Point To Any Sufficient Allegation That Any Board Defendant Participated In Any RICO Predicate Act Of Racketeering.**

With respect to mail and wire fraud, Plaintiff's FAC has not specifically pled where, when, how, or to whom any Board Defendant transmitted any materially false statement via mail or wire that was intended to deceive Borrego. Nor has Plaintiff specifically pled that any Board Defendant personally obtained money or property from Borrego through any fraudulent mail or wire. Plaintiff's generic allegation that the "Borrego Insiders" collectively received unspecified kickbacks from third parties in exchange for providing "access or control" of Borrego is too general to state a claim because it does not allege how, where, when, or from whom any particular Board Defendant procured money or property by fraud. *Cisneros*,

972 F.3d at 1217. Plaintiff also fails to allege that any Board Defendant fraudulently attempted or conspired to obtain money or property *from Borrego*—a required element of a mail or wire fraud violation. *See United States v. Lew*, 875 F.2d 219, 221-222 (9th Cir. 1989) (wire fraud requires scheme to obtain money or property from victim).

For purposes of 18 U.S.C. §§ 1956 and 1957, Plaintiff also fails to allege when, how, or from whom any Board Defendant attempted or conspired to receive any money obtained by means of a "federal health care offense."

In the Opposition, Plaintiff cites a handful of purported examples where the Board Defendants allegedly committed predicate RICO violations. *See* Opp. at 22:16-23:10. These allegations include: the Board Defendants' votes to authorize Borrego to enter the Dental MSA and Medical MSA; negotiation of certain lease agreements that Borrego entered into with third-parties; approval of a corporate compensation package for Borrego's ex-CEO; and provision of "vague" updates to the full Board of Directors. ***None*** of these alleged transactions describe any specific instance where any Board Defendant made a specific false representation to any agent of Borrego. ***None*** of these alleged transactions involved any Board Defendant attempting to obtain anything of value from Borrego. ***None*** of these alleged transactions involve any allegation that any Board Defendant received any specific property from anyone—let alone property obtained by healthcare fraud.

Plaintiff also cites the allegation in the FAC that "the Board Insiders all represented to the full Board that Bruce Hebets' proposed $5 million 'transition agreement' was fair because he was not receiving retirement benefits, despite arranging for Bruce Hebets' 162B retirement plan." Opp. at 31:1-3 (citing FAC, ¶395). Again, it is improper under Rule 9(b) to "merely lump multiple defendants together" in an allegation of fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *see Cisneros*, 972 F.3d at 1217 (blending the identities of defendants in factual allegations of fraud "is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent"). Moreover, this alleged incident ***cannot***

amount to an alleged predicate mail or wire fraud violation by any Board Defendant because the FAC does not allege that any Board Defendant intended to obtain any money or property *from Borrego* as a result of allegedly misrepresenting the terms of Mr. Hebets' transition agreement to the Board. *Lew*, 875 F.2d at 221-222.

For all of the reasons set forth in the Board Defendants' motion to dismiss, Plaintiff has failed to plead facts sufficient to prove that any Board Defendant personally knew of or participated in any predicate RICO violation. Plaintiff's opposition brief fails to point to any factual allegations that plead a predicate RICO violation by any Board Defendant with the specificity required by Rule 9(b).

### 3. Plaintiff Has Failed To Plead Facts Sufficient To Establish That Any Board Defendant Joined An Actionable RICO Conspiracy.

Plaintiff's opposition makes a secondary argument that the FAC has pled facts sufficient to prove a RICO conspiracy among all named defendants, including the Board Defendants. Opp. at 31:15-21. This argument lacks merit.

As set forth in the Board Defendants' motion to dismiss, the FAC fails to allege that the Board Defendants were aware of, let alone conspired to commit, most of the RICO "schemes" alleged in the FAC. *See* FAC, ¶398 (listing alleged RICO "schemes"); Mot. at 2:2-8:15 (illustrating how of the 12 alleged "schemes," only four make specific reference to any Board Defendant). None of the four "schemes" relevant to the Board Defendants amounted to an actionable violation of a RICO predicate statute. *See* Mot. at 1:15-2:2, 13:16-14:24 (summarizing how none of the relevant alleged schemes amount to a mail or wire fraud violation).

"To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense… .");

*see also Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (defendant must have been "aware of the essential nature and scope of the enterprise and intended to participate in it").

With respect to the Premier Scheme, there is no allegation that any Board Defendant knew, or could have known, that third-party healthcare providers were submitting false or fraudulent claims to Borrego under the MSAs that the Board Defendants allegedly voted to approve. Plaintiff's allegation that the Board Defendants approved the MSA between Borrego and Premier is insufficient, under Rule 9(b), to show that any Board Defendant conspired with third-party medical and dental providers to defraud Borrego by submitting false claims under the MSA. *See, e.g., Mueller*, 175 F.R.D. at 635 (plaintiff's "generalized" allegations that enterprise engaged in fraudulent billing practices "prevent[ed] defendant from being able to defend against the alleged misconduct" and fell short of Rule 9(b) standard); *see Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir. 1985) (Rule 9(b) is intended to "ensure[ ] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong").

The remaining "schemes" relevant to the Board Defendants were the De Anza Country Club Scheme, the Julian Barn Scheme, and the Property Development Scheme. None of these "schemes" involved an actionable violation of a predicate RICO statute.

Plaintiff admits "the [De Anza] deal did not move forward" and that Borrego recovered its entire cash deposit for the purchase. FAC, ¶390. Accordingly, this scheme is insufficient to support a RICO conspiracy claim. *See* 18 U.S.C. § 1964(c); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (to state a RICO claim, plaintiff must

1    allege injury to its business or property "by reason of" a RICO violation).

2          In the Julian Barn scheme, Plaintiff alleges that Borrego's former CEO and

3    Kimball arranged for Borrego to enter into a one-sided lease agreement with Julian

4    Medical Foundation for an "unusable" rural property, wherein Julian Medical

5    Foundation received excessive rent payments from Borrego. *See* FAC, ¶¶423-442.

6    The "Julian Barn" scheme cannot amount to a predicate violation of wire fraud,

7    among other reasons, because it does not contain any allegation that any defendant

8    attempted to obtain money or property *from Borrego*. The alleged beneficiary of

9    the allegedly one-sided lease, the Julian Medical Foundation, is not party to the

10   alleged RICO conspiracy. Plaintiff also failed to plead, with particularity, that any

11   defendant received anything of value from anyone as a result of the Julian Barn

12   scheme. Plaintiffs cannot convert a business agreement into wire fraud by tacking

13   on a generalized allegation that a group of company insiders all received

14   unspecified kickbacks from an unspecified source. *See United States ex rel. STF,*

15   *LLC v. Vibrant Am., LLC*, No. 16-CV-02487-JCS, 2020 WL 4818706, at *10 (N.D.

16   Cal. Aug. 19, 2020) (in kickback cases under Rule 9(b), "[b]road allegations that

17   include no particularized supporting detail do not suffice") (quoting *Bly-Magee v.*

18   *California*, 236 F.3d 1014, 1018 (9th Cir. 2001)).

19         Finally, with respect to the Property Development Scheme, the FAC

20   conspicuously omits any allegation that Borrego consummated the planned

21   purchase of the Palm Canyon Parcel from Nourse. The FAC alleges that several

22   Board Defendants agreed to a transaction where Borrego would pay $400,000 to

23   purchase from Nourse an undeveloped parcel of land in Palm Canyon, CA. *See*

24   FAC, ¶¶433-468. Plaintiff implies, without any supporting facts, that this was an

25   unreasonable price for the parcel of land. Regardless, the FAC stops short of

26   alleging that Borrego actually paid $400,000 to Nourse for the parcel. The FAC also

27   fails to allege that the parcel is now worth less than $400,000. *See also* Opp. at

28   42:12-14 (admitting that the Property Development Scheme involved an alleged

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

"attempt" to execute land purchase). Without any allegation of harm to Borrego, Plaintiff lacks standing to pursue a RICO claim predicated on this alleged scheme. *See* 18 U.S.C. § 1964(c); *Takeda Pharms. Co. Ltd.*, 943 F.3d at 1248.

### 4. The FAC Fails To Plead That The Board Defendants Joined In A "Pattern" Of Racketeering Activity.

Additionally, even if Plaintiff arguably alleged facts establishing that one of the above schemes amounted to actionable mail or wire fraud, it would still fail to establish a "pattern" of racketeering activity, which requires showing at least two predicate violations within a period of 10 years. 18 U.S.C. § 1961(5). "Moreover, these predicate acts must form a pattern—that is, they must be 'ordered' or 'arranged.' … It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them ordered or arranged." *McGowan v. Weinstein*, 562 F. Supp. 3d 744, 751 (C.D. Cal. 2021) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)).

There is no "organizing principle" that connects the four schemes that allegedly involved knowledge or participation of the Board Defendants. The MSA/ISO scheme was an alleged medical billing scheme. The De Anza, Julian Barn, and Property Development schemes were three unrelated deals for Borrego to purchase or lease property for use as clinic space. Two of them were never consummated, by the FAC's own admission. These property deals are not connected by any common facts, agreement, or scheme to defraud Borrego.

Accordingly, these schemes fail to state a RICO claim against the Board Defendants for the additional reason that they do not establish that any Board Defendant agreed to participate in any "pattern" of racketeering activity.

### B. The Forty-Second (Fraudulent Concealment) And Forty-Third (False Promise) Causes Of Action Fail To State Any Claim Against Any Of The Board Defendants.

The Board Defendants' motion argued that Plaintiff (1) failed to specifically plead that any Board Defendant concealed any particular fact from Borrego that the

defendant had a duty to disclose, and (2) failed to specifically plead that any Board Defendant personally made any materially false representation to Borrego with intent to defraud Borrego. ECF 185-1 at 14:25-15:26, 23:26-24:20. Plaintiff's opposition brief does not dispel these fatal deficiencies in the FAC.

Specific to the Board Defendants, the opposition first argues that the "Board Insiders all promised the full Board that the Dental MSO proposal would be abandoned, then proceeded to enter into the Dental MSA with Premier." Opp. at 34:8-10. However, the cited paragraph in the operative FAC (¶84) does not actually allege that any Board Defendant made any such representation. *See* ECF 159 at ¶84 (alleging that Borrego's former in-house counsel told outside counsel to Borrego that the MSO would not go forward).

Second, the opposition argues that the former CEO, general counsel, and Board Defendants then concealed their decision to enter into the Dental MSA with Premier from the full board of directors. Opp. at 34:8-13. However, the FAC never alleges facts establishing that the Board Defendants had a duty to disclose the Dental MSA to the full board of directors. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal.App.4th 830, 850 (2009) (elements of fraudulent concealment include allegation that the defendant had a duty to disclose the concealed fact to the plaintiff). Moreover, the FAC does not allege that entry into the Dental MSA caused harm to Borrego. The alleged harm occurred when third-party medical providers allegedly submitted false and inflated bills to Borrego. The FAC fails to allege specific facts that connect the Board Defendants' alleged non-disclosure of the terms of the Dental MSA, to the actions of unrelated third-party medical providers who submitted false claims to Borrego. *See id*. (elements of fraudulent concealment include allegations that defendant's misrepresentation proximately caused plaintiff to suffer harm); *see also Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11 (2010) (proximate cause lacking when "the conduct giving rise to the fraud" is distinct from "the conduct directly causing the harm").

Third, the opposition argues that the Board Defendants "concealed their decision to approve an over $87,000 bonus for Bruce Hebets." Opp. at 34:23-24 (citing FAC, ¶360). Again, this allegation does not state a claim for fraud because the FAC does not allege that the Executive Committee had any legal obligation to obtain consent from the full Board of Directors before voting to approve a bonus payment to Borrego's CEO. Nor does the FAC allege facts which demonstrate the Board Defendants had a duty to disclose this compensation vote to the Board.

For these reasons, the opposition fails to explain how the FAC state a viable cause of action for fraud or fraudulent concealment against any Board Defendant under the heightened pleading standard of Rule 9(b).

## C.   The Forty-Fourth Cause Of Action (Conversion) Fails To State Any Claim Against Any Of The Board Defendants.

The FAC alleges that all defendants are liable for conversion based upon their act of "knowingly taking money from Borrego Health for which Defendants were not entitled to, or at least prevented Borrego Health from receiving the full funds to which it was entitled." FAC, ¶827.

The Board Defendants' motion to dismiss argued that Plaintiff's conversion claim fails because Plaintiff does not allege, anywhere in the FAC, that any Board Defendant personally obtained any money that rightfully belonged to Borrego. ECF 185-1 at 16:1-24. Plaintiff's Opposition does not contest this argument. Rather, Plaintiff now shifts to a brand new theory of conversion: that the FAC alleges the Board Defendants "all received property in the form of free healthcare services and prescriptions." Opp. at 35:18-19 (citing FAC, ¶367 ("the Board Insiders received free access to Borrego Health programs, benefits, prescription drugs and even hearing aids")). This new theory of liability fails on several grounds.

First, there is no allegation in the FAC that the Board Defendants were *not entitled to* receive free or reduced-cost healthcare services as compensation for their positions with Borrego. The FAC even quotes an e-mail where defendant Mike

Hickock states that he "was told this [receiving free medical benefits] was an acceptable practice [and that] staff and families get the same perk plus no charge for medical and dental care." FAC, ¶368. "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington v. A. Teichert & Son, Inc.,* 59 Cal.App.2d 468, 474 (1943).

Second, Plaintiff offers no authority for the notion that medical services are a form of personal property capable of supporting a claim for conversion. To state a claim for conversion, Plaintiff must allege that defendants interfered with Plaintiff's use or possession of *tangible* personal property without consent. *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1357 (2003) (explaining that economic injury from increased costs caused by defendant's conduct does not state a claim for conversion). While modern cases have expanded the scope of property subject to conversion—such as credit card information, bank accounts, and specifically identifiable sums of money—the plaintiff still must "establish actual possession, or ownership with the right to immediate possession, of the thing allegedly being converted." *Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co.*, No. 2:19-cv-06791-CAS(GJSx), 2020 WL 709272, at *14 (C.D. Cal. Feb. 12, 2020); *see also Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 211 (2014) (subject of conversion must be "susceptible of possession or disposition"); *Voris v. Lampert*, 7 Cal. 5th 1141, 1148-1150 (2019) (failure to pay wages for services rendered does not state a claim for conversion, but rather for breach of contract).

Medical services are an intangible service that is incapable of possession. Plaintiff has merely alleged that Defendants failed to pay for unspecified medical services that they received from Borrego. FAC, ¶368. This generalized allegation does not state a claim for conversion under California law. Indeed, the law is clear that "[a] cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's possessory interest in a specific, identifiable

sum" and "the simple failure to pay money owed does not constitute conversion." *Kim v. Westmoore Partners, Inc.*, 201 Cal.App.4th 267, 284 (2011). "Were it otherwise, the tort of conversion would swallow the significant category of contract claims that are based on the failure to satisfy "mere contractual right[s] of payment." *Voris*, 7 Cal.5th at 1151-52.

**D.   The Forty-Fifth (Inducing Breach of Contract), Forty-Sixth (Intentional Interference With Contractual Relations), Forty-Seventh (Intentional Interference With Prospective Economic Relations) and Forty-Eighth (Negligent Interference With Prospective Economic Relations) Causes Of Action Fail To State Any Claim Against Any Of The Board Defendants.**

The Board Defendants' motion to dismiss argued that the Board Defendants cannot be held liable for inducing breach of contract or interfering with Borrego's contracts with dental providers or its relationship with Medi-Cal, based merely upon the Board Defendants' alleged decision to authorize the Dental MSA. ECF 185-1 at 17:12-19:17. The FAC fails to allege any facts that would establish any Board Defendant personally knew, or had reason to believe, that any dentist or medical provider would submit fraudulent bills to Borrego under the MSA.

In Opposition, Plaintiff argues that "Wallis [Borrego's former CEO] and the Board Insiders proposed and arranged for Borrego to pursue deals which would misappropriate government health care dollars," and that "it was substantially certain that the contracts and economic relationships Borrego had with Medi-Cal and its dentists would be impacted." Opp. at 38:20-22. To support this argument, Plaintiff indiscriminately cites to several hundred paragraphs in its complaint.

Plaintiff's opposition does not explain away the fundamental flaw in the FAC: the lack of specific allegations that any of the Board Defendants reasonably should have known about—let alone authorized or participated in—any fraudulent billing practices by any third-party medical providers. Simply put, the FAC fails to allege that any Board Defendant negligently or intentionally caused any contracted

medical provider to breach the terms of their contract with Borrego or otherwise engage in conduct that threatened Borrego's Medi-Cal contract. The FAC merely alleges that the Board Defendants authorized a master services agreement under which third parties could submit claims to Borrego. It requires a leap of logic, not supplied in the FAC, to assume that the Board Defendants should have known that unrelated third parties would submit false claims to Borrego under the MSA.

## E.   The Fifty-First Cause Of Action (Breach of Fiduciary Duty) Fails To State Any Claim Against Any Of The Board Defendants.

The Board Defendants' motion to dismiss argued that none of the four alleged schemes involving the Board Defendants amounted to a legally actionable breach of fiduciary duty. ECF 185-1 at 21:16-23:25. With respect to the Premier Scheme, Plaintiff's FAC does not allege facts sufficient to overcome the business judgment rule and establish that the directors' failure to prevent Borrego executives from entering the MSA contracts with Premier constituted gross negligence. The De Anza Property scheme does not amount to a breach of fiduciary duty because Plaintiff concedes that Borrego never consummated the transaction. The Property Development scheme did not amount to a breach of fiduciary because Plaintiff concedes that Nourse recused himself from the Board's vote on the land purchase, the transaction was vetted by outside counsel, the FAC stops short of alleging that Borrego actually purchased the land from Nourse, and even if so, the FAC does not allege that Borrego received unreasonable value in return. *See id.*

On Opposition, Plaintiff does not directly engage with any of these arguments. Instead, Plaintiff simply rehashes what is alleged in the FAC. *See* Opp. at 42:1-22. Plaintiff even concedes that the De Anza and Property Development Schemes were "attempts" to cause Borrego to enter into allegedly unfavorable transactions—thereby acknowledging that the company never consummated the transactions and therefore suffered no actionable injury. *See id*. (arguing that "Board Insiders also ***attempted*** to have Borrego buy a country club" and "Nourse ***attempted***

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

to have Borrego enter into an unconscionable agreement") (emphasis added); *see In re AWTR Liquidation Inc.*, 548 B.R. 300, 313 (Bankr. C.D. Cal. 2016) (to establish breach of fiduciary duty, plaintiff must allege and prove that it sustained damages proximately caused by the breach).

**F.     The Fiftieth Cause Of Action (Conspiracy) Fails To State Any Claim Against Any Of The Board Defendants.**

The Board Defendants moved to dismiss on grounds that the FAC fails to allege facts sufficient to establish that any Board Defendant entered into a conspiracy to commit any actionable tort against Borrego. Mot. at 20:14-21:15. Plaintiff's opposition does not directly engage with the Board Defendants' argument. It instead claims that the FAC sufficiently alleges that "defendants all acted in concert with one another." Opp. at 42:24-43:7. For reasons set forth in the Board Defendants' motion and above with respect to RICO, the FAC fails to allege facts sufficient to prove that any Board Defendant entered into a conspiracy with any other defendant to commit any actionable tort or RICO predicate offense.

**G.     The Forty-Ninth Cause Of Action (Cal. Bus. & Prof. C. § 17200) Fails To State Any Claim Against Any Of The Board Defendants.**

Plaintiff argues that its UCL claim "is premised in its RICO and state law claims [and therefore] Borrego has sufficiently pled its UCL claims." Opp. at 43:27-28. Because the FAC has failed to state any RICO or state law claim against any of the Board Defendants, it also fails to state a UCL claim against them.

**H.     The Fifty-Third Cause Of Action (Unjust Enrichment) Fails To State Any Claim Against Any Of The Board Defendants.**

Plaintiff argues "the FAC alleges that it would be inequitable for the defendants to retain the money obtained via the alleged schemes." Opp. at 44:7-8. The FAC, however, does not allege that any Board Defendant obtained any money from Borrego. And while the FAC generally alleges that the eight "Borrego Insiders" collectively received unspecified "kickbacks or other payments or remuneration" from unspecified persons in return for providing "access and

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT

control" to Borrego (see, e.g., FAC, ¶65), these bald conclusions are insufficient to plausibly allege that any Board Defendant was unjustly enriched. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## I. The Court May Deny Leave To Further Amend The FAC.

Leave to amend may be denied based upon a failure to cure deficiencies by repeated amendments. "To avoid dismissal after an opportunity to amend has been granted, plaintiff must disclose the specific facts that would cure the deficiency." *See* Hon. Virginia A. Phillips, FEDERAL CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group 2021) at ¶9:294.1, p. 9-118.

Plaintiff has not done so here. Plaintiff tried and failed to cure the defects that were raised in the Board Defendants' original motion dismiss (ECF 110) and in the motion to dismiss the FAC (ECF 185). Plaintiff now promises that it can "amend its complaint to include further details for each defendant surrounding the schemes, including additional meetings, e-mails, and mailings, as well as additional allegations pertaining to alter-ego." Opp. at 44:19-22. Plaintiff should have included these supposed additional details in its 190-page FAC. "A plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend has been given." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). The Court may deny leave to further amend.

## III.   CONCLUSION

For the reasons set forth here and in Defendants' Motion to Dismiss (ECF 185), the Court should grant this motion of Defendants Harry Ilsley, Dennis Nourse, Mike Hickock, and Chuck Kimball and dismiss all claims pled against them with prejudice pursuant to F. R. Civ. P. 12(b)(6).

1   DATED: June 23. 2023                THE FREEDMAN FIRM PC

2                                       By: _____

3                                          Michael G. Freedman

4                                          Attorney for Defendants
                                           HARRY ILSLEY, DENNIS
5                                          NOURSE, MIKE HICKOK, and
                                           CHUCK KIMBALL
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY I/S/O RULE 12(b)(6) MOTION TO DISMISS FIRST AM. COMPLAINT