**BARNES & THORNBURG LLP**
Eric J. Beste (CA Bar No. 226089)
Eric.Beste@btlaw.com
Andrew Young (CA Bar No. 326540)
Andrew.Young@btlaw.com
Allison Rego (CA Bar No. 272840)
arego@btlaw.com
Andrew J. Galvin (CA Bar No. 261925)
Andrew.Galvin@btlaw.com
655 West Broadway, Suite 1300
San Diego, CA 92101
(619) 321-5000

Brian Nguyen (CA Bar No. 336704)
Brian.Nguyen@btlaw.com
2029 Century Park East Suite 300
Los Angeles, CA 90067

Attorneys for Defendants,
*Premier Healthcare Management, Inc.;*
*Summit Healthcare Management, Inc.; Daryl Priest;*
*Nicholas Priest; and Travis Lyon*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>KAREN HEBETS, an individual, *et al.*<br><br>                    Defendants. | **CASE NO. 3:22-CV-01056-BEN-KSC**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hrg. Date:    July 3, 2023<br>Time:         10:30 a.m.<br>Courtroom:    5A<br><br>District Judge: Hon. Roger T. Benitez<br>Magistrate Judge: Hon. Karen S. Crawford |

## I.   INTRODUCTION

The Premier Defendants' Motion to Dismiss ("Motion") set forth numerous grounds to dismiss the claims alleged in Plaintiff's First Amended Complaint ("FAC"). In its opposition, Plaintiff avoids addressing the majority of the Premier Defendants' arguments. Instead, Plaintiff either ignores controlling case law or relies on cases that actually support dismissal of its claims. Plaintiff offers no compelling justification for bringing time-barred claims, fails to support its alter ego allegations, impermissibly lumps together the Premier Defendants, and fails to adequately plead its RICO claims. The Court should grant the Motion in its entirety.

## II.   ARGUMENT

### A.   The Court Should Dismiss Plaintiff's Claims As Time-Barred.

All of Plaintiff's claims against the Premier Defendants are stale. Plaintiff attempts to save its time-barred claims by: (1) pointing out that the FAC contains a legal conclusion that "the statute of limitations period began to accrue, at the earliest, in October 2020" and (2) claiming that the FAC alleges facts supporting an equitable tolling defense. Dkt. 194 ("Opposition" or "Opp.") at 17:14-18:7. Plaintiff is wrong on both counts.

First, Plaintiff cannot plead around a stale claim by inserting a legal conclusion that challenged claims are not time-barred. As recognized by the Supreme Court, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sanchez Ritchie v. Sempra Energy*, No. 3:10-CV-1513-CAB-KSC, 2017 WL 4169706, at *2-3 (S.D. Cal. Sept. 20, 2017) ("[T]he Court is not bound to accept as true a legal conclusion couched as a factual allegation.").

Second, the FAC lacks any facts that would toll the applicable statutory periods. "In the Ninth Circuit, [e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to discover vital information bearing on the existence of his claim." *Jang v. 1st United Bank*, 2012 WL 2959985 at *2 (E.D. Cal. Jul. 19,

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

2012). "[E]quitable tolling does not depend on any wrongful conduct by the defendant to prevent plaintiff from suing. Instead it focuses on whether there was excusable delay by the *plaintiff.*" *Id.* (citing *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (emphasis added). Thus, Plaintiff's allegations of concealment by the Premier Defendants, standing alone, are insufficient to warrant application of the equitable tolling doctrine. More importantly, the language of FAC itself establishes that Plaintiff was well aware of the facts it now claims amount to misconduct under the MSAs by 2017. As Plaintiff's cited authority makes clear, these allegations prevent it from establishing the "excusable delay" needed to justify its delay in filing until July 2022. *See Grimmett v. Brown*, 75 F.3d 506, 511-13 (9th Cir. 1996) (affirming dismissal of RICO claim where plaintiff failed to allege facts showing due diligence in trying to uncover defendants' alleged concealment). Each of Plaintiff's claims should be dismissed as time-barred.

**B.     The FAC is a Shotgun Pleading That Fails to Satisfy Rules 8 and 10.**

Plaintiff argues that it has satisfied Rule 8 because the FAC provides certain labels for different groups of defendants. Opp. at 15:6-9. But merely labeling different groups of defendants is not sufficient to put each of those defendants on notice of the allegations against them.  At bottom, Plaintiff's allegations still fail to identify which defendants are responsible for which acts. Plaintiff further magnifies this problem by incorporating *hundreds* of paragraphs of allegations into each claim, without making any effort to specify which allegations apply to which defendant. Because Plaintiff's generic pleading fails to inform the individual Premier Defendants of the basis for the claim against them, the FAC violates Rules 8 and 10. *See TV Ears Inc. v. Joyshiya Development Ltd.*, 3:20-cv-01708-WQH-BGS, 2021 WL 5396111, at *13 (S.D. Cal. Nov. 18, 2021).

**C.    A Relaxed Pleading Standard Is Not Warranted For Plaintiff's Fraud-Based Claims.**

Unable to satisfy Rule 9(b)'s heightened pleading standard, Plaintiff contends that it is entitled to a relaxed pleading standard because facts supporting the allegation of fraud were exclusively within the Premier Defendants' possession. Opp. at 19:9-22 (citing *State of Cal. Ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D. Cal. 1997)). Plaintiff mischaracterizes the authority it uses to support this proposition, as well as the only factual allegation in the FAC that it relies upon.

Contrary to Plaintiff's assertion, in *State of Cal. Ex. Rel. Mueller*, the court did not "deny[] a motion to dismiss fraud claims." Rather, the court granted the defendants' motion for judgment on the pleadings because—like here—the plaintiff failed to plead fraud with sufficient particularity under Rule 9(b) and was not entitled to the corporate fraud exception. *Id.* The court explained that Rule 9(b)'s particularity requirement is only relaxed where a plaintiff specifically alleges that the necessary information lies within the defendant's control and that allegation is supported by facts. *Id.*

Notably, the FAC does not actually allege that the Premier Defendants have exclusive control over necessary information to support Plaintiff's fraud claim. Instead, Plaintiff claims that the "Premier Defendants have exclusive access *to their billing software* tracking the claim submissions." Opp. at 19:16-17 (emphasis added). Yet it is the false claims themselves, not the billing software used to track such claims, that supports an allegation of fraud. And as the FAC makes clear, the purportedly "excessive, unsubstantiated, and duplicative claims" were "submitted to Borrego Health for processing and payment," and therefore have been in Plaintiff's possession for years. FAC ¶ 178. Plaintiff's possession of the allegedly false claims is further confirmed by its own MSAs, which impose upon Plaintiff the obligation to "timely and fully bill the appropriate payor" for all claims. FAC, Ex. A at 192, § 1, A, iv; *id.*, Ex. D at 209, § 3.01.6. Accordingly, because Plaintiff has known for years

1  of the facts that it now uses to support its FAC, Plaintiff should not be free to ignore

2  Rule 9(b)'s obligation to allege fraud-based claims with particularity.

3          **D.**     **The Court Should Dismiss Plaintiff's RICO Claim.**

4               **1.**     **Conduct**

5       The FAC does not adequately allege the "conduct" element of a RICO claim

6  because it lacks facts establishing that each of the Premier Defendants participated in

7  the "operation and the management of the enterprise itself," as opposed to simply

8  performing routine services for the alleged enterprise. Motion at 15-16. Plaintiff

9  asserts that the Premier Defendants' conduct constitutes "directing" an enterprise

10  because:   (1) Premier and Summit operated outside "'management services'

11  programs through the Dental MSA," and Travis Lyon "instructed [Plaintiff's] finance

12  department to direct all questions regarding the Dental MSA through him and

13  Premier"; (2) "Lyon and Nick Priest integrated themselves into [Plaintiff's] Program

14  Integrity team to dictate and control relationships with dentists"; (3) "Daryl Priest

15  and Lyon integrated themselves into management" prior to the execution of the

16  Dental MSAs; and (4) Lyon trained "Borrego employees on reviewing dental

17  claims." Opp. at 21:11-17. None of these theories save the defective RICO claims,

18  either because they are conclusory assertions without any factual detail, or they do

19  nothing more than claim that Premier provided services under the Dental MSA.

20       First, Plaintiff fails to explain how Lyon's statement requesting Borrego's

21  finance department to direct any questions about the Dental MSA amounted to

22  infiltrating Borrego's upper management.

23       Second, the Dental MSA attached to the FAC obligated Premier to establish a

24  "management services" program, and required Premier (allegedly through Travis

25  Lyon) to facilitate communications between Plaintiff and the contracted dentists. *Id.*

26  at 21:11-13, 21-23. For example, the Dental MSA required Premier to manage

27  Plaintiff's contract dental program, including by "obtain[ing] from contracted

28  dentists such information relating to claims and submit the same to [Plaintiff] in a

format that enables [Plaintiff] to bill for such claims." FAC, Ex. A at 197, Internal Exhibit "A" to Dental MSA § II, i. The Dental MSA further requires Premier to manage relations with the contracted dentists, including by "provid[ing] ongoing communication, education, and training to [the] contract dental service provider and their staffs regarding [Plaintiff's] policies and procedures," "provid[ing] ongoing communication, education and training to [the] contract dental service provider and their staff regarding any changes in scope of services and fee schedules," "answer[ing] contract dental service provider eligibility inquiries," and "answer[ing] contract dental service provider claims inquiries." *Id.* § I, b, (vi)-(vii) and (ix)-(x).

Conversely, Plaintiff's responsibilities under the Dental MSA included billing the contracted services out to the appropriate payor, paying all sums owed to the dentists, and "coordinat[ing] with [Premier] regarding quality management/peer review and compliance with the terms of the Dental Agreements." *Id.*, Ex. A § I, A, (iv)-(v) and (viii). That Premier encouraged compliance with the Dental MSA by performing contracted-for services is not tantamount to operational or managerial control over Plaintiff's affairs. At best, these acts show that Premier performed services required under the Dental MSA. This is insufficient to impose RICO liability. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Simply performing services for the enterprise does not rise to the level of direction").

Third, although Plaintiff argues that each of the Premier Defendants participated in the alleged enterprise because "Lyon and Nick Priest integrated themselves into the Program Integrity team to dictate and control [Plaintiff's] relationships with dentists," the FAC lacks facts demonstrating how Lyon and Nick Priest exercised this purported control.  Plaintiff points to various allegations that it claims show how the Premier Defendants prevented the Program Integrity team from terminating certain dentists; in fact, these allegations simply allege that only Travis Lyon was allowed to "speak directly" with these dentists. Opp. at 21:17-18 (citing FAC ¶¶ 166, 179, 212). Missing from the FAC is any factual allegation that the

Premier Defendants: (1) controlled Plaintiff's decision to terminate its relationship with a contracted dentist; (2) coordinated with the alleged Borrego Insiders to influence these decisions; or (3) impaired the Program Integrity team from providing any recommendations to Plaintiff's board of directors regarding the same. Indeed, at all times Plaintiff retained "ultimate authority" to terminate any dental service agreement. Motion at 16:1-5 (citing FAC, Ex. E at 228, § D (Authority)).

The closest Plaintiff gets to supporting its conclusory allegation that the Premier Defendants exerted "control" over "who would be credentialed" under Plaintiff's contract dental program comes from its allegation that "Bruce Hebets, along with Premier's Travis Lyon and Nick Priest," attended a "June 2017 Credentialing Committee" meeting and that "[u]sually, credentialing committees are…free from inadvertent pressure of having administration involvement." Opp. at 21:16 (citing FAC ¶ 314). This allegation is similarly devoid of facts that show Travis Lyon or Nick Priest made any statements or engaged in any conduct that amounted to the actual exertion of control over Plaintiff's credentialing determinations.

Fourth, Plaintiff's conclusory statement that "Daryl Priest and Lyon" were "integrated…into [Plaintiff's] management" is unsupported by any factual allegations in the FAC. The lone paragraph Plaintiff cites to support this conclusory allegation recites an email by Plaintiff's former agent, Cynthia Preciado, to Plaintiff's former CEO, in which Ms. Preciado asserts her own conclusory allegation that "Daryl [Priest] and Travis [Lyon] are highly integrated with upper management." Opp. at 21:20 (citing FAC ¶89). As Plaintiff offers no facts explaining how any of the Premier Defendants were actually integrated with the alleged Borrego Insiders, this conclusory allegation from Plaintiff's own agent does not satisfy the *Iqbal* standard for non-frivolous factual allegations that can defeat a motion to dismiss.

Finally, Plaintiff's claim that the Premier Defendants controlled the alleged enterprise through "training *Borrego employees* on reviewing dental claims," Opp. at 21:20-21, is belied by the language of the FAC itself. The portion of the FAC cited

1   by Plaintiff to support this statement actually states that Premier was "responsible for

2   training the *Dental Defendants* on how to properly submit their claims to Premier for

3   payment." FAC ¶ 135 (emphasis added). Notwithstanding several hundred factual

4   allegations, the FAC makes no allegation about the training of Plaintiff's employees

5   by the Premier Defendants.  Moreover, as discussed above, Premier was obligated to

6   perform this training pursuant to the Dental MSA. In sum, Plaintiff has wholly failed

7   to allege that the Premier Defendants collectively controlled Plaintiff's managerial

8   and operational decisions, or "conducted" the operations of the alleged enterprise.

9               **2.      Enterprise**

10          Plaintiff similarly fails to rebut the authority cited in the Motion that the

11   "enterprise" element of a RICO claim cannot be satisfied by "characterizing routine

12   commercial dealing as a RICO enterprise." Motion at 16:23-17:6. (citing *Gardner v.*

13   *Starkist Co.*, 418 F.Supp.3d 443, 461 (N.D. Cal. 2019)). Plaintiff also points to no

14   facts showing that the Premier Defendants had any agreement with or conspired with

15   the Dental Defendants to "improperly siphon[] funds out of Borrego." Opp. at 26:10.

16   Plaintiff thus fails to allege an enterprise.

17          **E.      The Court Should Dismiss Plaintiff's Conspiracy Claim.**

18          Plaintiff's argument in support of its conspiracy claim fares no better than its

19   RICO claim. Plaintiff fails to allege facts supporting the inference that *each* of the

20   Premier Defendants knew of the nature and scope of the enterprise, intended to

21   participate in it, or agreed to carry it out through a criminal pattern of racketeering

22   activity. Plaintiff's conspiracy claim should be dismissed.

23          **F.      Plaintiff's Tort Claims Should Be Dismissed Under The Economic**

24                  **Loss Rule.**

25          The economic loss rule precludes recovery on tort claims where the underlying

26   breach of duty is nothing more than a breach of the parties' agreement. *See JMP*

27   *Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D.

28   Cal. 2012). Exceptions to the economic loss rule include: (1) when in the context of

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FAC

a products liability case, "a 'product defect causes damage to 'other property,' that is, property other than the product itself'"; and (2) "when a defendant breaches a legal duty independent of the contract, irrespective of whether damages are economic." *NuCal Foods, Inc. v. Quality Egg, LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. Jan. 16, 2013). Plaintiff meets neither exception and mischaracterizes the first exception Opp. at 31:27-28 (incorrectly stating "when a plaintiff sufficiently pleads damage to personal injury or other property, the economic loss rule does not apply.")

Although not a products liability case, Plaintiff fails to explain how allegations of damage to "its revenue" and "its ability to provide necessary healthcare services to patients and its reputation in the community" are distinguishable from its alleged contract damages. Indeed, both sets of purported damages arise from Plaintiff's disappointed expectations flowing from an alleged breach of the MSAs. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983, 991 (E.D. Cal. Apr. 11, 2012) ("the economic loss doctrine 'requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.")

Further, Plaintiff fails to allege any duty owed by the Premier Defendants to Plaintiff separate from Premier's and Summit's respective duties under the MSAs. Seeking to avoid the implications of the "economic loss rule," Plaintiff asserts that the Premier Defendants committed fraud. Opp. at 32:9-13. But no exception to the economic loss rule lies simply because a plaintiff alleges a fraud claim. Tort claims are subject to the economic loss rule whenever the underlying allegations establish a straightforward claim for breach of a commercial contract. *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1105-06 (C.D. Cal. 2015) (dismissing fraud claims under economic loss rule because claims were entirely based on an alleged agreement and plaintiff failed to satisfy Rule 9(b)). Plaintiff's tort claims are based entirely on Premier's alleged breach of the MSAs. Thus, under the economic loss rule, each of these claims should be dismissed.

**G.     Plaintiff Fails to Allege Any Specific Misrepresentation by The Premier Defendants or Plaintiff's Reliance Thereon.**

Plaintiff posits that the "Premier Defendants promised and represented to Borrego that they had the skills, expertise, and qualified staff to provide management services for the contract dental program," but that "Daryl and Nick Priest had no relevant experience and Premier lacked any employees with a clinical background to review claims until 2019." Opp. at 33:20-25. Plaintiff ostensibly extracts these alleged representations from unspecified portions of the "Dental MSA and Medical MSA". *Id*. (citing FAC ¶¶ 98-102). But Plaintiff does not allege any misrepresentations by the respective Premier Defendants with particularity. Nor does Plaintiff plausibly allege reliance on any alleged misrepresentation. Indeed, the FAC's allegations controvert Plaintiff's purported reliance on any alleged misrepresentations because Plaintiff concedes the subject misrepresentations were made years before it allegedly became aware of the MSAs in 2020. FAC ¶ 117. Moreover, neither the Dental MSA nor the Medical MSA requires Premier to staff clinical providers to review any claims. Plaintiff's fraud claims should be dismissed.

**H.     Plaintiff Fails to State a Conversion Claim.**

Plaintiff fails to rebut the argument that its conversion claim fails because it does not identify a specific, coherent, defined set of funds that could be the object of conversion. *See* Opp. at 23-24. Plaintiff merely asserts that the "Premier Defendants…wrongfully possess property (money) that rightfully belongs to Borrego," without explaining how that sum is capable of identification. Opp. at 36:3-6. In addition to the many defects identified above, the Court should dismiss Plaintiff's conversion claim for this independent reason.

**I.     Plaintiff's Interference Claims Fail as a Matter of Law.**

Plaintiff similarly avoids addressing the Premier Defendant's arguments supporting dismissal of its interference claims. Plaintiff does not explain why its interference claims are precluded as a matter of law given its allegation that the

1  Premier Defendants acted as Plaintiff's agents. Motion at 21:18-22:6 (citing *Mintz v.*

2  *Blue Cross of California*, 172 Cal. App. 4th 1594, 1604 (2009)). The Court should

3  dismiss Plaintiff's interference claims.

**J.     Plaintiff's Breach of Contract Claim Should Be Dismissed.**

5       The Motion explains that Plaintiff's breach of contract fails because none of

6  Premier's alleged promises, responsibilities, or obligations are tied to specific

7  provisions in the MSAs. Motion 20:5-15. In rebuttal, Plaintiff regurgitates a series of

8  amorphous obligations that it attributes to the Premier Defendants but makes no

9  attempt to tie these purported obligations to any specific terms under the MSA. Opp.

10  at 39-40. Plaintiff's breach of contract claim should also be dismissed.

**K.     Plaintiff's UCL Claim Fails Because Plaintiff Alleges An Adequate**

**Remedy at Law.**

13       Plaintiff contends that its UCL claim is sufficiently pled because Rule 8

14  permits the pleading of alternative remedies. Opp. at 43:24-26.  The issue here is not

15  whether Plaintiff can plead its UCL claim in the alternative, but whether equitable

16  remedies are available to Plaintiff at all. Put another way, "[t]he issue is not whether

17  a pleading may seek distinctive forms of relief in the alternative, but rather whether

18  a prayer for equitable relief states a claim if the pleading does not demonstrate the

19  inadequacy of a legal remedy." *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813,

20  2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020). Because Plaintiff does not—and

21  cannot—allege that it has no possible remedy at law, equitable remedies (such as

22  those provided in UCL claims) are unavailable. *See Prudential Home Mortg. Co. v.*

23  *Superior Court*, 66 Cal. App. 4th 1236, 1249-50 (1998) (holding that the existence

24  of an adequate remedy at law precludes UCL claim under California law). Plaintiff's

25  equitable claims under the UCL should be dismissed.

26  **III.   CONCLUSION**

27       For the foregoing reasons, and because future amendments would be futile,

28  this Court should dismiss the FAC in its entirety with prejudice.

Dated:       June 23, 2023          Barnes & Thornburg LLP

By: *Andrew Galvin*
    Eric J. Beste
    Andrew Young
    Allison Rego
    Andrew Galvin
    Brian Nguyen

Attorneys for Defendants
*Premier Healthcare Management, Inc.;*
*Summit Healthcare Management, Inc,;*
*Daryl Priest; Nicholas Priest; and Travis*
*Lyon*

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

11