TIMOTHY SCOTT (SBN 215074)
MARCUS BOURASSA (SBN 316125)
**MCKENZIE SCOTT PC**
1350 Columbia St. Suite 600, San Diego CA 92101
Tel: (619) 794-0451

Attorneys for Karen Hebets

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> KAREN HEBETS et al., <br><br> Defendants. | Case No. 3:22-cv-01056-AJB-AGS <br><br> Hon. Roger T. Benitez <br><br> **KAREN HEBETS' REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT AND TO STRIKE CERTAIN ALLEGATIONS** <br><br> Date: July 3, 2023 <br> Time: 10:30 a.m. |

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

1

Plaintiff's opposition is best read, at least insofar as Karen Hebets is concerned, as a concession that the threadbare allegations relating to her fail to state a claim. Plaintiff wholly abandons multiple claims against Ms. Hebets by failing to offer even a word in their defense.[1] Elsewhere, plaintiff offers a non-sequitur while ignoring controlling caselaw raised by Ms. Hebets.[2] Finally, Plaintiff's sole recourse in defense of other claims is to misleading invent allegations that do not exist in the complaint.[3]

The amended complaint against Ms. Hebets boils down to a single vague assertion that Ms. Hebets had some hand in training two low-level staff members,[4] though not the whole department[5]. That vague allegation, no matter how frequently repeated, does not amount to fraud, fails to satisfy Rule 9(b), and cannot suffice to drag Ms. Hebets into plaintiff's fishing-expedition-via-40-defendant-RICO-lawsuit. For the reasons set forth in herein, claims against Ms. Hebets should be dismissed.

## I.   CLAIMS PLAINTIFF ABANDONS MUST BE DISMISSED.

Before discussing why plaintiff's few responsive arguments are wrong, it is worth noting what is *not* in dispute. Plaintiff simply ignores the arguments pressed in Ms. Hebets' motion in relation to many of it's claims. As this Court has specifically observed before, "[w]here a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Shull v. Ocwen Loan Servicing,*

---

[1] *See* Dkt. 194 ("Oppn") (omitting any defense of the Constructive Fraud claim, Cause of Action 52); *id.* at 40 (defending the Breach of Fiduciary Duty claim as against "Board Insiders and [Mikia] Wallis").

[2] *Compare, e.g.,* Dkt. 191-1 ("Motion") at 25 (arguing that contract and interference with economic relations claims must be dismissed as against Ms. Hebets because such claims cannot be brought against an employee) *with* Oppn at 36-39 (saying nothing on the matter).

[3] *Compare, e.g.,* Oppn at 34 (defending False Promise and Fraudulent Concealment claims against Karen Hebets by asserting "Karen Hebets . . . promised the full Board that the Dental MSO proposal would be abandoned," citing FAC ¶ 84) *with* FAC ¶ 84 (stating that "Mikia Wallis" falsely made such a representation in a specific 2015 email).

[4] *See, e.g.* FAC ¶ 111 ("'trained' their family members how to review the EOBs and claims submissions for errors and duplications"), ¶¶ 161, 178, 195, 203, 218, 225, 237, 245, 258, 374, & 377 (same).

[5] FAC ¶ 112 (noting that there were other employees in the department whose training someone else evidently influenced).

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

2

*LLC*, No. 13-CV-2999-BEN WVG, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) (collecting cases). Accordingly, as discussed in-turn below, the Breach of Fiduciary Duty, Constructive Fraud, Fraudulent Concealment, Inducing Breach of Contract, Intentional Interference with Contractual Relations, Intentional and Negligent Interference with Economic Relations, and False Promise claims must all be dismissed.

In her Motion, Ms. Hebets established that the Breach of Fiduciary Duty (Cause of Action 51) and Constructive Fraud (Cause of Action 52) claims are appropriately dismissed for lack of fiduciary obligations or any affirmative duty to disclose the information putatively withheld. Motion at 23-24. Plaintiff's opposition wholly omits any discussion of the Constructive Fraud cause of action. Similarly, the opposition only defends the Fiduciary Duty claims against Board Members and Mikia Wallis (the organization's attorney). Oppn at 40-41 ("Borrego alleges a breach of fiduciary duty against Board Insiders and Wallis" and setting forth legal bases of their fiduciary obligations). Thus, these claims are appropriately dismissed against Ms. Hebets.

Similarly, Ms. Hebet's Motion pointed out that a Fraudulent Concealment claim requires a specific legal duty to disclose the information in issue. Motion at 23. In response, again, plaintiff only defends the fraudulent concealment claim as having been alleged "against the Premier Defendants, Dentist Defendants, and The Hebets Company Defendants." Oppn at 32. Thus it is appropriately dismissed against Ms. Hebets.[6]

As it relates to the Inducing Breach of Contract claim (Cause of Action 45) as well

---

[6] Later in the same section, apparently in relation to the false promise claim, plaintiff asserts "Karen Hebets, Wallis, and Board Insiders all promised the full Board that the Dental MSO proposal would be abandoned, then proceeded to enter into the Dental MSA with Premier. (Id. ¶84.)" Oppn 34. Plaintiff, having abandoned the fraudulent concealment claim, makes no effort to tether this assertion to any such claim against Ms. Hebets. However, even if this assertion could be construed as creating some obligation on Ms. Hebets' behalf to disclose information in the context of a fraudulent concealment claim, plaintiff's assertion is simply baseless. As discussed below in relation to the False Promise claim, no such factual allegation about a promise by Ms. Hebets exists in the Amended Complaint. Paragraph 84, the allegation cited by plaintiff, is specifically about Mikia Wallis sending an email in 2015 and does not purport to mention Ms. Hebets even as among the "Borrego Insiders."

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

as the Intentional Interference with Contractual Relations claim (Cause of Action 46), Ms. Hebets' Motion established that no such claims can be brought as against her because she was plaintiff's employee. Motion at 25. "[I]nterference with contractual relations is committed only by strangers," *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007), and employee's actions are "privileged" in relation to breach of a corporation's contract, *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576, 510 P.2d 1032 (1973).

Similarly, where Intentional and/or Negligent Interference with Economic Relations Claims (Causes of Action 47 & 48) are predicated upon contracts like Borrego's Medi-Cal contract, such claims "resemble those of intentional interference with contract" except that they carry an additional required element. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107–08 (9th Cir. 2007). Plaintiff's opposition concedes that these claims against Ms. Hebets are similarly predicated upon its contractual relationships with Medi-Cal and its dentists. Oppn at 38. Thus, the alleged torts for interference with economic relations are "essentially" the same as contract claims in that they are "committed only by 'strangers'." *NTD Architects v. Baker*, No. 11CV2836- AJB (JMA), 2012 WL 12868390, at *4 (S.D. Cal. Aug. 10, 2012) (citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514 (1994).

However, yet again, Plaintiff's opposition brief omits any response to Ms. Hebets' argument that, as plaintiff's employee, she cannot be subject to such contract-based claims. Rather, plaintiff's opposition merely reasserts the allegation which is fatal to these claims. *See* Oppn 38 (defending the contract-based claims by *reasserting* that Ms. Hebets was an employee). Thus, the contract-based claims and interference claims are appropriately dismissed.

To summarize, plaintiff's opposition fails to offer *any* responsive argument in defense of the following claims as they relate to Ms. Hebets:

Cause of Action 42 - Fraudulent Concealment
Cause of Action 45 - Inducing Breach of Contract
Cause of Action 46 - International Interference with Contractual Relations

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

   Cause of Action 47 - Intentional Interference with Prospective Economic Relations
   Cause of Action 48 - Negligent Interference with Prospective Economic Relations
   Cause of Action 51 - Breach of Fiduciary Duty
   Cause of Action 52 - Constructive Fraud

The silence is deafening.

## II.  THE AMENDED COMPLAINT IS A SHOTGUN PLEADING

As set forth in Ms. Hebets' Motion, the Amended Complaint is an impermissible shotgun pleading. In response, plaintiff implausibly cites two district court cases, *Securities and Exch. Comm'n v. Bardman* and *In re Zantac (Ranitidine) Products Liab. Litig*. Both are inapposite.

For its part, *Bardman* reiterates the controlling rule that plaintiff cannot ""group[] multiple defendants together and fail[] to set out which of the defendants made which of the fraudulent statements/conduct." *Sec. & Exch. Comm'n v. Bardman*, 216 F. Supp. 3d 1041, 1051 (N.D. Cal. 2016). That remains key and controlling in the instant case. However, *Bardman* involved "only two defendants," *id.*, and only 17 pages (62 paragraphs) of factual allegations[7]. Thus, it is readily distinguished from this case.

*In re Zantac (Ranitidine) Prod. Liab. Litig.* is no more persuasive. There, a Florida District Court first *dismissed* the complaint as a shotgun pleading. 546 F. Supp. 3d 1152, 1183 (S.D. Fla. 2021). Thus, the order upon which Plaintiff relies here merely approved a complaint *after* curative efforts "eliminated" impermissible allegations lumping groups of defendants together. *Id.* at 1184. Furthermore, in *Zantac*, the district court noted that it was *not* applying the heightened pleading standards of Rule 9(b). 546 F. Supp. 3d at 1184. Here, by contrast, Plaintiff concedes the heightened standard applies.

Finally, having found no caselaw to defend its pleading, plaintiff resorts to easily refuted double-speak. Plaintiff claims that it "does not lump all defendants together." Oppn. at 15. But, as Ms. Hebets' Motion established, the Amended Complaint frequently uses the "Borrego Insiders" group label for matters which *cannot* be read to mean Ms. Hebets. *See,*

---

[7] *See*, *Sec. & Exch. Comm'n v. Bardman*, Case Number 4:16-cv-02023-JST, Dkt. 1 (N.D. Cal.).

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

5

*e.g.,* Motion at 10 (discussing allegations that "the Borrego Insiders" signed contracts, which were incorporated to the complaint and expressly signed by only specific people – never Ms. Hebets). The voluminous "Borrego Insider" allegations almost never plausibly refer to Ms. Hebets and do *not* afford meaningful notice to Ms. Hebets, who was *not* a member of the Board or an executive at Borrego, of what she is alleged to have done. *Id.* at 9-11. But plaintiff's opposition does not attempt a response to these arguments.

### III.   THE CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

As for the statute of limitations, plaintiff attempts an implausible reading of its own pleading. One difficulty in assessing the applicable statutes of limitations is that Plaintiff's Amended Complaint does not describe the precise contours of the alleged fraud in compliance with Rule 9(b), including *when* events occurred. That failing alone is fatal to the Amended Complaint. *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991). Nor does plaintiff's bare allegation that the claims accrued "at the earliest" in "October 2020," FAC ¶¶ 358, 550, suffice to survive the instant motion. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("not bound to accept as true a legal conclusion couched as a factual allegation").

The accrual dates for the unabandoned claims must be after July 19 of the 2018 (for RICO), 2019 (for False Promise and Unjust Enrichment), and 2020 (for Conversion). Plaintiff attempts to evade fundamental statute of limitations issues by conflating its many allegations chronologically. Thus, an examination of the separate "schemes" is appropriate.[8] For example, Ms. Hebets' Motion established, and Plaintiff does not dispute, that any claim predicated upon the "Borrego MSO" necessarily accrued before November 2012 and is barred. Motion at 17. Others suffer analogous defects and must be dismissed.

- **The "Scheme to Contract with Premier" Accrued Immediately and Was**

---

[8] As also set forth herein, Ms. Hebets does not understand herself to be allegedly involved in the majority of these purported "schemes." Accordingly, insofar as they do not relate to Ms. Hebets, the Court should limit any surviving claims to omit purported schemes which do not involve her and from which there is no claim against her.

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

**Understood by February 2018**

This purported scheme (FAC ¶¶ 66-131) allegedly commenced on March 1, 2016, when Borrego signed a Dental MSA and certain defendants allegedly concealed it, *id.* ¶ 85. But the Amended Complaint concedes that Mike Hickock presented monthly financial reports to the Board, which included the money paid under the Dental MSA among aggregated costs. *Id.* ¶ 115. Thus plaintiff was immediately on, at least, inquiry notice of the Dental MSA's existence. Furthermore, Borrego's Program Integrity Unit was meeting with the Premier defendants (who existed solely to provide services under the purportedly concealed Dental MSA) by February 2018. FAC ¶ 318.

- **The "Fraudulent Dental Billing Scheme" Was Discovered in 2017**

Plaintiff does not allege when this "scheme" (FAC ¶¶ 132-281) commenced. However, the Amended Complaint is *replete* with allegations that the Program Integrity Unit at Borrego (PIU) was aware of these issues well before the necessary accrual dates to survive dismissal. *See, e.g.,* FAC ¶ 300 (PIU "identified outliers and other billing discrepancies" in "2017"); ¶ 319 (PIU audited and identified deficiencies in June 14, 2018); ¶ 176 (November 26, 2018 email to PIU noting widespread suspected fraud); ¶¶ 324-25 (again in March 2019). Furthermore, plaintiff alleges that Dr. Martinez of the PIU was able to raise fraud issues to Borrego's Chief Compliance Officer. *Id.* ¶¶ 298-99.

- **The "Compensation Scheme" Is Not Fraud and Accrued Immediately.**

Plainly plaintiff was on notice of Ms. Hebets' salary when it paid her salary. FAC ¶¶ 360-373. However, it is unclear what the purported fraud in this "scheme" was. By early 2019, plaintiff concedes it was sufficiently on notice of salaries being high to retain an outside consultant to study the compensation packages. *Id.* ¶ 370. Additionally, plaintiff alleges Ms. Hebets' salary was greatly reduced in 2020, FAC ¶ 361, and does not allege that it ever was, let alone remained, excessive or fraudulent.

- **The "Nepotism and Cronyism Scheme" Is So Inadequately Alleged It Does Not Permit Basic Analysis**

Insofar as it concerns Ms. Hebets, this "scheme" (FAC ¶¶ 374-378) commenced when she allegedly hired her daughter, Tiffany Hebets, into a low-level clerk position. FAC ¶ 374. It is entirely unclear what claims, if any, this allegation relates to. But, plaintiff does not allege *when* it occurred at all. Thus it cannot form the basis of plaintiff's claims. *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991).

- **The "De Anza Country Club Scheme" Did Not Involve Ms. Hebets and Is Untethered from Any Putative Injury**

Ms. Hebets is not named at any point in this "scheme." FAC ¶¶ 379-390. Plaintiff acknowledges the effort of other defendants "did not move forward, and de Anza

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

returned the earnest money." FAC ¶ 390. Thus, this purported scheme is concededly untethered to any putative injury.

- **The "Payout Scheme" Is Inadequate and Accrued Immediately in 2018**

    Ms. Hebets is not named at any point in these "scheme" allegations. FAC ¶¶ 391-406. This "scheme" is apparently based upon an innocent third-party's determination that $2 million was an appropriate transition fee to Bruce Hebets in mid-2018. FAC ¶¶ 399 & 402. The analysis failed to account for a 162B plan. *Id.* ¶ 399. But plaintiff knew of the 162B plans by 2015 because it was paying for them. *Id.* ¶ 415. As the payor, it is hard to comprehend how Borrego can claim not to have "discovered" the 162B plans until later. Even the independent evaluator knew of the 162B plans, at the latest, within "months" of the $2 million payment in fall 2018. *Id.* ¶ 403.

- **The "Jim Hebets Scheme" Is Similarly Inadequate and Time-Barred**

    It is unclear whether or how Ms. Hebets is alleged to have been party to any fraud in relation to this "scheme." FAC ¶¶ 407-422. The allegations merely state that she received and withdrew from the 162B account in her name. FAC ¶ 414. Plaintiff does not allege when, or why it was unaware of accounts into which it evidently paid money for years. That alone is fatal to any fraud claim. *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991). Additionally, as discussed above, Borrego was aware of these plans when it paid into them by 2015, *id.* ¶ 415, and discussed them in fall 2018. *Id.* ¶ 403.

- **The "Julian Barn Scheme" Accrued in 2010 and Did Not Involve Ms. Hebets**

    Ms. Hebets is not named at any point in these allegations. FAC ¶¶ 423-442. Plaintiff alleges this "scheme" relates to a rental agreement dating to October 2010 and amended in November 2013. FAC ¶¶ 433 & 438. The only alleged beneficiary is Chuck Kimball. *Id.* ¶ 440. Plaintiff does not allege how it could be unaware of this lease or any attempt by anyone to conceal it. Thus, whatever the putative claim here (and Ms. Hebets submits there does not seem to be one, at least as to her) it accrued long before 2018.

- **The "Property Development Scheme" Does Not Permit Basic Analysis**

    Ms. Hebets is not named at any point in these allegations. FAC ¶¶ 443-468. Nor do they contain a single date. *Lancaster Com. Hosp.,* 940 F.2d at 405.

- **The "KBH Healthcare Consulting Scheme" Is Untethered from Any Injury, and Plaintiff Does Not Allege Delayed Discovery**

    This purported "scheme" does not allege to be a freestanding fraud against Borrego, but rather "on information and belief" a manner in which Ms. Hebets was compensated by certain other defendants. FAC ¶¶ 469-470.

    The foregoing, statute of limitations issues are predicated entirely on plaintiff's own allegations. No generic allegation of "concealment" or invocation of "the discovery rule"

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

unadorned by more detailed explanations can create a plausible opposing inference contrary to plaintiff's specific allegations about the timeline. *Twombly,* 550 U.S. at 555.[9] Insofar as plaintiff's claims and "schemes" simply omit any timeline describing *when* fraud happened and *when* it was injured, the allegations simply fail for failure to satisfy Rule 9(b). *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991). As a whole, the claims are appropriately dismissed.

### IV. THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE ANY REMAINING CLAIMS AGAINST MS. HEBETS.

Plaintiff's defense of the four remaining claims against Ms. Hebets (RICO, False Promise, Unjust Enrichment, and Conversion) fail to allege essential elements. Plaintiff's derivative claims likewise fail.

#### A. Plaintiff's Defense of Its False Promise Claim Is Predicated Upon a False Assertion Without Any Basis In the Amended Complaint's Allegations.

Ms. Hebets' Motion argued that plaintiff had not alleged any false promise that could support a claim against her. Motion at 24. Plaintiff responds by asserting that "Karen Hebets, Wallis, and Board Insiders all promised the full Board that the Dental MSO proposal would be abandoned, then proceeded to enter into the Dental MSA with Premier. (*Id.* ¶ 84.)" Oppn at 34. However, the Amended Complaint contains no such alleged promise and paragraph 84 has nothing to do with Ms. Hebets. In fact, the Amended Complaint does not allege that Karen Hebets had *any role whatsoever* in the pursuit of the Dental MSA. Because the Amended Complaint *does not* allege that Ms. Hebets made any promise that could support a claim for False Promise, said claim must be dismissed. *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060 (2012) (describing necessity of promise).

#### B. The RICO Claim Fails for Numerous Reasons.

Borrego similarly fails to allege a "pattern of racketeering" to support its RICO claim.

---

[9] Nor is plaintiff's assertion in a footnote that "the statute of limitations issue has already been decided" correct. *See* Oppn at 19 n 6. The decision cited by plaintiff related to a *different* pleading involving a much narrower set of the lease-related claims – none of which Ms. Hebets is alleged to be involved in and which hardly comprise the substance of plaintiff's claims here and now.

under 18 U.S.C. § 1962(c). As other defendants with whom Ms. Hebets joined have persuasively argued, the putative RICO allegations fail to address the "single victim" line of cases. *See, e.g.,* Dkt 179-1 at 14-15. Rather than address the controlling cases raised by Dr. Hawatmeh, plaintiff *concedes* it is the only alleged victim, and purports that its description of putative "schemes" saves the day. Oppn. At 27 n.10. But those descriptions do not render this a RICO case. Dkt. 195 at 6-7.  On this basis alone, plaintiff's RICO claim is appropriately dismissed.

Nor does plaintiff allege predicate offenses to support a RICO Claim. "predicate acts alleging fraud must be pleaded with particularity." *In re Wellpoint Out-Of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1036 (Cal. C. D. 2011). Even if plaintiff's "schemes" could comprise a pattern of racketeering, plaintiff fails to allege them with particularity. As discussed above, the putative "schemes" are merely an amalgam of allegations untethered to specific fraud or injury, rarely describing *who* said *what* and *when* in a manner constituting a crime, and overwhelmingly barred by the statutes of limitations.

Furthermore, plaintiff fails to allege Ms. Hebets directed the putative enterprise except insofar as every Borrego employee might apparently be implicated by mere association. But that does not suffice. "[M]ore is required than 'simply being involved,' and '[s]imply performing services for the enterprise does not rise to the level of direction.' " *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152 (C.D. Cal. 2016) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)). Nor does it suffice to allege, as plaintiff impliedly does against Ms. Hebets, that a defendant "failed to stop illegal activity." *Id.* (quoting *Walter*, 538 F.3d at 1248).

Plaintiff's RICO Conspiracy claim fairs no better. Having failed to plead a substantive RICO violation, plaintiff cannot pursue a RICO Conspiracy claim. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d at 367 n.8 (9th Cir. 1992).

Nor does plaintiff allege Ms. Hebets knowingly agreed to facilitate a RICO

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

enterprise. *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005). Plaintiff defends is threadbare allegations by asserting that it need not allege specific fraudulent statements against every member of the purported conspiracy, but the *best case* it can muster to support the its claim under Rule 9(b) is *Swartz v. KPMG LLP*. Oppn at 20. But *Swartz* is a case in which the Ninth Circuit <u>affirmed the dismissal of a RICO claim</u> for failure to comply with Rule 9(b) much like at issue here. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Specifically, the Ninth Circuit found in Swartz that the plaintiff had "patently fail[ed]" to comply with Rule 9(b) because it "merely lump[ed] multiple defendants together." *Id.* at 764-65. The complaint further failed to provide a "factual basis" for its threadbare assertions that the defendants were active participants in a conspiracy with each other. *Id.* at 765. Thus, *Swartz* reinforces the necessity of dismissal here. As in *Swartz,* plaintiff merely lumps Ms. Hebets in with an invented group of "Borrego Insiders" without any facts plausibly indicating she joined a conspiracy knowing its object was to operate as a RICO enterprise.

Although the state law claims similarly fail, Ms. Hebets joins others in the assertions that this Court should decline to exercise supplemental jurisdiction over state law claims insofar as any survive.

**C. The Conversion Claim Fails for Failure to Identify Anything Taken.**

Plaintiff defends Conversion Claim by asserting first that it need only allege a sum "capable of identification" to survive a motion to dismiss and that, as to Ms. Hebets, the claim involves receipt of "$2 million of the funds Premier siphoned from Borrego [and paid by Premier to KBH Healthcare]. (Id. ¶478.)" and "receiving an above-market salary of nearly $300,000, appraised by her brother-in-law through sham salary evaluations. (Id. ¶¶408-9, 361.)." Oppn at 36. As an initial matter, plaintiff's opposition is the first time those transactions have been tethered to the Conversion claim. In any event, neither suffices to survive Ms. Hebets' motion.

As it relates to Ms. Hebets' salary, plaintiff *still* does not identify the amount which

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

11

was purportedly excessive and alleges it varied over the years. However, if it plaintiff did allege an identifying amount in excess, plaintiff fails to allege any "ownership of or right to possess" Ms. Hebets' salary. *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Plaintiff consented to paying Ms. Hebets her salary and plaintiff does not allege that her salary was taken without consent. However, lack of consent is a required element of conversion because "there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking." *Id.* Thus, Ms. Hebets' salary cannot form the basis of a conversion claim.

The purported payment from Premier to KBH fares no better. This alleged conversion fails the foregoing analysis three times over because plaintiff does not allege that Ms. Hebets dispossessed Borrego of the money, if any, she received from KBH. Rather, plaintiff alleges that Borrego consented to payments to Premier through a Dental MSA contract, FAC ¶ 85, then "on information and belief" some unidentified amount of that money comprised Premier's payment to KBH, *id.* ¶ 470, in which Karen Hebets had partial ownership stake, *id.* ¶ 472. Plaintiff does not even allege that Ms. Hebets ever received the money. But, even if plaintiff could show she received money from KBH, plaintiff does not allege that it retained "ownership of or a right to possess" the money at that point or that it had not consented when it first parted with its ownership – two required elements for conversion. *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

### D. The Unjust Enrichment, UCL, and Conspiracy Claims Similarly Fail Because They Are Devoid of Independent Substance.

Plaintiff fleetingly asserts that it would be inequitable for defendants to retain money obtained via "the alleged schemes." However, for the reasons set forth in Ms. Hebets' Motion and herein, plaintiff simply fails to allege that Ms. Hebets obtained any money through any purported scheme.

Similarly, Plaintiff concedes that the UCL claim is predicated upon its RICO and

MEMORANDUM IN SUPPORT OF KAREN HEBETS' MOTION TO DISMISS

state law claims and that the Conspiracy claim is "not an independent claim." Motion at 42-43. Accordingly, just as plaintiff's other claims fail, these too should be dismissed.

## V.     CONCLUSION

For the foregoing reasons and those in which Ms. Hebets joins, the claims against Ms. Hebets should be dismissed.

Respectfully submitted,

Dated:  June 23, 2023     By:     */s/ Marcus S. Bourassa*
MARCUS S. BOURASSA
TIMOTHY A. SCOTT
McKenzie Scott PC
Attorneys for Karen Hebets