1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California Nonprofit Public Benefit Corporation,<br><br>          Plaintiff,<br>v.<br>KAREN HEBETS, et. al.,<br><br>          Defendants. | Case No.: 3:22-cv-01056-RBM-SBC<br><br>**ORDER GRANTING THE DENTIST DEFENDANTS' MOTIONS TO DISMISS**<br><br>**[Docs. 223, 225, 227–28, 232, 234, 236–38, 245–46]** |

  Plaintiff Borrego Community Health Foundation ("Plaintiff") filed a Second Amended Complaint ("SAC") asserting 73 causes of actions against 39 defendants. (Doc. 217 ["SAC"].) In the SAC, Plaintiff alleges that it "was a California nonprofit public benefit corporation operating a Federally Qualified Health Center ['FQHC']" that provided "healthcare services to historically underserved areas of San Diego, Riverside, and San Bernadino counties." (SAC ¶ 1.)[1] Plaintiff then alleges that "individuals and entities both inside and outside of [Plaintiff] siphoned off money from [Plaintiff.]" (*Id.* ¶ 2.) These

---

[1] The Court cites the paragraph numbers of the SAC and the CM/ECF electronic pagination for other citations unless otherwise noted.

1

individuals and entities are the named defendants in this action.

Pending before the Court are seven motions to dismiss the SAC made by various Defendants or groups thereof. This Order addresses two motions to dismiss brought by two dentist defendants and their entities, as well as numerous joinders filed by additional dentist defendants, (collectively, the "Dentist Defendants") seeking to join the arguments presented in the two noticed motions (the "Dentist Defendants' MTDs").[2] (*See* Docs. 223, 225, 227–28, 232, 234, 237–38, 245–46.) As each of the Dentist Defendants played a comparable role in the fraudulent schemes alleged by Plaintiff, the Court addresses the Dentist Defendant MTDs together.

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Dentist Defendants' MTDs are **<u>GRANTED</u>**, and the Dentist Defendants are **<u>DISMISSED</u>** from this action **<u>with leave to amend</u>**.

## I.    <u>FACTUAL BACKGROUND</u>

### A.    The Contract Dental Schemes[3]

As the Court thoroughly explains in its Order (1) Granting Defendants Premier, Daryl Priest, Nicholas Priest, Travis Lyon's Motion to Dismiss [Doc. 231]; (2) Granting Defendant Karen Hebets' Motion to Dismiss and Denying as Moot Her Alternative Motions for a More Definite Statement and to Strike Allegations [Doc. 239]; (3) Granting

---

[2] The Dentist Defendants and their entities are Husam E. Aldairi, D.D.S.; Aldairi D.D.S., Inc.; Ayed Hawatmeh, D.D.S.; Hawatmeh Dental Group, P.C.; Alborz Mehdizadeh, D.D.S.; Alborz Mehdizadeh, Inc.; Jilbert Bakramian, D.D.S.; Mohammed Al Tekreeti, D.D.S.; Magaly Velasquez, D.D.S.; Magaly M. Velasquez D.D.S. Professional Dental Corp.; Aram Arakelyan, D.D.S.; New Millennium Dental Group Of Aram Arakelyan, Inc.; Michael Hoang, D.M.D.; Waleed Stephan, D.D.S.; W.A. Stephan, A Dental Corporation; Santiago Rojo, D.D.S.; Santiago A. Rojo, D.D.S., Inc.; Marcelo Toledo, D.D.S.; Marcelo Toledo, D.D.S., Inc.; Marlene Thompson, D.D.S.; Marlene Thompson, D.D.S., Inc.; Douglas Ness, D.D.S.; and Ness Dental Corporation.

[3] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court.

Defendant Mikia Wallis' Motion to Dismiss [Doc. 230]; and (4) Granting Defendants Harry Ilsley, Dennis Nourse, Mike Hickok, And Chuck Kimball's Motion To Dismiss [Doc. 226] ("Prior Order") (Doc. 299), Plaintiff alleges various fraudulent schemes perpetrated by the named Defendants.[4]  Several of these schemes involve Plaintiff's contract dental program, in which Plaintiff entered "into contracts with individual dentists and/or their practices" and, "[u]nder those contracts, the contracted dentists agreed to provide certain dental services to eligible patients of [Plaintiff]" (the "Contract Dental Schemes").  (SAC ¶ 103.)  "Those services would then be billed to Medi-Cal by [Plaintiff]," and "[Plaintiff], in turn, [paid] the dentist a fee for the dental services rendered." (*Id.*)  The Court summarizes the allegations pertinent to the Dentists Defendants here.

### 1.     The Premier Scheme

On March 1, 2016, Bruce Hebets and Defendant Premier executed a Management Services Agreement for Plaintiff's contract dental program (the "Dental MSA").  (*Id.* ¶ 121.)  "Pursuant to the terms of the Dental MSA, [Plaintiff] was to pay [Defendant] Premier $5 per participating patient visit to any contract dentist for the first 8,000 visits, then $25 per participating patient visit thereafter.  In return, [Defendant] Premier, by and through [Defendants] Daryl Priest, Nick Priest, and Travis Lyon, agreed to provide the services to [Plaintiff], including … claims management and processing … ." (*Id.* ¶ 130.) Claims management and processing included "'scrubbing' the contract dental claims for documentation errors or inconsistencies … ." (*Id.*)[5]

---

[4] The Court incorporates the detailed summary set forth in its prior order here.  (Doc. 299 at 3–17.)

[5] The Dental MSA underwent two amendments on or about December 22, 2016 and July 1, 2017, respectively.  (SAC ¶ 131.)  The first amendment extended the term of the Dental MSA for five years beginning on January 1, 2017, subject to an automatic renewal of five years.  (*Id.* ¶ 132.)  The first amendment also removed the provision allowing Plaintiff to terminate the agreement without cause.  (*Id.*)  The second amendment "obligated [Plaintiff] to pay Premier $25 per visit, starting at the first visit rather than the previous term of $5

3

### 2. The Fraudulent Dental Billing Scheme

As part of the Dental MSA, Defendant Premier, by and through Defendants Daryl Priest, Nick Priest, and Travis Lyon, engaged and reached out to new dental providers for the contract dental program. (*Id.* ¶ 171.) They were also responsible for training the dentists on how to properly submit their claims to Defendant Premier for payment. (*Id.* ¶ 172.) Plaintiff alleges that Defendants Premier, Daryl Priest, Nick Priest, and Travis Lyon coached the contract dentists on how to fraudulently bill Plaintiff. (*Id.* ¶ 178.)

## B. The Dentist Defendants

Plaintiff alleges that the Dentist Defendants participated in Plaintiff's contract dental program either as a provider or sub-provider and were "*involved in [Plaintiff's] operations by providing dental services* to [Plaintiff's] patients." (*Id.* ¶¶ 187, 209, 230, 242, 251, 263, 271, 278, 285, 291, 300, 314, 321 (emphasis added).)

### 1. Defendants Husam Aldairi and Mohammed Al Tekreeti

On or about May 27, 2016 and May 29, 2018, Defendant Husam Aldairi, both individually and through his company, Aldairi D.D.S., Inc., entered into written dental services agreements with Plaintiff, in which Defendant Aldairi agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Aldairi for those services. (*Id.* ¶ 185.) By executing the dental services agreements, Defendant Aldairi promised to practice dentistry in accordance with all federal, state, and local laws; all regulations; and all generally accepted principles in the practice of dentistry. (*Id.* ¶ 188.) Defendant Aldairi also agreed to prepare, establish, and maintain administrative, financial, and patient records.[6] (*Id.*)

Notwithstanding the dental services agreements, Defendant Aldairi submitted false

---

per visit for the first 8,000 visits." (*Id.* ¶ 133.) Plaintiff alleges that "[t]wenty-five dollars per claim was an unreasonably high price." (*Id.* ¶ 141; *see also id.* ¶ 158.)

[6] Each of the dental services agreements has the same terms and conditions. The Court will not repeat the terms and conditions in the sections below.

4

and fraudulent bills. (*Id.* ¶ 189.) In September 2020, after Defendant Aldairi had failed his prior audit, Plaintiff re-audited him. (*Id.* ¶ 195.) The results of the re-audit indicated that he "had … (1) bill[ed] excessive patient visits, including falsifying appointment schedules; (2) fail[ed] to maintain adequate documentation to support billing; (3) falsif[ied] medical records; (4) perform[ed] services that lacked medical necessity; (5) provid[ed] services that fell below the standard of care; (6) provid[ed] excessive services; and (7) generat[ed] inaccurate billing records, including billing for services not rendered, upcoding, … splitting services, and billing for services rendered by another provider [or] providers not enrolled in Medi-Cal." (*Id.* ¶ 196.) For example, Defendant Aldairi's patient charts demonstrated instances of patients coming to his office several days in a row when patient scheduling records did not support that such frequent visits took place. (*Id.* ¶ 197.) Defendant Aldairi even billed procedures when his office was closed for Thanksgiving. (*Id.*; *see also id.* ¶¶ 198–204 (providing additional examples of fraudulent billing).)

On or about August 7, 2017, Defendant Aldairi hired Defendant Mohammed Al Tekreeti to provide dental services to Plaintiff's patients. (*Id.* ¶ 284.) Defendant Al Tekreeti submitted false or fraudulent bills. (*Id.* ¶ 286.) "For example, on or about May 2019, [Defendant] Al Tekreeti billed [Plaintiff] for a partial denture for teeth which supporting documentation indicated were never prepared for dentures." (*Id.*)

## 2. Defendant Ayed Hawatmeh

On or about October 18, 2017, Defendant Ayed Hawatmeh, both individually and through his company, Hawatmeh Dental Group, P.C., entered into a written dental services agreement with Plaintiff, in which Defendant Hawatmeh agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Hawatmeh for those services. (*Id.* ¶ 207.) Notwithstanding the dental services agreement, Defendant Hawatmeh submitted false and fraudulent bills. (*Id.* ¶ 211.) For example, Defendant Hawatmeh routinely billed for several crowns instead of a single, non-covered bridge. (*Id.* ¶ 212.) "[O]n both May 29, 2018 and June 2, 2018, Hawatmeh billed [Plaintiff] for services performed on a tooth the patient no longer had at the time of service." (*Id.* ¶ 213.) "[O]n

March 12, 2018, Hawatmeh submitted claims for payment indicating one patient received treatment from him" "54 times within an 86-day period." (*Id.* ¶ 214; *see id.* ¶¶ 214–16 (identifying additional examples).)

### 3. Defendant Alborz Mehdizadeh

On September 28, 2016 and December 11, 2018, Defendant Alborz Mehdizadeh, both individually and through his company Alborz Mehdizadeh, Inc., entered into written dental services agreements with Plaintiff, in which Defendant Mehdizadeh agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Mehdizadeh for those services. (*Id.* ¶ 228.) Notwithstanding the dental services agreement, Defendant Mehdizadeh submitted false and fraudulent bills. (*Id.* ¶ 232.) For example, Defendant Mehdizadeh billed for patients visits that either never occurred or were conducted by providers that were not disclosed to Plaintiff. (*Id.* ¶ 233.) He billed for 146 patients he claimed to have seen on Saturday, November 16, 2019. (*Id.*) Defendant Mehdizadeh also billed for 29 surgical extractions for one patient over a sixth-month period. (*Id.* ¶ 234.) Defendant Mehdizadeh also submitted bills for the same service multiple times on at least three occasions. (*Id.* ¶ 236.)

### 4. Defendant Magaly M. Velasquez

On or about November 5, 2014, Defendant Magaly M. Velasquez, both individually and through her company Magaly M. Velasquez D.D.S., Professional Dental Corp., entered into a written dental services agreement with Plaintiff, in which Defendant Velasquez agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Velasquez for those services. (*Id.* ¶ 240.) Notwithstanding the dental services agreement, Defendant Velasquez submitted false and fraudulent bills. (*Id.* ¶ 244.) For example, Plaintiff alleges that Defendant Velasquez submitted 150 duplicative claims. (*Id.* ¶ 245 (including bullet point list of duplicative claims).) Plaintiff also alleges that Defendant Velasquez billed for excessive visits, including "4,552 instances where [Defendant] Velasquez billed for more than five visits for the same patient in a seven-day period." (*Id.* ¶ 246.)

6

### 5.    Defendants Aram Arakelyan and Jilbert Bakramian

On November 17, 2016, November 18, 2018, and November 29, 2018, Defendant Aram Arakelyan, both individually and through his company New Millennium Dental Group of Aram Arakelyan, Inc., entered into written dental services agreements with Plaintiff, in which Defendant Arakelyan agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Arakelyan for those services.  (*Id.* ¶ 245.) Notwithstanding the dental services agreements, Defendant Arakelyan submitted false and fraudulent bills.  (*Id.* ¶ 253.)  For example, in 2019, Defendant Arakelyan billed for services on teeth that the patients did not have.  (*Id.*)

Defendant Arakelyan hired Defendant Jilbert Bakramian to provide dental services to Plaintiff's patients.  (*Id.* ¶ 290.)  Defendant Bakramian also submitted false or fraudulent bills.  (*Id.* ¶ 292.)  "For example, … on or about January 2019, [Defendant] Bakramian billed [Plaintiff] for a filling on a tooth which x-rays noted that the patient did not have at the time of service[.]"  (*Id.*; *see also id.* ¶¶ 292—96 (identifying additional examples of fraudulent billing).)

### 6.    Defendant Michael Hoang

On or about November 28, 2018, Defendant Michael Hoang entered into a written dental services agreement with Plaintiff, in which Defendant Hoang agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Hoang for those services.  (*Id.* ¶ 261.)  Notwithstanding the dental services agreement, Defendant Hoang submitted false and fraudulent bills.  (*Id.* ¶ 265.)  For example, Defendant "Hoang represented he saw one patient 10 times in a 30 day period[,]" which Plaintiff alleges is not supported by the patient record or schedules.  (*Id.* ¶ 267.)

### 7.    Defendant Waleed Stephan

On October 1, 2016, Defendant Waleed Stephan, both individually and on behalf of his company W.A. Stephan, A Dental Corporation, entered into a written dental services agreement with Plaintiff, in which Defendant Stephan agreed to provide primary dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Stephan for those

services.  (*Id.* ¶ 269.)  Notwithstanding the dental services agreement, Defendant Stephan submitted false and fraudulent bills.  (*Id.* ¶ 265.)  For example, "on August 13, 2019, [Defendant] Stephan billed [Plaintiff] for crowns on teeth numbers 12, 13 and 14" when "the patient care plan documents that a singular bridge was put in place during … one appointment."  (*Id.* ¶ 273.)

### 8.    Defendant Santiago Rojo

On March 29, 2017, Defendant Santiago Rojo, both individually and through his company Santiago A. Rojo, D.D.S., Inc., entered into a written dental services agreement with Plaintiff, in which Defendant Rojo agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Rojo for those services.  (*Id.* ¶ 276.) Notwithstanding the dental services agreement, Defendant Rojo submitted false and fraudulent bills.  (*Id.* ¶ 265.)  For example, throughout 2020, "[Defendant] Rojo billed for visits in California even though he was living in Florida[.]"  (*Id.* ¶ 281.)  "[Defendant] Rojo also engaged in excessive billing and 'claim splitting.'"  (*Id.* ¶ 283.)  "[Defendant] Rojo represented he saw one patient for 12 days in a 23-day period."  (*Id.*)

### 9.    Defendant Marcelo Toledo

On June 16, 2015, Defendant Marcelo Toledo, both individually and through his company Marcelo Toledo, D.D.S., Inc., entered into a written dental services agreement with Plaintiff, in which Defendant Toledo agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Toledo for those services.  (*Id.* ¶ 298.) Notwithstanding the dental services agreement, Defendant Toledo submitted false and fraudulent bills.  (*Id.* ¶ 302.)  For example, "on or about July 2018, [Defendant] Toledo billed for services rendered to a patient during one scheduled visit as though they occurred over the cour[se] of four visits[.]"  (*Id.* ¶ 303; *see also id.* ¶¶ 303–10 (identifying additional examples of fraud).)

### 10.    Defendant Marlene Thompson

On or about April 18, 2013, Defendant Marlene Thompson, both individually and through her company Marlene M. Thompson, D.D.S., Inc., entered into a written dental

services agreement with Plaintiff, in which Defendant Thompson agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Thompson for those services. (*Id.* ¶ 312.) Notwithstanding the dental services agreement, Defendant Thompson submitted false and fraudulent bills. (*Id.*) Specifically, Defendant Thompson billed for services performed by Maura Tuso, who was suspended from participating in Medi-Cal. (*Id.* ¶¶ 315–16.)

### 11. Defendant Douglas Ness

On or about May 2, 2016, Defendant Douglas Ness, both individually and through his company Ness Dental Corporation, entered into a written dental services agreement with Plaintiff, in which Defendant Ness agreed to provide dental services to Plaintiff's patients, and Plaintiff agreed to pay Defendant Ness for those services. (*Id.* ¶ 319.) Notwithstanding the dental services agreement, Defendant Ness submitted false and fraudulent bills. (*Id.*) For example, "[r]ather than submit one bill for the cleaning, [Defendant] Ness submitted two claims, the first asserting he provided a dental cleaning to the left side of the patient's mouth, then a month later provided a dental cleaning to the right side of the patient's mouth." (*Id.* ¶ 323.) Defendant Ness also submitted bills for Maura Tuso and other suspended dentists in his own name. (*Id.* ¶¶ 324–27.)

## C. The Dentist Defendants' Motions to Dismiss

On April 29, 2024, Defendants Ayed Hawatmeh and Hawatmeh Dental Group, P.C. (the "Hawatmeh Defendants") filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (the "Hawatmeh MTD"). (Doc. 223.) In the Hawatmeh MTD, the Hawatmeh Defendants argue that Plaintiff lacks Article III standing, that Plaintiff's claims are time-barred, that Plaintiff has failed to plead viable Racketeer Influenced and Corrupt Organization Act ("RICO") claims against the Hawatmeh Defendants, and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (Doc. 223-1 at 5–21.) Defendant Ayed Hawatmeh also argues that he should be dismissed in his individual capacity because Plaintiff failed to plead an alter ego theory of liability, agency, or aiding/abetting. (*Id.* at 21–24.) Lastly, the Hawatmeh Defendants argue that Plaintiff's

9

SAC should be dismissed with prejudice.  (*Id.* at 25.)

On April 29, 2024, Defendants Husam E. Aldairi and Aldairi D.D.S., Inc. (Doc. 227); Defendants Douglas Ness and Ness Dental Corporation (Doc. 228); and Defendant Michael Hoang (Doc. 232) joined the Hawatmeh MTD.

On April 30, 2024, Defendants Waleed Stephan, W.A. Stephan, A Dental Corporation, Marcelo Toledo, and Marcelo Toledo, D.D.S., Inc. (Doc. 234); Defendants Santiago Rojo and Santiago A. Rojo, D.D.S. Inc. (Doc. 237); and Defendants Magaly Velasquez and Magaly M. Velasquez D.D.S. Professional Dental Corp. (Doc. 238) joined the Hawatmeh MTD.

On May 15, 2024, Defendants Aram Arakelyan, New Millennium Dental Group of Aram Arakelyan, Inc., Alborz Mehdizadeh, Alborz Mehdizadeh, Inc., and Jilbert Bakramian joined the Hawatmeh MTD.  (Doc. 245.)

On May 23, 2024, Defendants Marlene Thompson and Marlene Thompson, D.D.S., Inc. joined the Hawatmeh MTD despite having already answered Plaintiff's SAC on April 29, 2024.[7]  (Doc. 246; *see* Doc. 224.)

On April 29, 2024, before she joined the Hawatmeh MTD, Defendant Magaly Velasquez and Magaly M. Velasquez D.D.S. Professional Dental Corp. also filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (the "Velasquez MTD").[8]  (Docs. 225, 236.)  In the Velasquez MTD, Defendant Velasquez argues that Plaintiff failed to plead a viable RICO claim against Defendant Velasquez, that Defendant Velasquez should be dismissed in her individual capacity, and that the SAC should be dismissed with prejudice. (Doc. 225-1 at 5–10.)

On April 29, 2025, Defendant Mohammed Al Tekreeti answered Plaintiff's SAC. (Doc. 233.)  Defendant Al Tekreeti did not join the Hawatmeh MTD or the Velasquez

---

[7] Despite this delay, the Court will consider the arguments set forth in the Hawatmeh MTD as they pertain to Defendant Marlene Thompson and Marlene Thompson, D.D.S., Inc.

[8] Defendant Velasquez filed an Amended Notice of Motion on April 30, 2024.  (Doc. 236.)

MTD.

Because the arguments in the Hawatmeh MTD and the Velasquez MTD overlap in many respects, the Court will address them concurrently.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis in original) (citations omitted). "[W]hen a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014)).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

3:22-cv-01056-RBM-SBC

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## C. Federal Rule of Civil Procedure 9

As set forth in the Court's Order Granting Motions to Dismiss Plaintiff's First Amended Complaint ("FAC Order"), Federal Rule of Civil Procedure Rule 9(b) applies to claims based on fraud. (Doc. 215 [FAC Order] at 9.) A plaintiff must plead the elements of fraud with the particularity demanded by Rule 9(b), outlining the who, what, when, and where of the alleged fraudulent acts. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066

(9th Cir. 2004). "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading of that claim … must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). "Given the factual basis for all of Plaintiff's claims are the twelve fraudulent schemes, all must meet Rule 9(b)'s particularity requirement." (Doc. 215 [FAC Order] at 9.)

## III.    **DISCUSSION**

### A.    **Article III Standing**

Plaintiff must demonstrate it has constitutional standing under Article III of the U.S. Constitution. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). To do so, Plaintiff must plead: "(i) injury-in-fact—plaintiffs must allege concrete and particularized and actual or imminent harm to a legally protected interest; (ii) causal connection—the injury must be fairly traceable to the conduct complained of; and (iii) redressability—a favorable decision must be likely to redress the injury-in-fact." *Barnum Timber v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011) (internal quotation marks and citations omitted).

In the Hawatmeh MTD, joined by the other Dentist Defendants, Defendant Hawatmeh argues that Plaintiff cannot establish injury-in-fact, and therefore lacks Article III standing, because it has been fully compensated for its injury. (Doc. 223-1 at 12–15.) Specifically, Defendant Hawatmeh asserts that Medi-Cal reimbursed Plaintiff for the Dentist Defendants' allegedly fraudulent claims and that Plaintiff retained a handsome profit. (*Id.* at 13–14.)

Plaintiff responds that "a third-party's partial reimbursement or payment to a plaintiff" does not "defeat Article III standing" and that "such a result would unjustly reward wrongdoers when an injured party receives reimbursement through an insurance or indemnification agreement." (Doc. 248 at 16.) Plaintiff also responds that "[Plaintiff] paid the Dentist Defendants before it received any payment from Medi-Cal, if it received any payment from Medi-Cal at all" and "that [Defendant] Premier failed to obtain recoupment

1  from the Dentist Defendants when Medi-Cal did not pay [Plaintiff] for these claims[.]"

2  (*Id.*)  Plaintiff explains that "[Plaintiff] improperly paid [Defendant] Premier $25[;]" that

3  "Medi-Cal ultimately issued a payment suspension, forcing [Plaintiff] to offer medical and

4  dental services for no payment[;]" that Plaintiff was forced to hire a compliance monitor

5  for $2.7 million; and that Plaintiff had "to close two of its clinics and subsequently file for

6  bankruptcy."  (*Id.*)

7      As a preliminary matter, the Court is not persuaded by Plaintiff's arguments that rely

8  upon Defendant Premier's alleged misconduct when it is the Dentist Defendants' alleged

9  misconduct that is at issue here.  However, the Court agrees with Plaintiff that, at this stage,

10  it has adequately alleged additional injury-in-fact beyond the subsequently reimbursed

11  payments made to the Dentist Defendants, e.g., that Plaintiff was forced to hire a

12  compliance monitor for $2.7 million.  *See Bowen*, 118 F.4th at 1144.  Thus, the Court finds

13  that Plaintiff has adequately alleged Article III standing at this time.  However, as set forth

14  below (*see* Section III.B), Plaintiff must also establish statutory standing.

## B.    Civil RICO Standing

16      In addition to Article III standing, Plaintiff must also establish statutory standing to

17  assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

18  U.S.C. §§ 1961–1968.   In response to Defendant Hawatmeh's Article III standing

19  argument, the Court issued an Order Requesting Supplemental Briefing Regarding Civil

20  RICO Statutory Standing ("Supp. Briefing Order") from all the parties to this action.  (Doc.

21  282.)  The parties then filed supplemental briefing on February 20, 2025, February 21,

22  2025, and February 24, 2025.  (*See* Docs. 284, 286–95.)

23      "Under RICO's civil enforcement mechanism, '[a]ny person injured in his business

24  or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any

25  appropriate United States district court and shall recover threefold the damages he sustains

26  and the cost of the suit, including a reasonable attorney's fees ... .'"  *Canyon Cnty. v.

27  Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (alterations in original) (quoting

28  18 U.S.C. § 1964(c)).  Therefore, "[t]o have standing under § 1964(c), a civil RICO

14

plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Id.* (quoting 18 U.S.C. § 1964(c)) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

### 1.    Injury to Business or Property

"To determine whether a plaintiff has sufficiently alleged that he has been 'injured in his business or property,' we must examine carefully the nature of the asserted harm." *Canyon Cnty.*, 519 F.3d at 975. "[The Ninth Circuit] requires that a plaintiff asserting injury to property allege 'concrete financial loss.'" *Id.* (quoting *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). "Financial loss alone, however, is insufficient. 'Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.'" *Id.* (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)).

In its supplemental briefing, Plaintiff broadly asserts that it has alleged injury to its business or property. (Doc. 294 at 9–16.) Plaintiff first argues that it has alleged numerous schemes that do not "touch on healthcare billing." (*Id.* at 11–12.) However, these schemes do not concern the Dentist Defendants, and the Court will not address them here.

Plaintiff then argues that Defendants' healthcare billing schemes directly and concretely injure Plaintiff in multiple ways. (*Id.* at 13–16.) First, Plaintiff asserts that Plaintiff paid the Dentist Defendants based on a fee schedule listing different prices for different dental services. (*Id.* at 13 (citing SAC, Ex. G, Add. B).) But Medi-Cal paid Plaintiff an inclusive, per encounter rate regardless of the number or value of services. (*Id.* (citing SAC ¶ 105).) Plaintiff concludes that the Dentist Defendants were therefore able to steal from Plaintiff without causing corresponding harm to Medi-Cal. (*Id.* at 13–14.) Plaintiff provides the following examples:

In the situation where a dentist … falsely billed … a deep cleaning of two

15

1    quadrants of the mouth in one visit ($140 for both quadrants) instead of a
2    regular cleaning for the whole mouth, [Plaintiff] paid the Dentist $140 instead
3    of $100. … When dentists billed [Plaintiff] for unnecessary (or fake)
4    complex extractions rather than simple extractions, [Plaintiff] paid the dentists
5    $165, rather than $100, for the service. [Plaintiff] is harmed by these
6    overpayments of $40 and $65 per service, respectively. However, Medi-Cal
7    is not harmed by these overpayments: it pays [Plaintiff] the same flat
8    encounter rate regardless of the excessive service by the dentist.

(*Id.* at 22 (citations omitted).) Second, Plaintiff asserts that it lost money on non-dental services when Medi-Cal suspended Plaintiff because of the Dentist Defendants' fraudulent conduct. (*Id.* at 14.) Third, Plaintiff asserts that it lost money on dental services not reimbursed by Medi-Cal after Plaintiff's suspension.[9] (*Id.*)

Although the allegations in Plaintiff's SAC are unclear, with this additional explanation, the Court is persuaded that, at this stage, Plaintiff has adequately alleged injury to business or property not subsequently reimbursed by Medi-Cal. *See Canyon Cnty.*, 519 F.3d at 975.

## 2.    "By Reason Of" the RICO Violation—Proximate Causation

"The Supreme Court has interpreted the phrase 'by reason of' in 18 U.S.C. § 1964(c) to require, as elements for a civil RICO recovery, both proximate and but-for causation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (footnote omitted) (citing *Holmes*, 503 U.S. at 268). Here, the Parties do not seem to dispute that the alleged fraudulent billing by the Dentist Defendants is a "but-for" cause of Plaintiff's alleged injuries. (*See e.g.*, Doc. 294 at 16–17; Doc. 290 at 4–5 (discussing proximate causation only).) The more significant question

---

[9] Plaintiff also identifies three additional injuries (*see* Doc. 294 at 14–15), but these alleged injuries do not alleviate the Court's concerns regarding civil RICO standing. For example, Plaintiff asserts that the Dentist Defendants billed multiple encounters to collect multiple times when the services could have been, or were performed, all at once. (*Id.* at 15.) However, Plaintiff also benefited from the Dentist Defendants billing for multiple encounters because they received a fixed fee from Medi-Cal for each encounter.

3:22-cv-01056-RBM-SBC

is whether Plaintiff has alleged proximate causation sufficiently to establish civil RICO standing.

"The requirement of proximate cause seeks to 'limit a person's responsibility for the consequences of that person's own acts.'" *Id.* (quoting same). "Put another way, 'the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct.'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)). "Thus, it 'demand[s] ... some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes*, 503 U.S. at 268). The Supreme Court in *Holmes* explained that the "direct relation" requirement is based upon three practical factors:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes*, 503 U.S. at 269–70 (footnote and internal citations omitted).

Plaintiff argues that its injuries are "by reason of" the Defendants' RICO violations. (Doc. 294 at 16–27.) First, Plaintiff argues that the schemes unrelated to healthcare billing (and therefore unrelated to the Dentist Defendants) directly defrauded Plaintiff. (*Id.* at 18–20.) As before (*see* Section III.B.I), the Court finds that these schemes do not concern the Dentist Defendants and will not address them here.

Second, Plaintiff argues that the "direct target and intention" of the healthcare billing schemes was to steal money from Plaintiff, not Medi-Cal. (Doc. 294 at 21.) Plaintiff emphasizes that the Dentist Defendants were able to steal from Plaintiff without causing corresponding harm to Medi-Cal. (*Id.* at 13–14, 22.) Plaintiff distinguishes this case from

17

the cases cited by the Court in its Supp. Briefing Order, where the Medicare/Medicaid programs were the direct target of the fraud, and where the plaintiffs consistently benefitted from the fraudulent schemes alleged. (*Id.* at 22–24.) Plaintiff also argues that this case presents no apportioning concerns, as Plaintiff is the only plaintiff, and asserts that Plaintiff is the proper Plaintiff to bring this challenge. (*Id.* at 24–27.[10])

While the Court remains concerned that proximate cause is clouded by the intervening, independent conduct of the non-dentist Defendants, with this additional explanation, the Court is persuaded that, at the pleading stage, Plaintiff has adequately alleged injury to business or property "by reason of" the Dentist Defendants' alleged RICO violations. *See Holmes*, 503 U.S. at 269–70.

## C.    Plaintiff's Civil RICO Claims

Plaintiff alleges the Dentist Defendants have violated two provisions of RICO. First, it alleges violations of 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Second, Plaintiff alleges violations of 18 U.S.C. § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

"[T]he survival of [Plaintiff's] claim under § 1962(c) [ensures] the survival of [its] claim under § 1962(d)." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir.2000)). As such, the Court addresses 18 U.S.C. § 1962(c) first.

---

[10] Plaintiff also notes that the California Department of Health Care Services ("DHCS" or "Medi-Cal") will be a primary beneficiary of its bankruptcy plan, further alleviating the Court's concern than Plaintiff is not the proper plaintiff to bring suit. (Doc. 294 at 7–8, n.1.)

1          **1.      18 U.S.C. § 1962(c)—Conducting the Affairs of a RICO Enterprise**

2          "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an

3   enterprise (3) through a pattern (4) of racketeering activity.'" *Odom*, 486 F.3d 547 (quoting

4   *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).   In the Hawatmeh MTD,

5   Defendant Hawatmeh argues that Plaintiff "has not alleged that [he] participated in the

6   operation or management of the alleged RICO enterprise" and that Plaintiff "has failed to

7   plead a pattern of racketeering because the alleged enterprise only targeted one victim,

8   [Plaintiff]."  (Doc. 223-1 at 20–25.)

9          **a)      Conduct—Element 1**

10         The Supreme Court has held that "'to conduct or participate, directly or indirectly,

11  in the conduct of such enterprise's affairs,' … one must participate in the operation or

12  management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)

13  (quoting 18 U.S.C. § 1962(c)).  In other words, "one must have some part in directing those

14  affairs." *Id.* at 179.  "Simply performing services for the enterprise does not rise to the

15  level of direction … ." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).  "Whether

16  [a defendant] rendered his services well or poorly, properly or improperly, is irrelevant to

17  the *Reves* test." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993).  Likewise, "[i]t is not

18  enough that [a defendant] failed to stop illegal activity, for *Reves* requires 'some degree of

19  direction.'" *Walter*, 538 F.3d at 1248 (quoting *Reves*, 507 U.S. at 179).

20         In the Hawatmeh MTD, Defendant Hawatmeh argues that, as alleged, Plaintiff is the

21  enterprise and, therefore, Plaintiff must plead that Defendant Hawatmeh participated in the

22  operation or management of Plaintiff.  (Doc. 223-1 at 20.)  He concludes that Plaintiff has

23  not, and cannot, plead such facts as he did not do anything other than perform and bill for

24  his own dental services.  (*Id.* at 20–21.)  Defendant Hawatmeh notes that Plaintiff regularly

25  audited him and terminated his contract, undermining any claim that he cooperated with

26

27

28

the enterprise in any way.[11]  (*Id.* at 21.)

Plaintiff responds that "the SAC clearly demonstrates how the Hawatmeh Defendants were notified of the scheme by [the] Premier Defendants, and that after discussing how fraudulent bills could be submitted, the Hawatmeh Defendants adopted those practices." (Doc. 248 at 20–21.)  Plaintiff also asserts that "[t]he SAC makes clear that the Premier Defendants infiltrated [Plaintiff's] upper management, taking over the contract dental program and working alongside [Plaintiff's] CEO, CFO and VP of Business Affairs to submit fraudulent claims for payment."  (*Id.* at 21.)

As a preliminary matter, the Court finds that the arguments set forth in the Hawatmeh MTD apply with equal force to each of the Dentist Defendants, as the allegations against each of the Dentist Defendants are repetitious (*see* Section I.B (summarizing the allegations against each Dentist Defendant)).  For each of the Dentist Defendants, Plaintiff merely alleges that they were "*involved in [Plaintiff's] operations* by providing dental services to [Plaintiff's] patients." (SAC ¶¶ 187, 209, 230, 242, 251, 263, 271, 278, 285, 291, 300, 314, 321 (emphasis added).)  This allegation is conclusory and not sufficient to establish that the Dentist Defendants took part in managing or conducting the affairs of the enterprise—Plaintiff.

Further, Plaintiff's allegations that the Dentist Defendants were "coached" or "trained" to fraudulently bill by the other Defendants undermine any assertion that the Dentist Defendants participated in the operation or management of Plaintiff.  At most, Plaintiff alleges that the Dentist Defendants provided dental services to Plaintiff's patients under the terms of a dental services agreement.  As set forth above, "[s]imply performing services for the enterprise does not rise to the level of direction … ."  *Walter*, 538 F.3d at 1249.  Whether the Dentist Defendants rendered their services "improperly" is irrelevant. *Baumer*, 8 F.3d at 1344.

---

[11] In the Velasquez MTD, Defendant Velasquez makes the same arguments.  The argument appears to be copied directly from the Hawatmeh MTD.  (*See* Doc. 225-1 at 6–7.)

3:22-cv-01056-RBM-SBC

Finally, Plaintiff's argument that "the *Premier Defendants* infiltrated [Plaintiff's] upper management, taking over the contract dental program and working alongside [Plaintiff's] CEO, CFO and VP of Business Affairs to submit fraudulent claims for payment" (Doc. 248 at 21 (emphasis added)) does not persuade the Court that the Dentist Defendants, as opposed to the Premier-related Defendants, also "infiltrated" Plaintiff's upper management and had a role in managing or conducting Plaintiff's affairs.

### b)    Pattern of Racketeering—Elements 3 and 4

As set forth above, to be liable under § 1962(c), the enterprise must have engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined to be any crime listed within 18 U.S.C. § 1961(1), including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, as predicate acts under RICO. "[T]o constitute a 'pattern,' there must be at least two acts of racketeering activity within ten years of one another." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(5)). "However, while two predicate acts are required under the Act, they are not necessarily sufficient." *Id.* (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989)).

"A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Id.* (citing *H.J. Inc.*, 492 U.S. at 239). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241 (citation omitted). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

Additionally, the Ninth Circuit has "recognized that RICO's continuity requirement is not satisfied if plaintiffs have merely alleged 'a single fraud perpetrated on a single

21

victim.'" *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988) (quoting *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987)).  In other words, "when a plaintiff alleges only a single scheme with a single victim[,] it cuts against a finding of both closed-ended as well as open-ended continuity." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020) (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 365–67 (9th Cir. 1992)).

In the Hawatmeh MTD, Defendant Hawatmeh argues that Plaintiff's § 1962(c) claims should be dismissed because, as alleged, Plaintiff is the sole victim of the RICO enterprise.  (Doc. 223-1 at 24.)  Defendant Hawatmeh asserts that numerous district courts have dismissed civil RICO claims when there is only one victim.  (*Id.* (citing cases).)  Plaintiff responds that "the SAC alleges 11 different schemes, each delineating multiple acts taken by each defendant."  (Doc. 248 at 23.)  Regarding Defendant Hawatmeh, specifically, Plaintiff responds that he and his entity "engaged in several acts of misconduct, from 'split-billing' to submitting claims for services not rendered" and that he "submitted over 2,952 fraudulent claims for payment." (*Id.* (citing SAC ¶¶ 207–217, 219).)

Here, Plaintiff alleges that the Dentist Defendants engaged in false and fraudulent healthcare billing over a period of several years.  Plaintiff identifies this conduct as a single scheme—the Fraudulent Dental Billing Scheme.  Additionally, Plaintiff alleges, and adamantly argues in its supplemental briefing, that Plaintiff is the primary victim of the Fraudulent Dental Billing scheme.  (SAC ¶ 555 (alleging that Plaintiff is both the enterprise and the victim); Doc. 294 at 7 ("With regard to many of the alleged harms, Medi-Cal experienced no corresponding harm, and Borrego Health was the sole victim.  And, even in instances in which Medi-Cal, too, was overbilled, any impact on Medi-Cal was indirect and unintended by the Defendants."); *but see* SAC ¶ 585 (alleging that Plaintiff, the United States, and the State of California are victims of the schemes).)  As pled, the United States and the State of California are merely "incidental victims of the scheme." *Metaxas*, 503 F. Supp. 3d at 944.  Thus, Plaintiff has alleged a single scheme perpetrated by the Dentist

Defendants—the Fraudulent Dental Billing Scheme—against a single victim—Plaintiff—which cuts against a finding of continuity.[12] *Id.* at 941 (citing *Religious Tech. Ctr.*, 971 F.2d at 365–67 (9th Cir. 1992)).[13]

### 2.    18 U.S.C. § 1962(d)—Conspiracy

Because Plaintiff has failed to plead a violation of 18 U.S.C. § 1962(c) against the Dentist Defendants, Plaintiff has also failed to plead a violation of 18 U.S.C. § 1962(d) against the Dentist Defendants. *See Odom*, 486 F.3d at 547 (citing *Howard*, 208 F.3d at 751).

## D.    Plaintiff's State Law Claims

Because Plaintiff failed to state civil RICO claims against the Dentist Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the Dentist Defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [a state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Even if the Court were to exercise supplemental jurisdiction over Plaintiff's state law claims against the Dentist Defendants, Plaintiff has failed to allege alter ego liability against the individual Dentist Defendants. The Court finds that Plaintiff's alter ego allegations are conclusory, repetitive, and insufficient to state a claim against the individual Dentist Defendants. (*See* SAC ¶¶ 55–84 (repeating the same conclusory alter ego allegations for each of the individual Dentist Defendants and their entities).) *See also*

---

[12] As set forth in this Court's Prior Order, Plaintiff also failed to plead the existence of an enterprise—element 2—and predicate acts supporting a pattern of racketeering—elements 3 and 4. (*See* Doc. 299 at 40–42, 45–48, 50–53.)

[13] Because Plaintiff has failed to state civil RICO claims against the Dentist Defendants, the Court need not address the remaining arguments in the Dentist Defendants' MTD.

*Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements."); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.") (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)).

## IV.    **CONCLUSION**

Based on the foregoing, the Hawatmeh MTD (Doc. 223) and the Velasquez MTD (Docs. 225, 236) are **GRANTED**, and Plaintiff's claims against the moving Dentist Defendants— Husam E. Aldairi, D.D.S.; Aldairi D.D.S., Inc.; Ayed Hawatmeh, D.D.S.; Hawatmeh Dental Group, P.C.; Alborz Mehdizadeh, D.D.S.; Alborz Mehdizadeh, Inc.; Jilbert Bakramian, D.D.S.; Magaly Velasquez, D.D.S.; Magaly M. Velasquez D.D.S Professional Dental Corp.; Aram Arakelyan, D.D.S.; New Millennium Dental Group Of Aram Arakelyan, Inc.; Michael Hoang, D.D.S.; Waleed Stephan, D.D.S.; W.A. Stephan, A Dental Corporation; Santiago Rojo, D.D.S.; Santiago A. Rojo, D.D.S., Inc.; Marcelo Toledo, D.D.S.; Marcelo Toledo, D.D.S., Inc.; Marlene Thompson, D.D.S.; Marlene Thompson, D.D.S., Inc.; Douglas Ness, D.D.S.; and Ness Dental Corporation—are **DISMISSED**.[14]

While the Court doubts Plaintiff's ability to state a civil RICO claim against the Dentist Defendants, the Court grants Plaintiff leave to amend their claims against the Dentist Defendants.  Any amended complaint must be filed on or before **April 11, 2025**. Responses to any amended complaint must be filed on or before **April 25, 2025**.

---

[14] Defendant Al Tekreeti did not join the Hawatmeh MTD or the Velasquez MTD (*see* Doc. 233) and, therefore, is not dismissed from this action.  The Court notes, however, that the arguments set forth in the Hawatmeh MTD and the Velasquez MTD, as well as the reasoning set forth in this Order, apply with equal force to Plaintiff's claims against Defendant Al Tekreeti.  The Court encourages Plaintiff to proceed accordingly.

1     **IT IS SO ORDERED.**

2 DATE:  March 27, 2025

3

4

HON. RUTH BERMUDEZ MONTENEGRO

5 UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:22-cv-01056-RBM-SBC