UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California Nonprofit Public Benefit Corporation,<br><br>Plaintiff,<br>v.<br>KAREN HEBETS, et. al.,<br><br>Defendants. | Case No.: 3:22-cv-01056-RBM-SBC<br><br>**ORDER GRANTING THE JIM HEBETS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Doc. 222] |

Plaintiff Borrego Community Health Foundation ("Plaintiff") filed a Second Amended Complaint ("SAC") asserting 73 causes of actions against 39 defendants. (Doc. 217 ["SAC"].) In the SAC, Plaintiff alleges that it "was a California nonprofit public benefit corporation operating a Federally Qualified Health Center [('FQHC')]" that provided "healthcare services to historically underserved areas of San Diego, Riverside, and San Bernadino counties." (SAC ¶ 1.[1]) Plaintiff then alleges that "individuals and entities both inside and outside of [Plaintiff] siphoned off money from [Plaintiff.]" (*Id.* ¶

---

[1] The Court cites the paragraph numbers of the SAC and the CM/ECF electronic pagination for other citations unless otherwise noted.

2.) These individuals and entities are the named defendants in this action.

Pending before the Court are seven motions to dismiss the SAC made by various Defendants or groups thereof. This Order addresses the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants James ("Jim") Hebets and The Hebets Company (the "Jim Hebets MTD"). (Doc. 222.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Jim Hebets MTD is **GRANTED**, and Plaintiff's claims against Defendants Jim Hebets and The Hebets Company are **DISMISSED** from this action **with leave to amend**.

## I.  BACKGROUND[2]

### A.  Factual Background

As set forth in the Court's Order (1) Granting Defendants Premier, Daryl Priest, Nicholas Priest, Travis Lyon's Motion to Dismiss [Doc. 231]; (2) Granting Defendant Karen Hebets' Motion to Dismiss and Denying as Moot Her Alternative Motions for a More Definite Statement and to Strike Allegations [Doc. 239]; (3) Granting Defendant Mikia Wallis' Motion to Dismiss [Doc. 230]; and (4) Granting Defendants Harry Ilsley, Dennis Nourse, Mike Hickok, And Chuck Kimball's Motion To Dismiss [Doc. 226] ("Prior Order") (Doc. 299), Plaintiff alleges various fraudulent schemes perpetrated by the named Defendants in this action. The Court summarizes the schemes relevant to Defendants Jim Hebets and The Hebets Company (collectively, the "Jim Hebets Defendants") here.

Defendant Jim Hebets is an individual with his place of residence in Scottsdale, Arizona. (SAC ¶ 41.) Jim Hebets is the brother of Plaintiff's former CEO—Bruce Hebets. (*Id*.) "Defendant The Hebets Company is a Missouri Corporation with its principal place of business in Phoenix, Arizona. [Defendant] Jim Hebets is the President and Founder of The Hebets Company and has or had an ownership interest in The Hebets Company. The

---

[2] The Court's factual summary below reflects Plaintiff's factual and legal allegations in its SAC, not conclusions of fact or law by this Court.

Hebets Company provides accounting and consulting services and [holds itself out as an expert] in executive compensation to healthcare providers, including other FQHCs, in California and San Diego County." (*Id.* ¶ 42.) The Hebets Company's website "boasts of specializing in FQHCs and creating ways to increase executive compensation/benefits beyond what is specified in IRS code for qualified 403(b) or 457(b) plans." (*Id.* ¶ 456; *see also id.* ¶ 457.)

Plaintiff alleges that its former CEO—Bruce Hebets—and its former executives—Defendants Karen Hebets, Diana Thompson, and Mikia Wallis—received high salaries, bonuses, and/or allowances from Plaintiff. (SAC ¶¶ 407–10.) Plaintiff then alleges that its former executives and Board members "used [the Jim Hebets Defendants] to create a bogus evaluation of the compensation packages, concluding—unsurprisingly—that they were appropriate." (*Id.* ¶ 411; *see also id.* ¶ 454 (alleging that Defendants Karen Hebets, Mikia Wallis, and Diana Thompson collaborated with the Jim Hebets Defendants to review and approve sham, inflated salaries for Plaintiff's executives).)[3] When the sham fair market value analyses were presented to Plaintiff's Board of Executives ("Board"), Defendant Jim Hebets removed his name from the masthead, drafted documents without referencing himself, and did not mention his last name when introducing himself to conceal the obvious conflict of interest as Bruce Hebets' brother. (*Id.* ¶ 455.)

"On top of that, Bruce Hebets and [Defendant] Jim Hebets schemed to create a 162B Executive Bonus Plan that would pay Bruce Hebets and others additional compensation (a tax-free payment of $5,000 per month) while also siphoning millions to [Defendant] Jim Hebets' insurance company." (*Id.* ¶ 419; *see also id.* ¶ 459 (alleging that Bruce Hebets, and Defendants Diana Thompson and Mikia Wallis, "schemed with [Defendant] The

---

[3] In 2019, Plaintiff retained Compensation Resources, Inc. ("CRI") to review and analyze the compensation for 15 of Plaintiff's executives. (*Id.* ¶ 417.) On or about July 19, 2019, the CRI report concluded that the "Total Compensation Package … for [11] of [Plaintiff's] officers is currently above the high end of their respective Market Ranges of Reasonableness." (*Id.*)

Hebets Company to increase executive compensation through contributions through automatic 'bonuses' that were paid to 162B plans").)  Bruce Hebets and Defendant Karen Hebets then worked with Defendant The Hebets Company to "borrow" from their 162B accounts and transfer the funds into their checking accounts.  (*Id.* ¶ 460.)  When Defendant Jim Hebets praised the 162B plan to Plaintiff's Board in the spring or the summer of 2019, he only disclosed his last name when a non-defendant Board member asked.  (*Id.* ¶ 450.)

In order to persuade Plaintiff to continue to use the 162B plans, Defendant Jim Hebets falsely represented that the plans would not subject Plaintiff to tax penalties.  (*Id.* ¶ 463.)  "As of July 2020, [Plaintiff] was paying $240,000 per month for the 162B plans[,]" which is immensely disproportionate to the appropriate cost for such benefits."  (*Id.* ¶ 464.)

Plaintiff alleges that it "has only begun to scratch the surface of [Defendant] Jim Hebets' involvement in these [s]chemes."  (*Id.* ¶ 467.)  Plaintiff alleges that Defendant Jim Hebets met with Bruce Hebets and Daryl Priest "repeatedly," including on March 18, 2016 and February 27, 2018.  (*Id.*)

**B.     Procedural Background**

Plaintiff asserts **two** civil RICO causes of action against the Jim Hebets Defendants (*see* SAC at 211–12, 215) and **seven** state law causes of action against the Jim Hebets Defendants for fraudulent concealment, conversion, violations of Business & Professions Code § 17200, *et seq.*, conspiracy, unjust enrichment/restitution, intentional misrepresentation, and negligent misrepresentation.  (*Id.* at 255–59, 265–66, 268–70.)  These are the first, fifth, 56th, 58th, 63rd, 64th, 67th, 68th, and 69th causes of action, respectively.

On April 29, 2024, the Jim Hebets Defendants filed the Jim Hebets MTD.  (Doc. 222).  In their MTD, the Jim Hebets Defendants argue that Plaintiff's claims against the Jim Hebets Defendants based on conduct before July 9, 2018 are time barred (*see id.* at 19–21), that Plaintiff does not (and cannot) allege the necessary elements for its RICO claims (*see id.* at 22–30), that Plaintiff has not adequately pled its state law claims against the Jim

Hebets Defendants (*see id.* at 30–35), and that Plaintiff should not be given leave to amend its SAC (*see id.* at 35–35).

The Court addresses the arguments pertinent to this Order below.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N.*

*Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.     Federal Rule of Civil Procedure 9**

As set forth in the Court's Order Granting Motions to Dismiss Plaintiff's First Amended Complaint ("FAC Order"), Federal Rule of Civil Procedure Rule 9(b) applies to claims based on fraud. (Doc. 215 [FAC Order] at 9.) A plaintiff must plead the elements of fraud with the particularity demanded by Rule 9(b), outlining the who, what, when, and where of the alleged fraudulent acts. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading of that claim … must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). "Given the factual basis for all of Plaintiff's claims are the twelve fraudulent schemes, all must meet Rule 9(b)'s particularity requirement." (Doc. 215 [FAC Order] at 9.)

### III.     DISCUSSION

**A.     Civil RICO Standing**

Pursuant to the Court's Order Requesting Supplemental Briefing Regarding Civil RICO Statutory Standing (Doc. 282), the parties filed supplemental briefs on February 20, 2025, February 21, 2025, and February 24, 2025. (*See* Docs. 284, 286–95.)

"Under RICO's civil enforcement mechanism, '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fees … .'" *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (alterations in original) (quoting 18 U.S.C. § 1964(c)). Therefore, "[t]o have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Id.* (quoting 18 U.S.C. § 1964(c)) (citing *Holmes v. Sec.*

*Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

"To determine whether a plaintiff has sufficiently alleged that he has been 'injured in his business or property,' we must examine carefully the nature of the asserted harm." *Canyon Cnty.*, 519 F.3d at 975. "[The Ninth Circuit] requires that a plaintiff asserting injury to property allege 'concrete financial loss.'" *Id.* (quoting *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). "Financial loss alone, however, is insufficient. 'Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.'" *Id.* (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)).

"The Supreme Court has interpreted the phrase 'by reason of' in 18 U.S.C. § 1964(c) to require, as elements for a civil RICO recovery, both proximate and but-for causation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (footnote omitted) (citing *Holmes*, 503 U.S. at 268). "The requirement of proximate cause seeks to 'limit a person's responsibility for the consequences of that person's own acts.'" *Id.* (quoting same). "Put another way, 'the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct.'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)). "Thus, it 'demand[s] ... some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes*, 503 U.S. at 268). In *Holmes,* the Supreme Court explained that the "direct relation" requirement is based upon three practical factors:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems

>is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes*, 503 U.S. at 269–70 (footnote and internal citations omitted).

In its Supplemental Briefing Regarding Civil RICO Statutory Standing, Plaintiff asserts that "Defendants caused [Plaintiff] to pay high salaries and bonuses to Defendants and concealed doing so with improper evaluations." (Doc. 294 at 18.) Plaintiff also asserts that "[the Jim Hebets Defendants] provided sham compensation evaluations to offer excessive benefits [to] other Defendants [and] to funnel additional [Plaintiff] funds to Defendants." (*Id.* at 19.) The Court is persuaded that, at this stage, Plaintiff has sufficiently alleged injury to its business or property "by reason of" of the Jim Hebets Defendants' purported schemes. *See Canyon Cnty.*, 519 F.3d at 975. The Court now turns to Plaintiff's civil RICO claims.

**B.    Plaintiff's Civil RICO Claims**

Plaintiff alleges the Jim Hebets Defendants have violated two provisions of RICO. First, it alleges violations of 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Second, Plaintiff alleges violations of 18 U.S.C. § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

"[T]he survival of [Plaintiff's] claim under § 1962(c) [ensures] the survival of [its] claim under § 1962(d)." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). As such, the Court addresses 18 U.S.C. § 1962(c) first.

### 1.    18 U.S.C. § 1962(c)—Conducting the Affairs of a RICO Enterprise

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* at 547 (quoting *Sedima, S.P.R.L.*, 473 U.S. at 496). In their MTD, the Jim Hebets Defendants argue that Plaintiff does not—and cannot—allege the necessary elements for its RICO claims. (Doc. 222 at 22.)

### a) Conduct—Element 1

The Supreme Court has held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' … one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)). In other words, "one must have some part in directing those affairs." *Id.* at 179. "Simply performing services for the enterprise does not rise to the level of direction … ." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). "Whether [a defendant] rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). Likewise, "[i]t is not enough that [a defendant] failed to stop illegal activity, for *Reves* requires 'some degree of direction.'" *Walter*, 538 F.3d at 1248 (quoting *Reves*, 507 U.S. at 179). "Allegations showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise." *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020).

In their MTD, the Jim Hebets Defendants argue that they did not engage in the required "conduct" for a RICO claim because Plaintiff does not allege that they had some part in directing the affairs of the enterprise. (Doc. 222 at 22–24.) Plaintiff responds that "actively engaging in the enterprise to ensure its success is sufficient to establish the 'conduct' element under RICO." (Doc. 250 at 19 (case citation omitted).) Plaintiff further responds that "[t]he SAC makes clear that the [Jim Hebets Defendants] took direction from the Defendant executives, knowingly implemented those instructions, and were indispensable to achieving the enterprises goals of siphoning funds out of [Plaintiff] to inflate Defendant executives['] compensation packages." (*Id.* at 20.) Plaintiff concludes that "the conduct element is met." (*Id.*)

    Here, the Court finds that Plaintiff has not alleged that the Jim Hebets Defendants participated in the operation or management of the enterprise—Plaintiff. (*See* SAC ¶¶ 550, 554–55 (alleging that Plaintiff is both the victim and the enterprise).) In other words, Plaintiff has not alleged that the Jim Hebets Defendants directed Plaintiff's affairs. Plaintiff merely alleges that it, through its former executives and Board members, engaged the Jim Hebets Defendants to evaluate and create Plaintiff's executive compensation and benefits packages. (*See* SAC ¶¶ 407–420, 453–68.) In the SAC, Plaintiff explains that the Jim Hebets Defendants specialize in "FQHCs and creating ways to increase executive compensation/benefits beyond what is specified in IRS code for qualified 403(b) or 457(b) plans." (*Id.* ¶ 456.) In doing so, Plaintiff simply alleges that it hired the Jim Hebets Defendants to provide the services they offer. As set forth above, "performing [these] services for [Plaintiff] does not rise to the level of direction[,]" *Walter*, 538 F.3d at 1249, and whether the Jim Hebets Defendants rendered their services "well or poorly, properly or improperly, is irrelevant[,]" *Baumer*, 8 F.3d at 1344. *See also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 910 (C.D. Cal. 2012) ("[M]ore is required than 'simply being involved,' and '[s]imply performing services for the enterprise does not rise to the level of direction.'") (quoting *Walter*, 538 F.3d at 1249). Put another way, as alleged, the Jim Hebets Defendants merely conducted their own affairs, which "is insufficient to raise the inference that the defendant conducted the affairs of an enterprise." *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027.

    Additionally, Plaintiff's vague and speculative allegation that it "has only begun to scratch the surface of [Defendant] Jim Hebets' involvement in these [s]chemes" because Defendant Jim Hebets met with his brother Bruce Hebets and Defendant Daryl Priest on at least two occasions (SAC ¶ 467), is not sufficient for the Court to infer that the Jim Hebets Defendants directed Plaintiff's affairs. *See Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) ("It is well settled that fraud '[a]llegations based on 'information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded.'") (quoting *In re Worlds of*

*Wonder Sec. Litig.*, 694 F.Supp. 1427, 1432–33 (N.D. Cal. 1988)). Because Plaintiff has failed to plead the "conduct" element of its civil RICO claim against the Jim Hebets Defendants, the Court need not discuss the remaining elements.[4]

### 2. 18 U.S.C. § 1962(d)—Conspiracy

Because Plaintiff has failed to plead a violation of 18 U.S.C. § 1962(c) against the Jim Hebets Defendants, Plaintiff has also failed to plead a violation of 18 U.S.C. § 1962(d) against the Jim Hebets Defendants. *See Odom*, 486 F.3d at 547 (citing *Howard*, 208 F.3d at 751). Therefore, both of Plaintiff's civil RICO claims against the Jim Hebets Defendants are **DISMISSED** with leave to amend.[5]

### C. Plaintiff's State Law Claims

Because Plaintiff failed to state civil RICO claims against the Jim Hebets Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the Jim Hebets Defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [a state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Accordingly, Plaintiff's state law claims are **DISMISSED**.

Even if the Court were to exercise supplemental jurisdiction over Plaintiff's state law claims against the Jim Hebets Defendants, Plaintiff has failed to allege alter ego liability against Defendant Jim Hebets. The Court finds that Plaintiff's alter ego allegations

---

[4] As set forth in this Court's Prior Order, Plaintiff also failed to plead the existence of an enterprise—element 2—and predicate acts supporting a pattern of racketeering—elements 3 and 4. (*See* Doc. 299 at 40–42, 45–48, 50–53.)

[5] Because Plaintiff has failed to plead any civil RICO claim against the Jim Hebets Defendants, the Court need not address the Jim Hebets Defendants' statute of limitation arguments or their state law arguments.

are conclusory and insufficient to state a claim against Defendant Jim Hebets.  (*See* SAC ¶¶ 51–53.)  *See also Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements."); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.") (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)).

## IV.  CONCLUSION

Based on the foregoing, Plaintiff's claims against the Jim Hebets Defendants—Defendants Jim Hebets and The Hebets Company—are **DISMISSED with leave to amend**.  While the Court doubts Plaintiff's ability to state a civil RICO claim against the Jim Hebets Defendants, any amended complaint must be filed on or before **April 11, 2025**. Responses to any amended complaint must be filed on or before **April 25, 2025**.

**IT IS SO ORDERED.**

DATE:  March 27, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE