1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  BORREGO COMMUNITY HEALTH FOUNDATION, a California Nonprofit Public Benefit Corporation, | Case No.: 3:22-cv-01056-RBM-SBC |
| 13 | **ORDER:** |
| 14                                    Plaintiff, | |
| 15  v. | **(1) DENYING AS MOOT MIKIA WALLIS' MOTION TO DISMISS** |
| 16  KAREN HEBETS, et. al., | **(2) DENYING AS MOOT DIANA THOMPSON'S MOTION TO DISMISS** |
| 17                                    Defendants. | |

**(3) GRANTING THE PREMIER DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**

**(4) GRANTING THE DENTIST DEFENDANTS' MOTIONS TO DISMISS AND JOINDERS WITH LEAVE TO AMEND**

**[Docs. 303–05, 306–11, 313–14, 316]**

26

27

28

1

Plaintiff Isaac Lee, in his capacity as the liquidation trustee for the Borrego Community Health Foundation Liquidating Trust, ("Plaintiff") filed a Third Amended Complaint ("TAC") asserting 16 causes of action against 28 defendants. (*See* Doc. 302 [TAC] ¶ 7 (substituting Plaintiff for Borrego Community Health Foundation), ¶¶ 16–37 (listing defendants), ¶¶ 405–681 (identifying the causes of action).)

In his TAC, Plaintiff alleges that "Borrego Community Health Foundation ('Borrego Health') was a California nonprofit public benefit corporation that previously operated a Federally Qualified Health Center ['FQHC']." (*Id.* ¶ 1.) "Borrego Health provided primary and related healthcare services to historically underserved areas of San Diego, Riverside, and San Bernadino counties." (*Id.*) Plaintiff then explains that "[t]he focus of this lawsuit is a dental fraud scheme whereby dentists, a dental management company, and their principals and staff facilitated the improper billing of dental services with the goal of siphoning money from Borrego Health."[1] (*Id.* ¶ 3.)

Pending before the Court are six motions to dismiss filed by various Defendants or groups thereof. This Order addresses each of them. First, the Court addresses two motions to dismiss filed by Mikia Wallis and Diana Thompson. (*See* Docs. 306, 311.) Second, the Court addresses a single motion to dismiss filed by Defendants Premier Healthcare Management, Inc. ("Premier"), Summit Healthcare Management, Inc. ("Summit"), Daryl Priest, Nicholas ("Nick") Priest, Esq., and Travis Lyon (collectively, the "Premier Defendants"). (*See* Doc. 313.) Finally, the Court addresses three motions to dismiss brought by three dentist defendants and their entities, as well as numerous joinders filed by additional dentist defendants seeking to join the arguments presented in the three noticed

---

[1] In contrast, Plaintiff's Second Amended Complaint ("SAC") alleged numerous fraudulent schemes separate and apart from the dental fraud schemes. (SAC [Doc. 217] at 3–5.) Plaintiff alleges that these other schemes are now "the subject of state law litigation or will be." (TAC ¶ 4.) The Court construes paragraphs three and four of the TAC as declining to proceed with the other fraudulent schemes previously alleged in the SAC.

2

motions (collectively, the "Dentist Defendants").  (*See* Docs. 303–305, 307–310, 314, 316.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, Mikia Wallis and Diana Thompson's motions to dismiss are **DENIED AS MOOT**; the Premier Defendants' motion to dismiss is **GRANTED**; and the Dentist Defendants' motions to dismiss and joinders are **GRANTED**.

## I.    FACTUAL BACKGROUND

**A.    The Parties**

    **1.    Borrego Health**

As set forth above, Borrego Health is a FQHC that serviced underserved areas of San Diego, Riverside, and San Bernadino counties.  (TAC ¶ 1.)  The Court briefly summarizes the relevant parties from Borrego Health.[2]

Bruce Hebets was Borrego Health's Chief Executive Officer ("CEO") from 2004 until his retirement in 2018.  (*Id.* ¶ 38.)  Bruce Hebets passed away in January 2019.  (*Id.*)

Karen Hebets was Bruce Hebets' wife and Borrego Health's Vice President of Business Services.  (*Id.* ¶ 39.)

Mikia Wallis was the Chief Legal Officer for Borrego Health and was also named interim CEO in June 2018 and CEO in September 2018.  (*Id.* ¶ 41.)  Wallis also served on the Board of Trustees until October 2, 2020.  (*Id.*)  She was terminated on December 15, 2020.  (*Id.*)

Diana Thompson, formerly Diana Troncoso, was Borrego Health's Chief Financial Officer from March 2013 to March 2021.  (*Id.* ¶ 42.)

---

[2] Unlike the SAC, the relevant parties from Borrego Health are not named as defendants in the TAC.  (*Compare* SAC ¶¶ 12–46 (identifying defendants and other relevant parties) *with* TAC ¶¶ 16–37 (listing defendants).)

Harry Isley, Dennis Nourse, Mike Hickock, and Chuck Kimball were members of Borrego Health's Board and the Board's Executive/Finance Committee.  (*Id.* ¶¶ 43–46.)

### 2.     The Premier Defendants

Defendant <u>Premier Healthcare Management, Inc.</u> ("Premier") is a California corporation with its principal place of business in El Cajon, California.  (*Id.* ¶ 16.)  Premier was incorporated in 2016.  (*Id.*)

Defendant <u>Summit Healthcare Management, Inc.</u> ("Summit") was a California corporation with its principal place of business in El Cajon, California.  (*Id.* ¶ 17.)  Defendant Summit merged with Defendant Premier in 2019.  (*Id.*)

Defendant <u>Daryl Priest</u> is an individual with his place of residence in El Cajon, California.  (*Id.* ¶ 18.)  Defendant Daryl Priest started Defendant Premier.  (*Id.*)

Defendant <u>Nick Priest</u> is an individual with his place of residence in San Diego, California.  (*Id.* ¶ 19.)  Defendant Nick Priest is Defendant Daryl Priest's son and Defendant Premier's CEO.  (*Id.*)

Defendant <u>Travis Lyon</u> is an individual with his place of residence in Alpine, California.  (*Id.* ¶ 20.)  Defendant Lyon was Defendant Premier's President and Chief Operating Officer ("COO").  (*Id.*)  Defendant Lyon is also the President of Real Estate Operations at Priest Development Corporation, another entity owned by Defendant Daryl Priest.  (*Id.*)

### 3.     The Dentist Defendants

Defendant <u>Husam E. Aldairi</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program."  (*Id.* ¶ 22.)  Defendant Husam E. Aldairi, both individually and through his company Defendant <u>Aldairi D.D.S., Inc.</u>, operated dental practices in San Diego County, California.  (*Id.*)  Defendant <u>Mohammed Al Tekreeti</u> was a sub-provider under Defendant Husam E. Aldairi.  (*Id.* ¶ 26.)

Defendant <u>Ayed Hawatmeh</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program."  (*Id.* ¶ 23.)  Defendant Ayed

3:22-cv-01056-RBM-SBC

Hawatmeh, both individually and through his company Defendant <u>Hawatmeh Dental Group, P.C.</u>, operated dental practices in Corona, California. (*Id.*)

Defendant <u>Alborz Mehdizadeh</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 24.) Defendant Alborz Mehdizadeh, both individually and through his company Defendant <u>Alborz Mehdizadeh, Inc.</u>, operated private dental practices in Victorville and Hemet, California. (*Id.*)

Defendant <u>Aram Arakelyan</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 28.) Defendant Arakelyan, both individually and through his company Defendant New Millennium Dental Group of Aram Arakelyan, Inc., operated several private dental practices in Covina and Downey, California. (*Id.*) Defendant <u>Jilbert Bakramian</u> was a sub-provider under Defendant Aram Arakelyan. (*Id.* ¶ 25.)

Defendant <u>Magaly Velasquez</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 27.) Defendant Velasquez, both individually and through her company Defendant <u>Magaly M. Velasquez D.D.S. Professional Dental Corp.</u>, operated a private dental practice in Rancho Cucamonga, California. (*Id.*)

Defendant <u>Michael Hoang</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 29.)

Defendant <u>Waleed Stephan</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 30.) Defendant Stephan, both individually and through his company Defendant <u>W.A. Stephan, a Dental Corporation</u>, operated a private dental practice in El Cajon, California. (*Id.*)

Defendant <u>Santiago Rojo</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 31.) Defendant Rojo, both individually and through his company Defendant <u>Santiago A. Rojo, D.D.S., Inc.</u>, operated a private dental practice in Moreno Valley, California. (*Id.*)

5

Defendant <u>Marcelo Toledo</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 32.)  Defendant Toledo, both individually and through his company Defendant <u>Marcelo Toledo D.D.S., Inc.</u>, operated private dental practices in Palm Springs and Rialto, California.  (*Id.*)

Defendant <u>Marlene Thompson</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 33.)  Defendant Thompson, both individually and through her company Defendant <u>Marlene M. Thompson, D.D.S., Inc.</u>, operated a private dental practice in Escondido, California.  (*Id.*)

Defendant <u>Douglas Ness</u> "is a licensed dentist in California with whom Borrego Health partnered through its contract dental program." (*Id.* ¶ 34.)  Defendant Ness, both individually and through his company Defendant <u>Ness Dental Corporation</u>, operated a private dental practice in National City, California.  (*Id.*)

**B.    The Contract Dental Scheme[3]**

In the TAC, Plaintiff identifies several fraudulent schemes perpetrated by the Premier Defendants and the Dentist Defendants, including the "Premier Scheme," the "Fraudulent Dental Bill Scheme," and the "Coverup Scheme."   (TAC ¶¶ 59–378.)  Although identified as three separate schemes, these schemes all revolve around Borrego Health's contract dental program, in which Borrego Health entered "into contracts with individual dentists and/or their practices" and, "[u]nder those contracts, the contracted dentists agreed to provide certain dental services to eligible patients of Borrego Health." (*Id.* ¶¶ 59–60.)  "[T]he services performed would then be billed to Medi-Cal by Borrego Health," and "Borrego Health then in turn paid the contract dental providers the contracted fee for the billed dental services … ."  (*Id.* ¶ 61.)  Accordingly, the Court refers to the scheme summarized below as the "Contract Dental Scheme."

Notwithstanding Borrego Health's Board's rejection of the idea of using a

---

[3] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court.

management services organization for contract dental program (*see id.* ¶¶ 67–74), on March 1, 2016, CEO Bruce Hebets, on behalf of Borrego Health, and Defendant Daryl Priest, on behalf of Defendant Premier, executed a Management Services Agreement for the contract dental program (the "Dental MSA") (*id.* ¶ 75). Plaintiff alleges that Defendant Premier did not exist prior to February 3, 2016, when Defendant Daryl Priest used his personal lawyer to file the Articles of Incorporation. (*Id.* ¶ 86.) Indeed, Plaintiff alleges that Defendant Premier was founded for the sole purpose of the Contract Dental Scheme. (*Id.*)

"Pursuant to the terms of the Dental MSA, Borrego Health was to pay [Defendant] Premier $5 per participating patient visit to any contract dentist for the first 8,000 visits, then $25 per participating patient visit thereafter. In return, [Defendant] Premier, by and through [Defendants] Daryl Priest, Nick Priest, and Travis Lyon, agreed to provide the services to Borrego Health, including … claims management and processing … ." [4] (*Id.* ¶ 98.) Claims management and processing included "'scrubbing' the contract dental claims for documentation errors or inconsistencies … ."[5] (*Id.*) Plaintiff alleges, however, that Defendant Premier, through Defendants Daryl Priest, Nick Priest, and Travis Lyon, were unwilling and unable to conduct proper claims monitoring and processing. (*Id.* ¶¶ 100, 132, 137, 160.)

Instead of conducting proper claims monitoring and processing, the Premier

_____

[4] The Dental MSA underwent two amendments on or about December 22, 2016 and July 1, 2017, respectively. (TAC ¶¶ 104–105.) The first amendment extended the term of the Dental MSA for five years beginning on January 1, 2017, subject to an automatic renewal of five years. (*Id.* ¶ 106.) The first amendment also removed the provision allowing Plaintiff to terminate the agreement without cause. (*Id.* ¶ 107.) The second amendment "obligated Borrego Health to pay Premier $25 per visit, starting at the first visit rather than the previous term of $5 per visit for the first 8,000 visits." (*Id.* ¶ 110.)

[5] Plaintiff alleges that the price of $25 per claim was unreasonably high and that $3–6 per claims was the reasonable market value, especially considering that Defendants Daryl Priest, Nick Priest, and Travis Lyon did not have any health care experience and Defendant Premier did not have any clinical staff to review the claims. (*Id.* ¶ 99; *see also id.* ¶ 155.)

Defendants educated the contract dental providers how to submit fraudulent claims. (*Id.* ¶¶ 136–37.) For example, because the dentists were paid on a "per encounter" basis, Defendant Travis Lyon organized trainings on how to split services. (*Id.* ¶ 172.) "He educated dentists to bill for: (1) services that were not medically []necessary, (2) split services that could have been done in one encounter to multiple encounters so that they could collect multiple times, (3) multiple services provided during a single encounter as though they were provided over multiple encounters, and/or (4) services never provided." (*Id.*)

"[Defendant] Premier [then] approved claims, and caused Borrego Health to pay for claims, (1) where no supporting documentation was provided, (2) for services performed on teeth which—based on x-rays submitted with the claims—were no longer in the patients' mouth, (3) which were duplicate (i.e. same claims, submitted multiple times), (4) that were facially and obviously not legitimate[,] and (5) for more intense services, such as deep cleaning, than were medically necessary." (*Id.* ¶ 160; *see also id.* ¶ 183 ("[Defendant] Premier routinely approved services for payment that could not have possibly occurred.")

The fraudulent claims increased Defendant Premier's revenue because Defendant Premier received $25 per claim. (*Id.* ¶ 136.) "Payments to the dentists were typically initiated within 24 hours of receiving a bill from the dentists, and well before any payment had been made by Medi-Cal, even though the contracts with the dentists did not permit payment to the dentists if Borrego Health was not paid by Medi-Cal. Further, the payments from Borrego Health to the dentists were not recouped by Premier if Medi-Cal never paid Borrego Health, and payments made to Premier for improper claims were never repaid by Premier." (*Id.* ¶ 138.)[6]

---

[6] On September 8, 2017, Borrego Health CEO Bruce Hebets and Defendant Daryl Priest entered into another management services agreement between Borrego Health and Defendant Summit for Borrego Health's contract medical program (the "Medical MSA"). (*Id.* ¶ 127.) The Medical MSA also required Borrego Health to pay $25 per patient visit to Defendant Summit in exchange for the management services provided. (*Id.*)

8

### a)    Concealment from Borrego Health's Board

The existence of the Dental MSA was concealed from Borrego Health's full Board. (*See id.* ¶¶ 81, 83, 97, 108, 112, 139, 140, 149–50, 154, 169, 409.)  For example, "Diana Thompson, Harry Ilsley, Dennis Nourse, Mike Hickok, and Chuck Kimball would present Borrego Health's financial status in a 'Summary of Ratios' to the rest of the Board.  These summaries provided totals, such as the total of available cash or available assets, but did not disclose specific itemized details of the financial information, or information on any new contracts or agreements which would impact Borrego Health's budget."  (*Id.* ¶ 84.) Further, "despite [Defendant] Premier being Borrego Health's highest paid vendor, Mike Hickok intentionally omitted details of the arrangement in his reports."  (*Id.* ¶ 150.)

Additionally, Karen Hebets and Diana Thompson hired their family members to work in Borrego Health's billing and accounting department.  (*Id.* ¶ 143.)  The "family members allowed thousands of duplicate and unsupported claims to be improperly processed, and ensured [Defendant] Premier (and resultantly [Defendants] Daryl Priest, Nick Priest, and Travis Lyon) received improper payment for each one."  (*Id.*; *see also id.* ¶¶ 176, 184.)

### b)    Program Integrity

Plaintiff alleges that Borrego Health was forced to develop a Program Integrity team ("Program Integrity") to review and audit the contract dental claims, the same task that the Premier Defendants were supposed to perform under the Dental MSA.  (*Id.* ¶ 162.)  In May 2017, Borrego Health hired Timothy Martinez, D.D.S. as its Chief Dental Officer.  (*Id.* ¶ 163.)  Dr. Martinez was tasked with developing Program Integrity.  (*Id.*)  He hired Nithya Venugopal, D.D.S. as Borrego Health's Dental Director of Program Integrity.  (*Id.*)

Program Integrity would conduct chart reviews and site audits and issue a "corrective action plan" for deficient providers.  (*Id.* ¶ 164.)  Program Integrity would then re-audit providers that had been issued a "corrective action plan."  (*Id.*)  "If scores worsened over time," Dr. Martinez would alert Borrego Health's Chief Compliance Officer, Gabriela Alvarado, and Mikia Wallis.  (*Id.* ¶ 165.)  Plaintiff alleges that, even if discrepancies were

9

reported to Alvarado and Wallis, "there would be no reversals or repayments." (*Id.* ¶ 167.) Indeed, "when Program Integrity attempted to terminate several contract dental providers, [Defendant] Travis Lyon arranged for Mikia Wallis to step in to oppose the recommendations." (*Id.* ¶ 348; *see id.* ¶¶ 348–78 (alleging efforts by the Premier Defendants to inhibit Program Integrity's efforts).)

### c) The Dentist Defendants

As part of the Dental MSA, Defendant Premier, by and through Defendants Daryl Priest, Nick Priest, and Travis Lyon, engaged and reached out to new dental providers for the contract dental program. (*Id.* ¶ 173.) "Once potential contract dental providers were found, [Defendant] Travis Lyon provided the dentists with a copy of their original Contract Dental Agreement. [Defendant] Travis Lyon then reviewed the terms and conditions of the agreements with the dentists, including reviewing and explaining the addendums which addressed the billing and payment structure under Medi-Cal. Travis Lyon did this for all Dentist Defendants with the exception of [Defendants] Velasquez and Thompson." (*Id.* (exhibit citation omitted).)

"Maria Elena Fernandez, and [Defendant] Travis Lyon [also] provided trainings to the Dentist Defendants. Rather than providing legitimate trainings to these contract dental providers, they instead took these opportunities to collaborate with the contract dental providers on how to submit split claims, claims for enhanced services not performed, duplicate claims, and claims for unsupported services … ." (*Id.* ¶ 175; *see also id.* ¶ 180 (alleging the Premier Defendants "coached dentists on how to fraudulently bill Borrego Health, including without limitation coaching them on 'claim splitting' and fraudulently billing for non-covered bridges.").

"After [Defendant] Travis Lyon and Mari[a] Elena Fernandez educated the contract dental providers on how they were to utilize [Defendant] Premier's systems to maximize the improper billing, Karen Hebets and Diana Thompson [from Borrego Health] trained their family members [in the billing apartment] to allow these fraudulent claims to be paid out to both [Defendant] Premier and the Dentist Defendants." (*Id.* ¶ 176.) "If concerns

were raised by individuals such as Dr. Timothy Martinez and Program Integrity, they were routed to Mikia Wallis and [Defendant] Travis Lyon. Mikia Wallis and Travis Lyon would then end the inquiry to conceal the problems." (*Id.* ¶ 177.)

"After [Defendant] Premier received the claims from the Dentist Defendants, [Defendant] Travis Lyon would e-mail the bills to Diana Thompson, Karen Hebets, and other family members of Karen Hebets and Diana Thompson hired to Borrego Health's finance department. [Defendant] Premier would electronically submit the contract dental claims to Borrego Health then e-mail its invoices for the claims it processed, seeking payment. This occurred on a monthly basis." (*Id.* ¶ 184.)

### (1)    Defendants Husam Aldairi and Mohammed Al Tekreeti

On or about May 27, 2016 and May 29, 2018, Defendant Husam Aldairi, both individually and through his company, Aldairi D.D.S., Inc., entered into written dental services agreements with Borrego Health, in which Defendant Aldairi agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Aldairi for those services. (*Id.* ¶ 188.) By executing the dental services agreements, Defendant Aldairi promised to practice dentistry in accordance with all federal, state, and local laws; all regulations; and all generally accepted principles in the practice of dentistry. (*Id.* ¶ 191.) Defendant Aldairi also agreed to "prepare, establish, and maintain" administrative, financial, and patient records.[7] (*Id.*)

Notwithstanding the dental services agreements, Defendant Aldairi submitted false and fraudulent bills. (*Id.* ¶ 192.) In September 2020, after Defendant Aldairi had failed his prior audit, Borrego Health re-audited him. (*Id.* ¶ 198.) The results of the re-audit indicated that he "had … (1) bill[ed] excessive patient visits, including falsifying appointment schedules; (2) fail[ed] to maintain adequate documentation to support billing; (3) falsif[ied] medical records; (4) perform[ed] services that lacked medical necessity; (5)

---

[7] Each of the dental services agreements has the same terms and conditions. The Court will not repeat the terms and conditions for each Dentist Defendant in the sections below.

11

provid[ed] services that fell below the standard of care; (6) provid[ed] excessive services; and (7) generat[ed] inaccurate billing records, including billing for services not rendered, upcoding, … splitting services, and billing for services rendered by another provider [or] providers not enrolled in Medi-Cal." (*Id.* ¶ 200.) For example, Defendant Aldairi's patient charts demonstrated instances of patients coming to his office several days in a row when patient scheduling records did not support that such frequent visits took place. (*Id.* ¶ 201.) Defendant Aldairi even billed procedures when his office was closed for Thanksgiving.[8] (*Id.*) Plaintiff then alleges that Defendant Aldairi submitted these fraudulent claims to Defendant Premier, by and through Defendant Lyon, who allowed these fraudulent claims to be submitted to Borrego Health for payment. (*Id.* ¶ 205.)

After Defendant Aldairi failed his re-audit, Program Integrity attempted to terminate Defendant Aldairi's contract with Borrego Health, but Defendant Lyon refused to terminate Defendant Aldairi. (*Id.* ¶ 206.) Defendant Lyon notified Defendant Aldairi that only Defendant Lyon could speak directly to Defendant Aldairi. (*Id.* ¶ 207.) Defendant Aldairi therefore refused to communicate with Borrego Health employees without approval from Defendant Lyon. (*Id.*)

Shortly after August 7, 2017, Defendant Aldairi hired Defendant Mohammed Al Tekreeti to provide dental services to Borrego Health's patients. (*Id.* ¶ 299.) Defendant Al Tekreeti submitted false or fraudulent bills. (*Id.* ¶ 301.) "For example, on or about May 2019, [Defendant] Al Tekreeti billed Borrego Health for a partial denture for teeth which supporting documentation indicated were never prepared for dentures."[9] (*Id.*)

### (2)    Defendant Ayed Hawatmeh

On or about October 18, 2017, Defendant Ayed Hawatmeh, both individually and

---

[8] The TAC includes numerous other examples of fraudulent billing by Defendant Aldairi, including billing for services provided by unlicensed dentists. (*See* TAC ¶¶ 202–204, 208–210.)

[9] The TAC alleges numerous other examples of fraudulent billing by Defendant Al Tekreeti. (*See* TAC ¶¶ 302–303.)

through his company, Hawatmeh Dental Group, P.C., entered into a written dental services agreement with Borrego Health, in which Defendant Hawatmeh agreed to provide dental services to Borrego Health patients, and Borrego Health agreed to pay Defendant Hawatmeh for those services. (*Id.* ¶ 212.)  Notwithstanding the dental services agreement, Defendant Hawatmeh submitted false and fraudulent bills. (*Id.* ¶ 216.)  For example, Defendant Hawatmeh routinely billed for several crowns instead of a single, non-covered bridge. (*Id.* ¶ 217.)  Further, "on both May 29, 2018 and June 2, 2018, Hawatmeh billed [Plaintiff] for services performed on a tooth the patient no longer had at the time of service." (*Id.* ¶ 218.)  "[O]n March 12, 2018, Hawatmeh submitted claims for payment indicating one patient received treatment from him" "54 times within an 86-day period."[10] (*Id.* ¶ 219.)  Defendant Lyon accepted Defendant Hawatmeh's fraudulent claims and, in coordination with Diana Thompson and Karen Hebets from Borrego Health, approved and pushed them through for payment. (*Id.* ¶¶ 219–20.)

In late 2018, Borrego Health became concerned that Defendant Hawatmeh was overbilling. (*Id.* ¶ 222.)  Nevertheless, Defendant Lyon assured Borrego Health employees that the billing issue was isolated. (*Id.* ¶ 225.)  Later, when Program Integrity sought to terminate Defendant Hawatmeh's contract, Defendant Lyon pushed back. (*Id.* ¶ 227.)  Defendants Daryl Priest and Nick Priest then arranged for Defendant Premier's lawyer to advise Borrego Health against terminating Defendant Hawatmeh and to pay any outstanding invoices. (*Id.*)  Defendant Lyon also continued to pressure Borrego Health to pay Defendant Hawatmeh's invoices. (*Id.* ¶¶ 228–30.)  Defendant Hawatmeh was eventually terminated from the contract dental program on September 17, 2019. (*Id.* ¶ 231.)  Despite his termination, Defendant Hawatmeh continued to bill Borrego Health through January 2020, and Defendant Lyon instructed Borrego Health to pay for these claims but change the dates. (*Id.* ¶ 232.)

_____

[10] The TAC alleges numerous other examples of fraudulent bulling by Defendant Hawatmeh. (*See* TAC ¶¶ 217–224, 234.)

1

**(3)** **Defendant Alborz Mehdizadeh**

On September 28, 2016 and December 11, 2018, Defendant Alborz Mehdizadeh, both individually and through his company Alborz Mehdizadeh, Inc., entered into written dental services agreements with Borrego Health, in which Defendant Mehdizadeh agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Mehdizadeh for those services. (*Id.* ¶ 235.) Notwithstanding the dental services agreement, Defendant Mehdizadeh submitted false and fraudulent bills. (*Id.* ¶ 239.) For example, Defendant Mehdizadeh billed for patient visits that either never occurred or were conducted by providers that were not disclosed to Plaintiff. (*Id.* ¶ 240.) He billed for 146 patients he claimed to have seen on Saturday, November 16, 2019. (*Id.*) Defendant Mehdizadeh also billed for 29 surgical extractions for one patient over a sixth-month period. (*Id.* ¶ 241.) Defendant Mehdizadeh also submitted bills for the same service multiple times on at least three occasions.[11] (*Id.* ¶ 244.)

**(4)** **Defendant Magaly M. Velasquez**

On or about November 5, 2014, Defendant Magaly M. Velasquez, both individually and through her company Magaly M. Velasquez D.D.S., Professional Dental Corp., entered into a written dental services agreement with Borrego Health, in which Defendant Velasquez agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Velasquez for those services. (*Id.* ¶ 249.) Notwithstanding the dental services agreement, Defendant Velasquez submitted false and fraudulent bills. (*Id.* ¶ 253.) For example, Plaintiff alleges that Defendant Velasquez submitted 150 duplicative claims. (*Id.* ¶ 254.) Plaintiff also alleges that Defendant Velasquez billed for excessive visits, including "4,552 instances where [Defendant] Velasquez billed for more

---

[11] The TAC alleges numerous other examples of fraudulent billing by Defendant Mehdizadeh. (*See* TAC ¶¶ 243–47.)

than five visits for the same patient in a seven-day period."[12]  (*Id.* ¶ 256.)

### (5)    Defendants Aram Arakelyan and Jilbert Bakramian

On November 17, 2016, November 18, 2018, and November 29, 2018, Defendant Aram Arakelyan, both individually and through his company New Millennium Dental Group of Aram Arakelyan, Inc., entered into written dental services agreements with Borrego Health, in which Defendant Arakelyan agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Arakelyan for those services.  (*Id.* ¶ 258.)  Notwithstanding the dental services agreements, Defendant Arakelyan submitted false and fraudulent bills.  (*Id.* ¶ 262.)  For example, in 2019, Defendant Arakelyan billed for services on teeth that the patients did not have.[13]  (*Id.*)

Defendant Arakelyan hired Defendant Jilbert Bakramian to provide dental services to Borrego Health's patients.  (*Id.* ¶ 306.)  Defendant Bakramian also submitted false or fraudulent bills.  (*Id.* ¶ 308.)  "For example, … on or about January 2019, [Defendant] Bakramian billed [Plaintiff] for a filling on a tooth which x-rays noted that the patient did not have at the time of service[.]"[14]  (*Id.*)

### (6)    Defendant Michael Hoang

On or about November 28, 2018, Defendant Michael Hoang entered into a written dental services agreement with Borrego Health, in which Defendant Hoang agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Hoang for those services.  (*Id.* ¶ 273.)  Notwithstanding the dental services agreement, Defendant Hoang submitted false and fraudulent bills.  (*Id.* ¶ 277.)  For example, Defendant "Hoang represented he saw one patient 10 times in a 30 day period[,]"

---

[12] The TAC alleges numerous other examples of fraudulent billing by Defendant Velasquez.  (*See* TAC ¶¶ 254–56.)

[13] The TAC alleges numerous other examples of fraudulent billing by Defendant Arakelyan.  (*See* TAC ¶¶ 262–64, 267, 272.)

[14] The TAC alleges numerous other examples of fraudulent billing by Defendant Bakramian.  (*See* TAC ¶¶ 308–12.)

which Plaintiff alleges is not supported by the patient record or schedules.  (*Id.* ¶ 280.)

### (7) Defendant Waleed Stephan

On October 1, 2016, Defendant Waleed Stephan, both individually and on behalf of his company W.A. Stephan, A Dental Corporation, entered into a written dental services agreement with Borrego Health, in which Defendant Stephan agreed to provide primary dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Stephan for those services.  (*Id.* ¶ 282.)  Notwithstanding the dental services agreement, Defendant Stephan submitted false and fraudulent bills.  (*Id.* ¶ 286.)  For example, "on August 13, 2019, [Defendant] Stephan billed Borrego Health for crowns on teeth numbers 12, 13 and 14" when "the patient care plan documents that a singular bridge was put in place during … one appointment."  (*Id.*)  Defendant Stephan also falsely represented that he purchased porcelain crowns for patients when he was making the crowns himself out of ceramic.  (*Id.* ¶ 287.)

### (8) Defendant Santiago Rojo

On March 29, 2017, Defendant Santiago Rojo, both individually and through his company Santiago A. Rojo, D.D.S., Inc., entered into a written dental services agreement with Borrego Health, in which Defendant Rojo agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Rojo for those services. (*Id.* ¶ 290.)  Notwithstanding the dental services agreement, Defendant Rojo submitted false and fraudulent bills.  (*Id.* ¶ 294.)  For example, throughout 2020, "[Defendant] Rojo billed for visits in California even though he was living in Florida[.]"  (*Id.* ¶ 295.) "[Defendant] Rojo also engaged in excessive billing and 'claim splitting.'"  (*Id.* ¶ 297.) "[Defendant] Rojo represented he saw one patient for 12 days in a 23-day period."  (*Id.*)

### (9) Defendant Marcelo Toledo

On June 16, 2015, Defendant Marcelo Toledo, both individually and through his company Marcelo Toledo, D.D.S., Inc., entered into a written dental services agreement with Borrego Health, in which Defendant Toledo agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Toledo for those

services.  (*Id.* ¶ 315.)  Notwithstanding the dental services agreement, Defendant Toledo submitted false and fraudulent bills.  (*Id.* ¶ 319.)  For example, "on or about July 2018, [Defendant] Toledo billed for services rendered to a patient during one scheduled visit as though they occurred over the cour[se] of four visits[.]"[15]  (*Id.* ¶ 320.)

### (10)    Defendant Marlene Thompson

On or about April 18, 2013, Defendant Marlene Thompson, both individually and through her company Marlene M. Thompson, D.D.S., Inc., entered into a written dental services agreement with Borrego Health, in which Defendant Thompson agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Thompson for those services.  (*Id.* ¶ 330.)  Notwithstanding the dental services agreement, Defendant Thompson submitted false and fraudulent bills.  (*Id.* ¶ 333.)  For example, Plaintiff alleges that Defendant Thompson hired Maura Tuso, who was suspended from participating in Medi-Cal in any capacity.  (*Id.*)  Defendant Thompson allowed Tuso to service to Borrego Health and Medi-Cal patients and then submitted bills for Tuso's services in her own name.  (*Id.* ¶¶ 333–34.)

### (11)    Defendant Douglas Ness

On or about May 2, 2016, Defendant Douglas Ness, both individually and through his company Ness Dental Corporation, entered into a written dental services agreement with Borrego Health, in which Defendant Ness agreed to provide dental services to Borrego Health's patients, and Borrego Health agreed to pay Defendant Ness for those services. (*Id.* ¶ 338.)  Notwithstanding the dental services agreement, Defendant Ness submitted false and fraudulent bills.  (*Id.* ¶ 342.)  For example, "[r]ather than submit one bill for the cleaning, [Defendant] Ness submitted two claims, the first asserting he provided a dental cleaning to the left side of the patient's mouth, then a month later provided a dental cleaning to the right side of the patient's mouth."  (*Id.*)  Defendant Ness also submitted bills for

---

[15] The TAC alleges numerous other examples of fraud by Defendant Toledo.  (*See* TAC ¶¶ 320–27.)

Maura Tuso and other suspended dental providers in his own name.  (*Id.* ¶¶ 343–46.)

## II.    <u>LEGAL STANDARD</u>

### A.    **Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.     Federal Rule of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a) provides, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction … ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."  Rule 8(d)(1) provides, "[e]ach allegation must be simple, concise, and direct."

**C.     Federal Rule of Civil Procedure 9**

As set forth in the Court's Order Granting Motions to Dismiss Plaintiff's First Amended Complaint ("FAC Order") and the Court's subsequent orders dismissing the Second Amended Complaint ("SAC"), Federal Rule of Civil Procedure Rule 9(b) applies to claims based on fraud.  (*See* Doc. 215 [FAC Order] at 9; Doc. 299 at 18–19; Doc. 300 at 12–13; Doc. 301 at 6.)  A plaintiff must plead the elements of fraud with the particularity demanded by Rule 9(b), outlining the who, what, when, and where of the alleged fraudulent acts.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).  "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading of that claim … must satisfy the particularity requirement of Rule 9(b)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  Given the factual basis for all of Plaintiff's claims is the fraudulent scheme revolving around Borrego Health's contract dental program, all must meet Rule 9(b)'s particularity requirement.  (Doc. 215 [FAC Order] at 9; Doc. 299 at 18–19; Doc. 300 at 12–13; Doc. 301 at 6.)

# III.     DISCUSSION

**A.     Mikia Wallis' Motion to Dismiss**

On April 25, 2025, Mikia Wallis filed a motion to dismiss the TAC ("Wallis MTD").  (Doc. 306.)  However, Mikia Wallis, as well as other Borrego Health insiders previously named in the SAC, are not named as defendants in the TAC.  (*See* TAC ¶¶ 16–37 (listing

19

defendants).)  Indeed, in his opposition to the Wallis MTD, Plaintiff states, "[i]n amending its complaint, Plaintiff opted not to continue to pursue [his] federal claim for violations of [RICO] against Mikia Wallis and instead elected to pursue Mikia Wallis' remaining state law claims in state court." (Doc. 331 at 3.)  Mikia Wallis did not file a reply.  Accordingly, the Wallis MTD is **DENIED AS MOOT**.  *See e.g.*, *Pope Invs. II, LLC v. Deheng L. Firm*, No. 10 Civ. 6608(LLS), 2012 WL 3526621, at *8 (S.D.N.Y. Aug. 15, 2012) ("[Two entities and one individual], each named a defendant in the first amended complaint, filed a motion to dismiss the second amended complaint, apparently unaware that they are no longer named as defendants. That motion is denied as moot.").

**B.    Diana Thompson's Motion to Dismiss**

On April 25, 2025, Diana Thompson filed a motion to dismiss the TAC (the "Thompson MTD").  (Doc. 311.)  Diana Thompson also filed an Answer to Plaintiff's TAC.  (Doc. 312.)  However, Diana Thompson, as well as other Borrego Health insiders previously named in the SAC, are not named as defendants in the TAC.  (*See* TAC ¶¶ 16–37 (listing defendants).)  Indeed, in Plaintiff's opposition to the Thompson MTD, Plaintiff states, "[i]n amending its complaint, [Plaintiff] opted not to continue to pursue [his] federal claim for violations of the [RICO] against Diana Thompson and instead elected to pursue Diana Thompson's remaining state law claims in state court." (Doc. 318 at 3.)  Diana Thompson did not file a reply.  Accordingly, the Thompson MTD is **DENIED AS MOOT**. *See e.g.*, *Pope Invs. II, LLC*, 2012 WL 3526621, at *8.

**C.    The Premier Defendants' Motion to Dismiss**

In the TAC, Plaintiff asserts a single cause of action against the Premier Defendants for violations of RICO based on the Contract Dental Scheme summarized above.  (TAC ¶¶ 405–38.)  Plaintiff also asserts 14 state law causes of action for breach of contract, intentional misrepresentation, negligent misrepresentation, fraudulent concealment, false promise, conversion, inducing breach of contract, intentional interference with economic relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, violations of California Business and

Professions Code section 17200, *et seq.*, conspiracy, constructive fraud, and unjust enrichment/restitution against the Premier Defendants. (*Id.* ¶¶ 439–669.) Plaintiff also asserts a claim for indemnification against Defendants Premier and Summit only. (*Id.* ¶¶ 670–81.)

In their Motion to Dismiss, the Premier Defendants argues broadly that Plaintiff's "Shotgun Pleading" violates Federal Rule of Civil Procedure 8, which requires "simple, concise, and direct" allegations, and does not meet the particularity standard of Rule 9(b).[16] (Doc. 313 at 14–18.)

Regarding Plaintiff's RICO claim, the Premier Defendants argue that Plaintiff fails to allege an association-in-fact enterprise consisting of the Premier Defendants, the Dentist Defendants, Bruce Hebets, Karen Hebets, and other Borrego Health insiders identified as relevant parties in the TAC. (*Id.* at 19–22.) Specifically, the Premier Defendants argue that "Plaintiff offers no factual allegations to plausibly demonstrate that these alleged enterprise members knew of or devised a scheme to engage in any criminal purpose[.]" (*Id.* at 20.) The Premier Defendants also argue that the TAC does not allege that the Premier Defendant conducted or participated in the conduct of the alleged enterprise. (*Id.* at 22–24.) Finally, the Premier Defendants argue that the TAC does not allege that the Premier Defendant engaged in a pattern of racketeering activity. (*Id.* at 24–26.) Specifically, the Premier Defendants argue that Plaintiff fails to allege the elements of mail and wire fraud with particularity. (*Id.* at 25.)

---

[16] The Court notes that Plaintiff has substantially condensed the allegations in the TAC in an effort to comply with the Court's prior order. (*See* Doc. 299 at 28–31 (finding Borrego Health's SAC "woefully non-compliant" with Federal Rules of Civil Procedure 8 and 9(b)).) Therefore, in the interest of justice, the Court will proceed directly to Plaintiff's substantive claims and not address the Premier Defendants' renewed arguments under Rule 8. The Court will address Rule 9(b)'s particularity requirement to the extent it is applicable to the Court's analysis of Plaintiff's civil RICO claims.

The Premier Defendants then broadly argue that Plaintiff's claims, apart from Plaintiff's newly asserted claim for indemnity, are time-barred (*id.* at 27–29) and that Plaintiff fails to properly allege alter ego liability (*id.* at 29–31). The Premier Defendants also argue that Plaintiff fails to state state-law claims for fraud, breach of contract, torts, interference/inducement, violations of the UCL, unjust enrichment, and indemnity. (*Id.* at 18–19, 31–33.)

As set forth below, Plaintiff fails to state a civil RICO claim against the Premier Defendants with the requisite particularity. Therefore, the Court need not address the Premier Defendants' remaining arguments.

### 1.    Plaintiff's Civil RICO Claims

Plaintiff alleges violations of two provisions of RICO. First, it alleges violations of 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Second, Plaintiff alleges violations of 18 U.S.C. § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "[T]he survival of [Plaintiff's] claim under § 1962(c) [ensures] the survival of [its] claim under § 1962(d)." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). As such, the Court addresses 18 U.S.C. § 1962(c) first.

### a)    18 U.S.C. § 1962(c)

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom*, 486 F.3d 547 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

### (1)    Conduct of an Enterprise—Elements 1 and 2

"As a threshold matter, 18 U.S.C. § 1962(c) requires that the Defendant be employed by or associated with an 'enterprise.'" *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046,

1053 (C.D. Cal. 2016). "An enterprise is a distinct entity from the [d]efendant and cannot be 'simply the same 'person' referred to by a different name.'" *Id.* (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). "Under RICO, two types of associations meet the definition of 'enterprise': 'The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 581–82 (1981) (citing 18 U.S.C. § 1961(4))).

Here, Plaintiff alleges that "[t]he enterprise for the herein schemes is an association-in-fact, comprised of specific members of Borrego Health's leadership (Bruce Hebets, Mikia Wallis, Karen Hebets, and Diana Thompson), members of [Borrego Health's] Executive/Finance Committee (Chuck Kimball, Dennis Nourse, Mike Hikock, Harry Ilsley), the Premier Defendants, who infiltrated Borrego Health's contract dental and contract medical programs, and the Dentists Defendants." (TAC ¶ 421.) Plaintiff then alleges that "[e]ach utilized their positions both within and outside of Borrego Health to commandeer Borrego Health's contract dental program for their own criminal purposes." (*Id.*) Alternatively, Plaintiff alleges that Borrego Health was both the victim and the enterprise. (*Id.* ¶ 423.)

As a preliminary matter, the Court has already rejected Plaintiff's alternative theory that Borrego Health is both the victim and the enterprise. (*See* Doc. 299 at 40–42 (finding "that a corporation being pilfered by its employees cannot be both the victim and the enterprise").) The Court will not re-visit its prior ruling. The Court therefore turns to whether Plaintiff has adequately alleged an association-in-fact enterprise.

"An 'association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Shaw*, 220 F. Supp. 3d at 1053 (quoting *Boyle v. U.S.*, 556 U.S. 938, 946 (2009)). "'Such an enterprise … is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Id.* (quoting *Boyle*, 556 U.S. at 945). "'An association-in-fact enterprise must have at least three structural features: [1] a purpose, [2]

relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 1053–54 (quoting same).

Additionally, each member must conduct the affairs of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The Supreme Court has held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' … one must participate in the operation or management of the enterprise itself." *Id.* (quoting 18 U.S.C. § 1962(c)). In other words, "one must have some part in directing those affairs." *Id.* at 179. "Simply performing services for the enterprise does not rise to the level of direction … ." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). "Whether [a defendant] rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). Likewise, "[i]t is not enough that [a defendant] failed to stop illegal activity, for *Reves* requires 'some degree of direction.'" *Walter*, 538 F.3d at 1248 (quoting *Reves*, 507 U.S. at 179).

In their Motion to Dismiss, the Premier Defendants argue that Plaintiff fails to allege an association-in-fact enterprise. (Doc. 313 at 19–22.) Specifically, the Premier Defendants argue that the TAC "offers no factual allegations to plausibly demonstrate that these alleged enterprise members knew of or devised a scheme to engage in any criminal purpose, including the alleged 'Fraudulent Dental Billing Scheme' or 'Coverup Scheme.'" (*Id.* at 20–21.) The Premier Defendants also argue that the TAC "fails to allege how the Premier Defendants supposedly devised a scheme with 'each and every one of the Dentist Defendants … .'" (*Id.* at 21 (quoting TAC ¶ 171).) The Premier Defendants assert that the TAC only includes threadbare allegations that the Premier Defendants "coached" the Dentist Defendants to fraudulently bill. (*Id.* at 21–22.) Finally, the Premier Defendants argue that "the TAC fails to plausibly allege that the Premier Defendants and other alleged enterprise members functioned as a distinct enterprise with a shared common purpose separate from their own respective business interests." (*Id.* at 22.)

Relatedly, the Premier Defendants argue that the TAC fails to allege that the Premier Defendants conducted the affairs of the alleged enterprise. (*Id.* at 22–24.) "Rather, … the

TAC and the attached agreements establish that [the Premier Defendants] simply facilitated contractual relationships between [Borrego Health] and medical and dental providers, and provided claims processing services to [Borrego Health] (which retained 'ultimate authority' over these programs)." (*Id.* at 23.)

In his Opposition to the Premier Defendants' Motion to Dismiss, Plaintiff argues that the enterprise element is met. (Doc. 325 at 24–25.) Specifically, Plaintiff asserts that "the TAC provides clarity on the nature of the enterprise (an association-in-fact), comprised of individuals within and outside of Borrego [Health], with Borrego [Health] as a whole the identifiable victim[,]" and with "the common purpose of defrauding and siphoning funds from Borrego [Health]." (*Id.* at 24.)

Plaintiff then argues that the conduct element is sufficiently pled. (*Id.* at 22–23.) Specifically, Plaintiff asserts the Premier Defendants' conduct is clear because (1) "without any healthcare experience, [Defendant] Daryl Priest created [Defendant] Premier to control Borrego's contract dental program[;]" (2) the Premier Defendants "integrated themselves into Borrego by use of Borrego e-mail domains, adding legitimacy to their requests[;]" (3) Defendant "Travis Lyon educated [the Dentist Defendants] how to improperly submit claims for additional profit, and coordinated with Karen Hebets and Diana Thompson to push the claims through for payment[;]" and (4) Defendants "Travis Lyon and Nick Priest integrated themselves into [Borrego Health's] finance department and Program Integrity … to dictate and control Borrego's relationships with the dentists … , restrict[] Borrego's ability to conduct audits … , control[] who would be credentialed or terminated … , and require[] only they communicate with dentists." (*Id.* at 23.)

As set forth here and below (*see* Section III.D.1.a.1), the Court finds that, at a minimum, Plaintiff has adequately pled an association-in-fact enterprise comprised of

25

certain Borrego Health executives—Bruce and Karen Hebets[17]—and the Premier Defendants. However, Plaintiff has not adequately pled an association-in-fact enterprise comprised of the Dentist Defendants.

First, Plaintiff has adequately alleged that Bruce Hebets, Karen Hebets, and the Premier Defendants had the common "purpose" of siphoning off funds from Borrego Health for their own benefit. *Shaw*, 220 F. Supp. 3d at 1053–54. (*See also* TAC ¶¶ 2–3.) Indeed, Plaintiff alleges that Defendant Premier, through Defendants Daryl Priest, Nick Priest, and Travis Lyon, approved claims, and caused Borrego Health to pay for claims, that were fraudulent. (*Id.* ¶¶ 160, 183.) These fraudulent claims increased Defendant Premier's revenue because Defendant Premier received $25 per claim. (*Id.* ¶ 136.) "Further, the payments from Borrego Health to the dentists were not recouped by Premier if Medi-Cal never paid Borrego Health, and payments made to Premier for improper claims were never repaid by Premier." (*Id.* ¶ 138.) Plaintiff then alleges that Defendant Premier, through Defendant Daryl Priest, impermissibly compensated Bruce and Karen Hebets through their entity, KBH Consulting. (*Id.* ¶¶ 114–126.) Accordingly, Plaintiff's allegation that Bruce Hebets, Karen Hebets, and the Premier Defendants shared the common "purpose" of siphoning funds from Borrego Health is well supported.

Second, Plaintiff adequately alleges "relationships among those associated with the enterprise[.]" *Shaw*, 220 F. Supp. 3d at 1053–54. Indeed, Plaintiff alleges that Bruce and Karen Hebets were married, and both held positions at Borrego Health. (*Id.* ¶¶ 38–39.) Plaintiff then alleges that Bruce Hebets and Borrego Heath were familiar with Daryl Priest because he had previously secured above-market, "commercially unreasonable leases for … Borrego Health's clinics and offices in San Diego" and partnered with Bruce Hebets and Dennis Nourse to have Borrego Health purchase an undeveloped plot of land. (*Id.*

---

[17] The Court need not decide precisely which Borrego Health insiders were part of the RICO enterprise because they are not named as defendants in the TAC. However, it appears that, at a minimum, Bruce and Karen Hebets were part of the RICO enterprise.

¶ 69.)  Plaintiff also alleges that Defendant Daryl Priest's son, Defendant Nick Priest, ran Defendant Premier as its CEO and was responsible for the day-to-day operations of Defendant Premier.  (*Id.* ¶ 89.)  Defendants Daryl Priest and Nick Priest oversaw managing and supervising Defendant Travis Lyon (*id.* ¶ 103), who was Defendant Premier's COO and who "spearheaded" the "hostile takeover" of Borrego Health's contract dental program (*id.* ¶¶ 20, 91).  Defendant Travis Lyon is also the President of Real Estate Operations at Priest Development Corporation, another entity owned by Defendant Daryl Priest.  (*Id.* ¶ 20.)  Thus, Plaintiff has alleged a link between all members of the enterprise.

Third, Plaintiff has adequately alleged "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Shaw*, 220 F. Supp. 3d at 1053–54.  Indeed, Plaintiff alleges that Borrego Health, through Bruce Hebets, and Defendant Premier, through Defendant Daryl Priest, executed the Dental MSA on March 1, 2016 (TAC ¶ 75) but that the arrangement was not revealed until the summer of 2020 (*id.* ¶¶ 153–54).  Plaintiff's valuation expert therefore determined that, over the term of the Dental MSA, Borrego Health had overpaid Defendant Premier by $40 million.  (*Id.* ¶ 380.)  Likewise, Plaintiff's valuation expert determined that Borrego Health had overpaid for services related to the Medical MSA by $238,000.  (*Id.*)  Thus, Plaintiff has adequately alleged that the association-in-fact enterprise, comprised of (at a minimum) Bruce Hebets, Karen Hebets, and the Premier Defendants, had enough time or "longevity" to achieve the purpose of stealing funds from Borrego Health.

Finally, Plaintiff adequately alleges that the Premier Defendants participated "in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185.  Indeed, Plaintiff alleges that Defendant Daryl Priest had his personal lawyer file Articles of Incorporation for Defendant Premier (*id.* ¶ 86); that Defendant Daryl Priest, on behalf of Defendant Premier, executed the Dental MSA (*id.* ¶ 75); that Defendant Nick Priest ran Defendant Premier as its CEO and was responsible for the day-to-day operations of Defendant Premier (*id.* ¶ 89); and that Defendants Daryl Priest and Nick Priest oversaw managing and supervising Defendant Travis Lyon (*id.* ¶ 103), who was Defendant Premier's COO and

who "spearheaded" the "hostile takeover" of Borrego Health's contract dental program (*id.*
¶¶ 20, 91).    Plaintiff also alleges that Defendant Travis Lyon was responsible for
"educating" or "coaching" the Dentist Defendants' how to fraudulently bill.  (*Id.* ¶¶ 136–
37, 172, 180.)  These allegations are sufficient to establish that the Premier Defendants
directed the affairs of the enterprise.

In sum, Plaintiff has adequately alleged "conduct of an enterprise"—the first and
second elements of a civil RICO claim.  *Odom*, 486 F.3d 547 (quoting *Sedima*, 473 U.S. at
496).

### (2)    Pattern of Racketeering—Elements 3 and 4

As set forth above, to be liable under § 1962(c), the enterprise must have engaged in
"a pattern of racketeering activity."   18 U.S.C. § 1962(c).   "Racketeering activity" is
defined to be any crime listed within 18 U.S.C. § 1961(1), including mail fraud (18 U.S.C.
§ 1341), wire fraud (18 U.S.C. § 1343), and monetary transactions in property derived from
specified unlawful activity (18 U.S.C. § 1957).  "[T]o constitute a 'pattern,' there must be
at least two acts of racketeering activity within ten years of one another." *Turner v. Cook*,
362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(5)).   "However, while two
predicate acts are required under the Act, they are not necessarily sufficient." *Id.* (citing
*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989)).

Plaintiff must plead the predicate acts attributable to *each* Premier Defendant with
particularity.  *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008).
In *Mostowfi*, the Ninth Circuit affirmed the dismissal of the plaintiffs' civil RICO claims
because they failed to allege any predicate act with particularity. *Id.* The Ninth Circuit
explained:

> The plaintiffs' RICO cause of action fails to meet Rule 9(b)'s heightened
> pleading standard.  Most of the alleged predicate acts are general statements
> about actions committed by the defendants that fail to identify the 'who, what,
> when, where and how' of the misconduct charged.   Likewise, several
> predicate acts allege violations of federal criminal statutes but do not specify
> who committed the violation, and when and where it occurred.  As the district
> court correctly observed, these problems are exacerbated because the

> plaintiffs lump together the defendants without identifying the particular acts or omissions that each defendant committed.
>
> To be sure, it is possible to identify some of the specific factual allegations underlying the RICO claim through a painstaking review of the lengthy fact section. … [But] [s]ince the plaintiffs failed to detail specifically which factual allegations support each predicate act, none of the defendants could determine with any certainty what allegations fell within the RICO claim.

*Id.* (emphasis added).

In the TAC, Plaintiff alleges that "[t]he pattern of racketeering activity at issue includes mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, transacting property from illegal activity under 18 U.S.C. § 1957, and violations of federal health care offenses, as defined under 'specified lawful activity' under 18 U.S.C. § 1961 and 18 U.S.C. § 24."[18]  (TAC ¶ 427.)  Plaintiff then alleges that "[t]he Schemes herein could not have worked without the use of the United States Mail, e-mail, and the use of wires, which were used for the purpose of executing the Schemes."  (*Id.* ¶ 428.)  Regarding the Premier Defendants specifically, Plaintiff alleges that the "Premier Defendants utilized telephone wires to make calls to other members of the enterprise … to coordinate how the Dentist Defendants should submit the contract dental claims" and that "[e]-mail and mail correspondence were also utilized to send invoices and received payments both to [Defendant] Premier, as well as the Dentist Defendants."  (*Id.* ¶ 429 (internal citations omitted).)  Plaintiff then alleges that "false or fraudulent bills were submitted electronically to Medi-Cal (and Borrego Health)" and that "[t]he unlawful Schemes described above, including the electronic communications described above relating to the submission of

---

[18] While "[t]heft or embezzlement from employee benefit plan" (18 U.S.C. § 664) and "[o]ffer, acceptance, or solicitation to influence operations of employee benefit plan" (18 U.S.C. § 1954) are "federal health care offenses" as defined in 18 U.S.C. § 24, as well as "racketeering activity" as defined in 18 U.S.C. § 1961(1), Plaintiff has not identified or specifically pled violations of either statute.  (*See* TAC ¶ 427.)  Therefore, the Court will not address these "federal health care offenses" below.

improper, duplicate, fraudulent and false claims, constitutes predicate acts under 18 U.S.C. §1343 … ." (*Id.* ¶¶ 430–31.)

In their Motion to Dismiss, the Premier Defendants argue that "Plaintiff both fails to allege essential elements of mail and wire fraud and fails allege such fraud claims with requisite particularity." (Doc. 313 at 25.) Likewise, the Premier Defendants argue that "Plaintiff still fails to plead factual allegations supporting each statutory element of any of the alleged federal healthcare offenses" and that "Plaintiff's conclusory characterization of the alleged conduct as 'illegal activity under 18 U.S.C. § 1957' … is unsupported by any factual allegations in the TAC." (*Id.* at 26 (emphasis removed).) Plaintiff responds that he has sufficiently pled a pattern of racketeering. (Doc. 325 at 26.) As examples, Plaintiff asserts that "Premier arranged for payment for the fraudulent bills mailed by dentists[,]" "Premier telephoned to falsely state that audits required notice[,]" "Premier submitted monthly invoices for payment[,]" and more. (*Id.* at 26–27 (TAC citations omitted).)

Applying *Mostowfi*, the Court finds that Plaintiff has failed to allege any predicate acts with the requisite particularity. 269 F. App'x at 624–25. As the Court noted in a prior order dismissing the SAC (*see* Doc. 299 at 45–48[19]), Plaintiff's allegations regarding the alleged pattern of racketeering and predicate acts (*see* TAC ¶¶ 425–432) are insufficient as they do not identify and plead the elements of mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and transacting property from illegal activity under 18 U.S.C. § 1957, and do not specify "who committed the violation, and when and where it occurred." *Mostowfi*, 269 F. App'x at 624. For example, while Plaintiff alleges that the "Premier Defendants utilized telephone wires to make calls to other members of the enterprise, such as Karen Hebets" (TAC ¶ 429), Plaintiff does not identify any particular call attributable to any particular Premier Defendant. Indeed, even Plaintiff's briefing does

---

[19] Although the Court's discussion of *Mostowfi* in its prior order pertains to former defendant Mikia Wallis (*see* Doc. 299 at 45–48), *Mostowfi* is equally applicable to the Premier Defendants.

not identify specific predicate acts attributable to each of the Premier Defendants, instead referring solely to Defendant Premier or to all named "Defendants," collectively.  (*See* Doc. 325 at 26–27.)  Plaintiff references one phone call from Defendant Arakelyn to Defendant Travis Lyon but fails to explain how the phone call satisfies the elements of wire fraud.  (*Id.* at 26.)  Similarly, Plaintiff asserts that "Defendants knew they were not entitled to payment" but was "improperly paid in excess of $40 million."  (*Id.* at 27.)  However, Plaintiff does not identify specific monetary transactions in violation of 18 U.S.C. § 1957 attributable to each of the Premier Defendants.  (*Id.* at 25 (identifying the elements of "transacting property from illegal activity")).)  As the Court noted in a prior order (*see* Doc. 299 at 47–48), while it may be "possible to identify some of the specific factual allegations underlying the RICO claim through a painstaking review of the lengthy fact section[,]" such allegations are not sufficient.  269 F. App'x at 624.

In sum, the TAC lacks "the cognitive organization that would allow the [Court] and [the Premier Defendants] to determine exactly what alleged factual conduct formed the basis of the RICO predicate acts." *Id.* at 625. Accordingly, Plaintiff fails to allege the necessary predicate acts on the part of each of the Premier Defendants required to support a civil RICO claim, and Plaintiff's 18 U.S.C. § 1962(c) civil RICO claims against the Premier Defendants are **DISMISSED with leave to amend**.  Nevertheless, the Court briefly addresses the remaining issues related to Plaintiff's civil RICO claim against the Premier Defendants.

### (3)    Statute of Limitations

A suit may be dismissed under Rule 12(b)(6) based on the statute of limitations "only when the running of the statute is apparent on the face of the complaint."  *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010).  Dismissal on this basis "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

"The statute of limitations for civil RICO actions is four years." *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001) (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)). "[The Ninth Circuit has] continuously followed the 'injury discovery' statute of limitations rule for civil RICO claims." *Id.* at 1109 (citing *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir.1996)). "Under this rule, 'the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Id.* (quoting *Grimmett*, 75 F.3d at 510). "Thus, the 'injury discovery' rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." *Id.*

"'Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases.'" *Id.* at 1110 (quoting *Grimmett*, 75 F.3d at 514). "The doctrine is properly invoked only if a plaintiff establishes affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Id.* (internal quotation omitted).

In their Motion to Dismiss, the Premier Defendants argue that Plaintiff's claims, including Plaintiff's civil RICO claim, are time-barred and must be dismissed. (Doc. 313 at 27–29.) The Premier Defendants argue that Plaintiff's allegations that the Premier Defendants worked with Bruce Hebets, Karen Hebets, and other Borrego Health insiders to conceal their fraudulent scheme are conclusory. (*Id.* at 27.) The Premier Defendants also argue that Plaintiff's allegations reveal that, as early as February 2016, Borrego Health and its insiders were aware of the relationship with Defendant Premier. (*Id.*) Plaintiff points to allegations that Borrego Health employees not alleged to be a part of the Contract Dental Scheme, including Cynthia Preciado and Chief Dental Officer Timothy Martinez, knew about Borrego Health's arrangement with Defendant Premier. (*Id.* at 28–29.) The Premier Defendants assert that the knowledge of Preciado, Martinez, and Program Integrity is imputed to Borrego Health and Plaintiff. (*Id.* at 29.)

Plaintiff responds that his claims are not time-barred because the TAC alleges that the statute of limitations period began to accrue in October 2020 after government

investigations revealed the fraudulent conduct.  (Doc. 325 at 20.)  Plaintiff asserts that the TAC also alleges pervasive efforts to conceal the fraudulent conduct.  (*Id.* at 20–21.) Plaintiff also argues that fraudulent claims submitted within the four-year statute of limitations would be timely regardless due to the "separate accrual rule."  (*Id.* at 21.) Additionally, Plaintiff notes that the statute of limitations issue was already decided in *Borrego Cmty. Health Found. v. Inland Valley Invs., LLC*, Case No. 21-cv-01417-AJB-AGS, 2023 WL 2518844, at *2–3 (S.D. Cal. Mar. 13, 2023) (A. Battaglia).  (*Id.* at 21, n.1.)

Here, Plaintiff alleges that the Dental MSA was concealed from Borrego Health's full Board.  (*See* TAC ¶¶ 81, 83, 97, 108, 112, 139, 140, 149–50, 154, 169, 409.)  Plaintiff also alleges that Karen Hebets and Diana Thompson hired their family members in the Borrego Health billing department to ensure the Premier Defendants were paid for thousands of fraudulent claims.  (*Id.* ¶ 143, 176, 184.)  Thus, accepting the allegations in the TAC as true and construing them in the light most favorable to Plaintiff, *see Manzarek*, 519 F.3d at 1031, the Court finds Plaintiff has sufficiently pled that the statute of limitations did not begin to accrue until approximately October 2020 when a government investigation unveiled the fraudulent conduct that is the subject of the TAC  (*see* TAC ¶¶ 108, 112, 153–55, 378).  *See also Von Saher*, 592 F.3d at 969.  Indeed, in *Borrego Community Health Foundation v. Inland Valley Investments, LLC*, a similar case brought against Defendant Daryl Priest's real estate entities, Judge Athony J. Battaglia of this District found that Borrego Health's allegations of fraudulent concealment were sufficient to withstand the entity defendants' motion to dismiss.  2023 WL 2518844, at *2–3.  Accordingly, Plaintiff's civil RICO claims are not barred by the statute of limitations.[20]

---

[20] *See also In re OPP Liquidating Co., Inc.*, Case No. 19-10729 (MFW), 2022 WL 774063, at *3–6 (Bankr. D. Del. Mar. 14, 2022) (finding a liquidation trustee's allegations of fraudulent concealment from the board of directors sufficient to toll the statute of limitations in a breach of fiduciary duty action against the company's former executives).

While the Court finds that Plaintiff has sufficiently alleged fraudulent concealment and therefore equitable tolling of the statute of limitations, the Court is not persuaded by Plaintiff's application of the "separate accrual rule." As the Supreme Court noted in *Klehr v. A.O. Smith Corp.*, "[a civil RICO] plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." 521 U.S. 179, 190 (1997) (casting doubt on the "separate accrual rule" employed in several circuits); *see also Marceau v. Int'l Bhd. of Elec. Workers*, 618 F. Supp. 2d 1127, 1145, n.3 (D. Ariz. 2009) (M. Murguia) (declining to apply the "separate accrual" because "the acts were interrelated, all part of the same alleged fraudulent purpose."). The Court will not apply the "separate accrual rule" in this case.

### b) 18 U.S.C. § 1962(d)—Conspiracy

Because Plaintiff has failed to plead a violation of 18 U.S.C. § 1962(c) against the Premier Defendants, Plaintiff has also failed to plead a violation of 18 U.S.C. § 1962(d) against the Premier Defendants. *See Odom*, 486 F.3d at 547 (citing *Howard*, 208 F.3d at 751).

### 2. Plaintiff's State Law Claims

Because Plaintiff failed to state civil RICO claims against the Premier Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the Premier Defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [a state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be

dismissed as well.").  Accordingly, Plaintiff's state law claims are **<u>DISMISSED</u> with leave to amend**.[21]

**D.    The Dentist Defendants' Motions to Dismiss**

On April 25, 2025, Defendants Magaly Velasquez and Magaly M. Velasquez D.D.S. Professional Dental Corporation filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Velasquez MTD").  (Doc. 303.)

On April 25, 2025, Defendants Douglas Ness and Ness Dental Corporation filed a Motion to Dismiss (the "Ness MTD").[22]  (Doc. 304.)

On April 25, 2025, Defendants Ayed Hawatmeh and Hawatmeh Dental Group, P.C. filed a Motion to Dismiss Pursuant to Rule 12(b)(6) (the "Hawatmeh MTD").[23, 24]  (Doc. 305.)

**1.    Plaintiff's Civil RICO Claim**

As previously stated, Plaintiff alleges violations of two provisions of RICO—18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).  "[T]he survival of [Plaintiff's] claim under §

---

[21] Although the Court does not reach Plaintiff's state law claims, the Court encourages the Parties to bear in mind the Court's prior rulings regarding the statute of limitations and alter ego liability as they move forward with litigation.

[22] Defendants Santiago Rojo and Santiago A. Rojo, D.D.S. Inc. joined the Ness MTD. (Doc. 316.)

[23] Defendants Magaly Velasquez; Magaly M. Velasquez D.D.S. Professional Dental Corporation; Husam E. Aldairi; Aldairi D.D.S., Inc.; Marlene Thompson; Marlene Thompson, D.D.S., Inc.; Michael Hoang; Mohammed Al Tekreeti; Waleed Stephan; W.A. Stephan, a Dental Corporation; Marcelo Toledo; and Marcelo Toledo, D.D.S. Inc. joined the Hawatmeh MTD.  (*See* Docs. 307–10, 314.)

[24] Defendants Alborz Mehdizadeh; Alborz Mehdizadeh, Inc.; Aram Arakelyan; and Jilbert Bakramian did not file a motion to dismiss or a notice of joinder and, therefore, are not dismissed from this action.  The Court notes, however, that the arguments set forth in the Velasquez MTD, the Ness MTD, and the Hawatmeh MTD, as well as the reasoning set forth in this Order, apply with equal force to Plaintiff's claims against Defendants Alborz Mehdizadeh; Alborz Mehdizadeh, Inc.; Aram Arakelyan; and Jilbert Bakramian.  The Court encourages Plaintiff to proceed accordingly.

1962(c) [ensures] the survival of [its] claim under § 1962(d)." *Odom*, 486 F.3d at 547
(citing *Howard*, 208 F.3d at 751). As such, the Court addresses 18 U.S.C. § 1962(c) first.

### a)    18 U.S.C. § 1962(c)

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering activity.'" *Odom*, 486 F.3d 547 (quoting
*Sedima*, 473 U.S. at 496).

### (1)    Conduct of an Enterprise—Elements 1 and 2

As set forth above, "18 U.S.C. § 1962(c) requires that the Defendant be employed
by or associated with an 'enterprise.'" *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046,
1053 (C.D. Cal. 2016). "Under RICO, two types of associations meet the definition of
'enterprise': 'The first encompasses organizations such as corporations and partnerships,
and other 'legal entities.' The second covers 'any union or group of individuals associated
in fact although not a legal entity.''" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576,
581–82 (1981) (citing 18 U.S.C. § 1961(4))). "An 'association-in-fact enterprise is 'a
group of persons associated together for a common purpose of engaging in a course of
conduct.''" *Shaw*, 220 F. Supp. 3d at 1053 (quoting *Boyle v. U.S.*, 556 U.S. 938, 946
(2009)). "'Such an enterprise … is proved by evidence of an ongoing organization, formal
or informal, and by evidence that the various associates function as a continuing unit.'" *Id.*
(quoting *Boyle*, 556 U.S. at 945). "'An association-in-fact enterprise must have at least
three structural features: [1] a purpose, [2] relationships among those associated with the
enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's
purpose." *Id.* at 1053–54 (quoting same).

Additionally, as previously stated, each member must conduct the affairs of the
enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The Supreme Court has
held that "'to conduct or participate, directly or indirectly, in the conduct of such
enterprise's affairs,' … one must participate in the operation or management of the
enterprise itself." *Id.* (quoting 18 U.S.C. § 1962(c)). In other words, "one must have some
part in directing those affairs." *Id.* at 179. "One can be 'part' of an enterprise without

having a role in its management and operation. Simply performing services for the enterprise does not rise to the level of direction … ." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). "Whether [a defendant] rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). Likewise, "[i]t is not enough that [a defendant] failed to stop illegal activity, for *Reves* requires 'some degree of direction.'" *Walter*, 538 F.3d at 1248 (quoting *Reves*, 507 U.S. at 179).

In her MTD, Defendant Velasquez argues that Plaintiff "fails to allege that [she] participated in the operation or management of a RICO enterprise or that there was any victim other than Borrego [Health]." (Doc. 303 at 5–7.) Specifically, Defendant Velasquez argues that Plaintiff "has not alleged that [she] did anything but follow the directions of Borrego [Health's] official agents … ." (*Id.* at 6.) Defendant Velasquez asserts that "not only was [she] an outsider to the enterprise, she was regularly supervised and audited by the enterprise." (*Id.*) Plaintiff responds that Defendant Velasquez's "arguments that they only violated the law because someone else told them to does not minimize their involvement in the RICO scheme … ." (*Id.* at 14.) Plaintiff asserts, "[s]imply put, there would have been no fraudulent dental billing scheme without the contract dental providers … ." (*Id.* at 14–15.) Finally, relying on *Farmers Insurance Exchange v. First Choice Chiropractic & Rehabilitation*, 3:13-cv-01883-PK, 2016 WL 10827072 (D. Or. Feb. 25, 2016), Plaintiff argues that the Dentist Defendants conducted the affairs of the enterprise because the Dentist Defendants' involvement was "vital" to the enterprise. (*Id.* at 15–17.)

Similarly, in his MTD, Defendant Ness argues that Plaintiff fails to allege "conduct" of an enterprise. (Doc. 304-1 at 11.) Specifically, Defendant Ness asserts that Plaintiff's allegation that the Dentist Defendants "integrated themselves into the contract dental program through the Premier Defendants" (TAC ¶ 420) is insufficient to demonstrate that the Dentist Defendants conducted the affairs of the enterprise (Doc. 304-1 at 11). Plaintiff's response to the Ness MTD repeats his response to the Velasquez MTD. (Doc. 321 at 14–19.)

37

And, in his MTD, Defendant Hawatmeh argues that he "did not participate in the operation or management of the alleged enterprise." (Doc. 305-1 at 12–15.) Specifically, Defendant Hawatmeh argues that Plaintiff has not pled facts showing that he "participated in the operation or management of a criminal organization that commandeered Borrego [Health]." (*Id.* at 13.) He explains that he had no influence over the Borrego Health insiders or the Premier Defendants. (*Id.* at 14.) To the contrary, Defendant Hawatmeh explains that, as alleged in the TAC, he was "trained," "educated," and "coached" by the Premier Defendants" and that, ultimately, Borrego Health audited and terminated his contract. (*Id.* at 14–15.) Plaintiff's response to the Hawatmeh MTD repeats his response to the Velasquez MTD and the Ness MTD. (Doc. 324 at 17–22.)

As set forth above (*see* Section III.C.1.a.1), Plaintiff has adequately alleged that the Premier Defendants conducted the affairs of an association-in-fact enterprise comprised of Bruce Hebets, Karen Hebets, and the Premier Defendants (at a minimum). However, as currently pled, the Court finds that the association-in-fact enterprise does not extend to the Dentist Defendants, and, even if it did, the Dentist Defendants did not participate in the operation or management of the enterprise.

First, as alleged, the Dentist Defendants do not have any relationship with any of the Borrego Health insiders that helped facilitate the Contract Dental Scheme. *See Shaw*, 220 F. Supp. 3d at 1053–54 (requiring "relationships among those associated with the enterprise" to plead an association-in-fact enterprise). Unlike the Premier Defendants, the Dentist Defendants did not have a pre-existing relationship with Borrego Health insider Bruce Hebets; did not use their fraudulent revenue to compensate Borrego Health insiders Bruce and Karen Hebets; did not work with Karen Hebets, Diana Thompson, and their family members to process fraudulent claims for payment; and did not assist in concealing the Contract Dental Scheme from Borrego Health's Board. In fact, of the Premier Defendants, the Dentist Defendants communicated solely with Defendant Travis Lyon, who reviewed their contracts and "educated," "coached," and "trained" the Dentist Defendants to fraudulently bill. (*See* TAC ¶¶ 136, 172–73, 180–82.) While Plaintiff

alleges that Defendant Travis Lyon used the "trainings" as "opportunities to *collaborate*" with the Dentist Defendants (*id.* ¶ 175 (emphasis added)), this allegation lacks support and contradicts Plaintiff's numerous allegations that Defendant Lyon "educated," "coached," and "trained" the Dentist Defendants to fraudulently bill (*id.* ¶¶ 136, 172, 180–82). (*See* Section II.C (requiring Plaintiff to plead his claims with particularity).) *See also Daniels-Hall*, 629 F.3d at 998 (noting that district courts are not "required to accept as true … allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Second, the Court is not persuaded that, as alleged, the Dentist Defendants share a common "purpose" with the Borrego Health insiders and the Premier Defendants. *See Shaw*, 220 F. Supp. 3d at 1053–54 (requiring a common "purpose" to plead an association-in-fact enterprise). To be sure, as alleged, the Dentist Defendants, in their own self-interest, fraudulently billed for services. Indeed, Plaintiff alleges that the Dentist Defendants "took [the fraudulent billing] *to the extreme*," implying that the Dentist Defendants were acting on their own. (TAC ¶ 175.) However, it was first the *Premier Defendants*, and then the Borrego Health insiders, who subsequently pushed these fraudulent claims through for payment; it was the *Premier Defendants* who also executed the Medical MSA; it was the *Premier Defendants* who charged Borrego Health an unreasonably high price of $25 per claim; and it is the *Premier Defendants* who compensated Borrego Health insiders Bruce and Karen Hebets. Thus, while it is clear that the Premier Defendants acted in furtherance of the enterprise's affairs, as opposed to their own self-interest, the same cannot be said for the Dentist Defendants.

Third, as set forth in this Court's prior order granting the Dentist Defendants' motion to dismiss the SAC, Plaintiff's allegations that the Defendant Travis Lyon "educated," "coached," and "trained" the Dentist Defendants to fraudulently bill undermine any assertion the Dentist Defendants conducted the affairs of the enterprise. (*See* Doc. 300 at 19–21.) The Dentist Defendants were also subject to termination by Borrego Health, further undermining any assertion that the Dentist Defendants conducted the affairs of the

enterprise. (*See e.g.*, TAC ¶¶ 231, 281 (alleging that Defendant Hawatmeh and Defendant Hoang were terminated from the contract dental program in 2019 before the alleged exposure of the Contract Dental Scheme).) Indeed, as alleged, the Dentist Defendants entered into a written dental *services* agreement with Borrego Health. (*See* TAC ¶¶ 188, 212, 235, 258, 273, 282, 290, 315, 330, 338.) As set forth above, "[s]imply performing services for the enterprise does not rise to the level of direction … ." *Walter*, 538 F.3d at 1249. It is not pertinent that the Dentist Defendants allegedly rendered their services improperly. *See Baumer*, 8 F.3d at 1344. Further, "[i]t is not enough that [a defendant] failed to stop illegal activity, for *Reves* requires 'some degree of direction.'" *Walter*, 538 F.3d at 1248 (quoting *Reves*, 507 U.S. at 179).

Finally, the Court is not persuaded by Plaintiff's reliance on *Farmers Insurance Exchange v. First Choice Chiropractic & Rehabilitation*, 3:13-cv-01883-PK, 2016 WL 10827072 (D. Or. Feb. 25, 2016) ("*Farmers*"). In *Farmers*, the plaintiff insurance company accused one chiropractor and one medical doctor of submitting fraudulent insurance claims. *Id.* at *1–2. On summary judgment, the plaintiff insurance company submitted evidence that the chiropractic practice had a policy of noting "T" for tenderness on patient charts even when the patient did not report experience tenderness. *Id.* at *3. These charts were prepared by chiropractic assistants or "runners." *Id.* at *2. The chiropractor then signed off on the chart notes that fraudulently noted tenderness. *Id.* at *23. Similarly, the medical doctor signed off on the chiropractic treatments. *Id.* The District Court in *Farmers* therefore found that "a reasonable trier of fact" could find that the chiropractor and the medical doctor "conducted" the affairs of the "fraudulent billing enterprise." However, in *Farmers*, the roles of the chiropractor and the medical doctor, who signed off on patient charts and treatments, are more akin to the roles of the Premier Defendants, who were allegedly responsible for processing the dental claims in the present case. Put another way, the district court's decision in *Farmers* does not account for the presence of an intermediary management services organization reviewing the dental claims.

In sum, the Court finds that Plaintiff has failed to allege association-in-fact enterprise comprised of the Dentist Defendants and that the Dentist Defendants conducted said enterprise. *See Odom*, 486 F.3d 547 (quoting *Sedima*, 473 U.S. at 496). Accordingly, the Dentist Defendants are **<u>DISMISSED</u> with leave to amend**. To be certain, nothing in the Court's Order should be construed as preventing Plaintiff from pursuing the Dentist Defendants' alleged misconduct in state court.

### b) 18 U.S.C. § 1962(d)—Conspiracy

Because Plaintiff has failed to plead a violation of 18 U.S.C. § 1962(c) against the Dentist Defendants, Plaintiff has also failed to plead a violation of 18 U.S.C. § 1962(d) against the Dentist Defendants. *See Odom*, 486 F.3d at 547 (citing *Howard*, 208 F.3d at 751).

### 2. Plaintiff's State Law Claims

Because Plaintiff failed to state civil RICO claims against the Dentist Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the Dentist Defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [a state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").[25]

### IV. <u>CONCLUSION</u>

Based on the foregoing, the Court **<u>DENIES AS MOOT</u>** the motions to dismiss filed by Mikia Wallis and Diana Thompson (*see* Docs. 306, 311); **<u>GRANTS</u>** the motion to dismiss filed by the Premier Defendants **with leave to amend** (Doc. 313); and **<u>GRANTS</u>**

---

[25] Although the Court does not reach Plaintiff's state law claims, the Court encourages the Parties to bear in mind the Court's prior rulings regarding the statute of limitations and alter ego liability as they move forward with litigation.

the three motions to dismiss and numerous joinders filed by the Dentist Defendants **with leave to amend** (*see* Docs. 303–305, 307–310, 314, 316).

     **IT IS SO ORDERED.**

DATE:  September 30, 2025

_____

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:22-cv-01056-RBM-SBC